**EXHIBIT A**

**(Proposed Order)**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| PEAR THERAPEUTICS, INC., *et al.*[1] | Case No. 23-10429 (TMH) |
| | (Joint Administration Requested) |
| Debtors. | |

**ORDER (A) APPROVING BID PROCEDURES RELATING TO THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS; (B) APPROVING STALKING HORSE BID PROTECTIONS; (C) SCHEDULING A HEARING TO CONSIDER THE SALE; (D) APPROVING THE FORM AND MANNER OF NOTICE OF SALE BY AUCTION; (E) ESTABLISHING NOTICE AND CONTRACT PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS AND LEASES; AND (F) GRANTING RELATED RELIEF**

Upon the Motion[2] filed by the above-captioned debtors and debtors in possession (the "Debtors"), pursuant to sections 105(a), 363, 365, 503 and 507 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), and Rules 2002, 6003, 6004, 6006, 9007 and 9008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), for entry of an order (the "Order"), (i) approving the procedures (the "Bid Procedures"), substantially in the form attached hereto as Exhibit 1, with respect to the expected sale (the "Sale") of substantially all of the Debtors' assets (the "Assets"), (ii) scheduling a hearing on the Sale (the "Sale Hearing") and setting objection and bidding deadlines with respect to the Sale, (iii) approving the form and manner of notice of the Sale and the auction (the "Auction") for the Assets, a copy of which is attached hereto as Exhibit 2 (the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Pear Therapeutics, Inc. (3092) and Pear Therapeutics (US), Inc. (7074). The Debtors' corporate headquarters are located at 200 State Street, 13th Fl., Boston, MA 02109.

[2] Capitalized terms used but not defined herein shall have the same meanings given to such terms as in the Motion.

"Sale Notice"), (iv) establishing procedures to determine cure amounts and deadlines for objections to the assumption and assignment of executory contracts and unexpired leases as set forth in the Motion (collectively, the "Contract Procedures"); and (v) granting related relief; and it appearing that the notice of the Motion provided is appropriate and sufficient under the circumstances and that no other or further notice need be given; and it appearing that the relief requested is in the best interests of the Debtors' estates, their creditors and other parties in interest; and after due deliberation and good and sufficient cause appearing therefor;

**THE COURT HEREBY FINDS AND CONCLUDES THAT:**[3]

A.     This Court has jurisdiction over this matter and over the properties of the Debtors and their estates pursuant to 28 U.S.C. §§ 157 and 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157.  Venue is proper in this district and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.     The statutory and rule-based predicates for the relief requested in the Motion are sections 105(a), 363, 365, 503 and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 6003, 6004, 6006, 9007, 9008 and Local Rule 6004-1.

C.     Notice of the Motion having been given as set forth in the Motion is sufficient in light of the circumstances and the nature of the relief requested in the Motion and no other or further notice is necessary or required, except as otherwise set forth herein.

D.     The Debtors, based on the evidence submitted to the Court in connection with the Bid Procedures Motion, have articulated good and sufficient reasons for this Court to grant the

---

[3] The findings and conclusions set forth herein constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

relief requested in the Motion regarding the Sale process, including, without limitation: (i) approving the Bid Procedures; (ii) scheduling the Auction and the Sale Hearing; (iii) approving the Sale Notice; and (iv) approving the Cure Notice and Contract Procedures.

E.      Based on the evidence submitted to the Court in connection with the Bid Procedures Motion, the Bid Procedures were proposed and negotiated in good faith by the Debtors, and are fair, reasonable and appropriate under the circumstances, and are properly designed to maximize the recovery from any sale of the Assets.

F.      The form and scope of the Sale Notice attached hereto as <u>Exhibit 2</u> is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Sale, the Sale Hearing and the Auction and no other and further notice is required.

G.      The Contract Procedures and the notices related thereto, including the Cure Notice attached hereto as <u>Exhibit 3</u> and the Additional Cure Notice attached as <u>Exhibit 4</u> are appropriate and reasonably calculated to provide all Contract Parties with proper notice of the potential assumption and assignment of Contracts or unexpired leases and any Cure Amounts relating thereto and no further or other notice is required.

H.      The entry of this Order is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and it is therefore

**ORDERED, ADJUDGED AND DECREED THAT:**

1.      The relief requested in the Motion is GRANTED as set forth herein.

2.      The Bid Procedures and Contract Procedures are approved in all respects and the relief requested in the Motion as it pertains to the Bid Procedures and Contract Procedures, is granted.

3.      All objections to the relief requested in the Motion with respect to the Bid Procedures or the Contract Procedures that have not been withdrawn, waived, or settled as announced to the Bankruptcy Court at the hearing on the Motion or as reflected in this Order or by stipulation or withdrawal filed with the Bankruptcy Court, are overruled.

4.      The Bid Procedures attached hereto as **<u>Exhibit 1</u>** are hereby approved and fully incorporated into this Order, and shall apply with respect to the Auction and the proposed Sale of the Assets.

5.      The Debtors are authorized to take any and all actions necessary or appropriate, consistent with the terms of this Order, to implement the Bid Procedures.

6.      The Debtors are hereby authorized, but not directed, to, in the exercise of their reasonable business judgment, execute one or more asset purchase agreement(s) with a Stalking Horse Bidder(s) (each, a "<u>Stalking Horse Agreement</u>") substantially in the form of the Proposed APA attached to the Bid Procedures as **<u>Exhibit A</u>**.

7.      The Debtors, in consultation with the Committee, if any, are hereby authorized, but not obligated, in the exercise of their business judgment, to provide in any Stalking Horse Agreement a Break-Up Fee and an Expense Reimbursement for the documented and reasonable expenses incurred by a Stalking Horse Bidder (collectively, the "<u>Stalking Horse Bid Protections</u>") for any such Stalking Horse Bidder that is not the successful bidder, subject to compliance with paragraph 9 of this Order.  To the extent the Debtors agree to provide any Stalking Horse Bidder with Stalking Horse Bid Protections that include a Break-Up Fee or an Expense Reimbursement, the Stalking Horse Notice will identify the amount and conditions of the same.

8.      Absent further Order of the Court (a) in the aggregate, any Break-Up Fee shall not exceed three percent (3%) of the cash component of any Stalking Horse Bid, (ii) the Expense

Reimbursement shall solely be for the actual, reasonable documented costs of the Stalking Horse Purchaser, subject to the cap set forth in the applicable Stalking Horse APA, which cap shall be determined by the Debtors, in consultation with the Committee, if any and (c) no Stalking Horse Bid Protections shall be provided to an insider of the Debtors.  For the avoidance of doubt, no Stalking Horse Bid Protections in any amount are being approved herein and any such approval shall be subject to further order of this Court as set forth in paragraph 9 herein; provided, further, that if the Debtors propose to designate a Stalking Horse Bidder who is an insider of the Debtors as that term is defined in section 101(31) of the Bankruptcy Code or a prepetition secured party or propose to pay a Stalking Horse Bidder a Break-Up fee that is more than 3% of the cash component of any Stalking Horse Bid or an Expense Reimbursement that is not solely for the actual, reasonable documented costs of the Stalking Horse Purchaser, the Debtors shall seek further relief from this Court and may not use the procedure specified in paragraph 9 herein.

9.     The Stalking Horse Bid Protections are approved as set forth herein:

   a.     To the extent the Debtors designate a Stalking Horse Bidder with respect to any of the assets, the Debtors shall promptly upon execution of a Stalking Horse Agreement (and in no event more than one (1) calendar day following such execution) file with the Bankruptcy Court and serve on the Sale Notice Parties (as defined herein), a supplement to the sale motion which includes as an exhibit the executed Stalking Horse Agreement and sets forth (1) the identity of the Stalking Horse Bidder, (2) the amount of the Stalking Horse Bid, (3) whether the Stalking Horse has any connection to the Debtors other than that which arises from said bid, and (4) quantifies the amount of the Stalking Horse Bid Protections (the "Notice of Stalking Horse Bidder"). The Debtors shall cause the Notice of Stalking Horse Bidder to be published on the website maintained by the Debtors' claims and noticing agent in this Chapter 11 Case, located at Debtors' claims agent's website at https://cases.stretto.com/PearTherapeutics. The Notice of Stalking Horse Bidder shall conspicuously set forth an objection deadline to object to such designation and approval of any bid protections that is no less than five (5) calendar days from the date of service of the Notice of Stalking Horse Bidder;

6

b.      Any objections (each, a "<u>Stalking Horse Objection</u>") to the designation of a Stalking Horse Bidder, including any Stalking Horse Bid Protections pursuant to the terms and provisions of a Stalking Horse Agreement, must (i) be in writing; (ii) state the name and address of the objecting party and the amount and nature of the Claim or Interest of such party; (iii) state with particularity the basis and nature of any objection; (iv) conform to the Bankruptcy Rules and the Local Rules; and (v) be served upon the Sale Notice Parties within five (5) calendar days after the filing of the relevant Notice of Stalking Horse Bidder.  If a timely Stalking Horse Objection is filed and served in accordance with the preceding sentence, the proposed Stalking Horse Bid Protections will not be deemed approved until either the Stalking Horse Objection is resolved by agreement of the objecting party and the Debtors or by order of the Bankruptcy Court. If no timely Stalking Horse Objection is filed and served with respect to an applicable Stalking Horse Agreement in accordance with the Bid Procedures, the Debtors may file an Order approving the Stalking Horse Bid Protections and the treatment of any Break-Up Fee and Expense Reimbursement as an administrative expense under sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code under certification of counsel without need for a hearing.

10.      The Debtors shall have the right to determine at the Auction that any Qualified Bid shall be the Back-Up Bid.

11.      Pursuant to the Bid Procedures, a Potential Bidder that desires to make a bid shall deliver written copies of its bid to the parties identified in the Bid Procedures no later than **May 1, 2023 at 4:00 p.m. (ET)**, (the "<u>Bid Deadline</u>") and shall comply with all other requirements set forth in the Bid Procedures in making such a bid for the Assets.

12.      To the extent the Debtors receive at least two Qualified Bids, the Debtor shall conduct the Auction commencing at **May 3, 2023 at 10:00 a.m. (ET)**, at the offices of Foley Hoag LLP, 1301 Avenue of the Americas, 25th Floor, New York, NY 10019, or by remote audio and/or video link.  Debtors shall file notice of the identity of the successful bidder, back-up bidder, and the amount of the winning bid and back-up bid with the court by the earlier of (a) five (5) business hours after the close of the auction or (b) noon the day after the close of the auction.  At that same time, the Debtors shall serve notice of the same by fax, email or (if neither is available) overnight

7

mail to all counterparties whose contracts are to be assumed and assigned and to all creditors who have requested the same in writing and provided their fax numbers, email address or street address, to Debtors' counsel.

13.     If the Debtors do not receive a Qualified Bid, the Debtors will not hold the Auction. No later than **May 2, 2023 at 12:00 p.m. (ET)**, the Debtors shall notify all Qualified Bidders and counsel to the Committee, if any, whether the Auction will occur.

14.     Upon conclusion of the bidding at any Auction, the Auction shall be closed, and the Debtors, in consultation with the Committee, if any, shall (i) review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the Sale process and the contract assumption process, including, without limitation, those factors affecting the speed and certainty of consummating the proposed Sale and the amount of the cash (or cash equivalents) consideration and (ii) identify the highest or otherwise best offer for the Assets (the "Successful Bid" and the entity submitting such Successful Bid, the "Successful Bidder"), the Back-Up Bid and the Back-Up Bidder (as defined below) and advise the Qualified Bidders of such determinations.

15.     The Debtors, in their reasonable business judgment, in consultation with the Committee, if any, may (a) determine which Qualified Bid, if any, is the highest or otherwise best offer; and (b) reject, at any time before entry of an order of the Bankruptcy Court approving a Qualified Bid, any bid that is (i) inadequate or insufficient; (ii) not in conformity with the requirements of the Bankruptcy Code, the Bid Procedures, or the terms and conditions of the Sale; or (iii) contrary to the best interests of the Debtors, their estate, their creditors, or other stakeholders.

16.     The Debtors' presentation of a particular Qualified Bid to the Bankruptcy Court for approval does not constitute the Debtors' acceptance of such Qualified Bid.  Other than as

expressly set forth in the Bid Procedures Order, the Debtor will be deemed to have accepted a bid only when the bid has been approved by the Bankruptcy Court at the Sale Hearing.

17.     After the Successful Bid, the next highest or otherwise best offer, as determined by the Debtors, in consultation with the Committee, if any, (the "<u>Back-Up Bid</u>") shall remain open, and the entity submitting such Back-Up Bid (the "<u>Back-Up Bidder</u>") shall be required to fully perform under such Back-Up Bid, until the consummation of a Sale Transaction with the Successful Bidder.  In the event the Successful Bidder fails to consummate the Sale as a result of the Successful Bidder's default or breach under the applicable purchase agreement in accordance with the terms of such purchase agreement by the closing date contemplated in such purchase agreement, the Debtors shall be, among other things, free to enter into a new purchase agreement with the Back-Up Bidder at the purchase price contemplated in the Back-Up Bid.  Following the approval of the Sale of the Assets to the Successful Bidder at the Sale Hearing, if such Successful Bidder fails to consummate the approved Sale within thirty (30) days after entry of an Order approving such Sale, the Debtors shall be authorized, in consultation with the Committee, if any, but not required, to deem the Back-Up Bid, as disclosed at the Sale Hearing, the Successful Bid, and the Debtors may consummate the Sale to the Back-Up Bidder without further order of the Bankruptcy Court.

18.     The Contract Procedures, setting forth, among other things, the procedures for determining the Cure Amounts and the deadline for objecting to the Cure Amounts and/or the proposed assumption and assignment of executory contracts and unexpired leases, as provided in the Motion, are hereby approved in their entirety. Notice of the Contract Procedures in the form attached hereto as **<u>Exhibit 3</u>** and service of such notice of the Contract Procedures to the Contract

Parties, are appropriate and sufficient under the circumstances, and no other or further notice of the Contract Procedures need to be given.

19.     The Bankruptcy Court shall conduct the Sale Hearing commencing Bankruptcy Court on May 8, 2023 at 10:00 a.m. (ET), at which time the Bankruptcy Court will consider approval of the Sale to the Successful Bidder and entry of the Sale Order.

20.     The Debtors shall file a proposed Sale Order on or before **May 1, 2023 at 4:00 p.m. (ET)** (the "Sale Order Deadline").

21.     Objections to approval of the Sale and entry of the Sale Order, whether the Sale(s) be to the Stalking Horse Bidder(s) or to a Successful Bidder(s) as selected at an Auction, including the sale of the Assets free and clear of all Encumbrances pursuant to Bankruptcy Code section 363(f), with such Encumbrances to attach to the Sale Proceeds (if any) and the conduct of the Auction (if any) (a "Sale Objection"), must be in writing and filed with the Bankruptcy Court and served on (i) counsel for the Debtors, Foley Hoag LLP, 1301 Avenue of the Americas, 25th Floor, New York, NY 10019, Attn: Alison D. Bauer, Esq. (e-mail: abauer@foleyhoag.com) and Attn: Jiun-Wen Bob Teoh, Esq. (e-mail: jteoh@foleyhoag.com); and Gibbons P.C., 300 Delaware Avenue, Suite 1015, Wilmington, Delaware 19801, Attn: Chantelle D. McClamb, Esq. (e-mail: cmcclamb@gibbonslaw.com) and One Gateway Center, Newark, New Jersey 07102, Attn: Robert K. Malone, Esq. (e-mail: rmalone@gibbonslaw.com); (ii) counsel to the Committee, if any; and (iii) the Office of the United States Trustee, 844 King Street, Suite 2207, Wilmington, Delaware 19801 (Attn: Jane Leamy), so as to be received by such parties prior to May 5, 2023 at 4:00 p.m. (ET) (the "Sale Objection Deadline").

22.     Objections to (a) the Cure Amounts listed by the Debtors and to propose alternative Cure Amounts, and/or (b) the proposed assumption and assignment of the Contracts in connection

with the Sale, including, without limitation, the Debtors' ability to assign the Contracts without the Contract Parties' consent (a "Contract Objection"), must be in writing and filed with the Bankruptcy Court and served on (i) counsel for the Debtors, Foley Hoag LLP, 1301 Avenue of the Americas, 25th Floor, New York, NY 10019, Attn: Alison D. Bauer, Esq. (e-mail: abauer@foleyhoag.com) and Attn: Jiun-Wen Bob Teoh, Esq. (e-mail: jteoh@foleyhoag.com); and Gibbons P.C., 300 Delaware Avenue, Suite 1015, Wilmington, Delaware 19801, Attn: Chantelle D. McClamb, Esq. (e-mail: cmcclamb@gibbonslaw.com) and One Gateway Center, Newark, New Jersey 07102, Attn: Robert K. Malone, Esq. (email: rmalone@gibbonslaw.com); (ii) counsel to the Committee, if any; and (iii) the Office of the United States Trustee, 844 King Street, Suite 2207, Wilmington, Delaware 19801 (Attn: Jane Leamy), so as to be received by such parties prior to 4:00 p.m. (ET) on the date that is fourteen (14) days following service of the Cure Notice but no later than May 1, 2023 at 4:00 p.m. (ET) (the "Contract Objection Deadline"); provided, however, that objections to the adequate assurance of future performance to be provided by the Successful Bidder (or any designee thereof) (an "Adequate Assurance Objection") must be in writing and filed with the Bankruptcy Court and served on (i) counsel for the Debtors, Foley Hoag LLP, 1301 Avenue of the Americas, 25th Floor, New York, NY 10019, Attn: Alison D. Bauer, Esq. (e-mail: abauer@foleyhoag.com) and Attn: Jiun-Wen Bob Teoh, Esq. (e-mail: jteoh@foleyhoag.com); and Gibbons P.C., 300 Delaware Avenue, Suite 1015, Wilmington, Delaware 19801, Attn: Chantelle D. McClamb, Esq. (e-mail: cmcclamb@gibbonslaw.com) and One Gateway Center, Newark, New Jersey 07102, Attn: Robert K. Malone, Esq. (e-mail: rmalone@gibbonslaw.com); (ii) counsel to the Committee, if any; and (iii) the Office of the United States Trustee, 844 King Street, Suite 2207, Wilmington, Delaware 19801 (Attn: Jane Leamy), so as to be received by such parties prior **May 5 2023 at 4:00 p.m. (ET)** (the "Adequate Assurance

11

Objection Deadline"); provided, however, that if the Debtors amend the Cure Notice to add a contract or lease, which it shall do no later than **April 24, 2023 at 4:00 p.m. (ET)**, unless they receive the consent of the Contract Counterparty to each contract or lease on the proposed amended Cure Notice, the non-Debtor party to the added contract or lease shall have until the earlier of (i) fourteen (14) days after service of notice of adding a contract or lease; or (ii) the Sale Hearing to submit a Contract Objection with respect to the contract or lease added by the Debtors' amendment (the "Amended Contract Objection Deadline"); provided further, that if the Debtors amend the Cure Notice to reduce the Cure Amount of a Contract or lease, except where such reduction was upon mutual agreement of the parties, the non-Debtor party to the Contract or lease with the reduced Cure Amount shall have until the Amended Contract Objection Deadline to object to the Cure Amount; and provided further, that in the event the Auction results in a Successful Bidder, the Contract Parties shall have until the Amended Contract Objection Deadline to object to the assignment of executory contracts and unexpired leases to such Successful Bidder, other than to the Cure Amount which shall be subject to the Contract Objection Deadline, with any such objection being heard at the Sale Hearing or at a later-scheduled hearing as the Bankruptcy Court deems appropriate.

23.    Unless a Contract Objection is filed and served before the Contract Objection Deadline or the Amended Contract Objection Deadline, as applicable, all Contract Parties shall be (i) forever barred from objecting to the proposed Cure Amounts and from asserting any additional cure or other amounts (other than as may be asserted in an Additional Cure Notice), and the Debtors and the Successful Bidder shall be entitled to rely solely upon the proposed Cure Amounts set forth in the Cure Notices; (ii) deemed to have consented to the assumption and assignment, (iii) forever barred and estopped from asserting or claiming against the Debtors or the Successful

FH11334758.4

Bidder, as applicable, that any additional amounts are due or other defaults exist (other than as may be asserted in an Additional Cure Notice), that conditions to assignment must be satisfied under such Contracts, including without limitation adequate assurance of future performance; (iv) precluded from objecting to the Cure Amount (if any) and the assumption and assignment; and (v) barred and estopped from asserting or claiming that their Contract contains an enforceable consent right.

24.     The Debtors, the Contract Party, and the Successful Bidder may consensually resolve any Contract Objection prior to the Sale Hearing.  In the event a Contract Objection is not resolved, such Contract Objection will be heard at the Sale Hearing or thereafter, or the Successful Bidder may designate such Contract as a Contract that will not be assumed and assigned to the Successful Bidder, in which case such Contract shall not be assumed and shall remain property of the Debtors' estates, subject to any further orders of the Bankruptcy Court.

25.     The Debtors are hereby authorized to share certain of the Contracts that contain confidentiality restrictions with Qualified Bidders subject to the terms of the non-disclosure agreement by and between the Debtors and each Qualified Bidder, provided that each such Qualified Bidder requesting access to such confidential contracts enters into a non-disclosure agreement with the Debtors, in a form acceptable to the Debtors.

26.     All Qualified Bidders are deemed to have submitted to the exclusive jurisdiction of the Bankruptcy Court with respect to all matters between and among any Qualified Bidder and the Debtors related to the Auction and the Sale.

27.     The Sale Notice attached hereto as **Exhibit 2** is approved.  The Sale Notice provides all parties in interest good and sufficient notice of the relief sought in the Motion, including, but not limited to, the Auction, the Bid Deadline, the Bid Procedures, the Sale Hearing, and the Sale.

FH11334758.4

28.     Within two (2) business days of the entry of the Bid Procedures Order, the Debtors shall serve by first class mail, postage prepaid, copies of: (i) this Order and (ii) the Sale Notice upon the following entities: a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the Committee, if any, or if none is formed, the creditors holding the thirty (30) largest unsecured claims as set forth on the list filed with the Debtors' petitions; (c) all taxing authorities having jurisdiction over any of the Assets subject to the Sale, including the Internal Revenue Service; (d) the Securities Exchange Commission; (e) the Food and Drug Administration; (f) the state/local environmental agencies in the jurisdictions where the Debtors own or lease real property; (g) all of the Debtors' known creditors; (h) all parties that have requested notice pursuant to Bankruptcy Rule 2002 as of the date prior to the date of entry of the Bid Procedures Order; (i) all persons or entities known to the Debtors that have or have asserted a lien on, or security interest in, all or any portion of the Assets (including Perceptive); and (j) any Potential Bidders previously identified or otherwise known to the Debtors (collectively, the "Sale Notice Parties").  The Debtors are also authorized and directed to publish the Sale Notice, substantially in the form attached hereto, in the national edition of either the *Wall Street Journal National Edition* or *USA Today* or similar publication for a single issue.  In addition, the Debtors will post copies of Motion, together with all exhibits and schedules, this Order, the Sale Notice and the Cure Notice to the website of Stretto, Inc., the Debtors claims and noticing agent, at https://cases.stretto.com/PearTherapeutics, located under the tab labeled "Sale Documents."

29.     The Cure Notice attached hereto as **Exhibit 3** provides proper notice to all parties in interest and is approved.  The Debtor shall serve the Cure Notice on all Contract Parties by first class mail no later than **April 17, 2023 at 4:00 p.m. (ET)**.

14

30.     The Additional Cure Notice attached hereto as **<u>Exhibit 4</u>** provides proper notice to all parties in interest and is approved.  The Debtors shall serve the Additional Cure Notice pursuant to the additional assumption procedures as provided in the Motion.

31.     All of the dates set forth on the attached <u>Schedule 1</u> are hereby approved.

32.     This Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof.

33.     Notwithstanding the possible applicability of Bankruptcy Rule 6003 or 6004(h) or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry, and no automatic stay of execution shall apply to this Order.

34.     This Court shall retain jurisdiction over any matters related to or arising from the implementation of this Order and the Bid Procedures.

15

## **SCHEDULE 1**

| | |
|---|---|
| Deadline for Debtors to File Cure Notice | April 17, 2023 at 4:00 p.m. (ET) |
| Deadline to File Contract Schedule | April 21, 2023 at 4:00 p.m. (ET) |
| Deadline for Debtors to Amend Cure Notice | April 24, 2023 at 4:00 p.m. (ET) |
| Deadline to Submit Bids | May 1, 2023 at 4:00 p.m. (ET) |
| Deadline to Object to Cure Amounts | May 1, 2023 at 4:00 p.m. (ET) |
| Deadline for Debtors to Notify Bidders of Status as Qualified Bidders | May 2, 2023 at 12:00 p.m. (ET) |
| Auction, if necessary, to be conducted at the offices of Foley Hoag LLP, 1301 Avenue of the Americas, New York, NY 10019, or by remote audio and/or video link | May 3, 2023 at 10:00 a.m. (ET) |
| Deadline to file notice of (i) Successful Bid and Back-Up Bid and (ii) identity of Successful Bidder and Back-Up Bidder | Within the earlier of (a) five (5) business hours after the close of the Auction or (b) noon the day after the close of the Auction |
| Deadline for Successful Bidder to submit to the Debtors fully executed documentation memorializing the terms of a Successful Bid | Within one (1) day after the Auction |
| Deadline to file objections to Adequate Assurance of Future Performance | May 5, 2023 at 4:00 p.m. (ET) |
| Sale Objection Deadline | May 5, 2023 at 4:00 p.m. (ET) |

16

# **EXHIBIT 1**

1

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| PEAR THERAPEUTICS, INC., *et al.*[1] | Case No. 23-10429 (TMH) |
| | (Joint Administration Requested) |
| Debtors. | |

## BID PROCEDURES

### Overview

On April 7, 2023, Pear Therapeutics, Inc. and Pear Therapeutics (US), Inc., as debtors and debtors in possession (collectively, "Pear" or the "Debtors"), filed voluntary petitions for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

On April __, 2023, the Bankruptcy Court entered an order [D.I. __] (the "Bid Procedures Order"),[2] which, among other things, authorized the Debtors to solicit bids and approved these procedures (the "Bid Procedures") for the consideration of the highest or otherwise best bid for all or a portion of the Debtors' assets on the terms and conditions set forth herein (a "Sale Transaction").

