**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br><br>PEAR THERAPEUTICS, INC., *et al.*[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 23-10429 (TMH)<br><br>(Jointly Administered)<br><br>**Hearing Date: May 22, 2023 at 2:00 p.m. (ET)**<br>**Obj. Deadline: May 3, 2023 at 4:00 p.m. (ET)** |

**FIRST OMNIBUS MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER
AUTHORIZING THE DEBTORS TO REJECT CERTAIN EXECUTORY CONTRACTS
*NUNC PRO TUNC* TO APRIL 7, 2023**

> **EACH CONTRACT COUNTERPARTY RECEIVING THIS MOTION SHOULD
> LOCATE THEIR RESPECTIVE NAMES AND REJECTED CONTRACTS
> IDENTIFIED ON EXHIBIT 1 TO THE PROPOSED ORDER ATTACHED HERETO
> AS EXHIBIT A.**

Pear Therapeutics, Inc. and Pear Therapeutics (US), Inc., the debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this *First Omnibus Motion of the Debtors for Entry of an Order Authorizing the Debtors to Reject Certain Executory Contracts Nunc Pro Tunc to April 7, 2023* (the "Motion"). In support of the Motion, the Debtors respectfully state as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction to consider and determine the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Pear Therapeutics, Inc. (3092) and Pear Therapeutics (US), Inc. (7074). The Debtors' corporate headquarters are located at 200 State Street, 13th Fl., Boston, MA 02109.

within the meaning of 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief sought herein are sections 105(a) and 365(a) of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") and Rule 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

3. Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, the Debtors consent to the entry of a final order or judgment with respect to the Motion if it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

**BACKGROUND**

**A. General**

4. On April 7, 2023 (the "Petition Date"), the Debtors commenced the above-captioned chapter 11 cases (the "Chapter 11 Cases") by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the Court.

5. The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. As of the date of the Motion, no trustee, examiner or statutory committee has been appointed in the Chapter 11 Cases.

6. Additional information regarding the circumstances leading to the commencement of the Chapter 11 Cases and information regarding the Debtors' business and capital structure are set forth in detail in the *Declaration of Christopher Guiffre in Support of the Debtors' Chapter 11*

*Petitions and First Day Pleadings* (the "First Day Declaration"), filed on the Petition Date and incorporated herein by reference.[2]

**B.    The Rejected Contracts**

7.    Prior to and after the Petition Date, the Debtors and their advisors analyzed the executory contracts to which they are parties. During the process, the Debtors considered, *inter alia*, the ongoing value and projected costs of maintaining certain of their executory contracts in light of the Debtors' strategy for the Chapter 11 Cases, which is to sell all or substantially all of the Debtors' assets pursuant to section 363 of the Bankruptcy Code.

8.    As a result of this analysis, the Debtors identified the executory contracts set forth in **Exhibit 1** (as amended or modified, the "Rejected Contracts") to the proposed order attached hereto as **Exhibit A** (the "Proposed Order"), in the exercise of their business judgment, as being inconsistent with their sale strategy, and determined that continuing to perform under the Rejected Contracts would be burdensome to the Debtors' operations and counterproductive to the Debtors' desired outcome in the Chapter 11 Cases.

9.    As detailed in the *Declaration of Christopher Guiffre in Support of the Debtors' Omnibus Motion for Entry of an Order Authorizing the Debtors to Reject Certain Executory Contracts Nunc Pro Tunc to April 7, 2023* (the "Guiffre Declaration"), attached hereto as **Exhibit B**, the Rejected Contracts fall into four general categories.

10.    First, the Debtors seek to reject a pre-petition separation agreement with a former employee pursuant to which the Debtors are obligated to reimburse the former employee for COBRA benefits on a post-petition basis (the "Separation Agreement"). *See* Guiffre Decl. ¶¶4-5.

