**Exhibit B**

**Guiffre Declaration**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>PEAR THERAPEUTICS, INC., *et al.*[1]<br><br>       Debtors. | Chapter 11<br><br>Case No. 23-10429 (TMH)<br><br>(Jointly Administered) |

**DECLARATION OF CHRISTOPHER GUIFFRE IN SUPPORT OF THE FIRST OMNIBUS MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO REJECT CERTAIN EXECUTORY CONTRACTS *NUNC PRO TUNC* TO APRIL 7, 2023**

I, Christopher Guiffre, of full age, hereby declare as follows:

1.    I am the Chief Financial Officer and Chief Operating Officer of Pear Therapeutics, Inc. and Pear Therapeutics (US), Inc. (collectively, "Pear" or the "Debtors"), the above captioned debtors and debtors in possession. I have worked at Pear for more than five years. In these capacities, I am familiar with the Debtors' business, day-to-day operations and financial affairs.

2.    I am authorized to make this Declaration on behalf of the Debtors in support of the *First Omnibus Motion of the Debtors for Entry of an Order Authorizing the Debtors to Reject Certain Executory Contracts Nunc Pro Tunc to April 7, 2023* (the "Motion").[2] The facts set forth in this Declaration are personally known to me and, if called as a witness, I would testify to them.

3.    By the Motion, the Debtors seek to reject one employee separation agreement (the "Separation Agreement"), four executory contracts relating to a management services arrangement between the Debtors and the California's Department of Health Care Services ("DHCS"), ten

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Pear Therapeutics, Inc. (3092) and Pear Therapeutics (US), Inc. (7074). The Debtors' corporate headquarters are located at 200 State Street, 13th Fl., Boston, MA 02109.

[2] Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

executory contracts relating to various services and/or licenses provided to the Debtors, and one educational grant agreement, each as identified on **Schedule 1** attached to the Proposed Order which is **Exhibit A** to the Motion (collectively, the "Rejected Contracts").[3]

### A. The Separation Agreement

4. The Debtors are party to a separation agreement with Gordon Kass, a former Vice President of Engineering, pursuant to which the Debtors are obligated to reimburse Mr. Kass for COBRA benefits on a post-petition basis (the "Kass Separation Agreement"). Pursuant to the Kass Separation Agreement, Mr. Kass owes the Debtors obligations under a certain Employee Nondisclosure, Noncompetition, and Assignment of Intellectual Property agreement dated as of May 9, 2018. Mr. Kass also owes the Debtors obligations to abide by all common law and/or statutory obligations relating to the protection and non-disclosure of the Debtors' trade secrets and/or confidential and proprietary documents and information.

5. The Debtors derive no tangible pecuniary benefits from the Kass Separation Agreement, which are unnecessary to the sale of all or substantially all of the Debtors' assets. Accordingly, the Debtors have determined in the exercise of their business judgment that rejecting the Kass Separation Agreement will be in the best interests of the Debtors, their creditors, and the estates.

### B. The California DHCS Program

6. The Debtors and the California Department of Health Care Services ("DHCS") executed an agreement on December 6, 2022, pursuant to which the Debtors agreed to provide certain management services and training, including the ability to register health care providers, calculate beneficiary incentives, and distribute beneficiary incentives (the "DHCS Agreement").

---

[3] References to the Rejected Contracts described herein include all amendments, modifications, supplements, work orders, statements of work, exhibits and any other operative documents related to the Rejected Contracts.

In connection with the DHCS Agreement, the Debtors entered into agreements with Q2i, LLC; Tremendous, Inc., and TTEC Government Solutions, LLC to provide services and/or products (collectively, the "DHCS Subcontracts"). Under the DHCS Agreement, the Debtors effectively act as an intermediary coordinating the provision of services and/or products from the DHCS Subcontractors to DHCS.

7. DHCS is not utilizing any of the Debtors' products, and the DHCS Agreement and the DHCS Subcontracts are not material to the Debtors' business. Accordingly, the Debtors have determined in the exercise of their business judgment that rejecting the DHCS Agreement and the DHSC Subcontracts will be in the best interests of the Debtors, their creditors, and the estates.

**C. The Service Agreements**

8. The Debtors are party to various service agreements as identified on Schedule 1 to the Proposed Order attached as **Exhibit A** to the Motion (the "Service Agreements"), which the Debtors and their advisors have analyzed, considering the ongoing value and projected costs of each service agreement in light of the Debtors' strategy to effectuate a sale of all or substantially all of their assets during the Chapter 11 Cases, and have determined, in the exercise of their business judgment, are unnecessary and burdensome to achieving the Debtors' Chapter 11 objectives. Under the Service Agreements, the Debtors pay certain service providers for various services and/or licenses the Debtors utilized prior to the Petition Date in connection with operation of their business.

9. The Service Agreements consist of (i) the Order Form with Definitive Healthcare LLC (formerly Monocl AB); (ii) the Master Services Agreement with Entrée Health LLC; (iii) the Master Services Agreement with Hannaford & Dumas, Inc.; (iv) the Marketplace Subscription Agreement with HealthVerity, Inc.; (v) the Service and License Agreement with HealthVerity,

Inc.; (vi) the Master Services Agreement with Komodo Health, Inc.; (vii) the Master Services Agreement with LabCorp Drug Development (formerly Covance Market Access Services, Inc.); (viii) the Order Form with LinkedIn Corporation; (ix) the Master Services Agreement with MultiMedia Medical LLC; and (x) the Palantir Master Subscription Agreement with Palantir Technologies Inc.

10. The Debtors have determined that continuing to perform under the Service Agreements is inconsistent with the Debtors' strategy for the Chapter 11 Cases, which is to effectuate a sale of all or substantially all of their assets, because the services and/or licenses provided under the Service Agreements are unnecessary to pursuing a sale of all or substantially all of the Debtors' assets and the projected costs of continuing to perform under the Service Agreements are burdensome to the Debtors' estates.

**D. The Educational Grant Agreement**

11. The Debtors and Medscape, LLC ("Medscape") executed an Educational Grant Agreement effective as of June 14, 2022 (the "Medscape Agreement"), pursuant to which the Debtors agreed to provide grants to Medscape to support an educational initiative entitled, "Reimagining the Future of Mental Healthcare: Advances in Prescription Digital Therapeutics."

12. The Debtors have determined that continuing to perform under the Medscape Agreement is unnecessary to pursuing a sale of all or substantially all of the Debtors' assets and the projected costs of continuing to perform under the Medscape Agreement is burdensome to the Debtors' estates.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: April 19, 2023         By: */s/ Christopher Guiffre*

                                      Christopher Guiffre
                                      Chief Financial Officer & Chief Operating Officer of Pear Therapeutics, Inc. and Pear Therapeutics (US), Inc.