The Bid Procedures describe, among other things: (i) the procedures for bidders to submit bids for the Debtors' assets; (ii) the manner in which bidders and bids become Qualified Bidders and Qualified Bids; (iii) the process for negotiating the bids received; (iv) the conduct of the Auction if the Debtors receive Qualified Bids; (v) the procedure for the ultimate selection of any Successful Bidder; and (vi) the process for approval of a Sale Transaction at the Sale Hearing (as defined herein).

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Pear Therapeutics, Inc. (3092) and Pear Therapeutics (US), Inc. (7074).  The Debtors' corporate headquarters are located at 200 State Street, 13th Fl., Boston, MA 02109.

[2] Capitalized terms used but not otherwise defined in these Procedures shall have the meanings ascribed to such terms in the Order and the *Motion of Debtors for Entry of Orders: (A)(I) Approving Bid Procedures Relating to the Sale of Substantially All of the Debtors' Assets, (II) Approving Stalking Horse Bid Protections; (III) Scheduling a Hearing to Consider the Sale, (IV) Approving the Form and Manner of Notice of Sale by Auction, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, and (VI) Granting Related Relief; and (B)(I) Authorizing the Sale of Certain Assets of the Debtors Outside the Ordinary Course of Business, (II) Authorizing the Sale of Assets Free and Clear of All Liens, Claims, Encumbrances and Interests, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [D.I. __] (the "Motion").

The Debtors reserve the right, subject to the exercise of their reasonable business judgment, to modify or terminate these Bid Procedures, to waive terms and conditions set forth herein, to extend any of the deadlines or other dates set forth herein, to adjourn the Auction and/or Sale Hearing, and/or to terminate discussions with any and all prospective bidders at any time and without specifying the reasons therefor, in each case, to the extent not materially inconsistent with these Bid Procedures and/or the Bid Procedures Order.

### Summary of Key Dates

| Key Event | Deadline |
|---|---|
| Deadline for Debtors to File Cure Notice | April 17, 2023 at 4:00 p.m. (ET) |
| Deadline to File Contract Schedule | April 21, 2023 at 4:00 p.m. (ET) |
| Deadline for Debtors to Amend Cure Notice | April 24, 2023 at 4:00 p.m. (ET) |
| Deadline to Submit Bids | May 1, 2023 at 4:00 p.m. (ET) |
| Deadline to Object to Cure Amounts | May 1, 2023 at 4:00 p.m. (ET) |
| Deadline for Debtors to Notify Bidders of Status as Qualified Bidders | May 2, 2023 at 12:00 p.m. (ET) |
| Auction, if necessary, to be conducted at the offices of Foley Hoag LLP, 1301 Avenue of the Americas, 25TH Floor, New York, NY 10019, or by remote audio and/or video link | May 3, 2023 at 10:00 a.m. (ET) |
| Deadline to file notice of (i) Successful Bid and Back-Up Bid and (ii) identity of Successful Bidder and Back-Up Bidder | Within the earlier of (a) five (5) business hours after the close of the Auction or (b) noon the day after the close of the Auction |
| Deadline for Successful Bidder to submit to the Debtors fully executed documentation memorializing the terms of a Successful Bid | Within one (1) day after the Auction |
| Deadline to file objections to Adequate Assurance of Future Performance | May 5, 2023 at 4:00 p.m. (ET) |
| Sale Objection Deadline | May 5, 2023 at 4:00 p.m. (ET) |
| Deadline to Object to Cure Amounts in Amended Cure Notice | Within the earlier of (a) fourteen (14) days after service of notice of adding a contract or lease; or (b) the Sale Hearing |

3

| Sale Hearing | May 8, 2023 at 10:00 a.m. (ET) |
| --- | --- |

**Assets to be Sold**

The Debtors intend to offer substantially all of their assets for Sale. Parties may submit bids for the purchase and sale of any and all of the Debtors' assets, in accordance with the terms and conditions set forth herein.

**Due Diligence**

The Debtors have posted copies of all material documents related to the Debtors' assets to the Debtors' confidential electronic data room (the "Data Room"). To access the Data Room, a party must submit to the Debtors' advisors:

(A)    an executed confidentiality agreement in form and substance reasonably satisfactory to the Debtors (unless such party is already a party to an existing confidentiality agreement with the Debtors that is acceptable to the Debtors for this due diligence process, in which case such agreement shall govern); and

(B)    sufficient information, as reasonably requested by the Debtors, to allow the Debtors to determine that the interested party (i) has the financial wherewithal to consummate a Sale Transaction, and (ii) intends to access the Data Room for a purpose consistent with these Bid Procedures.

An interested party that meets the aforementioned requirements to the satisfaction of the Debtors shall be a "Potential Bidder." As soon as practicable, the Debtors will provide such Potential Bidder access to the Data Room; provided, however, that, such access may be terminated by the Debtors in their reasonable discretion at any time for any reason whatsoever, including that a Potential Bidder does not become a Qualified Bidder, violates these Bid Procedures or these Bid Procedures are terminated.

Each Potential Bidder shall comply with all reasonable requests for information and due diligence access by the Debtors or their advisors regarding the ability of such Potential Bidder to consummate a Sale Transaction.

Until the Bid Deadline, the Debtors will provide any Potential Bidder with reasonable access to the Data Room and any additional information requested by Potential Bidders (subject to any restrictions pursuant to applicable law) that the Debtors believe to be reasonable and appropriate under the circumstances. All additional due diligence requests shall be directed to the Debtors' financial advisor and investment banker, MTS Health Partners, L.P. ("MTS"), Attn: Michael Ludwig (ludwig@mtspartners.com). Unless prohibited by law or otherwise determined by the Debtors, the availability of additional due diligence to a Potential Bidder will cease if (i) the Potential Bidder does not become a Qualified Bidder, (ii) these Bid Procedures are terminated, or (iii) the Potential Bidder breaches any obligations under its confidentiality agreement.

Neither the Debtors nor any of their representatives shall be obligated to furnish any information of any kind whatsoever relating to the Debtors' assets to any person or entity who (i)

4

is not a Potential Bidder, (ii) does not comply with the participation requirements set forth herein, or (iii) in the case of competitively sensitive information, is a competitor of the Debtors.

## Designation of Stalking Horse Bidders

Designation of Stalking Horse Bidders. The Debtors, in consultation with any official committee of unsecured creditors appointed in the Chapter 11 Case (the "Committee"), may designate one or more bidder as bidders with the initial bid (the "Stalking Horse Bidders") and enter into Stalking Horse Agreements with such Stalking Horse Bidders. To the extent the Debtors designate a Stalking Horse Bidder with respect to any of the assets, the Debtors shall promptly upon execution of a Stalking Horse Agreement (and in no event more than one (1) calendar day following such execution) file with the Bankruptcy Court and serve on the Sale Notice Parties,[3] a supplement to the sale motion which includes as an exhibit the executed Stalking Horse Agreement and sets forth (1) the identity of the Stalking Horse Bidder, (2) the amount of the Stalking Horse Bid, (3) whether the Stalking Horse Bidder has any connection to the Debtors other than that which arises from said bid, and (4) quantifies the amount of the Stalking Horse Bid Protections (the "Notice of Stalking Horse Bidder"). The Debtors shall cause the Notice of Stalking Horse Bidder to be published on the website maintained by the Debtors' claims and noticing agent in this Chapter 11 Case, located at Debtors' claims agent's website at https://cases.stretto.com/PearTherapeutics located under the tab labeled "Sale Documents." The Notice of Stalking Horse Bidder shall conspicuously set forth an objection deadline to object to such designation and approval of any bid protections that is no less than five (5) calendar days from the date of service of the Notice of Stalking Horse Bidder.

Stalking Horse Bid Protections. As set forth in the Bid Procedures Order, the Debtors, in consultation with any Committee, may (i) establish initial overbid minimum and subsequent bidding increment requirements; (ii) offer each Stalking Horse Bidder a break-up fee and/or expense reimbursement for the documented and reasonable expenses incurred by a Stalking Horse Bidder in an amount agreed to by the Debtors, in consultation with the Committee, if any (a "Termination Payment"); (iii) provide that, if the Stalking Horse Bidder bids on certain assets at the Auction, the Stalking Horse Bidder will be entitled to a credit in the amount of its Termination Payment against the increased purchase price for the assets; and (iv) provide other appropriate and customary protections to a Stalking Horse Bidder (the Termination Payment and the other bid protection described in this paragraph collectively are referred to as the "Stalking Horse Bid Protections").

---

[3] Sale Notice Parties means: (a) the Office of the United States Trustee for the District of Delaware (Attn: Jane Leamy); (b) counsel to the Committee, if any, or if none is formed, the creditors holding the thirty (30) largest unsecured claims as set forth on the list filed with the Debtors' petitions; (c) all taxing authorities having jurisdiction over any of the Assets subject to the Sale, including the Internal Revenue Service; (d) the Securities Exchange Commission; (e) the Food and Drug Administration; (f) the state/local environmental agencies in the jurisdictions where the Debtors own or lease real property; (g) all of the Debtors' known creditors; (h) all parties that have requested notice pursuant to Bankruptcy Rule 2002 as of the date prior to the date of entry of the Bid Procedures Order; (i) all persons or entities known to the Debtors that have or have asserted a lien on, or security interest in, all or any portion of the Assets (including Perceptive); and (j) any Potential Bidders previously identified or otherwise known to the Debtors.

<u>Objections to Designation of Stalking Horse Bidders</u>. Any objections (each, a "<u>Stalking Horse Objection</u>") to the designation of a Stalking Horse Bidder, including any Stalking Horse Bid Protections pursuant to the terms and provisions of a Stalking Horse Agreement, must (i) be in writing; (ii) state the name and address of the objecting party and the amount and nature of the claim or interest of such party; (iii) state with particularity the basis and nature of any objection; (iv) conform to the Bankruptcy Rules and the Local Rules; and (v) be served upon the Sale Notice Parties within five (5) calendar days after the filing of the relevant Notice of Stalking Horse Bidder. If a timely Stalking Horse Objection is filed and served in accordance with the preceding sentence, the proposed Stalking Horse Bid Protections will not be deemed approved until either the Stalking Horse Objection is resolved by agreement of the objecting party and the Debtors or by order of the Bankruptcy Court.  If no timely Stalking Horse Objection is filed and served with respect to an applicable Stalking Horse Agreement in accordance with the Bid Procedures, the Debtors may file an Order approving the Stalking Horse Bid Protections and the treatment of any Break-Up Fee and Expense Reimbursement as an administrative expense under sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code under certification of counsel without need for a hearing.

For all purposes under the Bid Procedures, any Stalking Horse Bidder approved as such pursuant to these Bid Procedures and the Bid Procedures Order shall be considered a Qualified Bidder, and the applicable Stalking Horse Bid shall be considered a Qualified Bid.  In the event that the applicable Stalking Horse Bid is the only Qualified Bid received by the Debtors in respect of the applicable assets by the Bid Deadline, the Debtors may cancel the Auction.

## Bid Deadline

A Potential Bidder that desires to make a bid on any of the Debtors' assets shall deliver electronic copies of its bid so as to be received no later than **May 1, 2023 at 4:00 p.m. (ET)** (the "<u>Bid Deadline</u>"); provided that, the Debtors may extend the Bid Deadline without further order of the Bankruptcy Court subject to providing notice to all Potential Bidders and any Stalking Horse Bidders.  The submission of a bid by the Bid Deadline shall constitute a binding and irrevocable offer to acquire the assets specified in such bid.  Any party that does not submit a bid by the Bid Deadline will not be allowed to (i) submit any offer after the Bid Deadline or (ii) participate in any Auction.  Bids should be submitted by email to the following representatives of the Debtors:

| | | |
|---|---|---|
| **MTS Health Partners, L.P.** | Michael Ludwig | ludwig@mtspartners.com |
| **Foley Hoag LLP** | Alison D. Bauer | abauer@foleyhoag.com |
| **Gibbons P.C** | Robert K. Malone | rmalone@gibbonslaw.com |

## Form and Content of Qualified Bid

A bid is a signed document from a Potential Bidder received by the Bid Deadline that identifies the purchaser by its legal name and any other party that will be participating in connection with the bid, and includes the material terms of the offer to purchase a portion of or

substantially all of the Debtors' assets (a "Bid").  To constitute a "Qualified Bid" a Bid must include, at a minimum, the following:

(i)     Acquired Assets.  Each Bid must clearly identify, in writing and as applicable, the particular assets the Potential Bidder seeks to acquire from the Debtors, including any contracts and leases of the Debtors that would be assumed and assigned in connection with a proposed Sale Transaction.  For the avoidance of doubt, a Qualified Bid may include a Bid for less than all or substantially all of the Debtors' assets.

(ii)    Purchase Price; Form of Consideration; Cash Requirements; Assumed Liabilities; Credit Bid. Each Bid must clearly set forth, as applicable:

    (A)    Purchase Price. Each Bid must clearly identify the purchase price to be paid (the "Purchase Price"), and whether the Bid is based on an all-cash offer or consists of certain non-cash components, including, without limitation, a Credit Bid (as defined herein) and/or the assumption of liabilities;

    (B)    Cash Requirements. Each Bid must provide sufficient cash consideration for the payment of any applicable Termination Payment in cash in full.  Any Credit Bid must include a cash component sufficient to pay any applicable Termination Payment and all obligations secured by senior liens on the applicable assets;

    (C)    Assumed Liabilities. Each Bid must clearly identify, in writing and as applicable, the particular liabilities, if any, including executory contracts, the Bidder seeks to assume.  For the avoidance of doubt, a Qualified Bid may include a bid for less than all or substantially all of the Debtors' liabilities; and

    (D)    Credit Bid. Persons or entities holding a perfected security interest in the assets specified in the Bid may seek to submit a credit bid (a "Credit Bid"), to the extent permitted by applicable law, including, without limitation, 11 U.S.C. § 363(k).

(iii)   Proposed APA.  Each Bid must include an executed asset purchase agreement (the "Proposed APA") for the assets included in such Bid, together with a redline comparing the Proposed APA to the form APA attached hereto as **Exhibit A**.

(iv)    Unconditional Offer.   A statement that the Bid is formal, binding, and unconditional, is not subject to any further due diligence or financing contingency, and is irrevocable until the Debtors notify the Potential Bidder that such Bid is not a Successful Bid or a Back-Up Bid, or until the first business day after the close of a Sale Transaction.

(v)     Proof of Financial Ability to Perform. Each Bid must contain such financial and other information that allows the Debtors to make a reasonable determination as to

7

the Potential Bidder's financial and other capabilities to consummate a Sale Transaction including, without limitation, such financial and other information setting forth adequate assurance of future performance in satisfaction of the requirements under section 365(f)(2)(B) of the Bankruptcy Code, and the Potential Bidder's willingness to perform under any contracts that are assumed and assigned to such party. Without limiting the foregoing, such information must include current financial statements or similar financial information certified to be true and correct as of the date thereof, proof of financing commitments if needed to consummate the transaction (not subject to, in the Debtors' discretion, any unreasonable conditions), contact information for verification of such information, including any financing sources, and any other information reasonably requested by the Debtors necessary to demonstrate that such Potential Bidder has the ability to consummate a Sale Transaction in a timely manner.

(vi)     Designation of Contracts and Leases.  Each Bid must identify with particularity each and every executory contract and unexpired lease, the assumption and assignment of which is a condition to closing a Sale Transaction; **provided, however**, that the Bid may allow for the Potential Bidder to remove executory contracts and unexpired leases from the list of contracts to be assumed and assigned any time prior to the closing of a Sale Transaction; **provided, further, however**, that to the extent the Debtors identify any additional executory contracts or unexpired leases after the Bid is submitted, the Bid may allow for the Potential Bidder to add such executory contracts and unexpired leases to the list of contracts to be assumed and assigned any time from and after the Bid is submitted.

(vii)    Required Approvals. A statement or evidence (1) of the Potential Bidder's plan and ability to obtain all requisite governmental, regulatory, or other third-party approvals; and (2) that the Bid is reasonably likely to be consummated, if selected as the Successful Bid, within a time frame required by the Bid Procedures Order and otherwise acceptable to the Debtors.

(viii)   Authorization. Each Bid must include evidence of corporate authorization and approval from the Potential Bidder's board of directors (or comparable governing body) with respect to the submission, execution, and delivery of a Bid, participation in the Auction, and closing of the transactions contemplated by the Potential Bidder's Proposed APA in accordance with the terms of the Bid and these Bid Procedures.

(ix)     No Entitlement to Expense Reimbursement or Other Amounts. With the exception of any Stalking Horse Bid, expressly state that the Bid does not entitle the Potential Bidder to any break-up fee, termination fee, expense reimbursement or similar type of payment or reimbursement, and a waiver of any substantial contribution administrative expense claims under section 503(b) of the Bankruptcy Code related to the bidding process.

(x)      Joint Bids. The Debtors may approve joint Bids in their reasonable discretion on a case-by-case basis.

(xi)    <u>Representations and Warranties</u>. Each Bid must include the following representations and warranties:

   (A)    a statement that the Potential Bidder has had an opportunity to conduct any and all due diligence regarding the applicable assets prior to submitting its Bid;

   (B)    a statement that the Potential Bidder has relied solely upon its own independent review, investigation, and/or inspection of any relevant documents and the assets in making its Bid and did not rely on any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express or implied, by operation of law or otherwise, regarding the assets or the completeness of any information provided in connection therewith, except as expressly stated in the representations and warranties contained in the Potential Bidder's Proposed APA ultimately accepted and executed by the Debtors;

   (C)    a statement that the Potential Bidder agrees to serve as Back-Up Bidder, if its Bid is selected as the next highest or next best bid after the Successful Bid with respect to the applicable assets;

   (D)    a statement that the Potential Bidder has not engaged in any collusion with respect to the submission of its Bid; and

   (E)    a statement that the Potential Bidder agrees to be bound by the terms of the Bid Procedures.

(xii)    A Potential Bidder must also accompany its Bid with:

   (A)    a cash deposit in the amount of ten percent (10%) of the Purchase Price (a "<u>Good Faith Deposit</u>"); provided that, a Potential Bidder submitting a Credit Bid will not be required to accompany its Bid with a Good Faith Deposit for any portion of the Purchase Price that is a Credit Bid, but shall be required to provide a good Faith Deposit for any portion of its Bid that is not a Credit Bid;

   (B)    the contact information of the specific person(s) whom the Debtors or their advisors should contact in the event that the Debtors have any questions or wishes to discuss the Bid submitted by the Potential Bidder;

   (C)    a covenant to cooperate with the Debtors to provide pertinent factual information regarding the Potential Bidder's operations reasonably required to analyze issues arising with respect to any applicable regulatory requirements; and

   (D)    if the value of a Bid includes additional non-cash components, a detailed analysis of the value of any additional non-cash component of the Bid and back-up documentation to support such value.

9

**Good Faith Deposit**

A Good Faith Deposit must be deposited, prior to the Bid Deadline, with an escrow agent selected by the Debtors (the "Escrow Agent") pursuant to an escrow agreement to be provided by the Debtors.  To the extent a Qualified Bid is modified before, during, or after the Auction, the Debtors reserve the right to require that such Qualified Bidder adjust its Good Faith Deposit so that it equals ten percent (10%) of the Purchase Price.  If a Qualified Bidder is required to adjust its Good Faith Deposit, its status as a Qualified Bidder shall be suspended pending satisfaction of such adjustment.

**Review of Bids; Designation of Qualified Bids**

The Debtors, in consultation with the Committee, if any, will evaluate Bids that are timely submitted and may engage in negotiations with Potential Bidders who submitted Bids as the Debtors deem appropriate in the exercise of its business judgment, based upon the Debtors' evaluation of the content of each Bid.

A Bid received for assets that is determined by the Debtors (in consultation with the Committee, if any) to meet the requirements set forth herein will be considered a "Qualified Bid" and any bidder that submits a Qualified Bid (including any Stalking Horse Bid) will be considered a "Qualified Bidder."

By no later **May 3, 2023 at 12:00 p.m. (ET)** (the "Qualified Bid Deadline"), the Debtors shall determine, in their reasonable judgment (after consultation with the Committee, if any) which of the Bids received by the Bid Deadline qualify as a Qualified Bid.  The Debtors shall notify each Bidder who submits a Qualified Bid of its status as a Qualified Bidder by the Qualified Bid Deadline.

In evaluating the Bids, the Debtors may take into consideration the following non-binding factors:

1.  the amount of the purchase price and Credit Bid and/or other non-cash consideration, as applicable, set forth in the Bid (provided that for purposes of evaluating competing bids, every dollar of a Credit Bid shall be treated the same as a dollar from a cash or other non-cash Bid, and a Credit Bid shall not be considered inferior to a comparable cash or other non-cash Bid because it is a Credit Bid);

2.  the assets included in or excluded from the Bid, including any executory contracts or leases proposed to be assumed;

3.  the value to be provided to the Debtors under the Bid, including the net economic effect upon the Debtors' estates, taking into account any Stalking Horse Bidder's rights to any Termination Payment;

4.  any benefit to the Debtors' bankruptcy estates from any assumption of liabilities or waiver of liabilities;

10

5.      the transaction structure and execution risk, including conditions to, timing of, and certainty of closing; termination provisions; availability of financing and financial wherewithal to meet all commitments; and required governmental or other approvals;

6.      the impact on employees and employee claims against the Debtors;

7.      the impact on trade creditors; and

8.      any other factor the Debtors may reasonably deem relevant consistent with their fiduciary duties.

The Debtors reserve the right to work with any Potential Bidder in advance of the Auction to cure any deficiencies in a Bid that is not initially deemed a Qualified Bid.  The Debtors may amend or waive the conditions precedent to being a Qualified Bidder at any time, in their reasonable business judgment and in a manner consistent with its fiduciary duties and applicable law (as reasonably determined in good faith by the Debtors in consultation with their legal counsel and in consultation with the Committee, if any).

The Debtors may accept a single Bid or multiple partial Bids for non-overlapping assets such that, if taken together, such multiple partial Bids would otherwise meet the standards for a single Qualified Bid as to any assets or combinations of assets that the Debtors determine to auction (in which event, those multiple bidders shall be treated as a single Qualified Bidder for purposes of the Auction).

Without the written consent of the Debtors, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase the Purchase Price or otherwise improve the terms of the Qualified Bid for the Debtors during the period that such Qualified Bid remains binding as specified herein; provided that, any Qualified Bid may be improved at the Auction as set forth in these Bid Procedures.

The Debtors shall make a determination regarding the following:

(A)      the assets and/or any combination of assets to be auctioned by the Debtors; and

(B)      which Bids have been determined to be Qualified Bids and the applicable assets relating to such Qualified Bids.

### Failure to Receive Qualified Bids For Substantially Similar Assets

If no Qualified Bid (other than the applicable Stalking Horse Bid, if any) is received by the Qualified Bid Deadline, the Debtors will not conduct the Auction, and shall file a notice with the Bankruptcy Court indicating that no Auction will be held.  The Debtors shall also publish such Notice on the website of its claims and noticing agent, https://cases.stretto.com/PearTherapeutics located under the tab labeled "Sale Documents."

11

## Auction Procedures

If the Debtors receive two or more Qualified Bids for substantially the same assets, the Debtors may, in their business judgment, conduct the Auction in person or by remote audio and/or video link on **May 3, 2023 at 10:00 a.m. (ET)** at the offices of Foley Hoag LLP, 1301 Avenue of the Americas, 25th Floor, New York, NY 10019.  Only a Qualified Bidder will be eligible to participate at the Auction, subject to such limitations as the Debtors may impose in good faith.  In addition, professionals and/or other representatives of the Debtors, Committee, and any creditors or equity holders of the Debtors, and a representative for the U.S. Trustee, shall be permitted to attend and observe the Auction.  Each Qualified Bidder shall be required to confirm, both before and after the Auction, that it has not engaged in any collusion with respect to the submission of any bid, the bidding, or the Auction.

The Debtors, in consultation with the Committee, if any, may adopt rules for the Auction at any time that the Debtors reasonably determine to be appropriate to promote a value-maximizing auction.  Any rules developed by the Debtors will provide that all bids in the Auction will be made and received on an open basis, and all other bidders participating in the Auction will be entitled to be present for all bidding with the understanding that the true identity of each bidder placing a bid at the Auction will be fully disclosed to all other bidders participating in the Auction and that all material terms of a bid submitted in response to any successive bids made at the Auction will be disclosed to all other bidders. Each Qualified Bidder will be permitted what the Debtors reasonably determines to be an appropriate amount of time to respond to the previous bid at the Auction. The Auction will be conducted openly and shall be transcribed or recorded.