---

[2] The First Day Declaration and other relevant case information are available on the following website maintained by the Debtors' proposed claims and noticing agent, Stretto, Inc.:  https://cases.stretto.com/PearTherapeutics

3

The Debtors derive no tangible pecuniary benefits from the Separation Agreement, which are unnecessary to the sale of all or substantially all of the Debtors' assets. *See id.*

11. Second, the Debtors request authority to reject (i) an executory agreement dated December 6, 2022 with the California Department of Health Care Services ("DHCS" and the "DHCS Agreement"), pursuant to which the Debtors agreed to provide certain management services and training, including the ability to register health care providers, calculate beneficiary incentives, and distribute beneficiary incentives; and (ii) executory contracts with Q2i, LLC; Tremendous, Inc.; and TTEC Government Solutions, LLC (collectively, the "DHCS Subcontractors") to provide services and/or products in connection with the DHCS Agreement (collectively, the "DHCS Subcontracts"). *See id.* ¶6. DHCS is not utilizing any of the Debtors' products, and the DHCS Agreement and the DHCS Subcontracts are not material to the Debtors' business. *See id.* ¶7. Under the DHCS Agreement, the Debtors effectively act as an intermediary coordinating the provision of services and/or products from the DHCS Subcontractors to DHCS. *See id.* ¶6.

12. Third, the Debtors request authority to reject ten service agreements (collectively, the "Service Agreements"), in which the Debtors pay certain service providers for various services and/or licenses the Debtors utilized prior to the Petition Date in connection with operation of their business.[3] *See id.* ¶8. The Debtors have determined that continuing to perform under the Service Agreements is inconsistent with the Debtors' strategy for the Chapter 11 Cases, which is to effectuate a sale of all or substantially all of their assets, because the services and/or licenses

---

[3] As set forth on Exhibit 1 to the Proposed Order, the Service Agreements are: (i) the Order Form with Definitive Healthcare LLC (formerly Monocl AB); (ii) the Master Services Agreement with Entrée Health, LLC; (iii) the Master Services Agreement with Hannaford & Dumas, Inc.; (iv) the Marketplace Subscription Agreement with HealthVerity, Inc.; (v) the Service and License Agreement with HealthVerity, Inc.; (vi) the Master Services Agreement with Komodo Health, Inc.; (vii) the Master Services Agreement with LabCorp Drug Development (formerly Covance Market Access Services, Inc.); (viii) the Order Form with LinkedIn Corporation; (ix) the Master Services Agreement with MultiMedia Medical LLC; and (x) the Palantir Master Subscription Agreement with Palantir Technologies Inc. *See id.* ¶9.

4

provided under the Services Agreements are unnecessary to pursuing a sale of all or substantially all of the Debtors' assets and the projected costs of continuing to perform under the Service Agreements are burdensome to the Debtors' estates.  *See id.* ¶10.

13.     Fourth, the Debtors request authority to reject an Educational Grant Agreement with Medscape, LLC ("Medscape" and the "Medscape Agreement"), pursuant to which the Debtors agreed to provide grants to Medscape to support an educational initiative entitled, "*Reimagining the Future of Mental Healthcare: Advances in Prescription Digital Therapeutics*." *See id.* ¶11.  The Debtors have determined that continuing to perform under the Medscape Agreement is unnecessary to pursuing a sale of all or substantially all of the Debtors' assets and the projected costs of continuing to perform under the Medscape Agreement is burdensome to the Debtors' estates.  *See id.* ¶12.

## RELIEF REQUESTED

14.     By the Motion, the Debtors request, pursuant to sections 105(a) and 365(a) of the Bankruptcy Code and Bankruptcy Rule 6006 entry of an order, substantially in the form of the Proposed Order, authorizing the Debtors to reject the Rejected Contracts *nunc pro tunc* to the Petition Date.

## BASIS FOR RELIEF REQUESTED

15.     Section 365(a) of the Bankruptcy Code permits a debtor in possession, subject to the Court's approval, to "reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a); *see also In re Univ. Med. Ctr.*, 973 F.2d 1065, 1075 (3d Cir. 1992).  "This provision allows a trustee to relieve the bankruptcy estate of burdensome agreements which have not been completely performed." *Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins. Co.*, 83 F.3d 735, 741 (5th Cir. 1996) (quoting *Phoenix Exploration, Inc. v. Yaquinto (In re Murexco Petroleum,*

*Inc.)*, 15 F.3d 60, 62 (5th Cir. 1994)); *see also In re Exide Techs.*, 607 F.3d 957, 967 (3d Cir. 2010); *Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp. (In re Sharon Steel Corp.)*, 872 F.2d 36, 39-40 (3d Cir. 1989).