The Debtors may, in their discretion and in consultation with the Committee, if any, identify the highest or otherwise best Qualified Bid as the successful bid (a "Successful Bid" and the bidder submitting such bid, a "Successful Bidder").  The Debtors may also identify a Qualified Bidder that submitted the next highest or otherwise best Qualified Bid as a back-up bid (a "Back-Up Bid" and the bidder submitting such bid, a "Back-Up Bidder").  A Back-Up Bid shall remain open and irrevocable until the earliest to occur of (i) consummation of a Sale Transaction with the Successful Bidder and (ii) the release of such Back-Up Bid by the Debtors in writing (such date, the "Back-Up Bid Expiration Date").  If a Sale Transaction with a Successful Bidder is terminated prior to the Back-Up Bid Expiration Date, the Back-Up Bidder shall be deemed a Successful Bidder and shall be obligated to consummate the Back-Up Bid as if it were a Successful Bid. Provided, however, that the Debtors are not required to accept any bid or designate a Successful Bidder or Back-Up Bidder.

Within one day after the Auction, a Successful Bidder shall submit to the Debtors fully executed documentation memorializing the terms of a Successful Bid.  A Successful Bid may not be assigned to any party without the consent of the Debtors.

At any time before entry of an order approving an applicable Sale Transaction envisioned by a Qualified Bid, the Debtors reserve the right to and may reject such Qualified Bid if such Qualified Bid, in the Debtors' judgment (after consultation with the Committee, if any), is: (i) inadequate or insufficient; (ii) not in conformity with the requirements of the Bankruptcy Code, these Bid Procedures, or the terms and conditions of the applicable Sale Transaction; or (iii) contrary to the best interests of the Debtors and their estates.

**Post-Auction Process**

Within the earlier of (a) five (5) business hours after the close of the Auction or (b) noon the day after the close of the Auction, the Debtors shall file with the Bankruptcy Court a notice of a Successful Bid, Successful Bidder, Back-Up Bid, and Back-Up Bidder. Unless otherwise required pursuant to the Debtors' fiduciary duties, the Debtors shall not consider any bids submitted after the conclusion of the Auction.

Within seven (7) days after the Auction, the Debtors shall direct the Escrow Agent to return the deposit of any bidder, who is not declared a Successful Bidder or Back-Up Bidder. Within five (5) days after the Back-Up Bid Expiration Date, the Debtors shall direct the Escrow Agent to return the deposit of a Back-Up Bidder. Upon the authorized return of any such deposit, the bid of such Potential Bidder, Qualified Bidder or Back-Up Bidder, as applicable, shall be deemed revoked and no longer enforceable.

A Successful Bidder's deposit shall be applied against the cash portion of the purchase price of such bidder's Successful Bid upon the consummation of a Sale Transaction.

In addition to the foregoing, the deposit of a Qualified Bidder will be forfeited to the Debtors if (i) the Qualified Bidder attempts to modify, amend, or withdraw its Qualified Bid, except as permitted herein, during the time the Qualified Bid remains binding and irrevocable or (ii) the Qualified Bidder is selected as a Successful Bidder or Back-Up Bidder and the Qualified Bidder refuses or fails to enter into the required definitive documentation or to consummate a Sale Transaction according to these Bid Procedures.

**Notices Regarding Assumption and Assignment**

The Debtors shall provide all notices regarding the proposed assumption and assignment of contracts and leases in accordance with the Assumption and Assignment Procedures included in the Bid Procedures Order.

**Sale Hearing**

If the Debtors elect to proceed with a Sale Transaction, the Debtors will seek the entry of an order authorizing and approving the Sale Transaction at a hearing before the Bankruptcy Court on **May 8, 2023 at 10:00 a.m. (ET)** (the "Sale Hearing"). The Debtors, in the exercise of their business judgment, may adjourn the Sale Hearing without notice or with limited and shortened notice to parties, including by (i) an announcement of such adjournment at the Sale Hearing or at the Auction and (ii) the filing of a notice of adjournment with the Bankruptcy Court.

Objections to a Sale Transaction, including any objection to the sale of the Debtors' assets free and clear of liens, claims, encumbrances, and other interests pursuant to section 363(f) of the Bankruptcy Code and the conduct of the Auction (if any) (each, a "Sale Objection"), shall (i) be in writing; (ii) state the name and address of the objecting party and the amount and nature of the Claim or Interest of such party; (iii) state with particularity the basis and nature of any objection, and provide proposed language that, if accepted and incorporated by the Debtors, would obviate such objection; (iv) conform to the Bankruptcy Rules and the Local Rules; (v) be filed with the

13

Court; and (vi) be served upon the Sale Notice Parties (as defined in the in the Bid Procedures Order) by **May 5, 2023 at 4:00 p.m. (ET)** (the "Sale Objection Deadline"); provided that, the Debtors may extend the Sale Objection Deadline, as the Debtors deem appropriate in the exercise of their reasonable business judgment. If a timely Sale Objection cannot otherwise be resolved by the parties, such objection shall be heard by the Court at the Sale Hearing.

A Successful Bidder shall appear at the Sale Hearing and be prepared to have a representative(s) testify in support of the Successful Bid and such Successful Bidder's ability to close in a timely manner and provide adequate assurance of its future performance under any and all executory contracts and unexpired leases to be assumed and/or assigned as part of the proposed transaction.

Any party who fails to file with the Court and serve on the Sale Notice Parties a Sale Objection by the Sale Objection Deadline may be forever barred from asserting, at the Sale Hearing or thereafter, any Sale Objection to the relief requested in the Motion with regard to a Successful Bidder, or to the consummation and performance of a Sale Transaction, contemplated by an asset purchase agreement between the Debtors and a Successful Bidder, including the transfer of assets to a Successful Bidder, free and clear of all liens, claims, encumbrances, and other interests pursuant to section 363(f) of the Bankruptcy Code.  Failure to object shall constitute consent for the purposes of section 363(f)(2) of the Bankruptcy Code.

## Consent to Jurisdiction and Authority as Condition to Bidding

All bidders that participate in the bidding process shall be deemed to have (i) consented to the core jurisdiction of the Bankruptcy Court to enter any order or orders, which shall be binding in all respects, in any way related to these Bid Procedures, the bid process, the Auction, the Sale Hearing, or the construction and enforcement of any agreement or any other document relating to an applicable Sale Transaction; (ii) waived any right to a jury trial in connection with any disputes relating to these Bid Procedures, the bid process, the Auction, the Sale Hearing, or the construction and enforcement of any agreement or any other document relating to a Sale Transaction; and (iii) consented to the entry of a final order or judgment in any way related to these Bid Procedures, the bid process, the Auction, the Sale Hearing, or the construction and enforcement of any agreement or any other document relating to an applicable Sale Transaction if it is determined that the Bankruptcy Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

## Reservation of Rights

The Debtors reserve the right to, in their reasonable business judgment, in a manner consistent with its fiduciary duties and applicable law, and in consultation with the Committee, if any, to modify these Bid Procedures; waive terms and conditions set forth herein with respect to all Potential Bidders; extend the deadlines set forth herein; announce at the Auction modified or additional procedures for conducting the Auction; alter the assumptions set forth herein; and provide reasonable accommodations to any Stalking Horse Bidder with respect to such terms, conditions, and deadlines of the bidding and auction process to promote further bids on any assets, in each case, to the extent not materially inconsistent with these Bid Procedures and the Bid

Procedures Order. The Debtors shall not be obligated to consummate or pursue any transaction with respect to any asset.

## EXHIBIT A

**(Form APA)**

**ASSET PURCHASE AGREEMENT**

**BY AND BETWEEN**

**[PURCHASER],**

**as Purchaser,**

**and**

**PEAR THERAPEUTICS (US), INC., and**

**PEAR THERAPEUTICS, INC.**

**as Seller**

**Dated as of [●], 2023**

*THIS DOCUMENT DOES NOT INDICATE ANY DECISION TO SELL ASSETS IN THE MANNER DESCRIBED HEREIN. THIS DOCUMENT IS NOT INTENDED TO CREATE, NOR WILL IT BE DEEMED TO CREATE, A LEGALLY BINDING OR ENFORCEABLE OFFER, ACCEPTANCE OF AN OFFER OR AGREEMENT OF ANY TYPE OR NATURE, UNLESS AND UNTIL AGREED TO AND EXECUTED BY ALL PARTIES.*

# TABLE OF CONTENTS

Page

ARTICLE I DEFINITIONS AND EFFECTIVENESS .................................................................1

    1.1    Certain Definitions. .............................................................................................1

ARTICLE II ACQUISITION AND TRANSFER OF ASSETS; ASSUMPTION OF LIABILITIES .................................................................................................................13

    2.1    Transfer of Assets. ............................................................................................13

    2.2    Excluded Assets. ..............................................................................................13

    2.3    Assumed Liabilities. .........................................................................................13

    2.4    Excluded Liabilities. .........................................................................................13

    2.5    Assumed Executory Contracts. .........................................................................13

    2.6    Waiver and Release of Acquired Avoidance Actions .......................................14

    2.7    Liens Attach to Sale Proceeds ..........................................................................14

ARTICLE III CONSIDERATION ............................................................................................14

    3.1    Consideration. ...................................................................................................14

    3.2    Payment of Purchase Price at Closing. .............................................................14

    3.3    Assumed Liabilities. .........................................................................................14

    3.4    Deposit. .............................................................................................................14

    3.5    Allocation of Consideration. .............................................................................15

ARTICLE IV CLOSING AND TERMINATION .....................................................................15

    4.1    Closing. .............................................................................................................15

    4.2    Conveyances at Closing. ...................................................................................15

    4.3    Additional Deliveries. .......................................................................................16

    4.4    Transaction Expenses ........................................................................................16

    4.5    Prorations. .........................................................................................................16

    4.6    Termination of Agreement ................................................................................17

    4.7    Procedure Upon Termination ............................................................................18

    4.8    Effect of Termination ........................................................................................18

ARTICLE V REPRESENTATIONS AND WARRANTIES OF SELLER .................................19

    5.1    Organization and Power ....................................................................................19

    5.2    Corporate Authorization. ...................................................................................19

    5.3    Binding Effect. ..................................................................................................19

i

5.4      Ownership of Acquired Assets. ...................................................................19

5.5      Intellectual Property. ..................................................................................19

5.6      Litigation. ...................................................................................................20

5.7      Permits; Regulatory Matters. .....................................................................20

5.8      Finders' Fees. .............................................................................................21

5.9      No Other Representations or Warranties. ...................................................21

ARTICLE VI REPRESENTATIONS AND WARRANTIES OF PURCHASER ......................21

6.1      Organization and Power..............................................................................21

6.2      Authorization. .............................................................................................21

6.3      Binding Effect. ............................................................................................21

6.4      Funding. ......................................................................................................22

6.5      Adequate Assurances Regarding Assumed Executory Contracts.................22

6.6      Finders' Fees. .............................................................................................22

6.7      Good Faith Purchaser..................................................................................22

6.8      Purchaser Experience..................................................................................22

6.9      Non-Reliance on Seller Estimates, Projections, Forecasts, Forward-Looking
         Statements and Business Plans. ..................................................................23

6.10     Privacy and Security Laws; Health Care Laws.............................................23

ARTICLE VII CERTAIN COVENANTS.................................................................24

7.1      Bankruptcy Sale Process.............................................................................24

7.2      Stalking Horse Provisions............................................................................25

7.3      Pre-Closing Operating Covenants of Seller.................................................26

7.4      Access to Information. ................................................................................28

7.5      Reasonable Efforts; Further Assurances of Each Party. ..............................28

7.6      Regulatory Affairs. .....................................................................................29

ARTICLE VIII CONDITIONS TO CLOSING..........................................................29

8.1      Conditions Precedent to the Obligations of Seller and Purchaser. ..............29

8.2      Conditions Precedent to the Obligations of Seller......................................30

8.3      Conditions Precedent to the Obligations of Purchaser. ...............................30

ARTICLE IX MISCELLANEOUS .........................................................................30

9.1      Taxes...........................................................................................................30

9.2      Releases......................................................................................................31

9.3      Survival. ......................................................................................................31

ii

9.4      Injunctive Relief..................................................................................................31

9.5      Entire Agreement; Amendments and Waivers. ..........................................................31

9.6      Counterparts; Electronic Signatures. .......................................................................32

9.7      Governing Law. ..................................................................................................32

9.8      Waiver of Jury Trial..............................................................................................32

9.9      Notices. ...............................................................................................................32

9.10     Binding Effect; Assignment...................................................................................33

9.11     Third Party Beneficiaries. .....................................................................................33

9.12     Publicity. ............................................................................................................33

9.13     Severability. ........................................................................................................33

9.14     Non-Recourse. .....................................................................................................34

9.15     Time of the Essence. ............................................................................................34

9.16     Miscellaneous. .....................................................................................................34

**EXHIBITS**

Exhibit A        Acquired Assets
Exhibit B        Assumed Executory Contracts
Exhibit C        Assumed Liabilities
Exhibit D        Excluded Assets
Exhibit E        Bill of Sale
Exhibit F        Form of Assignment and Assumption Agreement
Exhibit G        Form of Intellectual Property Assignment Agreement
[Exhibit H       Form of Transition Services Agreement]

**SCHEDULES**

Schedule 4.5   Prorations Exceptions

iii

## ASSET PURCHASE AGREEMENT

This **ASSET PURCHASE AGREEMENT** (this "Agreement"), dated as of [●], 2023, is made and entered into by and among [PURCHASER], a [jurisdiction of organization] [type of entity] ("Purchaser"), and PEAR THERAPEUTICS (US), INC., a Delaware corporation ("Pear Therapeutics (US)") and PEAR THERAPEUTICS INC., a Delaware corporation which owns 100% of the issued and outstanding capital stock of Pear Therapeutics US ("Parent"; Parent together with Pear Therapeutics (US), the "Seller"). Certain capitalized terms used herein are defined in Article I.

## RECITALS

WHEREAS, Seller is a commercial-stage healthcare company developing and commercializing FDA-authorized software products to treat disease (the "Business");

WHEREAS, on April 7, 2023 (the "Petition Date"), Parent and Pear Therapeutics (US) each commenced a case (the "Chapter 11 Case") under chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 101 et seq., as amended (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court");

WHEREAS, Purchaser desires to acquire certain assets of Seller identified herein, and Seller desires to sell, convey, assign, and transfer to Purchaser such assets, pursuant to the terms and conditions of this Agreement;[1]

WHEREAS, it is intended that the Acquired Assets (defined below) will be sold and purchased pursuant to the terms of this Agreement in a sale authorized by the Bankruptcy Court pursuant to section 363 of the Bankruptcy Code; and

WHEREAS, in connection with such a sale, it is intended that the Bankruptcy Court shall approve the assumption and assignment of certain Executory Contracts (defined below) under section 365 of the Bankruptcy Code.

NOW, THEREFORE, in consideration of the foregoing and the mutual representations, warranties, covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, Purchaser and Seller hereby agree as follows:

## ARTICLE I

## DEFINITIONS AND EFFECTIVENESS

1.1     Certain Definitions. For purposes of this Agreement, the following terms used in this Agreement shall have the respective meanings assigned to them below:

---

[1] NTD: Purchaser may decide to offer employment to employees and correlating provisions will be included in the APA in such case.

1

(a)      "<u>Accounts Receivable</u>" means (i) any and all accounts receivable, trade accounts and other amounts (including overdue accounts receivable, refunds, rebates, and other credits) owed to Seller relating to, or arising in connection with the operation and conduct of, the Business prior to the Closing and any other similar rights of Seller to payment from third parties arising prior to the Closing and the full benefit of all security for such accounts or rights to payment; (ii) all other accounts or notes receivable of Seller as of the Closing and the full benefit of all security for such accounts or notes receivable; and (iii) any and all claims, remedies or other rights relating to any of the foregoing, together with any interest or unpaid financing charges accrued thereon, in each case that have not been satisfied or discharged prior to the close of business on the day immediately preceding the Closing or have not been written off or sent to collection prior to the close of business on the day immediately preceding the Closing (it being understood that the receipt of a check prior to the close of business on the day immediately preceding the Closing Date shall constitute satisfaction or discharge of the applicable account or note receivable to the extent of the payment represented thereby).

(b)      "<u>Acquired Assets</u>" means the assets set forth on <u>Exhibit A</u> hereto.

(c)      "<u>Acquired Avoidance Actions</u>" means any and all Avoidance Actions against any vendor, customer, or other counterparty of the Business, including without limitation the Persons listed on <u>Annex A-[●]</u> to <u>Exhibit A</u>.

(d)      "<u>Affiliate</u>" means, with respect to any Person, any other Person that, directly or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, such Person, and the term "<u>control</u>" (including the terms "controlled by" and "under common control with") means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such Person, whether through ownership of voting securities, by Contract or otherwise.

(e)      "<u>Alternative Transaction</u>" means a sale, transfer or other disposition of all or any substantial portion of the Acquired Assets to any Person or Persons other than Purchaser, in any transaction or series of transactions.

(f)      "<u>Assumed Executory Contracts</u>" means the Executory Contracts to be assumed and assigned to Purchaser pursuant to section 365 of the Bankruptcy Code in accordance with the Bidding Procedures, as set forth on <u>Exhibit B</u> hereto.

(g)      "<u>Applicable Health Care Laws</u>" all applicable Laws relating to the operation of a business in the health care industry including, but not limited to: (i) all federal and state fraud and abuse that relate to health care, including the federal Anti-Kickback Statute (42 U.S.C. §1320a-7b), the Stark Law (42 U.S.C. §1395nn), the civil False Claims Act (31 U.S.C. §3729 et seq.), the Program Fraud Civil Remedies Act (31 U.S.C. §§3801-3812), the Civil Monetary Penalties Law (42 U.S.C. 1320a-7a and 1320a-7b), the Exclusion Laws (42 U.S.C. §1320a-7), 42 U.S.C. §1320a-7k(d); (ii) TRICARE; (iii) HIPAA; (iv) Medicare, including Medicare Advantage and Part D; (v) Medicaid; (vi) the Patient Protection and Affordable Care Act (P.L. 111-148); (vii) the Health Care and Education Reconciliation Act of 2010 (P.L.111-152); (viii) the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§

2

301-392 (Suppl. 5 1934); and (ix) rules and regulation applicable to Federal Healthcare Programs, including the rules related to "Interoperability" as published in the Federal Register at 85 Fed. Reg. 25,510 (May 1, 2020) and 85 Fed. Reg. 25,642 (May 1, 2020).

(h)      "Applicable Privacy and Security Laws" means all applicable Laws and guidance issued by a Governmental Body concerning the privacy or security of Personal Information or other confidential data, and all regulations promulgated and guidance issued by Governmental Bodies thereunder, including HIPAA.

(i)      "Assumed Liabilities" means only those liabilities expressly set forth on Exhibit C hereto.

(j)      "Auction" shall have the meaning set forth in the Bidding Procedures.

(k)      "Avoidance Action" means any and all claims, rights and causes of action of Seller arising under the Bankruptcy Code or similar federal, state or local laws, including under chapter 5 of the Bankruptcy Code and similar state laws.

(l)      "Backup Bidder" shall have the meaning set forth in the Bidding Procedures.

(m)      "Bankruptcy Code" has the meaning set forth in the Recitals.

(n)      "Bankruptcy Court" has the meaning set forth in the Recitals.

(o)      "Bankruptcy Matters" means (a) the amount, extent, or type of Cash and Cash Equivalents of Seller or any other Excluded Assets, or any Excluded Liabilities; (b) any failure, in and of itself, of Seller to meet any projections, budgets, plans or forecasts of revenues, earnings or other financial performance measures or operating statistics filed with the Bankruptcy Court; or (c) the announcement, commencement, or continuation of the Chapter 11 Case or any action approved by the Bankruptcy Court in the Chapter 11 Case.

(p)      "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure.

(q)      "Bidding Procedures" means the procedures governing the submission, evaluation and qualification of competing bids for the Acquired Assets, and the auction among qualified bidders for the purchase of the Acquired Assets, as described in the Bidding Procedures Order.

(r)      "Bidding Procedures Motion" means a motion filed by Seller, reasonably satisfactory in form and substance to Seller and Purchaser, seeking approval of (i) the sale process described in the Sale Motion and the Bidding Procedures, and (ii) the Stalking Horse Provisions.

(s)      "Bidding Procedures Order" means an Order of the Bankruptcy Court, reasonably satisfactory in form and substance to Seller and Purchaser, approving the sale

FH11331713.12

process described in the Sale Motion and the Bidding Procedures, including, without limitation, the Stalking Horse Provisions.

(t)    "Boston Lease" means the lease of the premises located at 200 State Street, 13th Floor, Boston, Massachusetts 02109.

(u)    "Boston Sublease" means the sublease of 7,218 square feet of the premises leased under the Boston Lease.

(v)    "Break-Up Fee" shall have the meaning set forth in Section 7.2.

(w)    "Business" has the meaning set forth in the Recitals.

(x)    "Business Day" means any day other than a Saturday, Sunday or a legal holiday on which banking institutions in the State of Delaware are not required to open.

(y)    "Cash and Cash Equivalents" means all of Seller's cash (including petty cash but excluding any checks that remain uncashed or uncleared prior to the close of business on the Closing Date), checking account balances, marketable securities, certificates of deposits, time deposits, bankers' acceptances, commercial paper and government securities and other cash equivalents.

(z)    "Cash Purchase Price" means an amount in cash equal to $[●], subject to adjustment as provided in Section 3.2 and Section 4.5.

(aa)    "Chapter 11 Case" has the meaning set forth in the Recitals.

(bb)    "Claim" has the meaning set forth in section 101(5) of the Bankruptcy Code.

(cc)    "Contract" means any written or oral contract, lease, purchase order, service order, sales order, or instrument or other agreement, arrangement or commitment that is binding upon a Person or its property, and any amendments, modifications or supplements thereto.

(dd)    "Copyright" means all copyrights, including copyrights in software and in the content contained on any Web site, artwork (including editable jpeg images), packaging material, patient information leaflets, promotional material, advertising material, and those which are registered, applied for registration or used, whether registrable or not, by Seller, and rights to sue for past infringement thereof.

(ee)    "Cure Costs" means, for any Assumed Executory Contract, the amount required to be paid under section 365 of the Bankruptcy Code to effectuate the assumption and assignment of such Assumed Executory Contract by Seller to Purchaser (giving effect to any mutual agreement with the contract counterparty to such Assumed Executory Contract).

4

(ff)    "Deposit" means the good-faith deposit in the amount of $[●].[2]

(gg)    "Deposit Escrow Agent" means the Person serving from time to time as escrow agent under the Escrow Agreement.

(hh)    "Deposit Escrow Agreement" means the escrow agreement being entered into by Seller and Purchaser or their representatives as of the date of this Agreement, reasonably satisfactory in form and substance to Seller and Purchaser, pursuant to which the Deposit Escrow Agent will hold the Deposit.

(ii)    "Documents" means all of Seller's written files, documents, instruments, papers, books, reports, records, tapes, microfilms, photographs, letters, budgets, forecasts, plans, operating records, safety and environmental reports, data, studies and documents, ledgers, journals, title policies, customer lists, regulatory filings, operating data and plans, research material, technical documentation (design specifications, engineering information, test results, maintenance schedules, functional requirements, operating instructions, logic manuals, processes, flow charts, etc.), user documentation (installation guides, user manuals, training materials, release notes, working papers, etc.), marketing documentation (sales brochures, flyers, pamphlets, web pages, etc.), and other similar materials related to, used in, or held for use in connection with any of the Acquired Assets, in each case whether or not in electronic form.

(jj)    "Encumbrance" means any lien, interest, encumbrance, Claim, right, demand, charge, mortgage, deed of trust, option, pledge, security interest or similar interest, title defect, hypothecation, easement, right of way, restrictive covenant, condition, restriction, encroachment, rights of first refusal, preemptive right, judgment, conditional sale or other title retention agreements and other imposition, imperfection or defect of title or restriction on transfer or use of any nature whatsoever, whether secured or unsecured, choate or inchoate, filed or untiled, scheduled or unscheduled, recorded or unrecorded, contingent or non-contingent, material or non-material, known or unknown; provided, however that the term "Encumbrance" does not include the Assumed Liabilities.

(kk)    "Excluded Assets" means those assets and properties of Seller that are not Acquired Assets including, without limitation, the assets set forth on Exhibit D hereto.

(ll)    "Excluded Liabilities" means those Encumbrances or Liabilities of Seller or related to the Acquired Assets or any other assets of Seller, whether actual or contingent, accrued or unaccrued, matured or unmatured, liquidated or unliquidated, or known or unknown, that are not the Assumed Liabilities set forth on Exhibit C hereto.

(mm)    "Executory Contracts" means all executory contracts (including licenses) and unexpired leases in effect as of the date hereof to which Seller is a party.

(nn)    "Expense Reimbursement" shall have the meaning set forth in Section 7.2.

---

[2] NTD: This amount should be 10% of the value of the purchase price.

5

(oo)    "FDA" means the United States Food and Drug Administration.