16.   A debtor's rejection of an executory contract is governed by the "business judgment" standard. *NLRB v. Bildisco & Bildisco (In re Bildisco)*, 682 F.2d 72, 79 (3d Cir. 1982) ("The usual test for rejection of an executory contract is simply whether rejection would benefit the estate, the 'business judgment' test."); *see also Delightful Music Ltd. v. Taylor (In re Taylor)*, 913 F.2d 102, 107 (3d Cir. 1990); *Computer Sales Int'l, Inc. v. Fed. Mogul (In re Fed. Mogul Global, Inc.)*, 293 B.R. 124, 126 (D. Del. 2003); *In re HQ Global Holdings*, 290 B.R. 507, 511 (Bankr. D. Del. 2003). Rejection of executory contracts is appropriate when rejection would benefit the estate. *See Bildisco*, 682 F.2d at 79. Courts have generally approved rejection under section 365(a) of the Bankruptcy Code upon finding that a debtor exercised its sound business judgment in determining that rejection of contracts is in the best interests of its creditors and all parties in interest. *See In re Summit Land Co.*, 13 B.R. 310, 315 (Bankr. D. Utah 1981) ("[C]ourt approval under Section 365(a), if required, except in extraordinary situations, should be granted as a matter of course."). "Accordingly, the court should not interfere with or second-guess the debtors' sound business judgment unless and until evidence is presented that establishes the debtors' decision was one taken in bad faith or in gross abuse of its retained business discretion." *In re Wheeling-Pittsburgh Steel Corp.*, 72 B.R. 845, 846 (Bankr. W.D. Pa. 1987); *see also NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984); *Fed. Mogul Global, Inc.*, 293 B.R. at 126; *In re Trans World Airlines, Inc.*, 261 B.R. 103, 121 (Bankr. D. Del. 2001).

17.   While section 365 does not specifically address whether rejection may be effective retroactively, courts have authorized the retroactive rejection of executory contracts under the

bankruptcy court's equitable powers when such rejection promotes the purposes of section 365(a). *See Thinking Machs. v. Mellon Fin. Servs. Corp. (In re Thinking Machs. Corp.)*, 67 F.3d 1021, 1028 (1st Cir. 1995) ("In the section 365 context . . . bankruptcy courts may enter retroactive orders of approval, and should do so when the balance of equities preponderates in favor of such remediation."); *In re Chi-Chi's, Inc.*, 305 B.R. 396, 399 (Bankr. D. Del. 2004) (acknowledging that a bankruptcy court may approve a rejection retroactive to the date the motion is filed after balancing the equities in a particular case); *In re Fleming Cos., Inc.*, 304 B.R. 85, 96 (Bankr. D. Del. 2003) (approving retroactive rejection); *Stonebriar Mall Ltd. P'ship v. CCI Wireless, LLC (In re CCI Wireless, LLC)*, 297 B.R. 133, 140 (D. Col. 2003); *In re Amber's Stores*, 193 B.R. 819, 827 (N.D. Tex. 1996); *Constant Ltd. P'ship Jamesway Corp. (In re Jamesway Corp.)*, 179 B.R. 33, 37-38 (S.D.N.Y. 1995) (affirming the bankruptcy court's retroactive approval of lease rejection).

18. Courts have further held that retroactive rejection of executory contracts may be approved after "balancing the equities" of the case and concluding that the equities weigh in favor of the debtor. *See In Re Chi-Chi's, Inc.*, 305 B.R. at 399. In balancing the equities, courts typically consider multiple factors, including the costs that a delayed rejection would impose on a debtor. *See, e.g. Constant Ltd. P'ship v. Jamesway Corp. (In re Jamesway Corp.)*, 179 B.R. 33, 33-39 (S.D.N.Y. 1995).

19. In addition, section 105(a) of the Bankruptcy Code grants bankruptcy courts broad statutory authority to enforce the Bankruptcy Code's provisions either under the specific statutory language of the Bankruptcy Code or under equitable common law doctrines. *See* 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code].").