(pp)    "Federal Health Care Program" shall have the meaning set forth in 42 U.S.C. § 1320a-7b(f).

(qq)    "Final Order" means an Order or judgment of the Bankruptcy Court or any other court of competent jurisdiction entered by the Clerk of the Bankruptcy Court or such other court on the docket in Seller's Chapter 11 Case or the docket of such other court, which has not been modified, amended, reversed, vacated or stayed and as to which (a) the time to appeal, petition for certiorari, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for *certiorari* or motion for new trial, reargument or rehearing shall then be pending or (b) if an appeal, writ of *certiorari*, new trial, reargument or rehearing thereof has been sought, such Order or judgment of the Bankruptcy Court or other court of competent jurisdiction shall have been affirmed by the highest court to which such Order was appealed, or certiorari shall have been denied, or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such Order, and the time to take any further appeal, petition for certiorari or move for a new trial, reargument or rehearing shall have expired, as a result of which such Order shall have become final in accordance with Rule 8002 of the Bankruptcy Rules; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such Order, shall not cause such Order not to be a Final Order.

(rr)    "Final Sale Notice" means a notice distributed in accordance with the Bidding Procedures regarding the transactions contemplated by this Agreement and the Sale Order.

(ss)    "GAAP" means United States generally accepted accounting principles.

(tt)    "Governmental Body" means any government, quasi-governmental entity, or other governmental or regulatory body, agency or political subdivision thereof of any nature, whether foreign, federal, state, provincial or local, or any ministry agency, branch, department, official, entity, instrumentality or authority thereof, or any court or arbitrator (public or private) or any judicial, quasi-judicial or administrative body, or any regulatory body of applicable jurisdiction.

(uu)    "HIPAA" means the Health Insurance Portability and Accountability Act of 1996 and administrative simplification rules promulgated thereunder at 45 CFR Parts 160, 162, and 164, as amended.

(vv)    "Initial Notice of Proposed Assumed Executory Contracts" means a notice filed by Seller with the Bankruptcy Court in accordance with the Bidding Procedures identifying the Executory Contracts Purchaser intends, as of the date of such notice, to assume as of the Closing Date.

(ww)    "Intellectual Property" means all of the following anywhere in the world and all legal rights, title or interest in the following arising under Law: (i) all Patents and

6

applications for Patents and all related reissues, reexaminations, divisions, renewals, extensions, provisionals, continuations and continuations-in-part, including any future applications or filings of the foregoing; (ii) all Copyrights, Copyright registrations and Copyright applications, copyrightable works and all other corresponding rights; (iii) all mask works, mask work registrations and mask work applications and all other corresponding rights; (iv) all advertising material, trade dress and trade names, logos, Internet addresses and domain names, Trademarks and service marks and related registrations and applications, including any intent to use applications, supplemental registrations and any renewals or extensions, all other indicia of commercial source or origin and all goodwill associated with any of the foregoing; (v) all inventions (whether patentable or unpatentable and whether or not reduced to practice), know how, technology, technical data, trade secrets, confidential business information, manufacturing and production processes and techniques, research and development information, clinical trial data and information, safety data and pharmacovigilance data, financial, marketing and business data, pricing and cost information, business and marketing plans, advertising and promotional materials, customer, distributor, reseller and supplier lists and information, correspondence, records, and other documentation, and other proprietary information of every kind; (vi) all computer software (including source and object code), firmware, development tools, algorithms, files, records, technical drawings and related documentation, data and manuals; (vii) all databases and data collections; (viii) all licenses and permits to the extent transferable; (ix) all rights pertaining to the foregoing, including those arising under international treaties and convention rights, (x) all rights and powers to assert, defend and recover title to any of the foregoing, (xi) all rights to assert, defend, sue, and recover damages for any past, present and future infringement, misuse, misappropriation, impairment, unauthorized use or other violation of any rights in or to any of the foregoing, (xii) all proceeds, income, royalties, damages and payments now and/or hereafter due and payable under and/or in respect of all of the foregoing (including with respect to past, present or future infringement or violation thereof), (xiii) all administrative rights arising from the foregoing, including the right to prosecute applications and oppose, interfere with or challenge the applications of others, the rights to obtain renewals, continuations, divisions, and extensions of legal protection pertaining to any of the foregoing, and (xiv) all other intellectual property rights irrespective of not being registered or applied for registration.

(xx)    "Laws" (and each, a "Law") means all federal, state, provincial, local or foreign laws, statutes, common law, rules, codes, regulations, restrictions, ordinances, Orders, decrees, approvals, directives, judgments, rulings, injunctions, writs and awards of, or issued, promulgated, enforced or entered by, any and all Governmental Bodies, or court of competent jurisdiction, or other legal requirement or rule of law, including common law.

(yy)    "Legal Proceeding" means any judicial, administrative or arbitral actions, suits, proceedings (public or private) or claims or any proceedings by or before a Governmental Body.

(zz)    "Liability" means, as to any Person, any debt, adverse claim, liability, duty, responsibility, obligation, commitment, assessment, cost, expense, loss, expenditure,

7

charge, fee, penalty, fine, contribution or premium of any kind or nature whatsoever of such Person, whether known or unknown, asserted or unasserted, absolute or contingent, direct or indirect, accrued or unaccrued, liquidated or unliquidated, or due or to become due, including all costs and expenses relating thereto.

(aaa)    "Material Adverse Effect" means any means any effect that is materially adverse to the value of the Acquired Assets; provided, however, that (x) any decrease in value of the Acquired Assets that is less than twenty-five percent (25%) shall not be deemed material for purposes of this definition, and (y) no effect (by itself or when aggregated or taken together with any and all other effects) directly or indirectly resulting from, arising out of, attributable to, or related to any of the following shall be deemed to be or constitute a "Material Adverse Effect," and no effect (by itself or when aggregated or taken together with any and all other such effects) directly or indirectly resulting from, arising out of, attributable to, or related to any of the following shall be taken into account when determining whether a "Material Adverse Effect" has occurred or may, would or could occur: (a) general economic conditions (or changes in such conditions) in the United States or any other country or region in the world, or conditions in the global economy generally; (b) conditions (or changes in such conditions) in the securities markets, credit markets, currency markets or other financial markets in the United States or any other country or region in the world, including (i) changes in interest rates in the United States or any other country or region in the world and changes in exchange rates for the currencies of any countries and (ii) any suspension of trading in securities (whether equity, debt, derivative or hybrid securities) generally on any securities exchange or over-the-counter market operating in the United States or any other country or region in the world; (c) conditions (or changes in such conditions) in the industries in which Seller conducts business; (d) political conditions (or changes in such conditions) in the United States or any other country or region in the world or armed conflict, acts of war, sabotage or terrorism (including any escalation or general worsening of any such armed conflict, acts of war, sabotage or terrorism) in the United States or any other country or region in the world; (e) earthquakes, hurricanes, tsunamis, tornadoes, floods, mudslides, wild fires or other natural disasters, weather conditions and other force majeure events in the United States or any other country or region in the world; (f) any global or national health concern, epidemic, disease outbreak, pandemic (whether or not declared as such by any Governmental Body and including the "Coronavirus" or "COVID-19") or any Law issued by a Governmental Body requiring business closures, quarantine or "sheltering-in-place" or similar restrictions that arise out of such health concern, epidemic, disease outbreak or pandemic (including the "Coronavirus" or "COVID-19") or any change in such Law following the date of this Agreement; (g) the announcement of this Agreement or the pendency or consummation of the transactions contemplated thereby, including (i) the identity of Purchaser, (ii) the loss or departure of officers or other employees of Seller, (iii) the termination or potential termination of (or the failure or potential failure to renew or enter into) any contracts with suppliers, distributors or other business partners, whether as a direct or indirect result of the loss or departure of officers or employees of Seller or otherwise, and (iv) any other negative development (or potential negative development) in the relationships of Seller with any of its suppliers, distributors or other business partners; (h) any actions taken or failure to take action, in each case, to which Purchaser has

8

approved, consented to or requested; or compliance with the terms of, or the taking of any action required or contemplated by, this Agreement; or the failure to take any action prohibited by this Agreement; (i) changes or developments in law or other legal or regulatory conditions (including rules, regulations, administrative policies, actions, requests, recommendations, determinations, statements, positions, and decisions of the FDA), or the interpretation thereof, or changes in GAAP or other accounting standards (or the interpretation thereof), or that result from any action taken for the purpose of complying with any of the foregoing; (j) any product or product candidate of Seller, including any change, event, circumstance or development relating to the potential or actual use or sale of any such product or product candidate, the suspension, recall, rejection, refusal of, request to refile or any delay in obtaining or making any regulatory application or filing relating to any such product or product candidate or any clinical trial in respect thereof, any other negative actions, requests, recommendations, determinations, statements, positions, or decisions of the FDA or any other Governmental Body relating to any such product or product candidate or any clinical trial in respect thereof, any other competitive or regulatory development affecting any such product or product candidate, or the failure to conduct successful clinical trials on a timely basis for any such product candidate; (l) any product or product candidate of any Person (other than Seller), including the entry into the market of any product potentially or actually competitive with any product or product candidate of Seller; (l) any clinical trials or studies undertaken by any Person and any date resulting therefrom or other results thereof, and any negative publicity or unfavorable media attention resulting therefrom; (m) any fees or expenses incurred in connection with the transactions contemplated by this Agreement; (n) changes in Seller's stock price or the trading volume of Seller's stock, or any failure by Seller to meet any public estimates or expectations of Seller's revenue, earnings or other financial performance or results of operations for any period, or any failure by Seller to meet any internal budgets, plans or forecasts of its revenues, earnings or other financial performance or results of operations (but not, in each case, the underlying cause of such changes or failures, unless such changes or failures would otherwise be excepted from this definition), or any cessation, suspension, or other limitation on the listing or trading of Seller's stock; (o) any legal proceedings made or brought by any of the current or former stockholders of Seller (on their own behalf or on behalf of Seller) against Seller, Purchaser, or any of their directors or officers, including legal proceedings arising out of or in connection with any other transactions contemplated by or this Agreement; or (p) any Bankruptcy Matters.

(bbb)  "Order" means any order, writ, judgment, injunction, decree, stipulation, determination, decision, verdict, ruling, subpoena, or award entered by or with any Governmental Body (whether temporary, preliminary or permanent).

(ccc)  "Overbid Protection" shall have the meaning set forth in Section 7.2(a) of this Agreement.

(ddd)  "Patents" means all patents and industrial designs, including any continuations, divisionals, continuations-in-part, renewals, reissues and applications for any of the foregoing, and rights to pursue future applications and filings for any of the foregoing and to rights to sue for past infringement thereof.

9

(eee) "Permits" means all licenses, permits (including environmental, construction and operation permits), provider numbers, franchises, certificates, approvals, consents, waivers, clearances, exemptions, classifications, registrations, orders and other similar documents and authorizations issued by any Governmental Body and/or any self-regulatory body or organization to or for the benefit of Seller and used, or held for use, in connection with the operation of the Business or applicable to ownership of the Acquired Assets or assumption of the Assumed Liabilities.

(fff) "Person" means an individual, corporation, partnership, limited liability company, unlimited liability company, joint venture, association, trust, unincorporated organization, labor union, estate, Governmental Body or other entity or group.

(ggg) "Personal Information" means any information that identifies, or in combination with other information may identify, an individual, including name, address, telephone number, health information, social security number, driver's license number, government-issued identification number, financial account number or log-in information.

(hhh) "Petition Date" has the meaning set forth in the Recitals.

(iii) "Product" means any product, product line, service, device, system, component, hardware, software or any combination of the foregoing, which is made, used, imported, exported, distributed, sold offered for sale, or developed using Seller Owned Intellectual Property in its use, including reSET, reSET-O and Somryst.

(jjj) "Raleigh Lease" means the lease by and between Highwoods Realty Limited Partnership and Debtor Pear Therapeutics, Inc. of the premises located at 2300 Rexwoods Drive, Suite 250, Raleigh, North Carolina 27607, Raleigh, North Carolina.

(kkk) "Raleigh Sublease" means the sublease of all of the premises leased under the Raleigh Lease.

(lll) "Regulating Authorities" means any Governmental Body engaged in the regulation of pharmaceuticals, including the FDA.

(mmm)"Regulatory Approvals" means any consents, waivers, approvals, Orders, Permits or authorizations of any Governmental Body required in connection with the execution, delivery and performance of this Agreement and the consummation of the transactions contemplated hereunder.

(nnn) "Representatives" means, with respect to any Person, such Person's directors, managers, officers, employees, investment bankers, attorneys, accountants and other advisors or representatives.

(ooo) "reSET®" means Seller's reSET Prescription Digital Therapeutic.

(ppp) "reSET-O®" means Seller's reset-O Prescription Digital Therapeutic.

10

(qqq)  "Sale" means the transactions contemplated by this Agreement whereby Purchaser purchases the Acquired Assets free and clear of all Encumbrances in accordance with section 363 of the Bankruptcy Code.

(rrr)  "Sale Motion" means a motion filed by Seller, reasonably satisfactory in form and substance to Seller and Purchaser, (a) seeking approval of this Agreement and the transactions contemplated herein, including the sale of Seller's assets, free and clear of all Encumbrances, and (b) seeking an order containing, without limitation, a finding that Purchaser has acted in good faith and is entitled to the protections of section 363(m) of the Bankruptcy Code.

(sss)  "Sale Order" means an Order of the Bankruptcy Court, reasonably satisfactory in form and substance to Seller and Purchaser, (a) approving this Agreement and the transactions contemplated herein, including, without limitation, the sale of the Acquired Assets free and clear of all Encumbrances, and the assumption and assignment of all Assumed Executory Contracts, to Purchaser, and (b) including, without limitation, a finding that Purchaser has acted in good faith and is entitled to the protections of section 363(m) of the Bankruptcy Code.

(ttt)  "San Francisco Lease" means the lease of the premises located at 201 Mission Street, Suite 1450, San Francisco, California 94105.

(uuu)  "SEC" means the United States Securities and Exchange Commission.

(vvv)  "SEC Reports" means all registration statements, forms, reports and other documents filed by the Parent with the SEC since March 1, 2022 or that Parent may file after the date hereof until the Closing (including exhibits and all other information incorporated therein).

(www)  "Seller Authorizations" has the meaning set forth in Section 5.8.

(xxx)  "Seller's Knowledge" means the actual knowledge as of the date hereof (without any duty to inquire or investigate) of the individuals identified on Schedule [●].

(yyy)  "Seller Leases" means the Boston Lease, Boston Sublease and San Francisco Lease.[3]

(zzz)  "Seller Owned Intellectual Property" means any Intellectual Property owned by Seller that is material to the Business as currently conducted.

(aaaa)  ["Specified Licenses" means [●].]

(bbbb)  "Somryst®" means Seller's Somryst Prescription Digital Therapeutic.

---

[3] NTD: Assumption or Rejection of specific leases to be discussed and set forth on Schedule of Contracts to be assumed.

(cccc)  "Stalking Horse Provisions" means the provisions described in Section 7.2 of this Agreement.

(dddd)  "Subsidiary" means, with respect to any Person, (a) any other Person that directly, or indirectly through one or more intermediaries, is controlled by such Person; or (b) any other Person where a majority of its equity interests are held, directly, or indirectly through one or more intermediaries, by such Person. For purposes of this definition, "control" (including, with correlative meaning, the terms "controlling" and "controlled") means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such Person, whether through ownership of voting securities, by Contract or otherwise.

(eeee)  "Successful Bidder" shall have the meaning set forth in the Bidding Procedures.

(ffff)  "Supplemental Notice of Proposed Assumed Executory Contracts" means a notice filed by Seller with the Bankruptcy Court in accordance with the Bidding Procedures identifying the Executory Contracts Purchaser intends, as of the date of such notice, to assume as of the Closing Date and that were not listed on the Initial Notice of Proposed Assumed Executory Contracts.

(gggg)  "Tax" and "Taxes" mean any and all taxes (including other like assessments, fees or charges in the nature of a tax) imposed by any Governmental Body, including any income, alternative or minimum, business and occupation, gross receipts, disability, unemployment compensation, social security, sales, use, ad valorem, value-added, transfer, franchise, profits, withholding, wage, payroll, employment, excise, stamp, real and personal property, environmental or other taxes, and including any interest, penalties or additional amounts attributable to, imposed upon, or with respect thereto.

(hhhh)  "Tax Return" means any return, report, information return, declaration, claim for refund or other form (including any schedule thereto) required to be filed with a Governmental Body with respect to Taxes, including attachments thereto and amendments thereof.

(iiii)  "Third Party" means any Person that is not a party hereto or an Affiliate of a party hereto.

(jjjj)  "Trademarks" means trademarks, trade names, service marks, designs, logos, brand names, emblems, signs or insignia, slogans, Internet addresses and domain names, other similar designations of source or origin and general intangibles of like nature, together with the registrations and applications for registrations pertaining to any of the foregoing, any derivations of any of the foregoing, all goodwill associated therewith, and rights to sue for past infringement thereof.

(kkkk)  "Transaction Documents" means this Agreement and any and all other instruments required to effectuate the transactions contemplated by this Agreement.

12

(llll)    ["Transition Services Agreement" means a transition services agreement, to be entered into by Seller and Purchaser on the Closing Date, in form and substance substantially similar to the form attached hereto as Exhibit G.]

## ARTICLE II

## ACQUISITION AND TRANSFER OF ASSETS; ASSUMPTION OF LIABILITIES

2.1    Transfer of Assets. Subject to approval of the Bankruptcy Court, and upon the terms and subject to the conditions and provisions contained herein, at the Closing, Seller shall sell, convey, transfer, assign and deliver to Purchaser, and Purchaser shall acquire and accept from Seller, all of Seller's right, title, and interest in the Acquired Assets, free and clear of all Encumbrances, subject to Section 2.3 below.

2.2    Excluded Assets. Notwithstanding anything to the contrary in this Agreement, the Acquired Assets shall not include, and Seller shall retain, all of its rights, title and interest in and to, and shall not sell, convey, transfer, assign or deliver to Purchaser, any of the Excluded Assets.

2.3    Assumed Liabilities. At the Closing, Purchaser shall assume and have sole responsibility for the Assumed Liabilities.

2.4    Excluded Liabilities. For the avoidance of doubt, notwithstanding any other terms, provisions and conditions of this Agreement, Purchaser shall not assume, or otherwise be responsible or liable for, the Excluded Liabilities.

2.5    Assumed Executory Contracts. To the maximum extent permitted by the Bankruptcy Code and in accordance with the Bidding Procedures, each Assumed Executory Contract shall be assumed and assigned to Purchaser pursuant to section 365 of the Bankruptcy Code as of the later of: (a) for any Assumed Executory Contract listed on the Initial Notice of Proposed Assumed Executory Contracts, (1) if no objection is filed by the Closing Date, the Closing Date, or (2) if an objection is filed by the Closing Date, the date such assumption and assignment is approved by an Order of the Bankruptcy Court, and (b) for any Assumed Executory Contract listed on a Supplemental Notice of Proposed Assumed Executory Contracts, (1) if no objection is filed by the date specified in such Supplemental Notice of Proposed Assumed Executory Contracts, such date, or (2) if an objection is filed by the date specified in such Supplemental Notice of Proposed Assumed Executory Contracts, the date such assumption and assignment is approved by an Order of the Bankruptcy Court.

(a)    On or before the Closing Date, Purchaser may, at any time and for any reason, in its sole discretion, elect to remove any Executory Contract from Exhibit B, in which case such Executory Contract shall not be an Assumed Executory Contract, and, at the request of Purchaser on or prior to the Closing Date, Seller shall reject such Executory Contract as soon as practicable following the Closing Date. On or before the date on which the Sale Order is entered, Purchaser may, at any time and for any reason, in its sole discretion, elect to add to Exhibit B any Executory Contract not previously listed thereon, and such Executory Contract shall be an Assumed Executory Contract.

13

(b)      Purchaser shall be responsible and liable for, and shall pay, all Cure Costs.

(c)      Seller shall provide Purchaser with no less than five (5) Business Days' prior written notice of the filing of any motion to reject any Executory Contract not designated as an Assumed Executory Contract on Exhibit B as of the date of this Agreement.

2.6      Waiver and Release of Acquired Avoidance Actions. Without limiting the provisions of Section 9.2 hereof, Purchaser shall be deemed to have waived and released all of the Acquired Avoidance Actions immediately following the Closing, and Purchaser shall not take any action to pursue or enforce any of the Acquired Avoidance Actions. Notwithstanding any provision of the contrary herein, Purchaser agrees that, in addition to Seller, any defendant in any Acquired Avoidance Action is a third-party beneficiary of this section and shall be entitled to rely on and enforce this section.

2.7      Liens Attach to Sale Proceeds. Any liens on the Acquired Assets existing as of the Closing Date will attach to the proceeds from the sale of the Acquired Assets according to such liens' relative priorities.

## ARTICLE III

## CONSIDERATION

3.1      Consideration. The aggregate consideration (collectively, the "Purchase Price") to be paid for the acquisition of the Acquired Assets shall consist of the following, which shall be payable in accordance with the terms and conditions set forth in this Article III and Article IV: (i) the Cash Purchase Price; *plus* (ii) assumption of the Assumed Liabilities set forth on Exhibit C; *plus* (iii) any Cure Costs.

3.2      Payment of Purchase Price at Closing. The Purchase Price as described in Section 3.1 shall be satisfied at the Closing, subject to the terms and conditions contained in this Article III and Article IV.

3.3      Assumed Liabilities. Purchaser shall assume the Assumed Liabilities pursuant to the assignment and assumption agreement substantially in the form attached hereto as Exhibit F (the "Assignment and Assumption Agreement").

3.4      Deposit. Purchaser has provided the Deposit in good faith to the Deposit Escrow Agent to be held in trust in a non-interest-bearing account pursuant to the terms and conditions of the Deposit Escrow Agreement. If the Closing occurs, the Deposit shall be paid to Seller and applied against the Cash Purchase Price at the Closing. If the Closing does not occur, then the Deposit shall be disbursed as follows: (i) in the event of a termination of this Agreement by Seller pursuant to Section 4.6(o), Seller shall be entitled to retain the Deposit as liquidated damages; (ii) in the event of a termination of this Agreement for any reason other than by Seller pursuant to Section 4.6(o), the Deposit shall be returned to Purchaser; or (iii) in the event of a termination of this Agreement and the Deposit has not been disbursed in accordance with clauses (i) or (ii) of this Section 3.4, then the Deposit shall be disbursed as any court of competent jurisdiction may direct.

14

3.5     Allocation of Consideration. Within thirty (30) calendar days after the Closing Date, Purchaser shall deliver to Seller an allocation of the Purchase Price among the Acquired Assets.  Following such delivery, Purchaser shall revise such allocation to reflect any revisions and comments to such allocation received from Seller (such allocation as so revised, the "Allocation"). Such Allocation shall become part of this Agreement for all purposes. Seller and Purchaser agree to report, pursuant to section 1060 of the Internal Revenue Code of 1986 and the regulations promulgated thereunder, if and when required, the Allocation of the Purchase Price, as adjusted, in a manner entirely consistent with such Allocation in the preparation and filing of all Tax Returns (including IRS form 8594). Neither Seller nor Purchaser shall take any action that would call into question the bona fide nature of such Allocation; and neither party shall take any position for Tax purposes which is inconsistent with such Allocation, unless required to do so under applicable law. Notwithstanding the foregoing, the Allocation shall not be binding upon any person or entity that is not a party to this Agreement.

## ARTICLE IV

## CLOSING AND TERMINATION

4.1     Closing. Provided that the conditions to closing set forth herein have been satisfied or, if waivable, have been waived in accordance herewith, the closing of the transactions contemplated herein (the "Closing") shall be held via e-mail or such other place as agreed to between Purchaser and Seller, within three (3) calendar days following the first day that all such conditions have been satisfied or, if waivable, waived, on a Business Day mutually agreeable to Purchaser and Seller. The date on which the Closing occurs in accordance with the previous sentence is referred to as the "Closing Date". Unless otherwise agreed by the parties in writing, the Closing shall be deemed effective and all right, title and interest of Seller in the Acquired Assets to be acquired by Purchaser hereunder shall be considered to have passed to Purchaser and the assumption of all of the Assumed Liabilities shall be considered to have occurred as of 12:01 a.m. Eastern Time on the Closing Date.

4.2     Conveyances at Closing. At the Closing, Seller and Purchaser shall take the following actions:

(a)     Purchaser shall pay to or as directed by Seller, by wire transfer in immediately available funds, the Cash Purchase Price as set forth in Section 3.1, as adjusted (without duplication) pursuant to Section 3.2, Section 3.4, and Section 4.5;

(b)     Seller shall deliver or make available to Purchaser possession of the Acquired Assets;

(c)     Seller and Purchaser shall execute and deliver to one another a duly executed bill of sale with respect to the Acquired Assets, substantially in the form attached hereto as Exhibit E (the "Bill of Sale");

(d)     Seller shall provide to Purchaser all such other duly executed instruments as Purchaser may reasonably require to effectuate the transfer, assignment and conveyance of the Acquired Assets;

15

(e)      Seller and Purchaser shall execute and deliver to one another the Assignment and Assumption Agreement with respect to the Assumed Liabilities;

(f)      Seller and Purchaser shall execute and deliver to one another a duly executed intellectual property assignment agreement with respect to the Acquired Assets, substantially in the form attached hereto as <u>Exhibit G</u> (the "<u>Intellectual Property Assignment Agreement</u>"); [and]

(g)      Seller shall provide Purchaser with executed written consents, in form and substance reasonably satisfactory to Purchaser, from each licensor of a Specified License, consenting to the assignment to Purchaser of each corresponding Specified License, unless the Bankruptcy Court or another court of competent jurisdiction has entered a Final Order that such consent is not required; <u>provided</u>, <u>however</u>, that any Cure Costs in respect of any Specified License shall be borne by Purchaser and all liabilities in respect of any Specified License shall be Assumed Liabilities; [and]

(h)      [Seller and Purchaser shall execute and deliver to one another the Transition Services Agreement.[4]]

4.3      <u>Additional Deliveries</u>. After the Closing Date, Seller shall deliver to Purchaser such other instruments and documents, and shall take such other actions, as shall be reasonably requested by Purchaser to vest in Purchaser all of Seller's right, title and interest in and to the Acquired Assets and otherwise to effectuate the transactions described herein.