20.     In this case, the balance of equities favors retroactive rejection of the Rejected Contracts, *nunc pro tunc* to the Petition Date.  The Debtors have determined in their business judgment that none of the Rejected Contracts are necessary for the Debtors' objectives in the Chapter 11 Cases.  As explained above, the Debtors no longer have a need for the services under the Rejected Contracts. The Debtors submit that continuing to perform under the Rejected Contracts, and thus continuing to accrue potential administrative expenses on account of the Rejected Contracts, would be burdensome to the Debtors' operations and counterproductive to the Debtors' desired outcome in the Chapter 11 Cases, particularly where the Rejected Contracts do not benefit the Debtors' estates.

21.     The Debtors further submit that the counterparties to the Rejected Contracts will not be unduly prejudiced if the rejection is deemed effective as of the Petition Date, as the Debtors have sought the relief requested at the earliest possible moment in the Chapter 11 Cases and will promptly serve notice of the Motion on each of the counterparties, who will have a sufficient opportunity to respond.

22.     Because maintaining the Rejected Contracts would not be beneficial to the Debtors and their estates, creditors and all parties in interest, the Debtors request that the rejection of the Rejected Contracts identified in **Exhibit 1** to the Proposed Order, to be effective as of the Petition Date.

**REQUEST FOR WAIVER OF STAY**

23.     Bankruptcy Rule 6004(h) provides that any "order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  The Debtors submit that the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors for the reasons set

forth herein. Accordingly, the Debtors maintain that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent applicable.

## DEBTORS' RESERVATION OF RIGHTS

24. Nothing in the Motion is intended or should be construed as (i) an admission as to the validity of any claim against the Debtors; (ii) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtors; (iii) a waiver of any claims or causes of action which may exist against any creditor or interest holder; (iv) an admission that a contract is, in fact, executory or (v) an approval, assumption, or adoption of any agreement, contract, lease, program, or policy between the Debtors and any third party under section 365 of the Bankruptcy Code.

## NOTICE

25. The Debtors will provide notice of the Motion to: (i) the Office of the United States Trustee for the District of Delaware; (ii) counterparties to the Rejected Contracts and any other parties who are to be provided notice under the provisions of the Rejected Contracts; (iii) the holders of the thirty (30) largest unsecured claims against the Debtors; (iv) counsel to any official committee that is appointed; and (v) all parties who, as of the filing of the Motion, have requested notice in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## CONCLUSION

WHEREFORE, the Debtors respectfully submit that, in light of the foregoing facts and circumstances, rejection of the Rejected Contracts is necessary effective as of the Petition Date, prudent, and in the best interest of the Debtors, their estate, their creditors, and all other parties in

interest, and respectfully request that the Court grant the relief requested herein and such other and further relief as the Court may deem just and proper.

| | |
|---|---|
| Dated: April 19, 2023<br>Wilmington, Delaware | */s/ Chantelle D. McClamb*<br>Chantelle D. McClamb (No. 5978)<br>**GIBBONS P.C.**<br>300 Delaware Avenue, Suite 1015<br>Wilmington, Delaware 19801<br>Telephone: (302) 518-6300<br>Email: cmcclamb@gibbonslaw.com<br><br>-and-<br><br>Robert K. Malone (admitted *pro hac vice*)<br>Kyle P. McEvilly (admitted *pro hac vice*)<br>**GIBBONS P.C.**<br>One Gateway Center<br>Newark, New Jersey 07102<br>Telephone: (973) 596-4500<br>Email: rmalone@gibbonslaw.com<br>         kmcevilly@gibbsonlaw.com<br><br>-and-<br><br>Alison D. Bauer (admitted *pro hac vice*)<br>Jiun-Wen Bob Teoh (admitted *pro hac vice*)<br>**FOLEY HOAG LLP**<br>1301 Avenue of the Americas, 25th Floor<br>New York, New York 10019<br>Telephone: (212) 812-0400<br>Email: abauer@foleyhoag.com<br>         jteoh@foleyhoag.com<br><br>-and- |

Euripides Dalmanieras (admitted *pro hac vice*)
Christian Garcia (admitted *pro hac vice*)
Jasmine Brown (admitted *pro hac vice*)
**FOLEY HOAG LLP**
155 Seaport Boulevard
Boston, Massachusetts 02210
Telephone: (617) 832-1000
Email: edalmani@foleyhoag.com
      cgarcia@foleyhoag.com
      jnbrown@foleyhoag.com

*Proposed Attorneys for Debtors Pear Therapeutics, Inc. and Pear Therapeutics (US), Inc.*