4.4      <u>Transaction Expenses</u>. Except as expressly provided herein in respect of the Expense Reimbursement (to the extent due and owing), each party shall bear its own costs and expenses, including attorney, accountant and other consultant fees, in connection with the execution and negotiation of this Agreement and the Transaction Documents and the consummation of the transactions contemplated by this Agreement.

4.5      <u>Prorations</u>. To the extent there are obligations in respect of the Acquired Assets (including without limitation real or personal property Taxes) that arose during or relate to the period up to and including the Closing Date, Purchaser and Seller shall allocate such obligations between themselves on a ratable basis that fairly reflects the portions (up to 100%) of such obligations. To the extent that any net amount is owing to Purchaser or Seller, as the case may be under this Section 4.5 as of the Closing, the Purchase Price shall be decreased or increased, as the case may be, to the extent such prorations are identified as of the Closing, and to the extent such prorations cannot or are not identified until after the Closing, then any net amount owing to Seller or Purchaser shall be paid by the party owing such amount. Any net amount owing to Purchaser under this Section 4.5, shall be an administrative expense of Seller's bankruptcy estate under section 503(b) and section 507(a)(2) of the Bankruptcy Code. Notwithstanding the foregoing, this Section 4.5 shall not apply to the items listed on Schedule 4.5, which items shall be paid by Seller and/or Purchaser as indicated thereon. For the avoidance of doubt, Purchaser shall pay all

---

[4] NTD: For the most part, any TSA would be designed to address the transition of any patient-facing issues in a manner that would allow for the orderly cessation of any Seller involvement as soon as possible.

obligations in respect of the Acquired Assets that are due, or will become due, after the Closing Date.

4.6     Termination of Agreement. This Agreement may be terminated at any time prior to the Closing as follows:

(a)     by the mutual written consent of Seller and Purchaser;

(b)     by Purchaser or Seller, upon entry into an agreement to consummate (subject to Purchaser's obligation to serve as a Backup Bidder pursuant to Section 7.1(h)), or the consummation of, an Alternative Transaction as a result of the Auction, provided, however, that upon a termination pursuant to this Section 4.6(b), Seller shall perform its obligations under Section 4.8 and Section 7.2;

(c)     by Purchaser or Seller, if the Closing shall not have been consummated prior to [●], 2023 (the "Outside Date"); provided, that if the Closing shall not have occurred on or before the Outside Date due to a material breach of any representations, warranties, covenants or agreements contained in this Agreement by Purchaser or Seller, then Purchaser (if Purchaser is in breach) or Seller (if Seller is in breach), respectively, may not terminate this Agreement pursuant to this Section 4.6(c); provided further, that if Purchaser is selected as the Backup Bidder at the conclusion of the Auction, Purchaser shall not be permitted to terminate this Agreement until the earlier of (i) ninety (90) days after entry of the Sale Order if the Closing shall not have occurred by such date, and (ii) the date on which Seller consummates an Alternative Transaction;

(d)     by Purchaser, if the Bidding Procedures Order has not been entered by the Bankruptcy Court, or if the Stalking Horse Provisions have not been approved by the Bankruptcy Court, in each case on or before [●], 2023;

(e)     by either Purchaser or Seller, if there shall be any Law that makes consummation of the transactions contemplated hereby illegal or otherwise prohibited, or there shall be in effect a final non-appealable order of a Governmental Body of competent jurisdiction restraining, enjoining or otherwise prohibiting the consummation of the transactions contemplated hereby; it being agreed that the parties hereto shall promptly appeal any such adverse determination which is appealable (and pursue such appeal with reasonable diligence);

(f)     by Purchaser, if the Chapter 11 Case is dismissed or converted to a case under chapter 7 of the Bankruptcy Code, or if a chapter 11 trustee or examiner with expanded powers is appointed;

(g)     by Purchaser, if the Bankruptcy Court enters an order granting stay relief with respect to any material portion of the Purchased Assets;

(h)     by Purchaser, if there occurs a Material Adverse Effect;

(i)    by Purchaser, if the Sale Order shall not have been entered on or before [●], 2023 (subject to Purchaser's obligation to serve as a Backup Bidder pursuant to Section 7.1(h));

(j)    by Purchaser, if the Bankruptcy Court enters an Order denying any motion or other filing filed by Seller relating to the sale of the Acquired Assets hereunder;

(k)    by Purchaser, if the Bidding Procedures Order or Sale Order is stayed, reversed, vacated, modified or amended (except as modified or amended in any immaterial respect or with the consent of Purchaser, which consent may be withheld in its sole discretion for material modifications and amendments);

(l)    by Purchaser, if Seller terminates the bidding process contemplated by the Bidding Procedures or the Auction without the consent of Purchaser, which consent may be withheld in its sole discretion;

(m)    by Seller, if Purchaser fails to satisfy any of its material obligations at Closing;

(n)    by Purchaser, if Purchaser is not named by Seller as the Successful Bidder or the Backup Bidder at the conclusion of the Auction; or

(o)    by Purchaser, if Seller is in breach of any of its material obligations hereunder and, to the extent such breach is reasonably capable of cure within such period, such breach has not been cured by Seller within five (5) calendar days after written notification by Purchaser.

4.7    <u>Procedure Upon Termination</u>. In the event of a termination of this Agreement pursuant to Section 4.6, (a) written notice thereof shall be given promptly by the terminating party to the other party hereto, specifying the provision hereof pursuant to which such termination is made, (b) this Agreement shall thereupon terminate and become void and of no further force and effect, and (c) the consummation of the transactions contemplated by this Agreement shall be abandoned without further action of the parties hereto. If this Agreement is terminated as provided herein, each party shall return all documents, work papers and other material of any other party relating to the transactions contemplated hereby, whether so obtained before or after the execution hereof, to the party furnishing the same.

4.8    <u>Effect of Termination</u>. In the event that this Agreement is validly terminated pursuant to Section 4.6, each of the parties shall be relieved of its duties and obligations arising under this Agreement effective as of the date of such termination and such termination shall be without Liability to Purchaser or Seller; <u>provided</u>, <u>however</u>, that Section 4.6, Section 4.7 and this Section 4.8 shall survive any such termination and shall be enforceable hereunder. In no event shall any termination of this Agreement relieve any party hereto of any Liability for any willful breach of this Agreement by such party. Upon termination of this Agreement, (a) the Deposit shall be delivered to any applicable party as provided in Section 3.4 and (b) Purchaser shall be entitled to the Stalking Horse Provisions to the extent set forth in Section 7.2.

# ARTICLE V

## REPRESENTATIONS AND WARRANTIES OF SELLER

Seller represents and warrants to Purchaser that the statements contained in this Article V are true and correct as of the date of this Agreement, except as disclosed in the SEC Reports filed or furnished prior to the date of this Agreement.

5.1    <u>Organization and Power</u>. Seller is a corporation duly organized, validly existing and in good standing under the Laws of the State of Delaware. Seller has all requisite corporate power and authority to own the Acquired Assets.

5.2    <u>Corporate Authorization</u>. Subject to entry of the Sale Order, Seller has full corporate power and authority to execute and deliver any and all Transaction Documents and to perform the obligations thereunder. Subject to entry of the Sale Order, the execution, delivery and performance of Seller of the Transaction Documents have been duly and validly authorized and no additional corporate authorization or consent is required in connection therewith.

5.3    <u>Binding Effect</u>. Subject to entry of the Sale Order, this Agreement has been duly executed and delivered by Seller. This Agreement, when executed and delivered by Purchaser, and the other Transaction Documents when executed and delivered, will, upon the entry of the Sale Order, constitute the valid and legally binding obligations of Seller, enforceable against Seller in accordance with their respective terms.

5.4    <u>Ownership of Acquired Assets</u>. Seller owns (or, in the case of Intellectual Property licensed by Seller from a Third Party, [including Specified Licenses,] has license rights to) all Acquired Assets and, subject to entry of the Sale Order, has the right to transfer all of its right, title, and interest in the Acquired Assets to Purchaser, in each case, effective at Closing and free and clear of any Encumbrances.

5.5    <u>Intellectual Property</u>.

(a)    To Seller's Knowledge, Seller owns, licenses, sublicenses or otherwise possesses legally enforceable rights to use all Intellectual Property held by Seller for use in the conduct of the Business as currently conducted (in each case excluding generally commercially available, off-the-shelf software programs), the absence of which, individually or in the aggregate, is reasonably likely to have a Material Adverse Effect.

(b)    To Seller's Knowledge, all issued Patents and registrations for Trademarks and Copyrights included in the Seller Owned Intellectual Property are subsisting and have not expired or been cancelled.

(c)    No claim or infringement of the intellectual property rights of any third party has been made, nor to the Seller's Knowledge threatened, against the Seller with respect to the development, use, manufacture or exploitation of the Products, except for any claim that is not reasonably expected to have a Material Adverse Effect.

19

(d)    To Seller's Knowledge, this is no valid basis for any claim that the intellectual property rights of any third party have been or would be infringed or misappropriated with respect to the development, use, manufacture or exploitation of the Products, except for any infringe or misappropriation that is not reasonably likely to have a Material Adverse Effect.

(e)    To Seller's Knowledge, Seller has implemented commercially reasonable measures to maintain the confidentiality of the Seller Owned Intellectual Property of a nature that Seller intends to keep confidential.

(f)    [To Seller's Knowledge, Seller is not in default under any Specified License in any manner that would allow the licensor under any Specified License to terminate such Specified License or otherwise limit or terminate the rights of Seller under such Specified License.]

(g)    To Seller's Knowledge, no third party is infringing, violating or misappropriating any of the Seller Owned Intellectual Property, except for infringements, violations or misappropriations that, individually or in the aggregate, are not reasonably likely to have a Material Adverse Effect.

5.6    <u>Litigation</u>. As of the date of this Agreement, there is no action, suit, proceeding, claim, arbitration or investigation pending and of which Seller has been notified or, to Seller's Knowledge, threatened against Seller, which would affect Seller's ability to perform its obligations under this Agreement.

5.7    <u>Permits; Regulatory Matters</u>.

(a)    Seller or its agents and representatives have all Permits required to conduct the Business as currently conducted, including all such Permits required by Regulating Authorities, except for such Permits the absence of which, individually or in the aggregate, are not reasonably likely to have a Material Adverse Effect (the "<u>Seller Authorizations</u>").

(b)    The Seller Authorizations are in full force and effect, except for any failures to be in full force and effect that, individually or in the aggregate, are not reasonably likely to have a Material Adverse Effect. Seller is in compliance under such Seller Authorizations, except for such failures to comply that, individually or in the aggregate, are not reasonably likely to have a Material Adverse Effect.

(c)    Except for matters that, individually or in the aggregate, are not reasonably likely to have a Material Adverse Effect, since March 1, 2022 or that have been disclosed in writing to Purchaser or in Parent's public filings with the SEC, Seller: (i) has not received any written notice or correspondence from any Regulating Authority alleging or asserting any noncompliance with any Seller Authorizations; and (ii) has not received written notice that any Regulating Authority has taken or is intending to take action to limit, suspend, modify or revoke any Seller Authorizations and, to Seller's Knowledge, there is no action or proceeding pending or threatened (including any prosecution, injunction, seizure, civil

20

fine, suspension or recall), in each case alleging that such Regulating Authority is considering such action.

5.8  <u>Finders' Fees</u>. Except for the fees and expenses of MTS Health Partners, L.P., the fees and expenses of which will be paid by Seller, there is no investment banker, broker, finder or other intermediary who has been retained by or is authorized to act on behalf of Seller who might be entitled to any fee or commission in connection with the transactions contemplated by this Agreement.

5.9  <u>No Other Representations or Warranties</u>. EXCEPT FOR THE REPRESENTATIONS AND WARRANTIES EXPRESSLY CONTAINED HEREIN, SELLER MAKES NO OTHER EXPRESS OR IMPLIED REPRESENTATION OR WARRANTY. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, THE ACQUIRED ASSETS ARE ASSIGNED, "AS IS," WITHOUT ANY WARRANTY OF ANY KIND, AND SELLER HEREBY EXPRESSLY DISCLAIMS, TO THE EXTENT PERMITTED BY APPLICABLE LAW, ANY AND ALL CONDITIONS OR WARRANTIES OF ANY KIND OR NATURE, WHETHER EXPRESS, IMPLIED OR STATUTORY, INCLUDING ANY WARRANTIES OF OR RELATED TO TITLE, NON-INFRINGEMENT, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, VALIDITY OR ENFORCEABILITY. NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, IN THE EVENT OF A BREACH OF ANY REPRESENTATION OR WARRANTY BY SELLER, PURCHASER'S SOLE REMEDY, IF ANY, WITH RESPECT TO SUCH BREACH IS TERMINATION OF THIS AGREEMENT PRIOR TO CLOSING IN ACCORDANCE WITH SECTION 4.6 OF THIS AGREEMENT OR THE RIGHTS PROVIDED IN SECTIONS 4.8 AND 9.4.

## ARTICLE VI

## REPRESENTATIONS AND WARRANTIES OF PURCHASER

Purchaser represents and warrants to Seller that the statements contained in this Article VI are true and correct as of the date of this Agreement.

6.1  <u>Organization and Power</u>. Purchaser is a [corporation] duly organized, validly existing and in good standing under the Laws of the State of [State of organization].

6.2  <u>Authorization</u>. Purchaser has full power and authority to execute and deliver the Transaction Documents and to perform its obligations thereunder. The execution, delivery and performance by Purchaser of the Transaction Documents have been duly and validly authorized and no additional authorization or consent is required in connection therewith.

6.3  <u>Binding Effect</u>. This Agreement has been duly executed and delivered by Purchaser. This Agreement, when executed and delivered by Seller, and the other Transaction Documents when executed and delivered, will constitute the valid and legally binding obligations of Purchaser, enforceable against Purchaser in accordance with their respective terms, subject to bankruptcy, insolvency, reorganization, moratorium and similar Laws of general applicability relating to or affecting creditors' rights and to general equity principles.

6.4    <u>Funding</u>. Purchaser has, without the need to obtain any Third Party debt or equity financing, sufficient and unencumbered funds to consummate the transactions contemplated by this Agreement and to pay the Purchase Price, and Purchaser otherwise has the resources and capabilities (financial and otherwise) to perform its obligations to consummate the transactions contemplated by this Agreement and such performance is not conditioned or contingent in any way upon the receipt of financing from any Person or the availability of funds to Purchaser.

6.5    <u>Adequate Assurances Regarding Assumed Executory Contracts</u>. As of the Closing, Purchaser will be capable of satisfying the conditions contained in sections 365(b)(1)(C) and 365(f) of the Bankruptcy Code with respect to the Assumed Executory Contracts, including without limitation payment of all Cure Costs.

6.6    <u>Finders' Fees</u>. There is no investment banker, broker, finder or other intermediary who has been retained by or is authorized to act on behalf of Purchaser or any Affiliate of Purchaser who might be entitled to any fee or commission in connection with the transactions contemplated by this Agreement, except for any fee or commission paid directly by Purchaser and not reducing the Purchase Price in any way.

6.7    <u>Good Faith Purchaser</u>. Purchaser (i) is a "good faith" purchaser, as such term is used in the Bankruptcy Code, and (ii) is entitled to the protections of section 363(m) of the Bankruptcy Code with respect to the transactions contemplated by this Agreement. Purchaser has negotiated and entered into this Agreement in compliance with the Bidding Procedures in compliance with section 363(n) of the Bankruptcy Code, and in good faith and without collusion or fraud of any kind.

6.8    <u>Purchaser Experience</u>. Purchaser is experienced and sophisticated with respect to transactions of the type contemplated by this Agreement. In consultation with experienced counsel and advisors of its choice, Purchaser has conducted its own independent review and analysis of the Acquired Assets, the Assumed Liabilities and the rights and obligations it is acquiring and assuming under the Transaction Documents. Purchaser acknowledges that it and its Representatives have been permitted such access to the books and records, Contracts and other properties related to the Acquired Assets as it required to complete its review. Purchaser acknowledges and agrees that, except for the representations and warranties set forth in Article V or in any certificate, document or instrument delivered at the Closing pursuant to the terms of this Agreement, none of Seller or any of its Affiliates, Representatives, equityholders or any other Person, will have or be subject to any liability or indemnification or other obligation of any kind or nature to Purchaser or any of its Affiliates, Representatives, equityholders or any other Person, resulting from the delivery, dissemination or any other distribution to Purchaser or any of its Affiliates, Representatives, equityholders or any other Person, or the use by Purchaser or any of its Affiliates, Representatives, equityholders or any other Person, of any such information provided or made available to any of them by Seller or any of its Affiliates, Representatives, equityholders, or any other Person, including any information, documents, estimates, projections, forecasts or other forward-looking information, business plans or other material provided or made available to Purchaser or any of its Affiliates, Representatives, equityholders or any other Person, in "data rooms," confidential information memoranda, management presentations or otherwise in anticipation or contemplation of any of the transactions contemplated by this Agreement, and (subject to the express representations and warranties of Seller set forth in Article V or in any

22

certificate, document or instrument delivered at the Closing pursuant to the terms of this Agreement) none of Purchaser or any of its Affiliates, Representatives, equityholders or any other Person, has relied on any such information (including the accuracy or completeness thereof).

6.9     <u>Non-Reliance on Seller Estimates, Projections, Forecasts, Forward-Looking Statements and Business Plans</u>. In connection with the due diligence investigation of Seller by Purchaser and its Affiliates, Representatives and equityholders, Purchaser and its Affiliates, Representatives and equityholders have received and may continue to receive after the date hereof from Seller and its Affiliates, Representatives and equityholders certain estimates, projections, forecasts and other forward-looking information, as well as certain business plan information, regarding Seller and its business and operations. Purchaser hereby acknowledges that there are uncertainties inherent in attempting to make such estimates, projections, forecasts and other forward-looking statements, as well as in such business plans, with which Purchaser is familiar, that Purchaser is taking full responsibility for making its own evaluation of the adequacy and accuracy of all estimates, projections, forecasts and other forward-looking information, as well as such business plans, so furnished to it (including the reasonableness of the assumptions underlying such estimates, projections, forecasts, forward-looking information or business plans), and that Purchaser will have no claim against Seller, any of its Affiliates, Representatives, equityholders or any other Person, with respect thereto. Accordingly, Purchaser hereby acknowledges and agrees that none of Seller nor any of its Affiliates, Representatives, equityholders nor any other Person, has made or is making any express or implied representation or warranty with respect to such estimates, projections, forecasts, forward-looking statements or business plans (including the reasonableness of the assumptions underlying such estimates, projections, forecasts, forward-looking statements or business plans). Purchaser expressly disclaims that it is relying upon or has relied upon any representations or warranties or other statements or omissions that may have been made by Seller or any Person with respect to Seller other than the representations and warranties set forth in this Agreement. Purchaser expressly disclaims any obligation or duty by Seller to make any disclosures of fact not required to be disclosed pursuant to the specific representations and warranties set forth in this Agreement.

6.10     <u>Privacy and Security Laws; Health Care Laws.</u>

(a)     Purchaser complies with Applicable Privacy and Security Laws, and with such privacy and information security obligations to which it is subject under contract, privacy policy, or online terms of use.  Purchaser maintains policies and procedures that comply with (a) Applicable Privacy and Security Laws and (b) privacy and information security obligations to its customers, data subjects, or others, under contract, privacy policy, or online terms of use.  Purchaser has not received any written notice from any Governmental Body that it is under investigation for a violation of any of the Applicable Privacy and Security Laws.  Purchaser has implemented, has maintained at all times and does currently maintain commercially reasonable technical, organizational and administrative security measures in accordance with standard industry practices in their field to protect all personally identifiable information under its control and/or in its possession from unauthorized access, use, disclosure, modification, deletion or other processing.

23

(b)    Purchaser is, and has at all times been, in compliance with all Applicable Health Care Laws in all material respects and is not, and has not been, subject to or the target of any Legal Proceeding or "final adverse action", as that term is defined in 42 U.S.C. §1320a-7e(g), based on acts or omissions for or on behalf of the Company.

(c)    Purchaser has not received a notice from any Governmental Body that (i) alleges any material noncompliance with any Applicable Health Care Law, or alleges that Purchaser or any of its officers, directors, employees, or agents, is or was under investigation or the subject of any inquiry by any such Governmental Body for such alleged material noncompliance with any Applicable Health Care Law or (ii) would be reasonably likely to result in a fine or assessment or a cease and desist order, or the suspension, revocation or limitation or restriction of participation in any Federal Health Care Program. Purchaser has never entered into any agreement or settlement with any Governmental Body with respect to noncompliance with, or violation of, any Applicable Health Care Law. Neither Purchaser nor its officers, directors, employees, or agents, (i) has been convicted of, charged with or investigated for any material violation of any Applicable Health Care Law; (ii) has been convicted of, charged with, or investigated for any violation of a Federal Health Care Program-related material offense or Law related to fraud, theft, embezzlement, breach of fiduciary responsibility, financial misconduct, obstruction of an investigation, or controlled substances; (iii) is, or has ever been, excluded, suspended or debarred from participation, or otherwise ineligible to participate, in any Federal Health Care Program, or is subject to a governmental inquiry, investigation, Action, or other similar proceeding that could reasonably be expected to result in debarment, suspension, or exclusion; or (iv) has been subject to any consent decree of, or criminal or civil fine or penalty imposed by, any Governmental Body related to fraud, theft, embezzlement, breach of fiduciary responsibility, financial misconduct, or obstruction of an investigation related to controlled substances.  Neither Purchaser nor its officers, directors, employees, or agents, has made any voluntary or self-disclosure to any Governmental Body regarding any potential non-compliance with any Applicable Health Care Law. Purchaser is not subject to any corrective action plan, corporate integrity agreement, deferred prosecution agreement, consent decree, settlement agreement, or similar undertaking with or imposed by any Governmental Body arising from any alleged violation of any Law.

## ARTICLE VII

## CERTAIN COVENANTS

7.1    <u>Bankruptcy Sale Process</u>.

(a)    Seller will, on the Petition Date or as soon thereafter as practicable, file with the Bankruptcy Court the Bidding Procedures Motion and serve it upon the parties required to be served by the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court. Purchaser acknowledges that the Acquired Assets may be subject to competitive bidding and that the Bidding Procedures may be supplemented by other customary procedures consistent with the terms of this Agreement, <u>provided</u> that the Bidding Procedures may not be amended, modified, or supplemented in any respect except as provided for in the Bidding Procedures.

24

(b)      Seller will, as promptly as possible, but in all events in accordance with the Bidding Procedures, file and serve the Initial Notice of Proposed Assumed Executory Contracts, any Supplemental Notice of Proposed Assumed Executory Contracts, and the Final Sale Notice, together with the proposed Sale Order and a copy of the Transaction Documents (with any redactions Seller and Purchaser mutually deem appropriate in accordance with Bankruptcy Rule 9018 and the Bidding Procedures Order), and serve it upon the parties required to be served in accordance with the Bidding Procedures.

(c)      Seller will, subject to the provisions of this Agreement and the Bidding Procedures Order, in consultation with Purchaser, use its reasonable best efforts to (x) respond to and resolve all timely objections to the entry of the Sale Order and (y) obtain entry of the Sale Order on or before [●], 2023.

(d)      Purchaser will use its reasonable best efforts to assist in obtaining entry of the Sale Order, including furnishing or filing with the Bankruptcy Court such affidavits or declarations as Seller may request for the purpose of obtaining entry of the Sale Order.

(e)      All motions and other filings by Seller, including any filings regarding notice procedures and all lists of Persons to receive notice, relating to the sale of the Acquired Assets hereunder shall be in form and substance reasonably satisfactory to Purchaser.

(f)      Purchaser shall not, without prior written consent of Seller, file, join in, or otherwise support or encourage in any manner whatsoever any motion or other filing relating to the sale of the Acquired Assets hereunder.

(g)      In the event that an appeal is taken or a stay pending appeal is requested with respect to the Sale Order, Seller shall promptly notify Purchaser of such appeal or stay request and shall promptly provide to Purchaser a copy of the related notice(s) or order(s). Seller and Purchaser shall use their reasonable best efforts to defend any such appeal or stay request.

(h)      Backup Bidder. Sellers and Purchaser agree that, in the event that Purchaser is not the Successful Bidder at the Auction, Purchaser shall act as the Backup Bidder as set forth in the a Bidding Procedures and Bidding Procedures Order, if so named at the Auction; provided that, Purchaser's obligation to act as the Backup Bidder shall terminate on the earlier of (i) ninety (90) days after entry of the Sale Order if the Closing shall not have occurred by such date, and (ii) the date on which Seller consummates an Alternative Transaction. If Purchaser is selected as the Backup Bidder at the conclusion of the Auction, (a) neither such selection itself nor the failure to select the Purchaser as the Successful Bidder shall give rise to a right of Purchaser to terminate this Agreement, and (b) this Agreement shall remain in full force and effect until terminated in accordance with the terms herein.

7.2      Stalking Horse Provisions.[5]

---

[5] NTD: Only applies if selected as a Stalking Horse Bidder

(a)    To participate in the bidding process for all or any substantial portion of the Acquired Assets, a Person (other than Purchaser) must submit a bid, in accordance with the Bidding Procedures, the cash portion of which exceeds the Cash Purchase Price for such assets by no less than the sum of the following: the Break-Up Fee, the maximum amount of the Expense Reimbursement, and $[●] (such sum, the "Overbid Protection").

(b)    In the event Seller consummates an Alternative Transaction, Seller shall pay Purchaser, in accordance with the Bidding Procedures and by wire transfer to an account designated by Purchaser on the closing date of such Alternative Transaction, an amount equal to $[●] (the "Break-Up Fee").

(c)    Seller shall pay Purchaser, in accordance with the Bidding Procedures and by wire transfer to an account designated by Purchaser, reimbursement of all reasonable costs and expenses of Purchaser incurred in connection with Purchaser's efforts to negotiate and consummate the transactions contemplated by this Agreement (including, without limitation, the fees and expenses of counsel), upon the earliest to occur of any of the following: (1) the termination of this Agreement for any reason other than by Seller pursuant to Section 4.6(g), and (2) the date on which Seller consummates an Alternative Transaction; provided, however, that such reimbursement shall be capped at $[●] (the "Expense Reimbursement").

(d)    Purchaser shall be entitled to credit bid the amount of the Break-Up Fee and maximum Expense Reimbursement in accordance with section 363(k) of the Bankruptcy Code if Purchaser elects to submit higher bids in the Auction in accordance with the Bidding Procedures.

(e)    The Break-Up Fee and Expense Reimbursement shall be paid from any proceeds of an Alternative Transaction, otherwise payable to Seller, provided that if such amounts are not paid from such proceeds, Seller shall remain liable for such amounts.

(f)    The Break-Up Fee and Expense Reimbursement (to the extent due and owing) shall be a first-priority administrative expense of Seller's bankruptcy estate under sections 503(b) and 507(a)(2) of the Bankruptcy Code.

(g)    The obligation of Seller to pay, and the payment by Seller of, the Expense Reimbursement (to the extent due and owing), shall in no way limit or otherwise affect the rights of Purchaser to a return of the Deposit, including without limitation the rights of Purchaser under Section 3.4 of this Agreement.

(h)    Seller acknowledges and agrees that Purchaser would not have entered into this Agreement but for the provisions in this Section 7.2, and that the provisions of this Section 7.2 are integral to, and shall survive any termination of, this Agreement.

7.3    Pre-Closing Operating Covenants of Seller.

(a)    [Until the earlier of Closing or the termination of this Agreement in accordance with Section 4.6, Section 4.7 and Section 4.8, except as expressly provided in

this Agreement, or as required by Law, including in connection with the Chapter 11 Case (it being understood that no provision of this Section 7.3 will require Seller to make any payment to any of its creditors with respect to any amount owed to such creditors on the Petition Date or which would otherwise violate the Bankruptcy Code), without the consent of Purchaser, Seller will operate, and will conduct the Business in the ordinary course of business, consistent with past practices, in all material respects and use its commercially reasonable efforts to (1) preserve intact Seller's relationships with its suppliers and others doing business with it; (2) shall continue to maintain all advertising material, all documentation that would constitute Acquired Assets and all books and records on a basis consistent with past practice; and shall (3) continue to make all necessary or appropriate filings and payments with and to Governmental Bodies in connection with the Products in a timely manner, and maintain in effect all existing regulatory approvals required for the Products and the ongoing operation of the Business as presently conducted.][6]

(b)       Until the earlier of Closing or the termination of this Agreement in accordance with Section 4.6, Section 4.7 and Section 4.8, except as expressly provided in this Agreement, or as required by Law, subject to the limitations of the Bankruptcy Code and the Bankruptcy Rules, without the consent of Purchaser, Seller will not:

(i)       sell or transfer or create any Encumbrance upon any of the Acquired Assets (other than in the ordinary course of the Business);

(ii)       fail to pay any maintenance fees by the due date therefor with respect to any of the Acquired Assets, absent Purchaser's written authorization after good faith consideration, provided that Purchaser reimburse Seller for payment of the portion of such fees attributable to the post-Closing period;

(iii)       reject, cancel, terminate, amend, modify, supplement or rescind any Assumed Executory Contract or any terms of any Assumed Executory Contract without the express written approval of Purchaser, which shall not be unreasonably withheld or delayed, except for the purpose of effecting any changes in applicable Law or implementing regulatory requirements;

(iv)       transfer, sell, assign, abandon, permit to lapse or grant any rights or modify any existing rights to the Acquired Assets, or enter into any settlement regarding the breach or infringement, misappropriation, dilution or other violation of, or challenge the title to, any such Acquired Assets; or

(v)       institute, settle or agree to settle or modify in any manner that is adverse to the Acquired Assets, any litigation, action or other Legal Proceeding before any court or Governmental Body relating to the Acquired Assets and that is or will be an Assumed Liability (provided, however, that nothing herein shall restrict or prevent Seller from instituting, prosecuting, or settling any claims it may have against Purchaser or its Affiliates arising out of or related to this Agreement),

---

[6] NTD: Discuss the extent to which operations will continue in the ordinary course pending closing and related effects on employees, etc.

7.4    <u>Access to Information</u>.

(a)    Seller agrees that, until the earlier of Closing or the termination of this Agreement in accordance with Section 4.6, Section 4.7 and Section 4.8, Purchaser shall be entitled, through its Representatives, to have such reasonable access to and make such reasonable investigation and examination of the books and records, properties, businesses, assets, accountants, auditors, counsel and operations of Seller as Purchaser's Representatives may reasonably request, <u>provided</u>, <u>however</u>, that Seller shall not be obligated to provide information that it is not permitted to provide under applicable Law. Any such investigations and examinations shall be conducted during regular business hours upon reasonable advance notice and under reasonable circumstances, including Seller's right to have its Representatives accompany Purchaser and its Representatives at the time of any on-site inspection or examination and shall be subject to restrictions under applicable Law. Pursuant to this Section 7.4, Seller shall furnish to Purchaser and its Representatives such financial, operating and property related data and other information as such Persons reasonably request. Seller shall use commercially reasonable efforts to cause its Representatives to reasonably cooperate with Purchaser and Purchaser's Representatives in connection with such investigations and examinations, and Purchaser shall, and use its commercially reasonably efforts to cause its Representatives to, reasonably cooperate with Seller and its Representatives and shall use their reasonable efforts to minimize any disruption to the Business. Purchaser and its Representatives shall be permitted to contact, or engage in discussions or otherwise communicate with Seller's landlords, clients, suppliers and other Persons with which Seller has material commercial dealings, <u>provided</u>, that Purchaser must obtain the prior consent of Seller, which consent shall not be unreasonably withheld or delayed, to initiate such communications and give Seller the opportunity to be present therefor.

(b)    No information received pursuant to an investigation made under this Section 7.4 shall be deemed to (i) qualify, modify, amend or otherwise affect any representations, warranties, covenants or other agreements of Seller set forth in this Agreement or any certificate or other instrument delivered to Purchaser in connection with the transactions contemplated hereby, (ii) limit or restrict the remedies available to the parties under applicable Law arising out of a breach of this Agreement or otherwise available at Law or in equity, or (iii) limit or restrict the ability of either party to invoke or rely on the conditions to the obligations of the parties to consummate the transactions contemplated by this Agreement set forth in Article VIII.

7.5    <u>Reasonable Efforts; Further Assurances of Each Party</u>. Until the earlier of Closing or the termination of this Agreement in accordance with Section 4.6, Section 4.7 and Section 4.8, in each case, subject to the limitations of the Bankruptcy Code and Bankruptcy Rules:

(a)    each party will use commercially reasonable efforts to take all actions and to do all things necessary, proper or advisable in order to consummate and make effective the transactions contemplated by this Agreement (including satisfaction, but not waiver, of the closing conditions set forth in Article VIII); and

(b)      the parties will execute and deliver any documents, instruments or conveyances of any kind and take all other actions which may be reasonably necessary or advisable to carry out the intent of this Agreement and the transactions contemplated herein.

7.6      <u>Regulatory Affairs</u>. Until the earlier of Closing or the termination of this Agreement in accordance with Section 4.6, Section 4.7 and Section 4.8, Seller shall, to the fullest extent permitted by applicable Law, (i) promptly advise Purchaser of the receipt of any communication from the FDA, SEC or any similar state or foreign Governmental Body or other U.S. Governmental Body whether oral, written, electronic or otherwise, (ii) provide Purchaser with a reasonable opportunity to participate in the preparation of any response thereto and the preparation of any other substantive submission or communication to any such Governmental Body and to review any such response, submission or communication prior to the filing or delivery thereof, and (iii) provide Purchaser with the opportunity to participate in any meetings or substantive telephone conversations that Seller or its representatives may have from time to time with any such Governmental Body. Until the earlier of Closing or the termination of this Agreement in accordance with Section 4.6, Section 4.7 and Section 4.8, at Purchaser's request, Seller shall assist Purchaser in obtaining any meetings with, or facilitating communications between, Purchaser and the FDA, SEC or any similar state or foreign Governmental Body or other U.S. Governmental Body.

## ARTICLE VIII

## CONDITIONS TO CLOSING

8.1      <u>Conditions Precedent to the Obligations of Seller and Purchaser</u>. The respective obligations of each party to this Agreement to consummate the transactions contemplated herein are subject to the satisfaction or written waiver, on or prior to the Closing Date, of each of the following conditions (any or all of which may be waived in writing by Seller and Purchaser in whole or in part to the extent permitted by applicable Law):

(a)      there shall not be in effect any statute, rule, regulation, Law or Order enacted, issued, entered or promulgated by a Governmental Body of competent jurisdiction restraining, enjoining or otherwise prohibiting the consummation of the transactions contemplated hereby;

(b)      the Bankruptcy Court shall have entered the Bidding Procedures Order and such order shall not have been stayed, reversed, vacated, modified or amended (except as modified or amended in any immaterial respect or with the consent of Purchaser, which consent may be withheld in its sole discretion for material modifications and amendments); and

(c)      the Bankruptcy Court shall have entered the Sale Order and such order shall not have been stayed, reversed, vacated, modified or amended (except as modified or amended in any immaterial respect or with the consent of Purchaser, which consent may be withheld in its sole discretion for material modifications and amendments).

29

8.2 <u>Conditions Precedent to the Obligations of Seller</u>. The obligations of Seller to consummate the transactions contemplated by this Agreement are subject to the satisfaction, on or prior to the Closing Date, of each of the following conditions (any or all of which may be waived in writing by Seller in whole or in part to the extent permitted by applicable Law) in addition to those set forth in Section 8.1:

(a) <u>Covenants and Representations</u>. Purchaser shall have performed in all material respects all agreements and covenants required hereby to be performed by Purchaser prior to or at the Closing Date, and the representations and warranties of Purchaser made in Article VI shall be correct and complete in all material respects as of the Closing Date as if made on such date.

(b) <u>Purchase Price</u>. On or prior to the Closing Date, Purchaser shall have satisfied the Purchase Price.

(c) <u>Deliveries</u>. On or prior to the Closing Date, Purchaser shall have delivered to Seller each of the items applicable to Purchaser set forth in Section 4.2 of this Agreement.

8.3 <u>Conditions Precedent to the Obligations of Purchaser</u>. The obligations of Purchaser to consummate the transactions contemplated by this Agreement are subject to the satisfaction, on or prior to the Closing Date, of each of the following conditions (any or all of which may be waived in writing by Purchaser in whole or in part to the extent permitted by applicable Law) in addition to those set forth in Section 8.1:

(a) <u>Covenants and Representations</u>. Except as would not, individually or in the aggregate, be reasonably likely to have a Material Adverse Effect, Seller shall have performed all agreements and covenants required hereby to be performed by Seller prior to or at the Closing Date, and the representations and warranties of Seller in Article V shall be correct and complete as of the Closing Date as if made on such date.

(b) <u>Deliveries</u>. On or prior to the Closing Date, Seller shall have delivered to Purchaser each of the items applicable to Seller set forth in Section 4.2 of this Agreement.

(c) <u>Regulatory Approvals</u>. All of the Regulatory Approvals necessary for Purchaser to acquire the Acquired Assets, and assume the Assumed Liabilities, shall have been obtained, and all such Regulatory Approvals shall be in full force and effect.

## ARTICLE IX

## MISCELLANEOUS

9.1 <u>Taxes</u>.

(a) <u>Transfer Taxes</u>. Any sales, use, transfer, deed, fixed asset, stamp, documentary stamp or other similar type of Tax and any filing, recording or similar charge (each, a "<u>Transfer Tax</u>") which may be payable by reason of the acquisition of the Acquired Assets or the assumption of the Assumed Liabilities under this Agreement or the

30

transactions contemplated herein shall be borne and timely paid by Purchaser. Purchaser and Seller shall cooperate to prepare and timely file any Tax Returns required to be filed in connection with Transfer Taxes described in the immediately preceding sentence.

9.2     <u>Releases</u>. Effective as of and conditioned upon the occurrence of Closing, Purchaser hereby releases and forever discharges Seller and Seller's directors, officers, employees, agents, representatives, successors, assigns, and holders of Claims or interests in Seller's chapter 11 bankruptcy estate, from any and all actions, suits, debts, liens, sums of money, accounts, judgments, claims and demands whatsoever, at law or in equity, either in Contract or in tort, whether known or unknown, on account of, arising out of or relating to any act or omission of any kind or character whatsoever that relates to Seller or this Agreement and the proposed transactions contemplated herein occurring at or prior to the Closing; <u>provided</u> that nothing in this Section 9.2 shall release or discharge any Claim of Purchaser under this Agreement. Notwithstanding any provision of the contrary herein, Purchaser agrees that, in addition to Seller, any other person or entity released and discharged under this section is a third-party beneficiary of this Section 9.2 and shall be entitled to rely on and enforce this section.

9.3     <u>Survival</u>. None of the (a) covenants or agreements to be performed by either Seller or Purchaser prior to the Closing pursuant to this Agreement and (b) representations and warranties by Seller or Purchaser contained in this Agreement shall survive Closing, and neither Seller nor Purchaser shall have liability to the other party after Closing for any breach of any such covenant, agreement, representation or warranty. Except as set forth in the immediately preceding sentence, the covenants and agreements of the parties set forth in this Agreement will survive until fully performed or until such performance is expressly waived in writing by the other party.

9.4     <u>Injunctive Relief</u>. Damages at Law may be an inadequate remedy for the breach by Purchaser or Seller of any of its covenants, promises and agreements contained in this Agreement and, accordingly, each of Purchaser and Seller shall be entitled to injunctive relief with respect to any such breach, including specific performance of such covenants, promises or agreements or an order enjoining a party from any threatened, or from the continuation of any actual, breach of the covenants, promises or agreements contained in this Agreement. The rights of Purchaser and Seller set forth in this Section 9.4 shall be in addition to any other rights which a party may have at Law or in equity pursuant to this Agreement.

9.5     <u>Entire Agreement; Amendments and Waivers</u>. This Agreement (including the Exhibits and Schedules hereto and other documents specifically referred to herein) represents the entire understanding and agreement between the parties hereto with respect to the subject matter hereof and supersedes all prior agreements, understandings, negotiations and discussions, whether oral or written, of the parties. Any provision of this Agreement may be amended or waived if such amendment or waiver is in writing and signed, in the case of an amendment, by Purchaser and Seller, or in the case of a waiver, by the party against whom the waiver is effective. No failure or delay by either party in exercising any right, power or privilege hereunder will operate as a waiver thereof nor will any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or privilege. The rights and remedies provided herein will be cumulative and, except as otherwise expressly provided herein, are not exclusive of any rights or remedies provided by applicable Law.

31

9.6     Counterparts; Electronic Signatures. For the convenience of the parties hereto, this Agreement may be executed in any number of counterparts, each such counterpart being deemed to be an original instrument, and all such counterparts shall together constitute the same agreement. Facsimile signatures or signatures delivered by email in PDF or similar format will be deemed original signatures for purposes of this Agreement.

9.7     Governing Law. This Agreement will be governed by and construed in accordance with the Laws of the State of Delaware without regard to principles of conflicts of Law. The parties hereby submit to the exclusive jurisdiction of the United States Bankruptcy Court for the District of Delaware and any U.S. federal appellate court therefrom (or, if the United States Bankruptcy Court for the District of Delaware declines to or may not accept authority or jurisdiction over a particular matter, the United States District Court for the District of Delaware; or if the United States District Court for the District of Delaware declines to or may not accept jurisdiction over a particular matter, any state court within Suffolk County of the Commonwealth of Massachusetts) for any actions, suits or proceedings arising out of or relating to this Agreement or the transactions contemplated herein (and each party agrees not to commence any action, suit or proceeding relating thereto except in such courts), and each party further agrees that service of any process, summons, notice or document by U.S. registered mail to its respective address set forth in Section 9.9 shall be effective service of process for any action, suit or proceeding brought against it in any such court.

9.8     Waiver of Jury Trial. EACH OF THE PARTIES HERETO HEREBY IRREVOCABLY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATED TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

9.9     Notices. Unless otherwise set forth herein, any notice, request, instruction or other document to be given hereunder by any party to the other parties shall be in writing and shall be deemed duly given (i) upon delivery, when delivered personally, (ii) one (1) day after being sent by overnight courier or when sent by facsimile transmission or email PDF format (with a confirming copy sent by overnight courier), and (iii) three (3) calendar days after being sent by registered or certified mail, postage prepaid, as follows:

If to Seller, to:

Pear Therapeutics, Inc.
c/o Sonoran Capital Advisors
1733 N. Greenfield Rd; Suite 104
Mesa, AZ 85205
1733 N. Greenfield Rd; Suite 104
Attn: Christopher D. Guiffre
Email: chris.guiffre@peartherapeutics.com

With a copy to:

> Foley Hoag LLP
> 1301 Avenue of the Americas, 25th Floor
> New York, NY 10019
> Attention: Alison Bauer
> Email: abauer@foleyhoag.com

If to Purchaser, to:

> [Purchaser]
> [ADDRESS]
> [ADDRESS]
> Attention: [●]
> Email: [●]

With a copy to:

> [Purchaser's Representative]
> [ADDRESS]
> [ADDRESS]
> Attention: [●]
> Email: [●]

or to such other Persons or addresses as may be designated in writing by the party to receive such notice.

9.10    <u>Binding Effect; Assignment</u>. This Agreement will be binding upon and inure to the benefit of the parties and their respective successors and permitted assigns. Nothing in this Agreement will create or be deemed to create any Third Party beneficiary rights in any Person or entity not a party to this Agreement. Neither party may assign or delegate its rights or obligations under this Agreement (whether by operation of Law, change of control, or otherwise), either in whole or in part, without the prior written consent of the other party, <u>provided</u>, <u>however</u>, that (a) Purchaser may assign, delegate or transfer any of its rights or obligations under this Agreement to any wholly-owned direct or indirect Subsidiary of Purchaser by sending written notice to, but without the consent of, Seller; <u>provided</u>, <u>further</u>, that such assignment, delegation or transfer shall not relieve Purchaser of any liability or obligation under this Agreement. Any attempted assignment, delegation or transfer in violation of this Section 9.10 shall be void and without effect.

9.11    <u>Third Party Beneficiaries</u>. No Person other than the parties hereto (and any permitted assignee under Section 9.10) shall have any rights or claims under this Agreement.

9.12    <u>Publicity</u>. Neither Seller nor Purchaser will issue any press release or make any public statement regarding the transactions contemplated hereby, without the prior written consent of the other party.

9.13    <u>Severability</u>. If any provision of this Agreement is determined to be invalid or unenforceable, the validity or enforceability of the other provisions of this Agreement as a whole

33

will not be affected; and, in such event, Seller and Purchaser shall negotiate in good faith to change and interpret such provision so as to best accomplish the objectives of such provision within the limits of applicable Law or applicable court decision.

9.14    <u>Non-Recourse</u>. Except as expressly contemplated by this Agreement, no past, present or future director, officer, employee, advisor, lawyer, agent, representative, incorporator, member, partner or equityholder of Seller or Purchaser shall have any liability for (i) any obligations or liabilities of Seller or Purchaser under this Agreement or the certificate of incorporation and by-laws or comparable organizational documents of Seller or Purchaser, or (ii) any claim based on, in respect of, or by reason of, the transactions contemplated hereby and thereby.

9.15    <u>Time of the Essence</u>. Time is of the essence in the performance of each of the obligations of the parties and with respect to all covenants and conditions to be satisfied by the parties in this Agreement and all documents, acknowledgments and instruments delivered in connection herewith.

9.16    <u>Miscellaneous</u>.

(a)    <u>Certain Interpretations</u>. Unless otherwise expressly provided, for purposes of this Agreement, the following rules of interpretation shall apply:

(i)    All references in this Agreement to Articles, Sections, Schedules and Exhibits shall be deemed to refer to Articles, Sections, Schedules and Exhibits to this Agreement.

(ii)    All Exhibits and Schedules annexed hereto or referred to herein are hereby incorporated in and made a part of this Agreement as if set forth in full herein. Any capitalized terms used in any Schedule or Exhibit but not otherwise defined therein shall be defined as set forth in this Agreement.

(iii)    The Article, Section and paragraph captions herein are for convenience of reference only, do not constitute part of this Agreement and shall not be deemed to limit or otherwise affect any of the provisions hereof.

(iv)    The words "include," "includes" and "including," when used herein, shall be deemed in each case to be followed by the words "without limitation" (regardless of whether such words or similar words actually appear).

(v)    When calculating the period of time before which, within which or following which any act is to be done or step taken pursuant to this Agreement, the date that is the reference date in calculating such period shall be excluded.

(vi)    Any reference in this Agreement to $ shall mean United States Dollars.

(vii)    Any reference in this Agreement to gender shall include all genders, and words imparting the singular number only shall include the plural and vice versa.

34

(viii)   The words such as "herein," "hereinafter," "hereof," and "hereunder" refer to this Agreement as a whole and not merely to a subdivision in which such words appear unless the context otherwise requires.

(b)      The parties hereto agree that they have been represented by legal counsel during the negotiation and execution of this Agreement and, therefore, waive the application of any Law, regulation, holding or rule of construction providing that ambiguities in an agreement or other document shall be construed against the party drafting such agreement or document.

(c)      This Agreement is the result of the joint efforts of the parties hereto, and each provision hereof has been subject to the mutual consultation, negotiation, and agreement of the parties and there is to be no construction against any party based on any presumption of that party's involvement in the drafting thereof.

(d)      Purchaser acknowledges hereby that Seller may not comply with the provisions of any bulk transfer laws of any jurisdiction in connection with the transactions contemplated by this Agreement.

      **IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed by their respective duly authorized officers as of the date first above written.

                                  **SELLER:**

                                  **PEAR THERAPEUTICS (US), INC.**

                                By: _____
                                      Name: [●]
                                      Title: [●]

      **IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed by their respective duly authorized officers as of the date first above written.

**PURCHASER:**

**[PURCHASER]**

By: _____
     Name: [●]
     Title: [●]

**Schedule 5.5**

**Intellectual Property**

5.5(a)-(d)

Masimo Corporation ("Masimo") initiated trademark opposition proceedings against three of Seller's pending federal trademark applications to register the reSET and reSET-O trademarks with the U.S. Patent and Trademark Office on September 10, 2019. On March 18, 2020, Masimo filed trademark cancellation proceedings against three of Seller's reSET and reSET-O trademark registrations with the USPTO. Opposition and cancellation proceedings are both heard by the USPTO's Trademark Trial and Appeal Board ("TTAB"). The TTAB decided both proceedings in the Seller's favor in decisions issued in June 2022. In August 2022, Masimo appealed these decisions in the United States District Court for the Northern District of California. Seller is vigorously defending against Masimo's action.   On January 19, 2023, Masimo initiated a trademark opposition proceeding against Seller's pending federal trademark application to register reSET-A and filed a trademark cancellation proceeding against another of Seller's reSET trademark registrations with the TTAB.

**Schedule 5.6**

**Litigation**

See schedule 5.5

**EXHIBIT A**

**<u>Acquired Assets</u>**

All of the assets relating to the Business as of the Closing Date, including the following:

1.  All tangible assets, including, without limitation, (a) all fixtures, furniture, office supplies, and office equipment, (b) all computers, printers, servers, and other information technology equipment, (c) all machinery, tools and tooling, supplies, spare parts, packaging materials, and other operational and manufacturing equipment, (d) all fixtures, (e) all motor vehicles, (f) all signage, advertising materials, marketing materials, literature and manuals, and samples, (g) all Documents, and (h) all other tangible personal property, including without limitation all of the assets specifically listed on Exhibit A-[●] hereto.

2.  All intangible assets, including, without limitation, (a) all Acquired Avoidance Actions, (b) all claims, prepayments, deposits (including security deposits and equipment deposits), refunds, causes of action, choses in action, rights of recovery, rights of setoff, rights of recoupment, and prepaid items relating to or arising from the Acquired Assets or the Assumed Liabilities; (c) all warranties and similar rights, (d) all certificates, licenses, permits, franchises, rights, approvals, clearances, orders, exemptions, registrations, authorizations, and similar rights issued by any governmental entity or agency, (e) all intangible books, records, files, accounts, ledgers, correspondence, and communications, (f) all rights under Contracts, agreements, and instruments that are not Executory Contracts, including, without limitation, all rights under non-disclosure and confidentiality agreements that are not Executory Contracts and all rights under insurance Contracts and to insurance proceeds for claims under such insurance Contracts and to such insurance proceeds arising after the Closing Date to the extent that the insurance proceeds are related to other Acquired Assets, (g) all good will, and (h) all other intangible personal property, including without limitation all of the assets specifically listed on Exhibit A-[●] hereto.

3.  To the extent not included in the foregoing, all Seller Owned Intellectual Property, including without limitation all of the assets specifically listed on Exhibit A-[●] hereto.

4.  Without limiting the generality of the foregoing, all of the assets specifically listed on Annex A-[●] hereto.

For the avoidance of doubt, notwithstanding the foregoing, (1) none of the Excluded Assets are included within the Acquired Assets, and (2) all of the Assumed Executory Contracts are Acquired Assets.

**EXHIBIT B**

## Assumed Executory Contracts

**[TBD]**

1.        [The Seller Leases.]

**EXHIBIT C**

**Assumed Liabilities**

1.      Obligations arising after the Closing Date under any Assumed Executory Contract (listed on Exhibit B to this Agreement).

**EXHIBIT D**

**Excluded Assets**

1.      All Cash and Cash Equivalents of Seller.

2.      All checking, savings, and deposit accounts of Seller, and all securities accounts of Seller.

3.      All Accounts Receivable.

4.      [The Raleigh Lease and Raleigh Sublease.]

5.      All claims, prepayments, deposits (including security deposits and equipment deposits), refunds, rights of recovery, rights of setoff, rights of recoupment, and prepaid items relating to or arising from the Excluded Assets or the Excluded Liabilities.

6.      All benefit, retirement, pension, or similar plans relating to employees of Seller.

7.      All (a) rights, claims, or causes of action that Seller may have against any Person with respect to any Excluded Asset or Excluded Liability, (b) Avoidance Actions other than the Acquired Avoidance Actions, (c) estate claims of Seller not constituting Acquired Assets.

8.      Any asset of Seller, which would constitute an Acquired Asset (if owned by Seller on the Closing Date) that is conveyed or otherwise disposed of during the period from the date of this Agreement to the Closing Date to the extent such conveyance or other disposal is permitted under, and not prohibited by, Section 7.3 of this Agreement.

9.      All losses, loss carry forwards and rights to receive refunds or credits with respect to any and all Taxes of Seller.

10.     All corporate seals, minute books, charter documents, corporate stock record books, original tax and financial records (including Tax Returns), and such other files, books and records of Seller that Seller is required by Law to retain or that exclusively relate to the Excluded Assets and Excluded Liabilities; provided, however, that Seller shall provide Purchaser with reasonable access to and copies of any such materials (excluding income Tax Returns).

11.     All shares of capital stock or other equity interests (a) in Seller, and (b) of Seller in any other entity, including without limitation Pear Therapeutics Security Corporation, a Massachusetts corporation ("Pear Therapeutics Security Corporation").

12.     [Pear Therapeutics Security Corporation and all assets owned by Pear Therapeutics Security Corporation].

13.     All insurance providing coverage for or related to current and former directors and officers and the actions and omissions thereof, and all claims and proceeds thereof.

**EXHIBIT E**

**FORM OF BILL OF SALE**

**THIS BILL OF SALE** dated as of [Closing Date], by and among [PURCHASER], a [jurisdiction of organization] [type of entity] ("Purchaser"), and PEAR THERAPEUTICS (US), INC., a Delaware corporation ("Seller").

**WHEREAS**, the parties hereto have entered into an Asset Purchase Agreement dated as of [Date of APA] (the "Purchase Agreement") providing for the acquisition by Purchaser of certain assets of Seller, and the parties now desire to carry out such transaction by Seller's execution and delivery to Purchaser of this instrument evidencing the vesting in Purchaser of all of the assets and rights of Seller hereinafter described. Capitalized terms used but not defined herein have the meanings given them in the Purchase Agreement.

**NOW, THEREFORE**, in consideration of the premises and of other valuable consideration to Seller in hand paid pursuant to the Purchase Agreement, at or before the execution and delivery hereof, the receipt and sufficiency of which by Seller is hereby acknowledged, Seller hereby conveys, grants, sells, transfers, sets over, assigns, remises, releases and delivers unto Purchaser, its successors and assigns forever, effective as of 12:01 a.m. EDT on the date hereof (the "Effective Time"), all of Seller's right, title and interest in and to the Acquired Assets, free and clear of any Encumbrances, without representation or warranty, express or implied.

PURCHASER HEREBY ACKNOWLEDGES AND AGREES THAT SELLER MAKES NO REPRESENTATIONS OR WARRANTIES WHATSOEVER, EXPRESS OR IMPLIED, WITH RESPECT TO ANY MATTER RELATING TO THE ACQUIRED ASSETS OTHER THAN AS SET FORTH IN THE PURCHASE AGREEMENT. WITHOUT IN ANY WAY LIMITING THE FOREGOING, SELLER HEREBY DISCLAIMS ANY WARRANTY, EXPRESS OR IMPLIED, OF MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE AS TO ANY PORTION OF THE ACQUIRED ASSETS. PURCHASER FURTHER ACKNOWLEDGES THAT PURCHASER HAS CONDUCTED AN INDEPENDENT INSPECTION AND INVESTIGATION OF THE PHYSICAL CONDITION OF THE ACQUIRED ASSETS AND ALL SUCH OTHER MATTERS RELATING TO OR AFFECTING THE ACQUIRED ASSETS AS PURCHASER DEEMED NECESSARY OR APPROPRIATE AND THAT, IN PROCEEDING WITH ITS ACQUISITION OF THE ACQUIRED ASSETS, PURCHASER IS DOING SO BASED SOLELY UPON SUCH INDEPENDENT INSPECTIONS AND INVESTIGATIONS. ACCORDINGLY, PURCHASER WILL ACCEPT THE ACQUIRED ASSETS AT THE CLOSING "AS IS," "WHERE IS," AND "WITH ALL FAULTS."

Seller hereby covenants that, from time to time after the delivery of this instrument, at Purchaser's request and without further consideration, Seller will do, execute, acknowledge, and deliver, or will cause to be done, executed, acknowledged and delivered, all and every such further acts, deeds, conveyances, transfers, assignments, powers of attorney and assurances as reasonably may be required, and in form and substance reasonably acceptable to Seller, to effectively convey, transfer to and vest in Purchaser, and to put Purchaser in possession of, any of the Acquired Assets.

Nothing in this instrument, express or implied, is intended or shall be construed to confer upon, or give to, any person, firm or corporation other than Purchaser and its successors and assigns, any remedy or claim under or by reason of this instrument or any terms, covenants or condition hereof, and all of the terms, covenants and conditions, promises and agreements in this instrument contained shall be for the sole and exclusive benefit of Purchaser and its successors and assigns.

This instrument is executed by, and shall be binding upon, Seller and its successors and assigns for the uses and purposes above set forth and referred to, effective as of the Effective Time.

This instrument shall be governed by, interpreted under, and construed and enforceable in accordance with, the laws of the State of New York, without regard to its conflict of law principle provisions.

To the extent this Bill of Sale is inconsistent with any terms or conditions of the Purchase Agreement, the terms and conditions of the Purchase Agreement shall control.

This instrument may be executed in counterpart signature pages, all of which when so executed and attached hereto shall constitute one and the same original.

*[Signature pages follow.]*

**IN WITNESS WHEREOF**, the parties hereto have executed this Bill of Sale or caused this Bill of Sale to be executed on their behalf by a duly authorized officer as of the date first set forth above.

**SELLER:**

**PEAR THERAPEUTICS (US), INC.**

By: _____
    Name:
    Title:

**SELLER:**

**PEAR THERAPEUTICS (US), INC.**

By: _____
    Name:
    Title:

**IN WITNESS WHEREOF**, the parties hereto have executed this Bill of Sale or caused this Bill of Sale to be executed on their behalf by a duly authorized officer as of the date first set forth above.

**PURCHASER:**

**[PURCHASER]**

By: _____

    Name: [●]
    Title: [●]

**EXHIBIT F**

**FORM OF ASSIGNMENT AND ASSUMPTION AGREEMENT**

This ASSIGNMENT AND ASSUMPTION AGREEMENT (the "Agreement") is entered into as of [Closing Date], by and among PEAR THERAPEUTICS (US), INC., a Delaware corporation ("Assignor"), and [PURCHASER], a [jurisdiction of organization] [type of entity] ("Assignee").

**W I T N E S E T H:**

WHEREAS, Assignor and Assignee entered into that certain Asset Purchase Agreement dated as of [Date of APA] (the "Purchase Agreement"; capitalized terms used but not otherwise defined herein have the meanings given them in the Purchase Agreement); and

WHEREAS, pursuant to the Purchase Agreement, Assignor has agreed to assign certain rights and agreements to Assignee, and Assignee has agreed to assume certain obligations of Assignor, as set forth therein and herein.

NOW, THEREFORE, in consideration of the premises, the mutual covenants set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto mutually covenant and agree as follows:

1.      Effective as of 12:01 a.m. EDT on the date hereof, Assignor hereby sells, transfers and assigns (collectively the "Assignment") to the Assignee, and Assignee hereby assumes and agrees to pay, perform and discharge, each and all of the Assumed Liabilities, as that term is defined in the Purchase Agreement.

2.      This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns.

3.      This Agreement shall be governed by, interpreted under, and construed and enforceable in accordance with, the laws of the State of New York, without regard to its conflict of law principle provisions and rules.

4.      To the extent this Agreement is inconsistent with any terms or conditions in the Purchase Agreement, the Purchase Agreement shall control.

5.      This Agreement may be executed in counterpart signature pages, all of which when so executed and attached hereto shall constitute one and the same original.

*[Signature pages follow.]*

IN WITNESS WHEREOF, the parties hereto have executed this Assignment and Assumption Agreement as of the date first set forth above.

**ASSIGNOR:**

**PEAR THERAPEUTICS (US), INC.**

By: _____
      Name:
      Title:

**ASSIGNEE:**

**[PURCHASER]**

By: _____
      Name: [●]
      Title: [●]

**EXHIBIT G**

**FORM OF INTELLECTUAL PROPERTY ASSIGNMENT AGREEMENT**

This Intellectual Property Assignment Agreement (this "Assignment") is effective as of [Closing Date], and is made and entered into between PEAR THERAPEUTICS (US), INC., a Delaware corporation ("Assignor"), and [PURCHASER], a [jurisdiction of organization] [type of entity] ("Assignee"), pursuant to the Asset Purchase Agreement dated as of [Date of APA] (the "Purchase Agreement"), by and among the Assignor and Assignee. Capitalized terms used in this Assignment without definition shall have the respective meanings given to them in the Purchase Agreement. Assignor and Assignee agree as follows:

1.      For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Assignor hereby assigns, transfers and contributes to Assignee, any and all of its right, title and interest in and to all Seller Owned Intellectual Property held or used in the conduct of, or which in any way, directly or indirectly, comprise or relate to, or are necessary or useful for the further research, development and commercialization of, the Business, as well as all goodwill appurtenant thereto, all rights therein provided by international conventions and treaties, all rights of priority and renewals, and all rights to sue and recover damages for past, present and future infringement, dilution, misappropriation or other violation thereof, whether such rights are registered or not, and all rights of priority therein, and the right to recover for damages and profits and all other remedies for past infringements thereof, and any and all appurtenant goodwill associated therewith, but excluding any Excluded Assets.

2.      Upon and at any time after the Closing, at Assignee's request, Assignor shall, without further consideration, execute and deliver to Assignor such other instruments and documents, and take such other actions as Assignor may reasonably deem necessary or desirable to effect, evidence, record and perfect the transfer and assignment contemplated by this Assignment.

3.      This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns.

4.      This Agreement shall be governed by, interpreted under, and construed and enforceable in accordance with, the laws of the State of New York, without regard to its conflict of law principle provisions and rules.

5.      To the extent this Agreement is inconsistent with any terms or conditions in the Purchase Agreement, the Purchase Agreement shall control.

6.      This Agreement may be executed in counterpart signature pages, all of which when so executed and attached hereto shall constitute one and the same original.

*[Signature pages follow.]*

IN WITNESS WHEREOF, the parties hereto have executed this Intellectual Property Assignment Agreement as of the date first set forth above.

**ASSIGNOR:**

**PEAR THERAPEUTICS (US), INC.**


By: _____
    Name:
    Title:


**ASSIGNEE:**

**[PURCHASER]**


By: _____
    Name: [●]
    Title: [●]

**[EXHIBIT H**

**FORM OF TRANSITION SERVICES AGREEMENT]**

# EXHIBIT 2

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| PEAR THERAPEUTICS, INC., *et al.*[1] | Case No. 23-10429 (TMH) |
| | (Joint Administration Requested) |
| Debtors. | |

**NOTICE OF BID DEADLINE, AUCTION, AND SALE HEARING IN CONNECTION
WITH THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS[2]**

NOTICE IS HEREBY GIVEN, as follows:

1.      On April 7, 2023, the above-captioned debtors and debtors in possession (the "Debtors") filed a motion [D.I. __] (the "Bid Procedures Motion") with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") seeking approval of, among other things, (i) bid procedures (the "Bid Procedures") in connection with the sale (the "Sale") of substantially all of the Debtors' assets (the "Assets"), (ii) procedures to determine cure amounts and deadlines for objections to certain contracts and leases to be assumed and assigned by the Debtors (the "Contract Procedures"), (iii) the date, time, and place for a sale hearing (the "Sale Hearing") and for objections to the Sale, and (iv) related relief. On April __, 2023, the Bankruptcy Court entered an order [D.I. __] approving the Bid Procedures Motion, the Bid Procedures and the Contract Procedures (the "Bid Procedures Order").[3]

2.      All interested parties are invited to submit a Qualified Bid and to make offers to purchase the Assets in accordance with the terms of the Bid Procedures and the Bid Procedures Order.  Potential Bidders are encouraged to review the Bid Procedures attached to the Bid Procedures Order carefully and, for further information, are invited to contact the Debtors' financial advisor, MTS Health Partners, L.P. ("MTS"), Attn: Michael Ludwig (ludwig@mtspartners.com).  **The Bid Deadline is May 1, 2023 at 4:00 p.m. (ET).**

3.      Consistent with the Bid Procedures Order, in the event the Debtors receive one or more Qualified Bids on or before the Bid Deadline, the Debtors shall conduct the Auction for the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Pear Therapeutics, Inc. (3092) and Pear Therapeutics (US), Inc. (7074).  The Debtors' corporate headquarters are located at 200 State Street, 13th Fl., Boston, MA 02109.

[2] This notice is subject to the full terms and conditions of the Bid Procedures Motion, the Bid Procedures and the Bid Procedures Order (each as defined below).  The Bid Procedures Order shall control in the event of any conflict. The Debtors encourage parties in interest to review such documents in their entirety and consult an attorney if they have questions or want advice.

[3] Capitalized terms not otherwise defined herein shall have the meanings given to such terms in the Bid Procedures Order and/or the Bid Procedures Motion.

purpose of determining the highest or otherwise best bid for the Assets. **The Auction shall be organized by the Debtors' professionals and conducted at the offices of Foley Hoag LLP, 1301 Avenue of the Americas, 25th Floor, New York, NY 10019, or by remote audio and/or video link, beginning at May 3, 2023 at 10:00 a.m. (ET)** or such other location and time as may be announced prior to the Auction to all Qualified Bidders, the U.S. Trustee and the official committee of unsecured creditors, if any, formed in the Chapter 11 Case (the "Committee"). The Auction will be recorded and transcribed by an authorized court reporter. The Debtors, their professionals, the Committee, if any, Qualified Bidders and their respective members and professionals, and creditors and their respective counsel, financial advisors, and/or other authorized representatives may attend the Auction. The only persons or entities who will be permitted to bid at the Auction are the authorized representatives of each Qualified Bidder. The time and place of the Auction may change with notice. The Debtors shall file notice of any such change with the court not later 4:00 p.m. (ET) one (1) day prior to the Auction, and shall serve such notice by email or fax on all creditors who notified Debtors' counsel of their intention to attend the Auction, in the manner and time set forth in paragraph 4 below, as well as on all bidders and Committee counsel, if any.

4.      **Any party-in-interest wishing to attend the Auction, whether virtually or in person, may request to attend by contacting, no later than one (1) day prior to the start of the Auction, Foley Hoag LLP, 1301 Avenue of the Americas, 25th Floor, New York, NY 10019, Attn: Alison D. Bauer, Esq.** (abauer@foleyhoag.com) **and Jiun-Wen Bob Teoh, Esq.** (jteoh@foleyhoag.com) **and providing their e-mail address and/or fax number, so as to receive notice of any change in the date, time or location of the Auction.**

5.      At the Sale Hearing on **May 8, 2023 at 10:00 a.m. (ET)**, the Debtors intend to seek the Bankruptcy Court's approval of the sale of the Assets to the Successful Bidder at the Auction. In determining the Successful Bidder, in addition to the amount of cash or cash equivalent consideration offered, the Debtors will consider, among other factors, the assumption of liabilities contemplated by each Qualified Bid, certainty of closing, and other factors relating to the value and certainty of the bid. The Sale Hearing will be held before the Honorable Thomas M. Horan, Judge at the United States Bankruptcy Court for the District of Delaware, 824 Market Street, __ Floor, Courtroom No. __, Wilmington, Delaware 19801. The Debtors, in the exercise of their business judgment, may adjourn the Sale Hearing without notice or with limited and shortened notice to parties, including by (i) an announcement of such adjournment at the Sale Hearing or at the Auction and (ii) the filing of a notice of adjournment with the Bankruptcy Court.

6.      In the event an Auction will occur, no later than **May 2, 2023 at 12:00 p.m. (ET)**, the Debtors will provide e-mail or fax notice containing the identities of all Qualified Bidders (the "Qualified Bidder Notice") to all Contract Parties who timely submitted a written request for such notice pursuant to the instructions below. The Debtors shall file with the Bankruptcy Court a notice of a Successful Bid, Successful Bidder, Back-Up Bid, and Back-Up Bidder, and the amount of the Successful Bid and Back-Up Bid with the Court within the earlier of (a) five (5) business hours after the close of the auction or (b) noon the day after the close of the Auction. At that same time, the Debtors shall serve notice of the foregoing information (the "Successful Bidder Notice") by email or fax to all Contract Parties and creditors who have timely requested notice of such information. To receive a copy of the Qualified Bidder Notice and the Successful Bidder Notice,

3

a Contract Party must submit a written request in writing to Debtors' counsel, Foley Hoag LLP, 1301 Avenue of the Americas, 25th Floor, New York, NY 10019, Attn: Alison D. Bauer, Esq. (abauer@foleyhoag.com) and Jiun-Wen Bob Teoh, Esq. (jteoh@foleyhoag.com), and provide Debtors' counsel with their email addresses or fax numbers by no later than the Bid Deadline.

7.      At the Sale Hearing, the Bankruptcy Court may enter such orders as it deems appropriate under applicable law and as required by the circumstances and equities of this Chapter 11 Case, and the Debtors, subject to the terms of the Successful Bidder's asset purchase agreement, may seek entry of an order which provides, except with respect to any Assumed Liabilities, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, trade creditors, litigation claimants and other creditors, holding liens, claims, encumbrances or interests of any kind or nature whatsoever against or in all or any portion of the Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated or subordinate), arising under or out of, in connection with, or in any way relating to the Debtors, the Assets, the operation of the Debtors' business prior to the Closing Date or the transfer of the Assets to the Successful Bidder, that all such persons are forever prohibited and permanently enjoined from (i) commencing or continuing in any manner any action or other proceeding, the employment of process, or any act (whether in law or equity, in any judicial, administrative, arbitral, or other proceeding) to collect or recover any interest; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order with respect to an interest, (iii) creating, perfecting, or enforcing any interest, or (iv) asserting any right of subrogation of any kind with respect to an interest, in each case as against the Successful Bidder or its designee, any of their respective affiliates or subsidiaries, or any of their respective representatives, or any of their respective property or assets, including the Assets.

8.      The Debtors propose that, to be timely and otherwise eligible for consideration by the Bankruptcy Court, objections, if any, to the Sale of the Assets or to entry of the form of Sale Order, whether the Sale(s) be to the Stalking Horse Bidder(s) or to a Successful Bidder(s) as selected at an Auction ("Sale Objections"), or to (a) any of the Cure Amounts listed by the Debtors and/or (b) the proposed assumption and assignment of any Contract in connection with the Sale, including, without limitation, the Debtors' ability to assign the Contract without the Contract Party's consent, and/or (c) the adequate assurance of future performance to be provided by the Successful Bidder, as applicable (a "Contract Objection") shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court for the District of Delaware, shall set forth the name of the objecting party, the nature and amount of any claims or interests held or asserted against the Debtors' estate or properties, the basis for the objection and the specific grounds therefor including setting forth with specificity any and all obligations that the objecting party asserts must be cured or satisfied in respect to the Contract(s), and/or any and all objections to the potential assumption and assignment of such Contract, together with all documentation supporting such cure claim or objection, and shall be filed with the Bankruptcy Court and be served upon: (i) counsel for the Debtors, Foley Hoag LLP, 1301 Avenue of the Americas, 25th Floor, New York, NY 10019 Attn: Alison D. Bauer, Esq. (e-mail: abauer@foleyhoag.com) and Jiun-Wen Bob Teoh, Esq. (e-mail jteoh@foleyhoag.com); and Gibbons P.C., 300 Delaware Avenue, Suite 1015, Wilmington, Delaware 19801, Attn: Chantelle D. McClamb, Esq. (e-mail: cmcclamb@gibbonslaw.com) and One Gateway Center, Newark, New

4

Jersey 07102, Attn: Robert K. Malone, Esq. (e-mail: rmalone@gibbonslaw.com); (ii) counsel to the Committee, if any; and (iii) the Office of the United States Trustee, 844 King Street, Suite 2207, Wilmington, Delaware 19801 Attn: Jane Leamy (e-mail Jane.M.Leamy@usdoj.gov) (collectively, the "Sale Objection Parties"). **Contract Objections must be filed and received by the Sale Objection Parties prior to 4:00 p.m. (ET) on the date that is fourteen (14) days following service of the Cure Notice but no later than May 1, 2023; provided, however, that objections to the adequate assurance of future performance to be provided by the Successful Bidder (or any designee thereof) (an "Adequate Assurance Objection") must be received by the Sale Objection Parties prior to Sale Hearing. Sale Objections must be filed and received by the Sale Objection Parties no later than May 5, 2023 at 4:00 p.m. (ET).**

9.      The deadline for objections to: (a) the conduct of the Auction itself, should an Auction be conducted; (b) the form of Sale Order approving such Successful Bidder's asset purchase agreement; and (c) the proposed asset purchase agreement between the Debtors and such Successful Bidder shall be **May 5, 2023 at 4:00 p.m. (ET).**

10.      Contract Parties shall assert any objection no later than the Sale Hearing, to the assignment of executory contracts and unexpired leases to such Successful Bidder solely on the grounds that the proposed assignment does not comply with 11 U.S.C. § 365(b)(1)(C), with any such objection that is not resolved prior to or at the Sale Hearing to be heard at a later-scheduled hearing as the Bankruptcy Court deems appropriate.

5

11.    You may obtain a copy of the Bid Procedures Motion, the Bid Procedures, the Bid Procedures Order, the form of Sale Order, and the Notice of Sale Hearing by sending a request to the Debtors' counsel, attention to Alison D. Bauer, Esq. (abauer@foleyhoag.com). These documents are also published on the website maintained by the Debtors' claims and noticing agent in these Chapter 11 Cases at https://cases.stretto.com/PearTherapeutics located under the tab labeled "Sale Documents."

Dated: April __, 2023
Wilmington, Delaware

/s/ _____
Chantelle D. McClamb (No. 5978)
**GIBBONS P.C.**
300 Delaware Avenue, Suite 1015
Wilmington, Delaware 19801
Telephone: (302) 518-6300
E-mail: cmcclamb@gibbonslaw.com

-and-

Robert K. Malone (*pro hac vice pending*)
Kyle P. McEvilly (*pro hac vice pending*)
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey  07102
Telephone:  (973) 596-4500
E-mail:  rmalone@gibbonslaw.com
        kmcevilly@gibbsonlaw.com

-and-

Alison D. Bauer (*pro hac vice pending*)
Jiun-Wen Bob Teoh (*pro hac vice pending*)
**FOLEY HOAG LLP**
1301 Avenue of the Americas, 25th Floor
New York, New York 10019
Telephone: (212) 812-0400
Email: abauer@foleyhoag.com
jteoh@foleyhoag.com

-and-

Euripides Dalmanieras (*pro hac vice pending*)
Christian Garcia (*pro hac vice pending*)
Jasmine Brown (*pro hac vice pending*)
**FOLEY HOAG LLP**
155 Seaport Boulevard
Boston, Massachusetts 02210
Telephone: (617) 832-1000

6

Email: edalmani@foleyhoag.com
cgarcia@foleyhoag.com
jnbrown@foleyhoag.com

*Proposed Attorneys for Debtors Pear
Therapeutics, Inc. and Pear Therapeutics
(US), Inc.*

# **EXHIBIT 3**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| PEAR THERAPEUTICS, INC., *et al.*[1] | Case No. 23-10429 (TMH) |
| | (Joint Administration Requested) |
| Debtors. | |

**NOTICE OF DEBTORS' INTENT TO ASSUME AND ASSIGN CERTAIN UNEXPIRED**
**LEASES AND EXECUTORY CONTRACTS AND FIXING OF CURE AMOUNTS[2]**

NOTICE IS HEREBY GIVEN, as follows:

1.       On April __, 2023, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered an order [D.I. __] (the "Bid Procedures Order"),[3] pursuant to the bid procedures motion [D.I. __] (the "Bid Procedures Motion"), approving among other things (i) bid procedures (the "Bid Procedures") in connection with the sale (the "Sale") of substantially all of the Debtors' assets (the "Assets") and (ii) procedures to determine cure amounts and deadlines for objections to certain contracts and leases to be assumed and assigned by the Debtors (the "Contract Procedures").

2.       At a hearing on **May 8, 2023 at 10:00 a.m.** (ET) (the "Sale Hearing"), the Debtors intend to seek approval of the sale of the Assets (the "Sale") to such party as determined pursuant to the Bid Procedures to have submitted the highest or otherwise best bid for the Assets (the "Successful Bidder"). The Sale Hearing will be held before the Honorable Thomas M. Horan, Judge at the United States Bankruptcy Court for the District of Delaware, 824 Market Street, __ Floor, Courtroom No. __, Wilmington, Delaware 19801. The Debtors, in the exercise of their business judgment, may adjourn the Sale Hearing without notice or with limited and shortened notice to parties, including by (i) an announcement of such adjournment at the Sale Hearing or at the Auction and (ii) the filing of a notice of adjournment with the Bankruptcy Court.

3.       The Debtors seek to have the Sale be free and clear of all liens, claims, encumbrances, defenses (including, without limitation, rights of setoff) and interests, including,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Pear Therapeutics, Inc. (3092) and Pear Therapeutics (US), Inc. (7074).  The Debtors' corporate headquarters are located at 200 State Street, 13th Fl., Boston, MA 02109.

[2] This notice is subject to the full terms and conditions of the Bid Procedures Motion, the Bid Procedures and the Bid Procedures Order (each as defined below). The Bid Procedures Order shall control in the event of any conflict. The Debtors encourage parties in interest to review such documents in their entirety and consult an attorney if they have questions or want advice.

[3] Capitalized terms not otherwise defined herein shall have the meanings given to such terms in the Bid Procedures Order and/or the Bid Procedures Motion.

without limitation, security interests of whatever kind or nature, mortgages, conditional sales or title retention agreements, pledges, deeds of trust, hypothecations, liens, encumbrances, assignments, preferences, debts, easements, charges, suits, licenses, options, rights-of-recovery, judgments, orders and decrees of any court or foreign or domestic governmental entity, taxes (including foreign, state and local taxes), licenses, covenants, restrictions, indentures, instruments, leases, options, off-sets, claims for reimbursement, contribution, indemnity or exoneration, successor, product, environmental, tax, labor, ERISA, CERCLA, alter ego and other liabilities, causes of action, contract rights and claims, to the fullest extent of the law, in each case, of any kind or nature (including, without limitation, all "claims" as defined in section 101(5) of the Bankruptcy Code), known or unknown, whether pre-petition or post-petition, secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, perfected or unperfected, liquidated or unliquidated, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, material or non-material, statutory or non-statutory, matured or unmatured, legal or equitable to the maximum extent permitted by section 363 of the Bankruptcy Code.

4.      At the Sale Hearing, the Bankruptcy Court may enter such orders as it deems appropriate under applicable law and as required by the circumstances and equities of these Chapter 11 Cases, and the Debtors, subject to the terms of the Successful Bidders' asset purchase agreement, may seek entry of an order which provides, except with respect to any Assumed Liabilities, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, trade creditors, litigation claimants and other creditors, holding liens, claims, encumbrances or interests of any kind or nature whatsoever against or in all or any portion of the Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated or subordinate), arising under or out of, in connection with, or in any way relating to the Debtors, the Assets, the operation of the Debtors' business prior to the Closing Date or the transfer of the Assets to the Successful Bidder, shall be forever prohibited and permanently enjoined from (i) commencing or continuing in any manner any action or other proceeding, the employment of process, or any act (whether in law or equity, in any judicial, administrative, arbitral, or other proceeding) to collect or recover any interest; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order with respect to an interest, (iii) creating, perfecting, or enforcing any interest, or (iv) asserting any right of subrogation of any kind with respect to an interest, in each case as against the Successful Bidder or its designee, any of their respective affiliates or subsidiaries, or any of their respective representatives, or any of their respective property or assets, including the Assets.

5.      Pursuant to the Bid Procedures Order and the Contract Procedures approved therein, the Debtors intend to seek approval to assume and assign certain unexpired leases and executory contracts, pursuant to section 365 of the Bankruptcy Code (collectively, the "Contracts") to the Successful Bidder. You have been identified as a party to a Contract (a "Contract Party") that the Debtors may seek to assume and assign. The Contract with respect to which you have been identified as a non-Debtor party is set forth on **Exhibit 1** annexed hereto.  The Debtors asserts that no consent of any Contract Party is required for the assumption or assignment of any Contract, regardless of the applicable terms of the Contract, by operation of section 365 of the Bankruptcy Code.

3

6.      The Debtors believe that any and all defaults (other than the filing of this Chapter 11 Case), actual pecuniary losses and any amounts due under the Contract can be cured and satisfied in full by the payment of the cure amounts (the "Cure Amounts"), which are also set forth on **Exhibit 1**; provided, however, the Debtors may adjust the Cure Amount with respect to any Contract on **Exhibit 1** as necessary and in accordance with the Bid Procedures. **The inclusion of a Contract on Exhibit 1 is not, and should not be deemed to be, an agreement or acknowledgement by the Debtors that such Contract is an executory contract or unexpired lease under Bankruptcy Code section 365 or that such Contract will be assumed and assigned by the Debtors; the Successful Bidder has the right up to the Closing to determine whether or not to have your Contract assigned.**

7.      Any party objecting to (i) any of the Cure Amounts set forth on **Exhibit 1** hereto, and/or (ii) the proposed assumption and assignment of any Contract in connection with the Sale, including, without limitation, the Debtors' ability to assign the Contract without the Contract Party's consent, and/or (iii) the adequate assurance of future performance to be provided by the Successful Bidder, as applicable (a "Contract Objection"), shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court for the District of Delaware, shall set forth the name of the objecting party, the nature and amount of any claims or interests held or asserted against the Debtors' estates or properties, the basis for the objection and the specific grounds therefor including setting forth with specificity any and all obligations that the objecting party asserts must be cured or satisfied in respect to the Contract(s), and/or any and all objections to the potential assumption and assignment of such Contract, together with all documentation supporting such cure claim or objection, and shall be filed with the Bankruptcy Court and be served upon: (i) counsel for the Debtors, Foley Hoag LLP, 1301 Avenue of the Americas, 25th Floor, New York, NY 10019 (Attn: Alison D. Bauer, Esq. (e-mail: abauer@foleyhoag.com); and Jiun-Wen Bob Teoh, Esq. (e-mail jteoh@foleyhoag.com); and Gibbons P.C., 300 Delaware Avenue, Suite 1015, Wilmington, Delaware 19801, Attn: Chantelle D. McClamb, Esq. (e-mail: cmcclamb@gibbonslaw.com) and One Gateway Center, Newark, New Jersey 07102, Attn: Robert K. Malone, Esq. (e-mail: rmalone@gibbonslaw.com); (ii) counsel to the Committee, if any; and (iii) the Office of the United States Trustee, 844 King Street, Suite 2207, Wilmington, Delaware 19801 Attn: Jane Leamy (e-mail: Jane.M.Leamy@usdoj.gov) (collectively, the "Sale Objection Parties") (collectively, the "Sale Objection Parties") so as to be received before 4:00 p.m. (ET) on the date that is **fourteen (14) days following service of the Cure Notice but no later than May 1, 2023** (the "Contract Objection Deadline"); provided, however, that if the Debtors amend the Cure Notice to add a contract or lease, which they shall do no later than **April 24, 2023**, unless they receive the consent of the Contract Counterparty to each contract or lease on the proposed amended Cure Notice, the non-Debtor party to the added contract or lease shall have until the earlier of (i) fourteen (14) days after service of notice of adding a contract or lease; or (ii) the Sale Hearing to submit a Contract Objection with respect to the contract or lease added by the Debtors' amendment (the "Amended Contract Objection Deadline"); provided further, that if the Debtors amend the Cure Notice to reduce the Cure Amount of a Contract or lease, except where such reduction was upon mutual agreement of the parties, the non-Debtor party to the Contract or lease with the reduced Cure Amount shall have until the Amended Contract Objection Deadline to object to the Cure Amount; and provided further, that in the event the Auction results in a Successful Bidder, the Contract Parties shall have until the Amended Contract Objection Deadline to object to the assignment of executory contracts and unexpired leases to such Successful Bidder, other than to the Cure Amount which shall be subject to the

Contract Objection Deadline, with any such objection being heard at the Sale Hearing or at a later-scheduled hearing as the Bankruptcy Court deems appropriate.[4]

8.        In the event an Auction will occur, no later than 12:00 p.m. (ET) on **May 2, 2023**, the Debtors will provide e-mail or fax notice containing the identities of all Qualified Bidders (the "Qualified Bidder Notice") to all Contract Parties who timely submitted a written request for such notice pursuant to the instructions below. The Debtors shall file with the Bankruptcy Court a notice of a Successful Bid, Successful Bidder, Back-Up Bid, and Back-Up Bidder, and the amount of the Successful Bid and Back-Up Bid with the Court within the earlier of (a) five (5) business hours after the close of the auction or (b) noon the day after the close of the Auction. At that same time, the Debtors shall serve notice of the foregoing information (the "Successful Bidder Notice") by email or fax to all Contract Parties and creditors who have timely requested notice of such information.  To receive a copy of the Qualified Bidder Notice and the Successful Bidder Notice, a Contract Party must submit a written request in writing to Debtors' counsel, Foley Hoag LLP, 1301 Avenue of the Americas, 25th Floor, New York, NY 10019, Attn: Alison D. Bauer, Esq. (abauer@foleyhoag.com) and Jiun-Wen Bob Teoh, Esq. (jteoh@foleyhoag.com), and provide Debtors' counsel with their email addresses or fax numbers by no later than the Bid Deadline.

9.        Where a Contract Party files an objection meeting the requirements of paragraph 7 herein, objecting to the assumption by the Debtors and assignment to the Successful Bidder of such Contract and/or asserting a cure amount higher than the proposed Cure Amount listed on this notice, the Debtors, the Contract Party and the Successful Bidder shall meet and confer in good faith to attempt to resolve any such objection without Bankruptcy Court intervention.  In the event the Contract Objection is not resolved, such Contract Objection will be heard at the Sale Hearing or at a later-scheduled hearing as the Bankruptcy Court deems appropriate.  To the extent it is determined that the Cure Amount exceeds the amount set forth on **Exhibit 1**, the Successful Bidder may determine not to have such Contract assumed and assigned to it.

10.        If no Cure Amount is due, or no other amount is due or owing under the Contract, and the Contract Party to such agreement does not otherwise object to the Debtors' assumption, sale and assignment of such agreement, no further action needs to be taken on the part of that Contract Party.

11.        **Unless a Contract Objection is filed and served before the Contract Objection Deadline or the Amended Contract Objection Deadline, as applicable, all Contract Parties shall be (i) forever barred from objecting to the proposed Cure Amounts and from asserting any additional cure or other amounts (other than as may be asserted in an Additional Cure Notice), and the Debtors and the Successful Bidder shall be entitled to rely solely upon the proposed Cure Amounts set forth in the Cure Notices; (ii) deemed to have consented to the assumption and assignment, (iii) forever barred and estopped from asserting or claiming against the Debtors or the Successful Bidder, as applicable, that any additional amounts are due or other defaults exist (other than as may be asserted in an Additional Cure Notice), that conditions to assignment must be satisfied under such Contracts, including without**

---

[4] Bankruptcy Code section 365(b)(1)(C) provides: "If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee provides adequate assurance of future performance under such contract or lease."

**limitation adequate assurance of future performance; (iv) precluded from objecting to the Cure Amount (if any) and the assumption and assignment; and (v) barred and estopped from asserting or claiming that their Contract contains an enforceable consent right.**

12.     The Debtors' decision to assume and assign a Contract is subject to the Successful Bidder's, as applicable, designation in accordance with the Contract Procedures and the Bankruptcy Court's approval of and consummation of the Sale.  Absent consummation of the Sale, a Contract shall not be deemed assumed and assigned and shall in all respects be subject to further administration under the Bankruptcy Code.  The designation of any agreement as a Contract shall not constitute or be deemed to be a determination or admission by the Debtors or the Successful Bidder that such document is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code (all rights with respect thereto being expressly reserved including, for the avoidance of doubt, the Debtors' right to change the designation of any agreement as an executory contract or unexpired lease under Bankruptcy Code section 365 at any time prior to the Closing Date).

13.     You may obtain a copy of the Bid Procedures Motion, the Bid Procedures, the Bid Procedures Order, and related Sale documents by sending a request to the Debtors' counsel, attention to Alison D. Bauer, Esq. (abauer@foleyhoag.com). These documents are also published on the website maintained by the Debtors' claims and noticing agent in this Chapter 11 Case at https://cases.stretto.com/PearTherapeutics located under the tab labeled "Sale Documents."

Dated: April __, 2023                              /s/ _____
Wilmington, Delaware                          Chantelle D. McClamb (No. 5978)
                                                            **GIBBONS P.C.**
                                                            300 Delaware Avenue, Suite 1015
                                                            Wilmington, Delaware 19801
                                                            Telephone: (302) 518-6300
                                                            E-mail: cmcclamb@gibbonslaw.com

                                                            -and-

                                                            Robert K. Malone (*pro hac vice pending*)
                                                            Kyle P. McEvilly (*pro hac vice pending*)
                                                            **GIBBONS P.C.**
                                                            One Gateway Center
                                                            Newark, New Jersey  07102
                                                            Telephone:  (973) 596-4500
                                                            E-mail:  rmalone@gibbonslaw.com
                                                                          kmcevilly@gibbsonlaw.com

                                                            -and-

                                                            Alison D. Bauer (*pro hac vice pending*)
                                                            Jiun-Wen Bob Teoh (*pro hac vice pending*)
                                                            **FOLEY HOAG LLP**

1301 Avenue of the Americas, 25th Floor
New York, New York 10019
Telephone: (212) 812-0400
Email: abauer@foleyhoag.com
jteoh@foleyhoag.com

-and-

Euripides Dalmanieras (*pro hac vice pending*)
Christian Garcia (*pro hac vice pending*)
Jasmine Brown (*pro hac vice pending*)
**FOLEY HOAG LLP**
155 Seaport Boulevard
Boston, Massachusetts 02210
Telephone: (617) 832-1000
Email: edalmani@foleyhoag.com
        cgarcia@foleyhoag.com
        jnbrown@foleyhoag.com

*Proposed Attorneys for Debtors Pear Therapeutics,*
*Inc. and Pear Therapeutics (US), Inc.*

# **EXHIBIT 4**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| PEAR THERAPEUTICS, INC., *et al.*[1] | Case No. 23-10429 (TMH) |
| | (Joint Administration Requested) |
| Debtors. | |

**NOTICE OF DEBTORS' INTENT TO ASSUME**
**AND ASSIGN CERTAIN ADDITIONAL LEASES AND EXECUTORY**
**CONTRACTS AND FIXING OF ADDITIONAL CURE AMOUNTS[2]**

NOTICE IS HEREBY GIVEN, as follows:

1.      On April __, 2023, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered an order [D.I. __] (the "Bid Procedures Order"),[3] pursuant to the bid procedures motion [D.I. __] (the "Bid Procedures Motion"), approving, among other things, (i) bid procedures (the "Bid Procedures") in connection with the sale (the "Sale") of substantially all of the Debtors' assets (the "Assets") and (ii) procedures to determine cure amounts and deadlines for objections to certain contracts and leases to be assumed and assigned by the Debtors (the "Contract Procedures").

2.      Pursuant to the Bid Procedures Order and the Contract Procedures approved therein, the non-Debtor parties to the Contracts (the "Contract Parties") had until 4:00 p.m. (ET) on the date that is fourteen (14) days following service of the Cure Notice but no later than May 1, 2023 (the "Contract Objection Deadline"), to object to (i) the Cure Amounts listed by the Debtors (other than the Additional Cure Amounts (defined below)) and to propose alternative cure amounts; and/or (ii) the proposed assumption and assignment of any Contract in connection with the Sale, including, without limitation, the Debtors' ability to assign the Contracts without the Contract Parties' consent, and/or (iii) the adequate assurance of future performance to be provided by the Successful Bidder, as applicable (a "Contract Objection").

3.      At a hearing on May 8, 2023 at 10:00 a.m. (ET) (the "Sale Hearing"), the Debtors intend to seek approval of the sale of the Assets (the "Sale") to such party as determined pursuant to the Bid Procedures to have submitted the highest or otherwise best bid for the Assets (the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Pear Therapeutics, Inc. (3092) and Pear Therapeutics (US), Inc. (7074).  The Debtors' corporate headquarters are located at 200 State Street, 13th Fl., Boston, MA 02109.

[2] This notice is subject to the full terms and conditions of the Bid Procedures Motion, the Bid Procedures and the Bid Procedures Order (each as defined below). The Bid Procedures Order shall control in the event of any conflict. The Debtors encourage parties in interest to review such documents in their entirety and consult an attorney if they have questions or want advice.

[3] Capitalized terms not otherwise defined herein shall have the meanings given to such terms in the Bid Procedures Order and/or the Bid Procedures Motion.

"Successful Bidder"). The Sale Hearing will be held before the Honorable Thomas H. Horan, Judge at the United States Bankruptcy Court for the District of Delaware, 824 Market Street, __ Floor, Courtroom No. __, Wilmington, Delaware 19801. The Debtors, in the exercise of their business judgment, may adjourn the Sale Hearing without notice or with limited and shortened notice to parties, including by (i) an announcement of such adjournment at the Sale Hearing or at the Auction and (ii) the filing of a notice of adjournment with the Bankruptcy Court.

4.      The Debtors seek to have the Sale be free and clear of all liens, claims, encumbrances, defenses (including, without limitation, rights of setoff) and interests, including, without limitation, security interests of whatever kind or nature, mortgages, conditional sales or title retention agreements, pledges, deeds of trust, hypothecations, liens, encumbrances, assignments, preferences, debts, easements, charges, suits, licenses, options, rights-of-recovery, judgments, orders and decrees of any court or foreign or domestic governmental entity, taxes (including foreign, state and local taxes), licenses, covenants, restrictions, indentures, instruments, leases, options, off-sets, claims for reimbursement, contribution, indemnity or exoneration, successor, product, environmental, tax, labor, ERISA, CERCLA, alter ego and other liabilities, causes of action, contract rights and claims, to the fullest extent of the law, in each case, of any kind or nature (including, without limitation, all "claims" as defined in section 101(5) of the Bankruptcy Code), known or unknown, whether pre-petition or post-petition, secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, perfected or unperfected, liquidated or unliquidated, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, material or non-material, statutory or non-statutory, matured or unmatured, legal or equitable to the maximum extent permitted by Bankruptcy Code section 363.

5.      On _____, 2022, the Debtors filed the *Notice of Debtors' Intent to Assume and Assign Certain Unexpired Leases and Executory Contracts and Fixing of Cure Amounts* [D.I. __] (the "Initial Cure Notice"). Through this notice, the Debtors hereby supplement the Initial Cure Notice to either add Contract(s) inadvertently omitted from the Initial Cure Notice or to list the additional Cure Amounts (the "Additional Cure Amounts") the Debtors believe are owed with respect to such Contract(s).  You have been identified as a party to a Contract the Debtors *may* seek to assume and assign that is listed on the supplemental Contract list attached hereto as **Exhibit 1** (each an "Additional Assumed Contract").

6.      Any objections to the Additional Cure Amounts (such objection being the only permissible grounds for objection) shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court for the District of Delaware, shall set forth the name of the objecting party, the nature and amount of any claims or interests held or asserted against the Debtors' estates or properties, the basis for the objection and the specific grounds therefor including setting forth with specificity any and all obligations that the objecting party asserts must be cured or satisfied in respect to the Contract(s) together with all documentation supporting such cure claim, and shall be filed with the Bankruptcy Court and be served upon: (i) counsel for the Debtors, Foley Hoag LLP, 1301 Avenue of the Americas, 25th Floor, New York, NY 10019 Attn: Alison D. Bauer, Esq. (e-mail: abauer@foleyhoag.com) and Jiun-Wen Bob Teoh, Esq. (e-mail: jteoh@foleyhoag.com); and Gibbons P.C., 300 Delaware Avenue, Suite 1015, Wilmington, Delaware 19801, Attn: Chantelle D. McClamb, Esq. (e-mail: cmcclamb@gibbonslaw.com) and One Gateway Center, Newark, New Jersey 07102, Attn: Robert K. Malone, Esq. (e-mail: rmalone@gibbonslaw.com); (ii) counsel to the Committee, if any; and

3

(iii) the Office of the United States Trustee, 844 King Street, Suite 2207, Wilmington, Delaware 19801 Attn: Jane Leamy  (collectively, the "Sale Objection Parties"); so as to actually be received by **4:00 p.m. (ET) on or before the earlier of (a) 4:00 p.m. on the date that is fourteen (14) days after service of the additional cure notice or (b) the Sale Hearing** (the "Amended Contract Objection Deadline"), which deadline may be extended in the sole discretion of the Debtors and the Successful Bidder.

7.      If no objection to the Additional Cure Amounts is filed by the Amended Contract Objection Deadline, the Bankruptcy Court will enter an order (an "Additional Assumption Order") authorizing the assumption and assignment of the Additional Assumed Contract effective as of the date of this notice. In the event an objection is filed by the Amended Contract Objection Deadline, and the parties cannot consensually agree on the Additional Cure Amounts, the Debtors will seek expedited determination of the objection by the Bankruptcy Court on the first available hearing date.

8.      If no Additional Cure Amount is due or you agree with the Additional Cure Amount set forth on **Exhibit 1**, no further action needs to be taken and the Bankruptcy Court will enter an order authorizing the assumption by the Debtors and assignment to the Successful Bidder of the contracts listed on **Exhibit 1**.

9.      You may obtain a copy of the Bid Procedures Motion, the Bid Procedures, the Bid Procedures Order, and related Sale documents by sending a request to the Debtors' counsel, attention to Alison D. Bauer, Esq. (abauer@foleyhoag.com) and Jiun-Wen Bob Teoh, Esq. (e-mail: jteoh@foleyhoag.com).These documents are also published on the website maintained by the Debtors' claims and noticing agent in this Chapter 11 Case at https://cases.stretto.com/PearTherapeutics located under the tab labeled "Sale Documents.".

Dated: April __, 2023                         /s/ _____
Wilmington, Delaware                      Chantelle D. McClamb (No. 5978)
                                                        **GIBBONS P.C.**
                                                        300 Delaware Avenue, Suite 1015
                                                        Wilmington, Delaware 19801
                                                        Telephone: (302) 518-6300
                                                        E-mail: cmcclamb@gibbonslaw.com

                                                        -and-

                                                        Robert K. Malone (*pro hac vice pending*)
                                                        Kyle P. McEvilly (*pro hac vice pending*)
                                                        **GIBBONS P.C.**
                                                        One Gateway Center
                                                        Newark, New Jersey  07102
                                                        Telephone:  (973) 596-4500
                                                        E-mail:  rmalone@gibbonslaw.com
                                                                     kmcevilly@gibbsonlaw.com

-and-

Alison D. Bauer (*pro hac vice pending*)
Jiun-Wen Bob Teoh (*pro hac vice pending*)
**FOLEY HOAG LLP**
1301 Avenue of the Americas, 25th Floor
New York, New York 10019
Telephone: (212) 812-0400
Email: abauer@foleyhoag.com
jteoh@foleyhoag.com

-and-

Euripides Dalmanieras (*pro hac vice pending*)
Christian Garcia (*pro hac vice pending*)
Jasmine Brown (*pro hac vice pending*)
**FOLEY HOAG LLP**
155 Seaport Boulevard
Boston, Massachusetts 02210
Telephone: (617) 832-1000
Email: edalmani@foleyhoag.com
        cgarcia@foleyhoag.com
        jnbrown@foleyhoag.com

*Proposed Attorneys for Debtors Pear Therapeutics, Inc. and Pear Therapeutics (US), Inc.*

5