**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| PEAR THERAPEUTICS, INC., *et al.*,[1] | Case No. 23-10429 (TMH) |
| Debtors. | (Jointly Administered) |

**COMBINED DISCLOSURE STATEMENT
AND CHAPTER 11 PLAN OF LIQUIDATION OF
PEAR THERAPEUTICS, INC. AND PEAR THERAPEUTICS (US), INC.**

Alison D. Bauer (admitted *pro hac vice*)
Jiun-Wen Teoh (admitted *pro hac vice*)
FOLEY HOAG LLP
1301 Avenue of the Americas, 25th Floor
New York, New York 10019
Telephone: (212) 479-6000
Email: abauer@foleyhoag.com
       jteoh@ foleyhoag.com

        -and-

Euripides Dalmanieras (admitted *pro hac vice*)
Christian A. Garcia (admitted *pro hac vice*)
Jasmine N. Brown (admitted *pro hac vice*)
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, Massachusetts 02210
Telephone: (617-)832-1000
Email: edalmani@ foleyhoag.com
       cgarcia@foleyhoag.com
       jnbrown@foleyhoag.com

**COUNSEL FOR THE DEBTORS AND
DEBTORS IN POSSESSION**

Chantelle D. McClamb (No. 5978)
GIBBONS P.C.
300 Delaware Avenue, Suite 1015
Wilmington, Delaware 19801
Telephone: (302) 518-6300
Email:cmcclamb@gibbonslaw.com

        -and-

Robert K. Malone (admitted *pro hac vice*)
Kyle P. McEvilly (admitted *pro hac vice*)
GIBBONS P.C.
One Gateway Center
Newark, New Jersey 07102
Telephone: (973) 596-4500
Email:rmalone@gibbonslaw.com
       kmcevilly@gibbonslaw.com

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtors' federal tax identification number are: Pear Therapeutics, Inc. (3092) and Pear Therapeutics (US), Inc. (7074). The Debtors' corporate mailing address is c/o Sonoran Capital Advisors, 1733 N. Greenfield Rd Ste 104, Mesa AZ 85205.

Mark T. Power (admitted *pro hac vice*)
Joseph Orbach (admitted *pro hac vice*)
THOMPSON COBURN HAHN & HESSEN LLP
488 Madison Avenue
New York, New York 10022
Telephone: (212) 478-7200
Facsimile: (212) 478-7400
E-mail:mpower@thompsoncoburn.com
          jorbach@thompsoncoburn.com

Bryan J. Hall (No. 6285)
CHIPMAN BROWN CICERO & COLE, LLP
Hercules Plaza
1313 N. Market Street, Suite 5400
Wilmington, DE 19801
Telephone: (302) 434-4405
Facsimile: (302) 295-0199
Email:Hall@ChipmanBrown.com

**COUNSEL FOR THE OFFICIAL
COMMITTEE OF UNSECURED
CREDITORS**

## TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS .................................................................................................... i

DISCLAIMER ................................................................................................................... 1

INTRODUCTION .............................................................................................................. 2

RECOMMENDATION TO VOTE TO ACCEPT THE COMBINED DISCLOSURE
    STATEMENT AND PLAN ........................................................................................ 3

ARTICLE I DEFINED TERMS AND RULES OF INTERPRETATION ....................... 4

ARTICLE II CLASSIFICATION OF CLAIMS AND INTERESTS AND
    ESTIMATED RECOVERIES .................................................................................. 21

THE PROJECTED RECOVERIES SET FORTH IN THE CHART BELOW ARE
    ESTIMATES ONLY AND ARE THEREFORE SUBJECT TO CHANGE. .............. 21

  **2.1**    Classification ................................................................................................... 21

ARTICLE III BACKGROUND AND DISCLOSURES .................................................. 24

  **3.1**    General Background ......................................................................................... 24

    (a)    *The Debtors' Business and Corporate Structure.* ........................................ 24

    (b)    *The Debtors' Capital Structure.* ................................................................... 24

      i.    *Cash* ....................................................................................................... 24

      ii.    *Secured Debt and the Perceptive Settlement Agreement* ...................... 24

      iii.    *Unsecured Debt* ..................................................................................... 26

  **3.2**    Events Leading to Chapter 11 ......................................................................... 26

  **3.3**    The Chapter 11 Cases ..................................................................................... 27

    (a)    *Generally* ...................................................................................................... 27

    (b)    *"First Day" Motions and Related Applications* .......................................... 27

    (c)    *Retention of Professional Advisors* ............................................................. 29

    (d)    *The Sale of Substantially All of the Debtors' Assets* ................................. 30

    (e)    *Sale of De Minimis Assets* ........................................................................... 32

    (f)    *Schedules and Bar Dates* ............................................................................. 32

    (g)    *Perceptive Tax Claim and Motion* ............................................................... 34

    (h)    *The Wind-Down of the Estates* .................................................................... 35

    (i)    *Purchaser Responsibility for Certain Claims* ............................................. 35

    (j)    *Patient Records* ............................................................................................ 35

  **3.4**    The Warn Act Litigation and Global Settlement. ........................................... 35

i

ARTICLE IV CONFIRMATION AND VOTING PROCEDURES.................................39

**4.1**    Confirmation Procedure.................................................................39

**4.2**    Procedure for Objections.............................................................39

**4.3**    Requirements for Confirmation...................................................39

**4.4**    Classification of Claims and Interests .......................................39

**4.5**    Impaired Claims or Interests.......................................................41

**4.6**    Confirmation Without Necessary Acceptances; Cramdown .........41

(a)    Secured Creditors ..................................................................42

(b)    Unsecured Creditors..............................................................42

(c)    Interests .................................................................................42

**4.7**    Feasibility....................................................................................42

**4.8**    Best Interests Test and Liquidation Analysis ............................43

**4.9**    Acceptance of the Combined Disclosure Statement and Plan .....44

ARTICLE V CERTAIN RISK FACTORS TO BE CONSIDERED PRIOR TO
        VOTING .............................................................................................45

**5.1**    The Plan May Not Be Accepted .................................................45

**5.2**    The Plan May Not Be Confirmed ...............................................46

**5.3**    Distributions to Holders of Allowed Claims under the Combined Disclosure
        Statement and Plan May Be Inconsistent with Projections ...........46

**5.4**    Reductions to Estimated Creditor Recoveries ...........................46

**5.5**    Risks Related to Retained Causes of Action ..............................47

**5.6**    Objections to Classification of Claims .......................................47

**5.7**    Failure to Consummate the Combined Disclosure Statement and Plan ........48

**5.8**    Plan Releases May Not Be Approved..........................................48

**5.9**    Certain Tax Considerations ........................................................48

(a)    *Consequences to Holders of Allowed Class 4 Claims* ............49

(b)    *Withholding Tax Requirements* ...........................................51

ARTICLE VI TREATMENT OF UNCLASSIFIED CLAIMS.................................52

**6.1**    Administrative Claims .................................................................52

(a)    *Final Administrative Claim Bar Date* ..................................52

(b)    *Objections by the Liquidating Trust* ....................................52

(c)    *Professional Fee Claims* ......................................................52

(d)    *U.S. Trustee Fees* ................................................................53

**6.2**    Priority Tax Claims......................................................................53

ARTICLE VII TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS ........53

**7.1**   Class 1: Priority Non-Tax Claims ..........................................................53

**7.2**   Class 2: Other Secured Claims ...............................................................54

**7.3**   Class 3: WARN Act Class Settlement Claims ........................................54

**7.4**   Class 4: General Unsecured Claims ........................................................54

**7.5**   Class 5: Subordinated Claims .................................................................55

**7.6**   Class 6 Interests ......................................................................................55

**7.7**   Reservation of Rights Regarding Claims and Interests ...........................55

ARTICLE VIII ACCEPTANCE OR REJECTION OF THE COMBINED
            DISCLOSURE STATEMENT AND PLAN ..................................................55

**8.1**   Class Entitled to Vote .............................................................................55

**8.2**   Acceptance by Impaired Classes of Claims or Interests ..........................55

**8.3**   Presumed Acceptance by Unimpaired Classes .......................................56

**8.4**   Presumed Rejections by Impaired Classes ..............................................56

**8.5**   Confirmation Pursuant to Bankruptcy Code Section 1129(b) .................56

**8.6**   Controversy Concerning Impairment ......................................................56

**8.7**   Elimination of Vacant Classes ................................................................56

ARTICLE IX IMPLEMENTATION OF THE COMBINED DISCLOSURE
            STATEMENT AND PLAN AND THE LIQUIDATING TRUST ...........................56

**9.1**   Substantive Consolidation ......................................................................56

**9.2**   Implementation of the Combined Disclosure Statement and Plan ..........58

**9.3**   Debtors' Directors and Officers ..............................................................58

**9.4**   Wind-Up and Dissolution of the Debtors ...............................................58

**9.5**   Cancellation of Existing Securities and Agreements ...............................59

**9.6**   Creation and Governance of the Liquidating Trust .................................59

**9.7**   Purpose of the Liquidating Trust .............................................................59

**9.8**   Transfer of Assets to Liquidating Trust ..................................................59

**9.9**   Plan Administrator and Liquidating Trust Agreement .............................60

**9.10**  Compensation and Duties of Plan Administrator ....................................61

**9.11**  U.S. Federal Income Tax Treatment of the Liquidating Trust .................61

  (a)   *Grantor Trust* ........................................................................................61

  (b)   *Reporting* ..............................................................................................62

  (c)   *Valuation* ..............................................................................................63

  (d)   *Tax Returns* ..........................................................................................63

  (e)   *Disputed Ownership Fund Election* .....................................................63

  (f)   *Attribution of Income* ...........................................................................64

(g)   *Current Basis* ..................................................................................................64

(h)   *Tax Identification Numbers* ...........................................................................64

(i)    *Annual Statements* .........................................................................................64

(j)    *Notices* ...........................................................................................................64

(k)   *Expedited Determination* ..............................................................................64

(l)    *Withholding* ....................................................................................................65

**9.12**   Abandonment, Disposal, and Destruction of Records ..............................................65

**9.13**   Distributions by Liquidating Trust ...........................................................................65

**9.14**   Cash Investments .....................................................................................................65

**9.15**   Dissolution of the Liquidating Trust .........................................................................65

**9.16**   Control Provisions ...................................................................................................65

**9.17**   Limitation of Liability; Indemnification ...................................................................66

**9.18**   Oversight Board .......................................................................................................66

**9.19**   Oversight Board Duties and Powers .........................................................................66

**9.20**   Oversight Board Voting Rights .................................................................................67

**9.21**   Reporting Rights ......................................................................................................67

**9.22**   Company Action .......................................................................................................67

ARTICLE X PROVISIONS GOVERNING DISTRIBUTIONS ...........................................67

**10.1**   Distributions for Allowed Claims .............................................................................67

**10.2**   Interest on Claims ....................................................................................................67

**10.3**   Distributions by Plan Administrator as Disbursement Agent....................................67

**10.4**   Waterfall ..................................................................................................................68

**10.5**   Means of Cash Payment ...........................................................................................68

**10.6**   Fractional Distributions ...........................................................................................68

**10.7**   De Minimis Distributions .........................................................................................69

**10.8**   Delivery of Distributions; Unclaimed Distributions.................................................69

**10.9**   Application of Distribution Record Date ...................................................................69

**10.10**  Withholding, Payment and Reporting Requirements With Respect to
Distributions.............................................................................................................69

**10.11**  Allocation of Distributions for Tax Purposes ...........................................................70

**10.12**  Setoffs .....................................................................................................................70

**10.13**  No Distribution in Excess of Allowed Amounts .......................................................70

**10.14**  Allocation of Distributions ......................................................................................70

**10.15**  Forfeiture of Distributions .......................................................................................71

ARTICLE XI PROVISIONS FOR CLAIMS OBJECTIONS AND ESTIMATION
OF CLAIMS ................................................................................................71

**11.1**    Claims Administration Responsibility ..............................................................71

**11.2**    Claims Objections ............................................................................................71

**11.3**    Estimation of Contingent or Unliquidated Claims .........................................72

**11.4**    Distributions on Account of Disputed Claims ................................................72

**11.5**    Amendments to Claims ....................................................................................72

**11.6**    Claims Paid and Payable by Third Parties ......................................................72

**11.7**    Adjustment to Claims Without Objection .......................................................73

ARTICLE XII EXECUTORY CONTRACTS ..............................................................73

**12.1**    Executory Contracts Deemed Rejected ..........................................................73

**12.2**    Asset Purchase Agreements and Related Agreements ....................................73

ARTICLE XIII CONFIRMATION AND CONSUMMATION OF THE
COMBINED DISCLOSURE STATEMENT AND PLAN .........................73

**13.1**    Conditions Precedent to the Effective Date ....................................................73

**13.2**    Notice of Effective Date ..................................................................................74

**13.3**    Waiver of Conditions Precedent to the Effective Date ...................................74

**13.4**    Effect of Non-Occurrence of Effective Date ..................................................74

ARTICLE XIV EFFECTS OF CONFIRMATION ......................................................75

**14.1**    Exculpation, Releases, and Injunctions. .........................................................75

(a)    Exculpation and Limitation of Liability ..........................................................75

(b)    Releases by the Debtors ..................................................................................76

(c)    Consensual Third-Party Releases by Holders of Claims ...............................76

(d)    Non-Discharge of the Debtors; Injunction .....................................................77

(e)    Releases Under the WARN Act Class Settlement Order.  In addition to and
notwithstanding anything to the contrary herein, pursuant to the WARN Act Class
Settlement Order, certain releases were provided therein. ......................................77

**14.2**    Waiver of Statutory Limitations on Releases .................................................78

**14.3**    Term of Bankruptcy Injunction or Stays ........................................................79

**14.4**    U.S. Securities and Exchange Commission ....................................................79

ARTICLE XV RETENTION OF JURISDICTION ......................................................79

**15.1**    Exclusive Jurisdiction of Bankruptcy Court ...................................................79

ARTICLE XVI EFFECT OF CONFIRMATION ........................................................81

**16.1**    Compromise and Settlement of Claims, Interests and Controversies .............81

**16.2**    Binding Effect ..................................................................................................82

v

ARTICLE XVII MISCELLANEOUS PROVISIONS ..................................................................82

**17.1**   Modification of the Combined Disclosure Statement and Plan....................................82

**17.2**   Revocation, Withdrawal, or Non-Confirmation of the Combined Disclosure Statement and Plan.............................................................................................................82

**17.3**   Subordination Rights ...................................................................................................83

**17.4**   Severability of Plan Provisions....................................................................................83

**17.5**   Payment of Statutory Fees; Filing of Quarterly Reports ............................................83

**17.6**   Dissolution of the Committee .....................................................................................84

**17.7**   Exemption from Section 1146 .....................................................................................84

**17.8**   Closing of Chapter 11 Cases; Caption Change............................................................84

**17.9**   Filing of Additional Documents ..................................................................................85

**17.10**  Insurance.....................................................................................................................85

**17.11**  Successors and Assigns ...............................................................................................85

**17.12**  Governing Law ...........................................................................................................85

**17.13**  Exhibits and Schedules ...............................................................................................85

**17.14**  Computation of Time ..................................................................................................86

**17.15**  Reservation of Rights..................................................................................................86

EXHIBIT A.......................................................................................................................88

NOTES FOR LIQUIDATION ANALYSIS

# DISCLAIMER[2]

THIS COMBINED DISCLOSURE STATEMENT AND PLAN WAS COMPILED FROM INFORMATION OBTAINED FROM NUMEROUS SOURCES BELIEVED TO BE ACCURATE TO THE BEST OF THE DEBTORS' KNOWLEDGE, INFORMATION, AND BELIEF. NO GOVERNMENTAL AUTHORITY HAS PASSED ON, CONFIRMED, OR DETERMINED THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED HEREIN.

NOTHING STATED HEREIN SHALL BE: (I) DEEMED OR CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, (II) ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTORS OR ANY OTHER PARTY, OR (III) DEEMED CONCLUSIVE EVIDENCE OF THE TAX OR OTHER LEGAL EFFECTS OF THE COMBINED DISCLOSURE STATEMENT AND PLAN ON THE DEBTORS OR HOLDERS OF CLAIMS OR INTERESTS. CERTAIN STATEMENTS CONTAINED HEREIN, BY NATURE, ARE FORWARD-LOOKING AND CONTAIN ESTIMATES AND ASSUMPTIONS. THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL REFLECT ACTUAL OUTCOMES.

THE STATEMENTS CONTAINED HEREIN ARE MADE AS OF THE DATE HEREOF, UNLESS ANOTHER TIME IS SPECIFIED. THE DELIVERY OF THIS COMBINED DISCLOSURE STATEMENT AND PLAN SHALL NOT BE DEEMED OR CONSTRUED TO CREATE ANY IMPLICATION THAT THE INFORMATION CONTAINED HEREIN IS CORRECT AT ANY TIME AFTER THE DATE HEREOF. HOLDERS OF CLAIMS OR INTERESTS SHOULD NOT CONSTRUE THE CONTENTS OF THIS COMBINED DISCLOSURE STATEMENT AND PLAN AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL OR TAX ADVICE. THEREFORE, EACH SUCH HOLDER SHOULD CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL, AND TAX ADVISORS AS TO ANY SUCH MATTERS CONCERNING THIS COMBINED DISCLOSURE STATEMENT AND PLAN AND THE TRANSACTIONS CONTEMPLATED HEREBY.

NO PARTY IS AUTHORIZED TO GIVE ANY INFORMATION WITH RESPECT TO THIS COMBINED DISCLOSURE STATEMENT AND PLAN OTHER THAN THAT WHICH IS CONTAINED IN THIS COMBINED DISCLOSURE STATEMENT AND PLAN. NO REPRESENTATIONS CONCERNING THE DEBTORS OR THE VALUE OF THEIR PROPERTY HAS BEEN AUTHORIZED BY THE DEBTORS OTHER THAN AS SET FORTH IN THIS COMBINED DISCLOSURE STATEMENT AND PLAN. ANY INFORMATION, REPRESENTATIONS, OR INDUCEMENTS MADE TO SOLICIT VOTES IN CONNECTION WITH THIS COMBINED DISCLOSURE STATEMENT AND PLAN OTHER THAN, OR INCONSISTENT WITH, THE INFORMATION CONTAINED HEREIN SHOULD NOT BE RELIED UPON BY ANY HOLDER OF A CLAIM OR INTEREST. THE COMBINED DISCLOSURE STATEMENT AND PLAN HAS BEEN PREPARED IN ACCORDANCE WITH BANKRUPTCY CODE SECTION 1125 AND BANKRUPTCY RULE

---

[2]    Capitalized terms not defined in this Introduction shall have the meanings ascribed below.

3016(b) AND NOT IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS, OR OTHER NON-APPLICABLE BANKRUPTCY LAWS.

SEE <u>ARTICLE V</u> HEREIN, ENTITLED "CERTAIN RISK FACTORS TO BE CONSIDERED PRIOR TO VOTING," FOR A DISCUSSION OF CERTAIN CONSIDERATIONS IN CONNECTION WITH A DECISION BY A HOLDER OF AN IMPAIRED CLAIM TO ACCEPT THE COMBINED DISCLOSURE STATEMENT AND PLAN.

## INTRODUCTION

Pear Therapeutics, Inc. and Pear Therapeutics (US), Inc., as debtors and debtors in possession in these Chapter 11 Cases, jointly with the Committee, hereby propose this Combined Disclosure Statement and Plan pursuant to section 1125 and 1129 of the Bankruptcy Code.  The Debtors and the Committee (i.e., the Plan Proponents) are proponents of the Combined Disclosure Statement and Plan within the meaning of Bankruptcy Code section 1129.

The Plan Proponents are sending you this Combined Disclosure Statement and Plan in connection with soliciting votes to approve the Combined Disclosure Statement and Plan, as the same may be amended from time to time.  If you are entitled to vote, you should read the entirety of the Combined Disclosure Statement and Plan, and consult with an attorney, prior to voting.

The Combined Disclosure Statement and Plan constitutes a liquidating Chapter 11 plan for the Debtors and provides for Distribution of the Debtors' assets already liquidated or to be liquidated over time to Holders of Allowed Claims in accordance with the terms of the Combined Disclosure Statement and Plan and the priority provisions of the Bankruptcy Code.  The Combined Disclosure Statement and Plan contemplates the appointment of a Plan Administrator to, *inter alia*, implement the terms of the Combined Disclosure Statement and Plan and make distributions in accordance therewith.  Except as otherwise provided by an order of the Bankruptcy Court, Distributions, if any, will occur at various intervals after the Effective Date as determined by the Plan Administrator.

This Combined Disclosure Statement and Plan contains, among other things, a discussion of the Debtors' history, business, properties, operations, the Chapter 11 Cases, the Sale of the Debtors' assets, risk factors, and a summary and analysis of the Combined Disclosure Statement and Plan, and certain other related matters.

As described herein, the Debtors and the WARN Act Parties have reached a Global Settlement, which resolves numerous Debtor-Creditor and inter-Creditor issues designed to achieve an economic settlement of Claims against the Debtors and an efficient resolution of the Chapter 11 Cases.  The Global Settlement and the WARN Act Class Settlement Order have been incorporated into the Combined Disclosure Statement and Plan.

**The Combined Disclosure Statement and Plan provides for the substantive consolidation of the Assets and Liabilities of the Debtors.  Accordingly, for purposes of the Combined Disclosure Statement and Plan only, the Assets and Liabilities of the Debtors are deemed the Assets and Liabilities of a single administratively consolidated entity.  Claims filed against both Debtors seeking recovery of the same debt shall be treated as a single, non-**

2

**aggregated Claim against the consolidated Estates to the extent that such Claim is an Allowed Claim.**

The filing of the Combined Disclosure Statement and Plan constitutes, among other things, a motion by the Plan Proponents for substantive consolidation of the Debtors' Estates, as set forth in Section 9.1 hereof.

Subject to the restrictions on modifications set forth in section 1127 of the Bankruptcy Code, the Plan Proponents expressly reserve the right to alter, amend, or modify the Combined Disclosure Statement and Plan one or more times before substantial Consummation thereof.

**ALL HOLDERS OF IMPAIRED CLAIMS AGAINST, AND IMPAIRED INTERESTS IN, THE DEBTORS ARE ENCOURAGED TO READ THE COMBINED DISCLOSURE STATEMENT AND PLAN IN ITS ENTIRETY, AND TO CONSULT WITH AN ATTORNEY, TO BE INFORMED REGARDING THE TREATMENT OF SUCH CLAIMS AND INTERESTS UNDER THE COMBINED DISCLOSURE STATEMENT AND PLAN AND, AS APPLICABLE, BEFORE VOTING TO ACCEPT OR REJECT THE COMBINED DISCLOSURE STATEMENT AND PLAN. SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN BANKRUPTCY CODE SECTION 1127, BANKRUPTCY RULE 3019, AND IN THE COMBINED DISCLOSURE STATEMENT AND PLAN, THE PLAN PROPONENTS RESERVE THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE, OR WITHDRAW THE COMBINED DISCLOSURE STATEMENT AND PLAN, OR ANY PART THEREOF, PRIOR TO ITS SUBSTANTIAL CONSUMMATION.**

**RECOMMENDATION TO VOTE TO ACCEPT**
**THE COMBINED DISCLOSURE STATEMENT AND PLAN**

The Plan Proponents—*i.e.*, the Debtors and the Committee—are proponents of the Combined Disclosure Statement and Plan and support Confirmation of the Combined Disclosure Statement and Plan. In the opinion of the Debtors and the Committee, the Combined Disclosure Statement and Plan is preferable to the alternatives available, which are generally described in this Combined Disclosure Statement and Plan, because the Combined Disclosure Statement and Plan provides for a larger distribution to the Debtors' creditors than would otherwise result in a liquidation under chapter 7 of the Bankruptcy Code. Any delay in Confirmation of the Combined Disclosure Statement and Plan could result in significant additional administrative expenses and reduce the distributions to Holders of Allowed Claims that is proposed under this Combined Disclosure Statement and Plan. **Accordingly, the Debtors and the Committee recommend that all Holders of Impaired Claims support Confirmation of the Combined Disclosure Statement and Plan and vote to accept the Combined Disclosure Statement and Plan.**

3

# ARTICLE I
# DEFINED TERMS AND RULES OF INTERPRETATION

**Defined Terms**

1.1     "**503(b)(9) Claims**" shall mean Claims arising under Bankruptcy Code section 503(b)(9).

1.2     "**Administrative Agent**" shall have the meaning set forth in Section 3.1(b).

1.3     "**Administrative Claim**" shall mean a Claim for costs and expenses of administration of the Chapter 11 Cases under Bankruptcy Code sections 503(b), 507(b) or, if applicable, 1114(e)(2), including but not limited to: (a) any actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates and operating the business of the Debtors (including, but not limited to, wages, salaries, commissions for services and payments for inventories, leased equipment and premises) and Claims by Governmental Units for taxes (including Claims related to taxes which accrued after the Petition Date, but excluding Claims related to taxes which accrued on or before the Petition Date); (b) compensation for legal, financial, advisory, accounting and other services and reimbursement of expenses allowed by the Bankruptcy Court under Bankruptcy Code sections 328, 330, 331, 363 or 503(b) to the extent incurred on or prior to the Effective Date; (c) all fees and charges assessed against the Estates under United States Code title 28 section 1930; (d) any 503(b)(9) Claims; and (e) any Claims that have been designated "Administrative Claims" by order of the Bankruptcy Court.

1.4     "**Affiliate**" shall mean "affiliate" as defined in Bankruptcy Code section 101(2).

1.5     "**Allowed**" shall mean all or a portion of a Claim against the Debtors or an Interest in the Debtors (a) that has been listed by the Debtors in the Schedules as liquidated in amount and not "disputed" or "contingent," and with respect to which no contrary proof of Claim or proof of Interest has been Filed or an Objection or request for estimation has been Filed on or before the Claims Objection Deadline or the expiration of such other applicable period fixed by the Bankruptcy Court, (b) with respect to which a proof of Claim or proof of Interest has been Filed and as to which no Objection or request for estimation has been Filed on or before the Claims Objection Deadline or the expiration of such other applicable period fixed by the Bankruptcy Court, (c) as to which any Objection has been Filed on or before the Claims Objection Deadline or the expiration of such other applicable period fixed by the Bankruptcy Court and such Objection has been settled, waived, withdrawn or denied by a Final Order, or (d) that is allowed (i) by a Final Order, or (ii) by a stipulation entered into between the Holder of such Claim or Interest and the Plan Administrator on or after the Effective Date. For purposes of computing Distributions under the Combined Disclosure Statement and Plan, a Claim or Interest that has been deemed "Allowed" shall not include interest, costs, fees or charges on such Claim or Interest from and after the Petition Date, except as provided in Bankruptcy Code section 506(b) or as otherwise expressly set forth in the Combined Disclosure Statement and Plan.

1.6     "**Asset Purchase Agreements**" shall mean collectively, the Click Asset Purchase Agreement, the Harvest Bio Asset Purchase Agreement, the Nox Asset Purchase Agreement and the WELT Asset Purchase Agreement.

4

**1.7** "**Assets**" shall mean any and all right, title, and interest of the Debtors and the Estates in and to property of whatever type or nature, including their books and records.

**1.8** "**Avoidance Actions**" shall mean any and all avoidance or equitable subordination or recovery actions under the Bankruptcy Code, including but not limited to those arising under Bankruptcy Code sections 105(a), 502(d), 510, 542 through 551, and 553, or under any other federal or state law, or similar common law causes of action.

**1.9** "**Ballot**" shall mean the ballot form distributed to each Holder of a Claim entitled to vote to accept or reject this Combined Disclosure Statement and Plan.

**1.10** "**Bankruptcy Code**" shall mean title 11 of the United States Code, 11 U.S.C. §§ 101-1532, and as such title has been, or may be, amended from time to time, to the extent that any such amendment is applicable to the Chapter 11 Cases.

**1.11** "**Bankruptcy Court**" or "**Court**" shall mean the United States Bankruptcy Court for the District of Delaware or any other court having jurisdiction over the Chapter 11 Cases, including, to the extent of the withdrawal of the reference under 28 U.S.C.§ 157, the United States District Court for the District of Delaware.

**1.12** "**Bankruptcy Rules**" shall mean the Federal Rules of Bankruptcy Procedure and the Local Rules, and as each has been, or may be, amended from time to time, to the extent that any such amendment is applicable to the Chapter 11 Cases.

**1.13** "**Bar Date**" shall mean, with respect to any particular Claim, the specific date set by the Bankruptcy Court (including pursuant to the Bar Date Order, the Combined Disclosure Statement and Plan or the Confirmation Order) as the last day for Filing proofs of claim, motions or requests for allowance or payment of a Claim, including Administrative Claims, against the Debtors in the Chapter 11 Cases.

**1.14** "**Bar Date Order**" shall mean the *Revised Order (I) Establishing Bar Dates for Filing Prepetition Proofs of Claim; (II) Approving the Form and Manner of Notice Thereof; and (III) Granting Related Relief* entered by the Bankruptcy Court on October 4, 2022, at Docket No. 140.

**1.15** "**Beneficiary**" shall mean a holder of a Liquidating Trust Interest, whether individually or as agent on behalf of one or more other Entities, and whether or not such holder's Claim is Disputed or Allowed as of the Effective Date. To the extent Holders of Allowed Claims are entitled to a Distribution from the Liquidating Trust pursuant to the terms of the Combined Disclosure Statement and Plan, each such Holder is a Beneficiary.

**1.16** "**Bidding Procedures Order**" shall mean the *Order (A) Approving Bid Procedures Relating to the Sale of Substantially All of the Debtors' Assets; (B) Approving Stalking Horse Bid Protections; (C) Scheduling Hearing to Consider the Sale; (D) Approving the Form and Manner of Notice of Sale By Auction; (E) Establishing Notice and Contract Procedures for the Assumption and Assignment of Contracts and Leases; and (F) Granting Related Relief* as entered by the Bankruptcy Court on April 28, 2023, at Docket No. 116.

**1.17**    "**Business Combination**" shall have the meaning set forth in Section 3.1(a).

**1.18**    "**Business Combination Agreement**" shall have the meaning set forth in Section 3.1(a).

**1.19**    "**Business Day**" shall mean any day, other than a Saturday, Sunday or a legal holiday (as that term is defined in Bankruptcy Rule 9006(a)).

**1.20**    "**CAL-WARN Act**" means the California Labor Code § 1400 *et. seq.*

**1.21**    "**Cash**" or "**$**" shall mean legal tender of the United States of America or the equivalent thereof, including bank deposits, checks and cash equivalents.

**1.22**    "**Causes of Action**" shall mean all Claims, Avoidance Actions, actions, causes of action, choses in action, suits, debts, dues, damages, defenses, judgments, set-off claims, third-party claims, counterclaims, and cross claims that are or may be pending or existing or that could have been asserted on or before the Effective Date against any Entity, based in law or equity, including, but not limited to, under the Bankruptcy Code, whether direct, indirect, known or unknown, derivative, or otherwise and whether asserted or unasserted as of the date of entry of the Confirmation Order, and including unknown Causes of Action that have not been released by the Combined Disclosure Statement and Plan or any order of the Bankruptcy Court.

**1.23**    "**Chapter 11 Cases**" shall mean the chapter 11 cases of Pear Therapeutics, Inc. and Pear Therapeutics (US), Inc., which are being jointly administered at Case No. 23-10429 (TMH) in the Bankruptcy Court.

**1.24**    "**Claim**" shall mean a claim, as such term is defined in Bankruptcy Code section 101(5), against either of the Debtors.

**1.25**    "**Claims Objection Deadline**" shall mean one-hundred eighty (180) days after the Effective Date, or such later date as may be ordered by the Bankruptcy Court; *provided however,* that the Plan Administrator may seek extensions of this date from the Bankruptcy Court.

**1.26**    "**Class**" shall mean each category or group of Holders of Claims or Interests that has been designated as a class in Article II of this Combined Disclosure Statement and Plan.

**1.27**    "**Click**" shall mean Click Therapeutics, Inc

**1.28**    "**Click Asset Purchase Agreement**" shall mean that certain Asset Purchase Agreement by and between the Debtors, as Seller and Click as Purchaser, dated as of May 19, 2023, and filed with the Bankruptcy Court at Docket No. 195, including all schedules and exhibits thereto, and as may be further amended from time to time.

**1.29**    "**Click Sale Order**" shall mean the *Order (I) Approving Asset Purchaser APA and Authorizing the Sale of Certain Assets of the Debtors Outside the Ordinary Course of Business, (II) Authorizing the Sale of Assets Free and Clear of All Liens, Claims, Encumbrances*

*and Interests, and (III) Granting Related Relief* as entered by the Bankruptcy Court on May 23, 2023, at Docket No. 212.

**1.30** "**Closing**" shall mean the "Closing" as defined in each of the Asset Purchase Agreements.

**1.31** "**Closing Date**" shall mean the "Closing Date" as defined in each of the Asset Purchase Agreements.

**1.32** "**Combined Disclosure Statement and Plan**" shall mean this entire document and all exhibits, schedules and related documents, whether annexed hereto or Filed in connection herewith, either in their present form or as the same may be supplemented, amended or modified from time to time.

**1.33** "**Committee**" shall mean the Committee of Unsecured Creditors appointed by the U.S. Trustee in the Chapter 11 Cases.

**1.34** "**Confirmation**" shall mean entry of the Confirmation Order by the Bankruptcy Court on the docket of the Chapter 11 Cases.

**1.35** "**Confirmation Date**" shall mean the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases.

**1.36** "**Confirmation Hearing**" shall mean the initial hearing held by the Bankruptcy Court to consider (a) approval of the Combined Disclosure Statement and Plan as providing adequate information pursuant to Bankruptcy Code section 1125, and (b) Confirmation of the Combined Disclosure Statement and Plan pursuant to Bankruptcy Code section 1129, and as such initial hearing may be adjourned or continued from time to time.

**1.37** "**Confirmation Order**" shall mean the order of the Bankruptcy Court confirming the Combined Disclosure Statement and Plan pursuant to, among others, Bankruptcy Code section 1129.

**1.38** "**Consummation**" shall mean the occurrence of the Effective Date.

**1.39** "**Contingent**" shall mean, with reference to a Claim, a Claim that presently exists but is not currently payable, or the accrual of which, or the obligation to make payment on which, is dependent upon a future event that may or may not occur.

**1.40** "**Creditor**" shall have the meaning ascribed to such term in Bankruptcy Code section 101(10).

**1.41** "**Debtors**" shall mean, collectively, Pear US and Holdings, which are the above-captioned debtor and debtors in possession in the Chapter 11 Cases.

**1.42** "**Disallowed**" shall mean, with respect to any Claim or Interest or portion thereof, any Claim against or Interest in the Debtors which: (i) has been disallowed, in whole or part, by a Final Order; (ii) has been withdrawn, in whole or in part, by the Holder thereof; (iii) is listed in

7

the Schedules as zero or as disputed, contingent or unliquidated and in respect of which a proof of Claim or a proof of Interest, as applicable, has not been timely Filed or deemed timely Filed pursuant to the Combined Disclosure Statement and Plan, the Bankruptcy Code or any Final Order or other applicable law; (iv) has been reclassified, expunged, subordinated or estimated to the extent that such reclassification, expungement, subordination or estimation results in a reduction in the Filed amount of any proof of Claim or proof of Interest; (v) is unenforceable to the extent provided in Bankruptcy Code section 502(b); or (vi) where the Holder of a Claim is an Entity from which property is recoverable under Bankruptcy Code sections 542, 543, 550, or 553 or that is a transferee of a transfer avoidable under Bankruptcy Code sections 522(f), 522(h), 544, 545, 548, 549, or 724(a), unless such Entity or transferee has paid the amount, or turned over any such property, for which such Entity or transferee is liable under Bankruptcy Code section 522(i), 542, 543, 550, or 553, and if required by the Bankruptcy Code, an Objection or adversary proceeding has been Filed. In each case a Disallowed Claim or a Disallowed Interest is disallowed only to the extent of disallowance, withdrawal, reclassification, expungement, subordination, or estimation.

1.43    "**Disbursing Agent**" shall mean the Plan Administrator; *provided, however,* that the Plan Administrator may, in its discretion, retain a third party to act as Disbursing Agent.

1.44    "**Disclosure Statement**" shall mean the disclosure statement, as amended, supplemented, or modified from time to time, that is embodied within the Combined Disclosure Statement and Plan and distributed in accordance with, among others, Bankruptcy Code sections 1125, 1126(b), and 1145, Bankruptcy Rule 3018 and other applicable law.

1.45    "**Disputed**" shall mean any Claim or Interest which has not yet been Allowed or Disallowed in accordance with the terms of the Bankruptcy Code, the Bankruptcy Rules and the Combined Disclosure Statement and Plan.

1.46    "**Disputed Claim Reserve**" shall mean the reserve established and maintained by the Plan Administrator for payment of Disputed Claims in an amount equal to the amount of Cash that Holders of Disputed Claims would be entitled to under the Combined Disclosure Statement and Plan if such Disputed Claims were Allowed Claims in the amount of such Disputed Claims, or such other amount as may be ordered by the Bankruptcy Court, *provided, however*, no reserve shall be required for any contingent or unliquidated claim by the Former Officers and Directors pursuant to the terms of the Debtors respective certificates of incorporation or bylaws unless and until an actual liability is determined against such persons.

1.47    "**Distribution**" shall mean a delivery of Cash by the Disbursing Agent to the Holders of Allowed Claims pursuant to the Combined Disclosure Statement and Plan.

1.48    "**Distribution Date**" shall mean the date on which a Distribution is made pursuant to the Combined Disclosure Statement and Plan.

1.49    "**Distribution Proceeds**" shall mean all Cash realizable from the Liquidating Trust Assets after payment in full or satisfaction of the (i) Unclassified Claims and (ii) the payment of, and reserving for, Liquidating Trust Expenses in accordance with the Combined Disclosure Statement and Plan and the Liquidating Trust Agreement.

**1.50** "**Distribution Record Date**" shall mean the date established for determining the Holders of Allowed Claims or Allowed Interests entitled to Distributions pursuant to the Combined Disclosure Statement and Plan, which shall be the Effective Date, or such other date established in the Confirmation Order.

**1.51** "**Effective Date**" shall mean the first Business Day after the later of the date on which (a) all conditions in Article XIII of the Combined Disclosure Statement and Plan have been satisfied or waived in accordance with that Article and (b) no stay of the Confirmation Order is in effect. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

**1.52** "**Effective Date Notice**" shall mean the notice of the occurrence of the Effective Date.

**1.53** "**Entity**" shall have the meaning ascribed to such term in Bankruptcy Code section 101(15).

**1.54** "**Estates**" shall mean the Debtors' estates created by Bankruptcy Code section 541 upon the commencement of the Chapter 11 Cases on the Petition Date.

**1.55** "**Exculpated Parties**" shall mean, in each of their capacities as such, (a) the Debtors, (b) the Committee and its members and their respective representatives who serve on the Committee, and (c) the retained professionals, current and former directors, officers, employees, agents representatives, financial advisors, accountants, and attorneys as applicable, of the Debtors and Committee.

**1.56** "**Executory Contract**" shall mean a contract or unexpired lease to which either of the Debtors is a party that is subject to assumption or rejection under Bankruptcy Code section 365.

**1.57** "**Federal Tax Refund**" shall mean all of the Debtors' rights, title and interests in and to the refund claim held by the Debtors against the United States Treasury / IRS in connection with those certain amended federal form 941-x tax returns submitted by the Debtors in February 2023 in respect of the tax quarters ended March 31, 2021, June 30, 2021, and September 30, 2021, and all products and proceeds thereof which were sold, transferred and assigned to Perceptive pursuant to the Perceptive Settlement Agreement.

**1.58** "**File,**" "**Filed,**" or "**Filing**" shall mean, respectively, file, filed, or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

**1.59** "**Final Administrative Claim Bar Date**" shall mean the date that is forty-five (45) days after the date the Effective Date Notice is Filed.

**1.60** "**Final Distribution**" shall mean the final Distributions to Holders of Allowed Claims.

**1.61** "**Final Order**" shall mean an unstayed order, ruling or judgment of the Bankruptcy Court or any other court of competent jurisdiction as to which the time to appeal,

petition for certiorari, or request for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending, or as to which any right to appeal, petition for certiorari, reargument, or rehearing shall have been waived in writing in form and substance satisfactory to the Debtors (prior to the Effective Date) or the Plan Administrator (on or after the Effective Date), or, in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order of the Bankruptcy Court or other court of competent jurisdiction shall have been determined by the highest court to which such order was appealed, or certiorari, reargument or rehearing shall have been denied and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired; *provided, however,* that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure, may be Filed with respect to such order, shall not cause such order not to be a Final Order.

**1.62** "**First Day Declaration**" shall mean the *Declaration of Christopher Guiffre Pursuant to 28 U.S.C. § 1746 In Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* [Docket No. 4].

**1.63** "**Former Officers & Directors**" shall mean the officers and directors of the Debtors who were not serving in the capacity as an officer or director of any Debtor as of the Petition Date.

**1.64** "**General Unsecured Claim**" means any Claim against a Debtor that (i) is not entitled to priority under the Bankruptcy Code or an order of the Bankruptcy Court and (ii) is not an Other Secured Claim, Priority Non-Tax Claim, Perceptive Refund Claim, Secured Claim, Subordinated Claim, Unclassified Claim or an Interest.

**1.65** "**Global Settlement**" means the settlement between the Debtors, the Committee and the WARN Act Parties, which is incorporated into this Combined Disclosure Statement and Plan, and is described in Section 3.4 of this Combined Disclosure Statement and Plan.

**1.66** "**Governmental Unit**" shall have the meaning ascribed to such term in Bankruptcy Code section 101(27).

**1.67** "**Grandfield**" means Evan Grandfield, plaintiff in the WARN Act Litigation and Class Representative under the Warn Act Class Certification Order.

**1.68** "**Harvest Bio**" shall mean Harvest Bio LLC.

**1.69** "**Harvest Bio Asset Purchase Agreement**" shall mean that certain Asset Purchase Agreement by and between the Debtors, as Seller and Harvest Bio as Purchaser, dated as of May 19, 2023, and filed with the Bankruptcy Court at Docket No. 198, including all schedules and exhibits thereto, and as may be further amended from time to time.

**1.70** "**Harvest Bio Sale Order**" shall mean the *Order (I) Approving Asset Purchaser APA and Authorizing the Sale of Certain Assets of the Debtors Outside the Ordinary Course of Business, (II) Authorizing the Sale of Assets Free and Clear of All Liens, Claims, Encumbrances*

10

*and Interests, and (III) Granting Related Relief* as entered by the Bankruptcy Court on May 23, 2023, at Docket No. 213.

**1.71** "**Holder**" shall mean any Entity holding a Claim or Interest.

**1.72** "**Holdings**" shall mean Pear Therapeutics, Inc., a Debtor.

**1.73** "**Impaired**" shall mean, when used in reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of Bankruptcy Code section 1124.

**1.74** "**Impaired Class**" shall mean a Class of Claims or Interests that is Impaired.

**1.75** "**Initial Administrative Claim Bar Date**" shall mean July 20, 2023 at 5:00 p.m. (prevailing Eastern Time), which is the deadline established by the Bar Date Order for filing requests for payment of Administrative Claims (excluding (i) 503(b)(9) Claims and (ii) certain other Administrative Claims that are specifically exempted from the Initial Administrative Claim Bar Date pursuant to the Bar Date Order) for such Administrative Claims that arose on or prior to May 31, 2023.

**1.76** "**Initial Administrative Claims**" shall mean Administrative Claims that are subject to the Initial Administrative Claim Bar Date.

**1.77** "**Insurance Contract**" shall mean all insurance policies that have been issued at any time to or provide coverage to the Debtors and their Related Parties and all agreements, documents or instruments relating thereto.

**1.78** "**Insurer**" shall mean any company or other entity that issued an Insurance Contract, any third-party administrator, and any respective predecessors and/or Affiliates thereof.

**1.79** "**Intercompany Claim**" shall mean any Claim by a Debtor against another Debtor, subject to the limitations set forth in Section 9.1 hereof.

**1.80** "**Interests**" shall mean the legal interests, equitable interests, contractual interests, equity interests or ownership interests, or other rights of any Entity in the Debtors, including all equity securities (as defined in section 101(15) of the Bankruptcy Code), capital stock, stock certificates, common stock, preferred stock, partnership interests, limited liability company or membership interests, rights, treasury stock, options, warrants, contingent warrants, convertible or exchangeable securities, investment securities, subscriptions or other agreements and contractual rights to acquire or obtain such an interest or share in the Debtors, partnership interests in the Debtors' stock appreciation rights, conversion rights, repurchase rights, redemption rights, dividend rights, preemptive rights, subscription rights and liquidation preferences, puts, calls, awards or commitments of any character whatsoever relating to any such equity, common stock, preferred stock, ownership interests or other shares of capital stock of the Debtors or obligating the Debtors to issue, transfer or sell any shares of capital stock whether or not certificated, transferable, voting or denominated "stock" or a similar security.

**1.81** "**Internal Revenue Code**" shall mean the United States Internal Revenue Code 1986, as amended.

**1.82**    "**IRS**" shall mean the Internal Revenue Service.

**1.83**    "**Liabilities**" shall mean any and all costs, expenses, damages, losses, penalties, fines, judgments, Claims, Liens, obligations, demands, injuries, settlements, awards, fines, taxes, fees, indebtedness, or other liabilities of any nature, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, liquidated or Unliquidated, matured or not matured, Contingent or direct, whether arising at common law, in equity, or under any statute, based in whole or in part on any act or omission or other occurrence arising or taking place prior to the Effective Date.

**1.84**    "**Lien**" shall have the meaning set forth in section 101(37) of the Bankruptcy Code.

**1.85**    "**Liquidating Trust**" shall mean the trust with a term of not more than 5 years (subject to extensions as provided therein) to be established under the Combined Disclosure Statement and Plan and the Liquidating Trust Agreement.

**1.86**    "**Liquidating Trust Agreement**" shall mean a trust agreement that establishes the Liquidating Trust and governs the powers, duties, and responsibilities of the Plan Administrator and the rights of the Beneficiaries thereof. The Liquidating Trust Agreement shall be Filed as part of the Plan Supplement.

**1.87**    "**Liquidating Trust Assets**" shall consist of all Assets of the Estates existing as of the Effective Date, including, but not limited to, (i) Cash, (ii) Retained Causes of Action, (iii) any proceeds realized or received from such Assets, (iv) all rights of setoff, recoupment, and other defenses against Claims, (v) Pear's interests in its subsidiaries, and (vi) all documents, communications and information. Notwithstanding the foregoing, the Liquidating Trust Assets shall not include (a) the Professional Fee Claims Reserve, except that any excess amounts in the Professional Fee Claims Reserve after payment in full or other satisfaction of Allowed Professional Fee Claims, shall become Liquidating Trust Assets; (b) any retainers, deposits or the like held by the Debtors' professionals, except that any excess retainers, deposits or the like after payment in full or other court authorized satisfaction of Allowed Professional Fee Claims, shall become Liquidating Trust Assets; and (c) any Preference Actions or Claims and Causes of Action that have been released pursuant to this Combined Disclosure Statement and Plan, including without limitation any Claims or Causes of Action against Perceptive or its Affiliates.

**1.88**    "**Liquidating Trust Expenses**" shall mean all reasonable legal and other fees and expenses incurred by the Plan Administrator on account of administration of the Liquidating Trust, including, without limitation, reasonable professional fees and expenses, insurance costs, taxes, escrow expenses and all other costs of administering the Liquidating Trust in accordance with the Combined Disclosure Statement and Plan and the Liquidating Trust Agreement.

**1.89**    "**Liquidating Trust Interests**" shall mean the non-transferable interests in the Liquidating Trust that are issued to the Beneficiaries pursuant to the Combined Disclosure Statement and Plan.

**1.90**    "**Liquidating Trust Operating Reserve**" shall mean such reserve of Cash determined from time to time by the Plan Administrator pursuant to the Liquidating Trust

Agreement to be reasonably necessary to pay Liquidating Trust Expenses, including: (a) the unpaid liabilities, debts, or obligations of the Liquidating Trust; (b) the fees and expenses of the Plan Administrator; (c) all fees and expenses of professionals retained by the Plan Administrator; and (d) any and all other costs associated with the liquidation or preservation of the Liquidating Trust Assets.

1.91    "**Local Rules**" shall mean the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.

1.92    "**Merger Sub**" shall have the meaning set forth in Section 3.1(a).

1.93    "**Notice Recipients**" shall mean, collectively: (i) the Debtors, Pear Therapeutics, Inc., c/o Sonoran Capital Advisors, 1733 N. Greenfield Rd, Suite 104, Mesa, AZ 85205; (ii) counsel to the Debtors: (x) Foley Hoag LLP, 1301 Avenue of the Americas, 25th Floor, New York, New York 10019 (Attn: Alison D. Bauer, Esq. (abauer@foleyhoag.com)), and (y) Gibbons, P.C., 300 Delaware Avenue, Suite 1015, Wilmington, Delaware 19801 (Attn: Chantelle D. McClamb, Esq. (cmcclamb@gibbonslaw.com)) and One Gateway Center, Newark, New Jersey 07102 (Attn: Robert K. Malone, Esq. (rmalone@gibbonslaw.com)); (iii) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 (Attn: Jane Leamy, Esq. (jane.m.leamy@usdoj.gov)); and (iv) counsel to the Committee, (x) Thompson Coburn LLP, 488 Madison Avenue, New York, New York 10022 (Attn: Mark Power, Esq. (mpower@thompsoncoburn.com) and Joseph Orbach, Esq. (jorbach@thompsoncoburn.com)) and (y) Chipman Brown Cicero & Cole, LLP, 1313 N. Market Street, Suite 5400, Wilmington, Delaware 19801 (Attn: Bryan J. Hall (hall@chipmanbrown.com)).

1.94    "**Notice, Claims and Balloting Agent**" means Stretto, Inc.

1.95    "**Nox**" shall mean Nox Health Group, Inc.

1.96    "**Nox Asset Purchase Agreement**" shall mean that certain Asset Purchase Agreement by and between the Debtors, as Seller and Nox as Purchaser, dated as of May 19, 2023, and filed with the Bankruptcy Court at Docket No. 193, including all schedules and exhibits thereto, and as may be further amended from time to time.

1.97    "**Nox Sale Order**" shall mean the *Order (I) Approving Asset Purchaser APA and Authorizing the Sale of Certain Assets of the Debtors Outside the Ordinary Course of Business, (II) Authorizing the Sale of Assets Free and Clear of All Liens, Claims, Encumbrances and Interests, and (III) Granting Related Relief* as entered by the Bankruptcy Court on May 23, 2023, at Docket No. 214.

1.98    "**Objection**" shall mean any objection, application, motion, complaint, or any other legal proceeding seeking, in whole or in part, to disallow, determine, liquidate, classify, reclassify, establish the priority of, expunge, subordinate or estimate any Claim (including any Administrative Claim).

1.99    "**Other Secured Claim**" shall mean any Secured Claim other than the Perceptive Refund Claim.

**1.100** "**Oversight Board**" shall mean a creditors' oversight board consisting of three (3) members, two (2) of which shall be selected by the Committee and one (1) of which shall be selected by WARN Act Parties, which oversight board shall be subject to the terms and conditions set forth in this Combined Disclosure Statement and Plan and the Liquidating Trust Agreement.

**1.101** "**PDT**" shall have the meaning set forth in Section 3.1(a).

**1.102** "**Pear**" shall mean collectively, the Debtors Pear US and Holdings.

**1.103** "**Pear MSC**" shall mean Pear Therapeutics Securities Corporation.

**1.104** "**Pear US**" shall mean Pear Therapeutics (US), Inc., a Debtor, and defendant in the WARN Act Litigation.

**1.105** "**Penalty Claim**" shall mean any Claim for a fine, penalty, or forfeiture, or for multiple, exemplary, or punitive damages, arising before the Petition Date, to the extent that such fine, penalty, forfeiture, or damages are not compensation for actual pecuniary loss suffered by the Holder of such Claim as set forth in section 726(a)(4) of the Bankruptcy Code.

**1.106** "**Perceptive**" shall mean Perceptive Credit Holdings III, LP.

**1.107** "**Perceptive Credit Agreement**" shall have the meaning set forth in Section 3.1(b).

**1.108** "**Perceptive Loan**" shall have the meaning set forth in Section 3.1(b).

**1.109** "**Perceptive Loan Documents**" shall have the meaning set forth in Section 3.1(b).

**1.110** "**Perceptive Prepetition Lien**" shall have the meaning set forth in Section 3.1(b).

**1.111** "**Perceptive Refund Claim**" shall mean the Secured Claim of Perceptive in and to the Federal Tax Refund, which was sold, transferred and assigned to Perceptive pursuant to the Perceptive Settlement Agreement, and for which Perceptive has received payment in full pursuant to the Order of the Bankruptcy Court at Docket No. 575.

**1.112** "**Perceptive Residual Claim**" shall have the meaning set forth in Section 3.3(g).

**1.113** "**Perceptive Security Agreement**" shall have the meaning set forth in Section 3.1(b).

**1.114** "**Perceptive Settlement Agreement**" shall mean that certain Settlement Agreement, dated as of April 6, 2023, by and among Perceptive, in its capacity as administrative agent and sole lender, the Debtors, and Pear MSC.

**1.115** "**Permitted Investments**" shall mean (i) securities issued or directly and fully guaranteed or insured by the United States or any agency or instrumentality thereof (provided

that the full faith and credit of the United States is pledged in support thereof) having maturities of not more than twelve months from the date of acquisition, (ii) dollar denominated time deposits and certificates of deposit in any domestic commercial bank of recognized standing having capital and surplus in excess of $500,000,000, and (iii) money market mutual funds (as defined in Rule 2(a).7 of the Investment Company Act of 1940) registered under the Investment Company Act of 1940, as amended, that are administered by reputable financial institutions having capital of at least $500,000,000.

**1.116** "**Petition Date**" shall mean April 7, 2023, the date on which the Debtors commenced their Chapter 11 Cases in the Bankruptcy Court.

**1.117** "**Plan Administrator**" shall mean the Individual or Entity designated by the Committee and retained as the trustee to the Liquidating Trust, as of the Effective Date or as soon as reasonably practicable thereafter, as the fiduciary responsible for administering the Liquidating Trust and the Combined Disclosure Statement and Plan, and any successor subsequently appointed pursuant to, and in accordance with the provisions of, the Liquidating Trust Agreement. The Plan Administrator shall be selected by the Committee and be reasonably acceptable to the Debtors. The identity of the Plan Administrator shall be disclosed in the Plan Supplement.

**1.118** "**Plan Proponents**" shall mean, collectively and acting together, the Debtors and the Committee.

**1.119** "**Plan Rejection Damages Claim Bar Date**" shall mean the date that is thirty (30) days after the date the Effective Date Notice is Filed.

**1.120** "**Plan Supplement**" shall mean the ancillary documents necessary to the implementation and effectuation of the Combined Disclosure Statement and Plan, including the Liquidating Trust Agreement, which shall be Filed on or before the date that is seven (7) days prior to the Voting Deadline, *provided, however*, that the Plan Proponents shall have the right to amend documents contained in, and exhibits to, the Plan Supplement.

**1.121** "**Preference Actions**" shall mean any right, claim, or Cause of Action of the Debtors arising under Bankruptcy Code section 547, or any similar action arising under applicable non-bankruptcy law.

**1.122** "**Prepetition Employee Payments Avoidance Actions**" shall mean any Avoidance Actions related to payments made to the Debtors' employees prior to the Petition Date.

**1.123** "**Priority Non-Tax Claim**" shall mean any and all Claims accorded priority in right of payment under Bankruptcy Code section 507(a), other than Priority Tax Claims and Administrative Claims.

**1.124** "**Priority Tax Claim**" shall mean a Claim or a portion of a Claim for which priority is asserted under Bankruptcy Code section 507(a)(8).

**1.125** "**Professional**" shall mean an Entity employed pursuant to a Final Order in accordance with Bankruptcy Code sections 327, 328, 333, 363, and 1103 and to be compensated for services rendered prior to the Confirmation Date, pursuant to Bankruptcy Code sections 327, 328, 329, 330, and 331, or for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to Bankruptcy Code section 503(b)(4).

**1.126** "**Professional Fee Claims**" shall mean all fees and expenses (including but not limited to, transaction fees and success fees) for services rendered by Professionals in connection with the Chapter 11 Cases from the Petition Date through and including the Effective Date.

**1.127** "**Professional Fee Claims Bar Date**" shall mean the deadline for Filing all applications for Professional Fee Claims, which shall be forty-five (45) days after the Effective Date Notice is Filed.

**1.128** "**Professional Fee Claims Reserve**" means the reserve established by the Debtors and maintained pursuant to the terms of this Combined Disclosure Statement and Plan to be distributed to holders of Allowed Professional Fee Claims.

**1.129** "**Purchased Assets**" shall mean all Assets purchased by the Purchasers pursuant to the Asset Purchase Agreements as approved by the Sale Orders.

**1.130** "**Purchasers**" shall mean Click Therapeutics, Inc., Harvest Bio LLC, Nox Health Group, Inc., and WELT Corp. Ltd. and their permitted designees, successors and assigns.

**1.131** "**Related Parties**" shall mean any officer, director, agent, attorney, advisor, employee, professional, partner (general or limited), direct or indirect parent, Affiliate, member, representative, manager, equity Holder, trustee, executor, predecessor in interest, or successor or assign of any referenced Entity.

**1.132** "**Release Opt-Out Election**" shall mean the timely election to "opt out" of being a Releasing Party by (a) submitting a Ballot by the Voting Deadline that (i) votes to either accept or reject the Combined Disclosure Statement and Plan and (ii) selects the option set forth on the Ballot to not grant the releases set forth in Section 14.1(c) of this Combined Disclosure Statement and Plan, or (b) Filing a written objection to the releases set forth in Section 14.1(c) of this Combined Disclosure Statement and Plan by the objection deadline established by the Solicitation Procedures Order.

**1.133** "**Released Parties**" shall mean (a) the Debtors and their Estates, (b) the Committee, (c) solely with respect to Preference Actions, Holders of Claims, (d) solely with respect to Causes of Action that have or could have been asserted by or on behalf of the Estates, Perceptive and (e) each of the Debtors', Estates', Committee's, and, solely with respect to Causes of Action that have or could have been asserted by or on behalf of the Estates, Perceptive's, Related Parties including their respective predecessors, successors, and assigns, current and former Affiliates, subsidiaries, beneficial owners, current or former officers, directors, managers, principals, shareholders, direct and indirect equity holders, general partners, limited partners, agents, financial advisors, attorneys, accountants, advisors, investment bankers, consultants, employees, members,  representatives and other professionals, in their capacity as such; *provided, however,* that any Entity that makes a Release Opt-Out Election shall not be a

Released Party; *provided further, however,* that the Debtors' Former Officers and Directors shall not be Released Parties with respect to any Retained Cause of Action that is covered under the Insurance Policies.

**1.134** "**Releasing Parties**" shall mean (a) the Debtors and their Estates, (b) the Committee, (c) the Purchasers; (d) all Holders of Claims that vote to accept the Combined Disclosure Statement and Plan and do not make a Release Opt-Out Election; (e) all Holders of Claims that vote to reject the Combined Disclosure Statement and Plan and do not make a Release Opt-Out Election; (f) all Holders of Claims that are eligible to vote on the Plan and that do not vote to accept or reject the Combined Disclosure Statement and Plan and who do not file an objection to the Combined Disclosure Statement and Plan; (g) all Holders of Claims that are ineligible to vote on the Plan and that do not file an objection to the Combined Disclosure Statement and Plan; and (h) with respect to each of the foregoing, their Related Parties.

**1.135** "**Retained Causes of Action**" shall mean all Causes of Actions against third parties, including, without limitation, the rights and claims described in the Plan Supplement, including but not limited to any Claims or Causes of Action covered under the Insurance Policies against former officers, directors, managers, principals, shareholders, direct and indirect equity holders, general partners, limited partners, agents, financial advisors, attorneys, accountants, advisors, investment bankers, consultants, employees, members, representatives and other professionals, in their capacity as such but excluding all Preference Actions and those Causes of Action expressly subject to the release and exculpations provisions of this Plan, including those released pursuant to Section 14.1(b) hereof; *provided, however*, that the Retained Causes of Action shall not include any Purchased Asset, Causes of Action against Perceptive or its Affiliates, or Prepetition Employee Payments Avoidance Actions.

**1.136** "**Revenue Procedure**" shall mean an official statement of a procedure published by the IRS in the Internal Revenue Bulletin.

**1.137** "**Sale**" or "**Sales**" shall mean the sale of substantially all of the Debtors' Assets to the Purchasers and related transactions pursuant to the Asset Purchase Agreements and the Sale Orders.

**1.138** "**Sale Orders**" shall mean collectively the Click Sale Order, the Harvest Bio Sale Order, the Nox Sale Order, and the WELT Sale Order.

**1.139** "**Schedules**" shall mean the schedules of assets and liabilities and statements of financial affairs Filed by the Debtors pursuant to Bankruptcy Code section 521 [Case No. 23-10429; Docket Nos. 126 & 129; Case No. 21-10340, Docket Nos. 9 & 10], as the same may have been or may be amended, modified, or supplemented from time to time.

**1.140** "**Secured Claim**" shall mean, pursuant to Bankruptcy Code section 506, that portion of a Claim that is (a) secured by a valid, perfected and enforceable security interest, lien, mortgage, or other encumbrance, that is not subject to avoidance under applicable bankruptcy or non-bankruptcy law, in or upon any right, title or interest of the Debtors in and to property of the Estates, to the extent of the value of the Holder's interest in such property as of the relevant determination date, or (b) Allowed as such pursuant to the terms of the Combined Disclosure

Statement and Plan (subject to the Confirmation Order becoming a Final Order). The defined term Secured Claim includes any Claim that is (i) subject to an offset right under applicable law as of the Petition Date, and (ii) a secured claim against the Debtors pursuant to Bankruptcy Code sections 506(a) and 553.

**1.141** "**Securities Law Claim**" shall mean any Claim that is subject to subordination under section 510(b) of the Bankruptcy Code, whether or not the subject of an existing lawsuit, (a) arising from rescission of a purchase or sale of any equity securities of a Debtor or an Affiliate of a Debtor, (b) for damages arising from the purchase or sale of any such equity security, (c) for violations of the securities laws, misrepresentations, or any similar Claims, including, to the extent related to the foregoing or otherwise subject to subordination under section 510(b) of the Bankruptcy Code, any attorneys' fees, other charges, or costs incurred on account of the foregoing Claims, or (d) except as otherwise provided for in the Combined Disclosure Statement and Plan, for reimbursement, contribution, or indemnification allowed under section 502 of the Bankruptcy Code on account of any such Claim, including, without limitation (i) any prepetition indemnification, reimbursement or contribution obligations of the Debtor, pursuant to the Debtor's corporate charters, by-laws, agreements entered into any time prior to the Petition Date, or otherwise, and relating to Claims otherwise included in the foregoing clauses (a) through (c), and (ii) Claims based upon allegations that a Debtor made false and misleading statements or engaged in other deceptive acts in connection with the sale of equity securities, or otherwise subject to section 510(b) of the Bankruptcy Code.

**1.142** "**Solicitation Procedures Order**" shall mean that certain *Order (A) Approving the Combined Disclosure Statement and Plan on an Interim Basis for Solicitation Purposes Only; (B) Establishing the Solicitation and Tabulation Procedures; (C) Approving the Form of Ballots and Solicitation Materials; (D) Establishing the Plan Confirmation Schedule; and (E) Granting Related Relief* [Docket No. ___ ].

**1.143** "**Subordinated Claim**" shall mean any (a) Penalty Claim, (b) Securities Law Claim, or (c) other Claim that is subordinated to General Unsecured Claims pursuant to section 510 of the Bankruptcy Code, Final Order of the Bankruptcy Court or otherwise, including any Claims arising from rescission of a purchase or sale of a Security of any Debtor or an Affiliate of any Debtor, which Security is not an Interest, for damages arising from the purchase or sale of such a Security, or for reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such a Claim.

**1.144** "**Taxes**" shall mean all income, gross receipts, sales, use, transfer, payroll, employment, franchise, profits, property, excise, or other similar taxes, estimated import duties, fees, stamp taxes, and duties, value added taxes, assessments, or similar charges of any kind whatsoever (whether payable directly or by withholding), together with any valid and enforceable interest and any penalties, additions to tax, or additional amounts imposed by any taxing authority of a Governmental Unit with respect thereto.

**1.145** "**THMA**" shall have the meaning set forth in Section 3.1(a).

**1.146** "**Treasury Regulations**" shall mean the regulations (including temporary regulations) promulgated by the United States Department of the Treasury pursuant to and in

respect of provisions of the Internal Revenue Code. All references herein to sections of the Treasury Regulations shall include any corresponding provision or provisions of succeeding, similar or substitute, temporary or final Treasury Regulations.

**1.147** "**Unclassified Claims**" shall mean all Administrative Claims (including Professional Fee Claims) and Priority Tax Claims.

**1.148** "**Unimpaired**" shall mean, when used in reference to a Claim or Interest, any Claim or Interest that is not impaired within the meaning of Bankruptcy Code section 1124.

**1.149** "**Unliquidated**" shall mean, with reference to a Claim, a Claim, the amount of Liability for which has not been fixed, whether pursuant to agreement, applicable law, or otherwise, as of the date on which such Claim is asserted or sought to be estimated.

**1.150** "**U.S. Trustee**" shall mean the office of the United States Trustee for the District of Delaware.

**1.151** "**U.S. Trustee Fees**" shall mean fees payable pursuant to 28 U.S.C. § 1930 and any interest accruing thereon pursuant to 31 U.S.C. § 3717.

**1.152** "**Voting Agent**" shall mean Stretto, Inc.

**1.153** "**Voting Deadline**" shall mean **March 18, 2024 at 11:59 p.m. (prevailing Eastern Time)**, which is the date and time by which Ballots to accept or reject the Combined Disclosure Statement and Plan must be received to be counted, as established by the Solicitation Procedures Order.

**1.154** "**WARN Act**" means the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101 *et seq.*

**1.155** "**WARN Act Class Certification Order**" shall mean the *Order (I) Certifying a Class for Settlement Purposes, (II) Appointing Plaintiff as Class Representative and Plaintiff's Counsel as Class Counsel, (III) Preliminarily Approving Settlement, (IV) Approving Class Notice, (V) Scheduling Fairness Hearing, (VI) and Granting Related Relief* as entered by the Bankruptcy Court on December 18, 2023, at Docket No. 521.

**1.156** "**WARN Act Class Settlement Agreement**" shall mean that certain Settlement and Release Agreement, dated as of November 30, 2023, by and among Pear US and the WARN Act Parties, as approved by the Bankruptcy Court in the Warn Act Class Settlement Order.

**1.157** "**WARN Act Class Settlement Claim**" shall mean the Claim awarded to, collectively, the WARN Act Parties in accordance with the WARN Act Class Settlement Agreement and the Warn Act Class Settlement Order.

**1.158** "**WARN Act Class Settlement Order**" shall mean the Final *Order Granting Final Approval of Settlement Agreement, Approving Class Counsel's Fees and Expenses and Granting Related Relief* entered by the Bankruptcy Court at Docket No. 599

**1.159** "**WARN Act Litigation**" means the putative *Class Action Adversary Proceeding Complaint for Violation of Warn Act 29 U.S.C. § 2101, et seq. and California Labor Code § 1400 et. Seq.* initiated by Grandfield against Pear US [Adv. Pro No. 23-50334].

**1.160** "**WARN Act Parties**" means all Persons listed on Schedule 1 to the WARN Act Class Settlement Agreement.

**1.161** "**WELT**" shall mean WELT Corp. Ltd.

**1.162** "**WELT Asset Purchase Agreement**" shall mean that certain Asset Purchase Agreement by and between the Debtors, as Seller and WELT as Purchaser, dated as of May 19, 2023, and filed with the Bankruptcy Court at Docket No. 194, including all schedules and exhibits thereto, and as may be further amended from time to time.

**1.163** "**WELT Sale Order**" shall mean the *Order (I) Approving Asset Purchaser APA and Authorizing the Sale of Certain Assets of the Debtors Outside the Ordinary Course of Business, (II) Authorizing the Sale of Assets Free and Clear of All Liens, Claims, Encumbrances and Interests, and (III) Granting Related Relief* as entered by the Bankruptcy Court on May 23, 2023, at Docket No. 215.

**Rules of Interpretation**

**1.164** For purposes of the Combined Disclosure Statement and Plan, except as expressly provided or unless the context otherwise requires, (a) any capitalized term used in the Combined Disclosure Statement and Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable, (b) whenever the context requires, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine, or neuter shall include the masculine, feminine and the neuter, (c) any reference in the Combined Disclosure Statement and Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, (d) any reference in the Combined Disclosure Statement and Plan to an existing document or exhibit means such document or exhibit as it may be amended, modified, or supplemented from time to time, (e) unless otherwise specified, all references in the Combined Disclosure Statement and Plan to sections, articles, schedules, and exhibits are references to sections, articles, schedules, and exhibits of or to the Combined Disclosure Statement and Plan, (f) the words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Combined Disclosure Statement and Plan in its entirety rather than to any particular paragraph, subparagraph, or clause contained in the Combined Disclosure Statement and Plan, (g) captions and headings to articles and sections are inserted for convenience of reference only and shall not limit or otherwise affect the provisions hereof or the interpretation of the Combined Disclosure Statement and Plan, and (h) the rules of construction set forth in Bankruptcy Code section 102 and in the Bankruptcy Rules shall apply.

**Relief Sought by Filing the Combined Disclosure Statement and Plan**

**1.165**    The filing of the Combined Disclosure Statement and Plan constitutes, among other things, a motion by the Plan Proponents for substantive consolidation of the Debtors' Estates, as set forth in Section 9.1 hereof.

**Reference to Monetary Figures**

**1.166**    All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS AND ESTIMATED RECOVERIES

**THE PROJECTED RECOVERIES SET FORTH IN THE CHART BELOW ARE ESTIMATES ONLY AND ARE THEREFORE SUBJECT TO CHANGE.**

**2.1    Classification**. The Combined Disclosure Statement and Plan groups the Debtors together solely for the purposes of describing treatment under the Combined Disclosure Statement and Plan, Confirmation of the Combined Disclosure Statement and Plan, and making Distributions in accordance with the Combined Disclosure Statement and Plan in respect of Claims against and Interests in the Debtors under the Combined Disclosure Statement and Plan. The Combined Disclosure Statement and Plan contemplates a substantive consolidation of the Debtors' Estates solely for voting, Confirmation, and Distribution purposes. A Holder of a Claim against more than one Debtor on a theory of joint and several liability shall only be entitled to a single recovery in Distribution. For brevity and convenience, the classification and treatment of Claims and Interests have been arranged into one chart. Such classification shall not affect any Debtor's status as a separate legal Entity, change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger or consolidation of any legal entities, or cause the transfer of any assets.

The information in the chart below is provided in summary form for illustrative purposes only and is subject to material change based on certain contingencies, including those related to the claim reconciliation process. Actual recoveries may widely vary within these ranges, and any changes to any of the assumptions underlying these amounts could result in material adjustments to recovery estimates provided herein and/or the actual Distribution received by Creditors. The projected recoveries are based on information available to the Plan Proponents as of the date hereof and reflect the Plan Proponents' estimates as of the date hereof only. In addition to the cautionary notes contained elsewhere in the Combined Disclosure Statement and Plan, it is underscored that the Plan Proponents make no representation as to the accuracy of these recovery estimates. The Plan Proponents expressly disclaim any obligation to update any estimates or assumptions after the Solicitation Date on any basis (including new or different information received and/or errors discovered).

A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes. A Claim or Interest is also placed in a particular Class for the purpose of receiving Distributions

21

pursuant to the Combined Disclosure Statement and Plan only to the extent that such Claim or Interest is an Allowed Claim in that Class and such Claim or Interest has not been paid, released, or otherwise settled prior to the Effective Date.

All Claims and Interests, except Administrative Claims, Professional Fee Claims, and Priority Tax Claims, are placed in the Classes set forth below. In accordance with Bankruptcy Code section 1123(a)(1), Administrative Claims (including Professional Fee Claims) and Priority Tax Claims, as described herein, have not been classified, and the respective treatment of such Unclassified Claims is set forth below in Article VI of the Combined Disclosure Statement and Plan.

The categories of Claims and Interests listed below classify Claims and Interests for all purposes, including voting, Confirmation and Distribution pursuant to the Combined Disclosure Statement and Plan and pursuant to Bankruptcy Code sections 1122 and 1123(a)(1). The following chart provides a summary of treatment of each Class of Claims and an estimate of the recoveries for each Class of Claims. The treatment provided in the chart below is for information purposes only and is qualified in its entirety by Article VII of the Combined Disclosure Statement and Plan.

| Class/ Designation | Plan Treatment | Status | Estimated Amount of Claims / Projected Recovery |
|---|---|---|---|
| **Class 1:** Priority Non-Tax Claims | Each Holder of an Allowed Priority Non-Tax Claim shall receive in exchange for such Allowed Priority Non-Tax Claim: (A) Cash equal to the amount of such Allowed Priority Non-Tax Claim; or (B) such other treatment which the Debtors or the Liquidating Trust, as applicable, and the Holder of such Allowed Priority Non-Tax Claim have agreed upon in writing. | Unimpaired / Deemed to Accept Plan | <u>Amount</u><br>*De minimis*<br><br><u>Recovery</u><br>100% |
| **Class 2:** Other Secured Claims | Each Holder of an Allowed Other Secured Claim shall receive in exchange for such Allowed Other Secured Claim: (A) return of the collateral securing such Allowed Other Secured Claim; or (B) Cash equal to the amount of such Allowed Other Secured Claim; or (C) such other treatment which the Debtors or the Liquidating Trust, as applicable, and the Holder of such Allowed Other Secured Claim have agreed upon in writing. | Unimpaired / Deemed to Accept Plan | <u>Amount</u><br>*De minimis*<br><br><u>Recovery</u><br>100% |

22

| Class/ Designation | Plan Treatment | Status | Estimated Amount of Claims / Projected Recovery |
|---|---|---|---|
| **Class 3:** WARN Act Class Settlement Claims | Each Holder of an Allowed WARN Act Class Settlement Claim shall receive its allocated share of the WARN Act Class Settlement Claim as approved by the WARN Act Class Settlement Order. | Unimpaired / Deemed to Accept Plan | Amount<br>Approx. $990,000<br><br>Est. Recovery<br>Approx. 100% |
| **Class 4:** General Unsecured Claims | Each Holder of an Allowed General Unsecured Claim shall receive in exchange for such Allowed General Unsecured Claim: (A) such Holder's pro rata share of the Liquidating Trust Interests; or (B) such other treatment which the Debtors or the Liquidating Trust, as applicable, and the Holder of such Allowed General Unsecured Claim have agreed upon in writing. | Impaired / Entitled to Vote | Amount<br>Approx. $24,790,666<br><br>Est. Recovery<br>Approx. 21% |
| **Class 5:** Subordinated Claims | Holders of Subordinated Claims shall receive no Distributions on account of such Claims. | Impaired / Deemed to Reject Plan | Amount<br>Unknown<br><br>Recovery<br>0% |
| **Class 6:** Interests | On the Effective Date, all Interests shall be canceled and extinguished as of the Effective Date, and owners thereof shall receive no Distribution on account of such Interests. | Impaired / Deemed to Reject Plan | Amount<br>N/A<br><br>Recovery<br>0% |

FH11510059.14

## ARTICLE III
## BACKGROUND AND DISCLOSURES

**3.1     General Background.**[3]

(a)     *The Debtors' Business and Corporate Structure.*

Pear is a commercial-stage healthcare company pioneering a new class of software-based medicines, sometimes referred to as Prescription Digital Therapeutics ("PDTs"), which use software to treat diseases directly.  The Debtors are both corporations organized under the laws of the State of Delaware.  Holdings was formerly known as Thimble Point Acquisition Corp. ("THMA"), a corporation organized under the laws of the State of Delaware.  Pear US was formerly known as Pear Therapeutics, Inc. and was incorporated on August 14, 2013.

On December 3, 2021, Pear consummated a business combination (the "Business Combination") pursuant to the terms of a certain Business Combination Agreement (the "Business Combination Agreement"), entered into by and among Holdings, Pear US, and Oz Merger Sub, Inc. ("Merger Sub").  Merger Sub was a corporation organized under the laws of the State of Delaware and a wholly-owned subsidiary of THMA.  Under the terms of the Business Combination Agreement, Merger Sub merged with and into Pear US, with Pear US surviving as the wholly-owned subsidiary of Holdings.  After the closing of the Business Combination, THMA changed its name to Pear Therapeutics, Inc.

Prior to the Petition Date, Pear pursued the development and commercialization of PDTs, which are software applications authorized by the U.S. Food and Drug Administration that are intended to treat disease.  Pear had three (3) marketed products: (a) reSET®, (b) reSET-O®, and (c) Somryst®.  In addition to Pear's three (3) marketed products, Pear has developed a pipeline of PDT candidates for a variety of additional indications across psychiatry, neurology, and outside-of-central nervous system therapeutic areas.  In July 2022, Pear paused investment in its product development pipeline to focus investment in reSET® and reSET-O®.

(b)     *The Debtors' Capital Structure.*

i.     *Cash*

As of the Petition Date, Pear held cash of approximately $5.2 million, exclusive of retainers held by the Debtors' professionals and deposits held by certain of the Debtors' landlords and vendors.

ii.     *Secured Debt and the Perceptive Settlement Agreement*

On June 30, 2020, Pear US (by its former name) entered into a certain Credit Agreement and Guaranty with Perceptive, as administrative agent (in such capacity, the "Administrative Agent") and lender, which was amended and restated pursuant to that certain Amended and

---

[3] Additional information regarding the Debtors' business, assets, capital structure, and the circumstances leading to the filing of the Chapter 11 Cases is set forth in detail in the First Day Declaration, and all parties are encouraged to review the First Day Declaration in its entirety.

Restated Credit Agreement and Guaranty, among Holdings, Pear US as the borrower and Perceptive as lender and the Administrative Agent, dated as of March 25, 2022 (as amended as of January 13, 2023 and as subsequently amended, supplemented or otherwise modified, from time to time, the "Perceptive Credit Agreement").  The Perceptive Credit Agreement provided a $30.0 million term loan, secured by a first priority lien on substantially all of the assets of Holdings and Pear US, including all of the equity interests of Pear US in Pear MSC (the "Perceptive Prepetition Lien"), pursuant to a certain Security Agreement entered into with Perceptive as of June 30, 2020, which was amended and restated pursuant to that certain Amended and Restated Security Agreement among Holdings, Pear US and the Administrative Agent as of March 25, 2022 (as subsequently amended, supplemented or otherwise modified, from time to time, the "Perceptive Security Agreement," and together with the other Loan Documents (as defined in the Perceptive Credit Agreement), the "Perceptive Loan Documents"). Holdings guaranteed the obligations of Pear US under the Perceptive Loan Documents.  Pear MSC was not an obligor or guarantor of the obligations under the Perceptive Loan Documents. The term loan of $30.0 million (the "Perceptive Loan") was advanced by Perceptive on June 30, 2020 and remained outstanding as of April 6, 2023.

Immediately prior to the Petition Date, pursuant to the Perceptive Settlement Agreement, the parties agreed that, among other things:

- Pear was lawfully indebted to the Secured Parties (as defined in the Perceptive Security Agreement) in the amount of not less than $33,838,500 (in principal, interest, and other amounts) and the Administrative Agent, for the benefit of the Secured Parties, held a valid and perfected first-priority Lien on and security interest in substantially all of the assets of Pear (subject only to Permitted Liens) which included all Equity Interests (as defined in the Perceptive Security Agreement) issued by Pear MSC and held by Pear US and all products and proceeds thereof (the "Pear MSC Equity Interests");
- Pear MSC would make a distribution to the Administrative Agent (for the benefit of the Secured Parties) in an amount equal to $18,660,000.00 in cash on account of the Pear MSC Equity Interests (the "Pear MSC Distribution"), which Pear MSC Distribution amount credits Pear for the monthly payment of approximately $405,000.00 made to Perceptive on March 31, 2023. To the extent that Pear MSC held cash in an amount more than the amount of the Pear MSC Distribution, the Administrative Agent shall cause and direct Pear MSC to make a distribution to Pear US in an amount equal to any such excess;
- Pear would sell, transfer and assign to the Administrative Agent the Federal Tax Refund without recourse in the event that the I.R.S. determined not to issue any refund; and
- The Administrative Agent, on behalf of the lender, would have an unsecured claim against each of Holdings and Pear US, which are jointly and severally liable for such unsecured claim, on account of Obligations not satisfied by the Pear MSC Distribution and the Federal Tax Refund, up to a maximum total claim amount of $10,400,000, which claim shall rank *pari passu* in right of payment with all other nonpriority general unsecured claims against each of Holdings and Pear US.

25

### iii. *Unsecured Debt*

As of the Petition Date, Pear US estimated that its unsecured debt totaled approximately $22,029,029.72, consisting of contractual obligations, trade debt and the Perceptive Residual Claim. As of the Petition Date, Holdings estimated that its unsecured debt totaled approximately $10,472,086, consisting of contractual obligations, trade debt and the Perceptive Residual Claim.

## 3.2   Events Leading to Chapter 11

Through the Business Combination, Holdings went public in December 2021 to gain access to the capital markets, but only raised $175 million, which was less than half of the expected $400 million in capital raising.  Since the Business Combination, the Debtors have implemented cost-cutting measures, including three (3) reductions in force, reducing investment in their pipeline candidates, discovery programs and business development, but they had been unsuccessful in raising the capital necessary to operate the business any further.

The restructuring efforts were motivated by Pear's belief that the best way to raise more capital was to grow revenue via continued investment in the commercialization of Pear's three marketed products: (a) reSET®, (b) reSET-O®, and (c) Somryst®. Pear recognized that it was reliant upon improved market conditions to facilitate the capital raising necessary to maintain its operations. Pear sought to rekindle its capital raising capabilities through use of the ATM starting in January 2023 and a public offering in February 2023. Unfortunately, the Company raised less than $1 million from the ATM, and it was unable to complete a public offering in the first quarter.

In addition to capital raising issues, Pear expected its revenues to continue to grow after going public.  Revenue grew in the first, second, and third quarters of 2022, but revenue in the fourth quarter of 2022 was down from the prior quarter and revenue in Q1 2023 was down further.

Compounding issues further, Pear maintained most of its cash at Silicon Valley Bridge Bank, N.A. ("SVB") prior to the run on the bank on March 9, 2023 and the bank's collapse on March 10, 2023. This caused significant distraction to the executive and leadership teams at Pear as they tried to open new accounts, evaluate options in the absence of access to cash and consider strategic alternatives. The Federal Deposit Insurance Corporation's receivership of SVB prompted Pear's discussions with Perceptive as to issues over demand control agreements and the financial creditworthiness of Pear, ultimately leading to the Perceptive Settlement Agreement.

In February 2023, Holdings retained MTS Health Partners, L.P. ("MTS"), a financial advisory and investment banking firm, to explore strategic alternatives.  On March 17, 2023, Holdings announced via press release and in an SEC Form 8-K Filing that it engaged MTS to assist with the exploration of strategic alternatives that may include, but are not limited to, the sale of all or substantially all of the Debtors' assets and/or intellectual property, a strategic merger, licensing, change of control transaction or other strategic transactions and/or seeking additional financing. MTS, along with Pear's management, conducted management presentations with potential bidders. MTS pursued over 140 different institutional, strategic and financial

potential purchasers. Over 90 parties engaged or responded to the strategic marketing process, approximately 24 parties executed or are in the process of executing confidentiality agreements and three parties submitted non-binding offers.

After considering all available options, the Debtors ultimately determined that seeking protection under chapter 11 of the Bankruptcy Code and focusing their efforts on the marketing and sale of their assets and distribution of proceeds was in the best interests of the Debtors and their stakeholders.

### 3.3 The Chapter 11 Cases

(a) **_Generally_**

As set forth above, on the Petition Date, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court. The commencement of the Chapter 11 Cases created Estates that are comprised of all of the legal and equitable interests of the Debtors as of that date. The Bankruptcy Code provides that the Debtors may continue to operate their business and remain in possession of their property as a "debtors in possession." From the Petition Date and through the closing of the Sale, the Debtors continued to operate their business and manage their properties as debtors and debtors in possession.

On April 19, 2023, the U.S. Trustee appointed the Committee. The Committee was initially comprised of (i) Truepill Inc.; (ii) SVASUM AB; (iii) Hannaford & Dumas Corp., (iv) Q2i LLC and (v) Grandfield. No trustee or examiner has been appointed in the Chapter 11 Cases.

The filing of the Debtors' bankruptcy petitions on the Petition Date triggered the immediate imposition of the automatic stay under section 362 of the Bankruptcy Code, which, with limited exceptions, enjoined all collection efforts and actions by Creditors, the enforcement of Liens against property of the Debtors and both the commencement and the continuation of prepetition litigation against the Debtors. With certain limited exceptions and/or modifications as permitted by order of the Bankruptcy Court, the automatic stay will remain in effect from the Petition Date until the Effective Date of this Combined Disclosure Statement and Plan.

(b) **_"First Day" Motions and Related Applications_**

Commencing on the Petition Date, the Debtors filed the following "first-day" motions and applications designed to ease the Debtors' transition into chapter 11, maximize the value of the Assets, and minimize the effects of the commencement of the Chapter 11 Cases:

   i.   *Motion of the Debtors for Order Directing Joint Administration of the Debtors' Chapter 11 Cases Pursuant to Rule 1015(B) of the Federal Rules of Bankruptcy Procedure* [Docket No3] ("Joint Administration Motion");

   ii.  *Debtors' Application for Entry of an Order (I) Approving the Appointment of Stretto, Inc. as Claims and Noticing Agent and (II) Granting Related Relief* [Docket No. 5] ("Stretto Retention Application");

iii.  *Motion of the Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) File a Consolidated Creditor Matrix in Lieu of Submitting a Separate Mailing Matrix for Each Debtor, (B) File a Consolidated List of the Debtors' 30 Largest Unsecured Creditors, (C) Redact Certain Personal Identification Information; (II) Approving Certain Procedures to Maintain the Confidentiality of Patient Information as Required by Applicable Privacy Rules; and (III) Granting Related Relief* [Docket No. 6] ("<u>Creditor Matrix Motion</u>");

iv.  *Motion of the Debtor Pear Therapeutics, Inc. for an Order (I) Modifying the Requirements for the List of Equity Security Holders and (II) Modifying the Notice Requirements for Equity Security Holders* [Docket No. 7] ("<u>Equity Holders List Motion</u>");

v.  *Motion of the Debtors for Entry of Interim and Final Orders (I) Authorizing Payment of Certain Prepetition Taxes and Related Obligations and (II) Authorizing Financial Institutions to Honor All Related Checks and Electronic Payment Requests* [Docket No. 8] ("<u>Taxes Motion</u>");

vi.  *Debtors' Motion for Interim and Final Orders Pursuant to 11 U.S.C. §§ 105(a) and 366 (I) Approving Debtors' Proposed Form of Adequate Assurance of Payment, (II) Establishing Procedures for Resolving Objections by Utility Companies, and (III) Prohibiting Utility Companies from Altering, Refusing or Discontinuing Services* [Docket No. 9] ("<u>Utilities Motion</u>");

vii.  *Motion of the Debtors for Interim and Final Orders Pursuant to Sections 105(a), 362(a)(3) and 541 of the Bankruptcy Code and Bankruptcy Rule 3001, Establishing Notice and Hearing Procedures for Trading In the Debtors' Equity Securities to Preserve their Tax Attributes* [Docket No. 11] (the "<u>Trading Motion</u>");

viii.  *Motion of the Debtors for Entry of an Order Authorizing the Debtors to Pay Prepetition Wages, Compensation, Employee Benefits and Other Associated Obligations* [Docket No. 12] ("<u>Wages Motion</u>");

ix.  *Motion of the Debtors for Entry of Interim and Final Orders (I) Authorizing the Maintenance of Bank Accounts and Continued Use of Existing Business Forms and Checks; (II) Authorizing the Continued Use of Existing Cash Management System, and (III) Granting Limited Relief from the Requirements of Bankruptcy Code Section 345(b)* [Docket No. 10] ("<u>Cash Management Motion</u>");

x.  *Motion of the Debtors for Entry of Interim and Final Orders (I) Authorizing Debtors to (A) Continue Their Insurance Policies and (B) Pay*

*All Obligations with Respect Thereto, (II) Modifying Automatic Stay, and (III) Granting Related Relief* [Docket No. 17] ("Insurance Motion"); and

xi.     *Debtors' Motion For an Order Shortening Time for Notice of the Hearing to Consider Debtors' Motion for Entry of (A) an Order (I) Approving Bid Procedures Relating to the Sale of Substantially All of the Debtors' Assets, (II) Approving Stalking Horse Bid Protections; (III) Scheduling a Hearing to Consider the Sale, (IV) Approving the Form and Manner of Notice of Sale by Auction, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, and (VI) Granting Related Relief; and (B) An Order (I) Authorizing the Sale of Certain Assets of the Debtors Outside the Ordinary Course of Business, (II) Authorizing the Sale of Assets Free and Clear of All Liens, Claims, Encumbrances and Interests, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [Docket No 16] ("Motion to Shorten Notice").

On April 12, 2023, the Bankruptcy Court entered orders approving the relief requested in the Creditor Matrix Motion, Taxes Motion, Utilities Motion, Cash Management Motion, Wages Motion, Insurance Motion and Trading Motion on interim bases. See Docket Nos. 44, 46, 47, 48, 49, 50 and 53. The Bankruptcy Court also entered orders approving the relief requested in the Joint Administration Motion, Equity Holders List Motion, Stretto Retention Application, and Motion to Shorten Notice on final bases. *See* Docket Nos. 43, 45, 51, and 52.

On April 26, 2023, the Bankruptcy Court entered orders approving the relief requested in the Creditor Matrix Motion, Wages Motion, and Insurance Motion, and on final bases. *See* Docket Nos. 90, 91, and 92. On April 27, 2023, the Bankruptcy Court entered orders approving the relief requested in the Cash Management Motion, Taxes Motion, Utilities Motion and Trading Motion on final bases. *See* Docket Nos. 98, 99, 106, and 114.

(c)     ***Retention of Professional Advisors***

The Bankruptcy Court authorized the Debtors to retain and employ:

- Stretto as claims and noticing agent [Docket No. 51; entered April 12, 2023] and as administrative advisor [Docket No. 174; entered May 17, 2023];

- Foley Hoag LLP as its co-restructuring counsel [Docket No. 172; entered May 17, 2023];

- Gibbons P.C. as its co-restructuring counsel [Docket No. 173; entered May 17, 2023];

- Sonoran Capital Advisors LLC as its Financial Advisor [Docket No. 171; entered May 17, 2023];

- Sonoran Capital Advisors LLC, and appointing Mathew Foster as Chief Restructuring Officer [Docket No. 296, as amended by Docket No. 342; entered July 5, 2023 and July 31, 2023, respectively];

- MTS Health Partners, LP, as financial advisor and investment banker [Docket No. 179; entered May 18, 2023]; and

- Certain professionals utilized by the Debtors prior to the Petition Date in the ordinary course of business, pursuant to an order entered May 3, 2023. See Docket No. 135.

The Bankruptcy Court authorized the Committee to retain and employ:

- Thompson Coburn Hahn And Hessen LLP as its lead restructuring counsel [Docket No. 226; entered May 24, 2023];

- Archer & Greiner P.C. as its initial Delaware counsel [Docket No. 227; entered May 24, 2023] and Chipman Brown Cicero & Cole, LLP as its replacement Delaware counsel [Docket No. 545; entered January 5, 2024]; and

- Dundon Advisers LLC as its financial advisor [Docket No. 228; entered May 25, 2023].

(d)    ***The Sale of Substantially All of the Debtors' Assets***

On April 7, 2023, the Debtors filed the Bidding Procedures Motion, which sought to approve bidding procedures, approve stalking horse bid protections, authorize the Debtors to designate a stalking horse bidder, schedule an auction, approve assumption and assignment procedures, schedule a sale hearing, approve the proposed sale and the assumption and assignment of executory contracts and unexpired leases. On April 27, 2023, the Debtors filed a Notice of Proposed Sale Order and Revised Bid Procedures Order. See Docket No. 97. On April 28, 2023, the Bankruptcy Court entered the Bidding Procedures Order,[4] which among other things, authorized, but not directed, the Debtors, to designate one or more Stalking Horse Bidders and enter into Stalking Horse Agreements (as defined in the Bidding Procedures Order). *See* Docket No. 116.  Ultimately, however, the Debtors did not designate a stalking horse bidder or enter into a Stalking Horse Agreement.

The Bidding Procedures Order fixed May 15, 2023 at 4:00 p.m. (prevailing Eastern Time) as the deadline for the submission of bids for the Assets (the "Bid Deadline"). Prior to the Bid Deadline, the Debtors received twelve (12) written offers which the Debtors, after consultation with the Consultation Parties, determined were Qualified Bids. In consultation with the Committee and pursuant to the Bid Procedures, the Debtors determined that the most efficient way to conduct the Auction was to form a total of thirteen (13) bid lots (each, a "Lot").

---

[4] Capitalized terms used but not defined in this section have the meanings ascribed to them in the Bidding Procedures Order.

Pursuant to the Bidding Procedures, on May 18, 2023, the Debtors commenced the Auction for a sale of the Debtors' Assets by Lot. The Auction concluded that same day. On May 19, 2023, the Debtors filed the *Notice of Auctions Results for the Sale of the Debtors' Assets* [Docket No.181] and announced, in accordance with the Bidding Procedures, that the Debtors, in consultation with the Consultation Parties, determined the bids submitted by the Purchasers to be the Successful Bids (as defined in the Bidding Procedures Order).

Specifically, the Successful Bidders for certain of the Debtors' Assets were as follows:

1.   Click was selected as the Successful Bidder for the Debtors' assets related to all Pear Platform patents, excluding patents related to the ISF Assets [Lot 8] (the "Pear Platform Assets"). The terms of Click's bid, pursuant to which Click purchased the Pear Platform Assets for a purchase price of $70,000 cash, were set forth in Click Asset Purchase Agreement.

2.   Harvest Bio was selected as the Successful Bidder for the Debtors' assets related to the Invention Science Fund licenses and patents [Lot 1] (the "ISF Assets"), schizophrenia (Pear-004) [Lot 2] (the "Schizophrenia Assets"), multiple sclerosis and depression (Pear-006) [Lot 3] (the "MS/Depression Assets"), major depressive disorder [Lot 5] (the "MDD Assets"), other pipeline assets [Lot 6] (the "Other Pipeline Assets"), corporate trademarks [Lot 9] (the "Trademark Assets"), PearConnect [Lot 10] (the "PearConnect Assets"), and reSET® and reSET-O® [Lot 12] (the "reSET Assets," and together with the ISF Assets, the Schizophrenia Assets, the MS/Depression Assets, the MDD Assets, the Other Pipeline Assets, the Trademark Assets, and the PearConnect Assets, the "Harvest Bid Assets"). The terms of Harvest Bio's bids, pursuant to which it purchased (i) the ISF Assets for a purchase price of $50,000 cash; (ii) the Schizophrenia Assets, the MS/Depression Assets, and the Other Pipeline Assets for a total aggregate purchase price of $50,000 cash; (iii) the MDD Assets for $50,000 cash; (iv) the Trademark Assets for a purchase price of $50,000 cash; (v) the PearConnect Assets for a purchase price of $180,000 cash; and (vi) the reSET Assets for a purchase price $1,650,000 cash, for an aggregate purchase price of $2,030,000 cash for all of the Harvest Bid Assets, were set forth in Harvest Bio Asset Purchase Agreement.

3.   Nox was selected as the Successful Bidder for the Debtors' assets related to Somryst® [Lot 11] (the "Somryst Assets"). The terms of Nox's bid, pursuant to which it purchased the Somryst Assets for a purchase price of $3,900,000 cash, were set forth in the Nox Asset Purchase Agreement.

4.   WELT was selected as the Successful Bidder for the Debtors' assets related to migraine (Pear-014) [Lot 4] (the "Migraine Asset"). The terms of WELT's bid, pursuant to which it purchased the Migraine Assets for a purchase price of $50,000 cash, were set forth in the WELT Asset Purchase Agreement.

On May 23, 2023, the Court entered the four (4) Sale Orders, which approved the sale of substantially of the Debtors' Assets pursuant to the terms of each of the Asset Purchase Agreements by and among the Debtors and each of the Purchasers.

The Sales closed in accordance with the terms of the Sale Orders and the Asset Purchase Agreements on or about the following dates:  with Click – June 21, 2023; Harvest Bio – June 16, 2023; Nox – June 16, 2023; and WELT, June 5, 2023.

On June 30, 2023, the Debtors filed the *Notice of Assumed and Assigned Contracts Pursuant to Sale Order*s [Docket No. 289], notifying counterparties to contracts or leases that were assumed and assigned to the Purchasers.

(e)    ***Sale of De Minimis Assets***

On April 14, 2023, the Debtors filed the *Motion of the Debtors For Entry of an Order (I) Authorizing and Approving Procedures for the Sale or Abandonment of De Minimis Assets, and (II) Authorizing the Debtors to Pay Commissions to Third Parties In Connection With Any De Minimis Asset Sale Filed by Pear Therapeutics, Inc.* [Docket No. 62] (the "De Minimis Asset Sale Motion"). The De Minimis Asset Sale Motion sought approval of certain procedures to authorize the Debtors to use, sell, or transfer certain assets outside of the ordinary course of business where in each sale the assets' value did not exceed $50,000 and approval of the transfer certain assets with little or no use to the Debtors' estates.  On May 3, 2023, the Bankruptcy Court entered the order approving the relief requested in the De Minimis Asset Sale Motion.  *See* Docket No. 136.  On May 5, 2023, the Debtors filed the *Notice of De Minimis Asset Sale* [Docket No. 143] disclosing that sixty-five (65) Lenovo Thinkpads were sold to Hummingbird International for the aggregate amount of $6,300.00.

On June 13, 2023 the Debtors filed the *Debtors' Motion For Entry of an Order (I) Authorizing Private Sale of Certain Electronic Devices Free and Clear of All Liens, Claims, Encumbrances and Other Interests, and (II) Granting Other Related Relief* [Docket No. 245]. On July 5, 2023, the Court entered the *Order (I) Authorizing Private Sale of Certain Electronic Devices Free and Clear of All Liens, Claims, Encumbrances and Other Interests, and (II) Granting Related Relief* [Docket 294] (the "Electronic Devices Sale Order"), which approved the private sale of approximately four hundred (400) Apple devices (the "Apple Devices") to Diamond Assets LLC.  Specifically, pursuant to the Electronic Devices Sale Order, the Apple Devices were collected from the Debtors' former employees in two batches.  The first batch consisted of two hundred and twenty-seven (227) Apple Devices that were sold for an aggregate of $106,762.65.  The second batch consisted of one hundred and seventy-nine (179) devices, which could be sold for a maximum aggregate price of $153,420.00 pursuant to quote issued by Diamond Assets LLC.

(f)    ***Schedules and Bar Dates***

On May 1, 2023, each of the Debtors filed its Schedules. *See* Docket Nos. 9 (Case 23-10430) and 126. Among other things, the Schedules set forth the Claims of known or putative Creditors against the Debtors as of the Petition Date, based upon the Debtors' books and records.

On June 16, 2023, the Bankruptcy Court entered the General Bar Date Order, establishing procedures and setting Bar Dates for filing proofs of claim against the Debtors and approving the

32

form and manner of the notice of the General Bar Date Order. Pursuant to the General Bar Date Order the Bankruptcy Court established the following Bar Dates:[5]

- July 20, 2023, at 5:00 p.m. (prevailing Eastern Time) as the final date and time for each entity other than any governmental units, to file a Proof of Claim on account of a prepetition claim, including 503(b)(9) Claims, subject to certain exceptions as set forth in the General Bar Date Order;

- October 4, 2023 at 5:00 p.m. (prevailing Eastern Time) as the final date and time for each Governmental Units to file Proofs of Claim on account of a prepetition claims;

- July 20, 2023, at 5:00 p.m. (prevailing Eastern Time) as the final date and time for each entity to file a Proof of Administrative Claim on account of an Administrative Expense Claim arising during the period from the Petition Date through and including May 31, 2023, subject to certain exceptions as set forth in the General Bar Date Order;

- with respect to a claim arising from the Debtors' rejection of an executory contract or unexpired lease, the later of (a) the General Bar Date (b) the Governmental Bar Date, if applicable, and (c) (30) days after the effective date of the rejection of an executory contract or unexpired lease as established in the Bankruptcy Court order authorizing such rejection;

- with respect to any scheduled Claim that is amended by the Debtors' amendment of, or supplement to, the Schedules, the later of (a) the General Bar Date, (b) the Governmental Bar Date, if applicable, and (c) twenty-one (21) days after the date notice is given regarding any such amendment or supplement; and

Notice of the General Bar Date Order was published in the New York Times and national editions of *The New York Times* and a notice of the General Bar Date Order and related procedures and a proof of claim form were served on, among other parties, all Creditors and potential Creditors and other parties appearing in the Debtors' Creditor matrix.

As described in detail below, the Combined Disclosure Statement and Plan contemplates the establishment of a Final Administrative Claim Bar Date for any Administrative Claim that (a) arose on or after May 31, 2023, or (b) was not required to be filed by an earlier date, including any Administrative Claims.

The projected recoveries set forth in the Combined Disclosure Statement and Plan are based on certain assumptions, including the Plan Proponents' estimates of the Claims that will eventually be Allowed in various Classes. There is no guarantee that the ultimate amount of each of such categories of Claims will correspond to the Plan Proponents' estimates. The Debtors or the Liquidating Trust, as applicable, and their professionals will investigate Claims filed against

---

[5] The descriptions in this section of the General Bar Date Order and deadlines established thereby is intended to be a summary. All parties should review the General Bar Date Order in its entirety. In the event of any inconsistency between this summary and the General Bar Date Order, the General Bar Date Order shall control.

the Debtors to determine the validity of such Claims. The Debtors or the Liquidating Trust, as applicable, may file Objections to Claims that are filed in improper amounts or classifications, or are otherwise subject to objection under the Bankruptcy Code or other applicable law.

(g)   ***Perceptive Tax Claim and Motion***

As discussed in Section 3.1(b)(ii) herein, the Perceptive Settlement Agreement sold, transferred, and assigned to Perceptive the right to the Federal Tax Refund. The IRS issued the Federal Tax Refund to the Debtors prior to November 2, 2023. However, the Federal Tax Refund was returned to the IRS on account of the address change of the Debtors. Thereafter, on November 2, 2023, Sonoran submitted a change of address form to the IRS requesting that the Federal Tax Refund be reissued to the correct address of the Debtors. The Debtors received the Federal Tax Refund on or about January 4, 2024.

On November 30, 2023, the Debtors filed the *Motion for Entry of an Order Approving Stipulation with Perceptive Credit Holdings III, LP Regarding Tax Refund Check* [Docket No. 486] (the "Refund Motion"). Pursuant to the Refund Motion, the Debtors sought approval of a stipulation through which the Debtors agreed that upon receipt of the Federal Tax Refund, the Debtors would turn over the Federal Tax Refund to Perceptive. The stipulation also noted that, consistent with the sale and assignment of the Federal Tax Refund pursuant to the Perceptive Settlement Agreement, the Debtors and Perceptive agreed that the Federal Tax Refund and all proceeds thereof do not constitute property of the Debtors' estates.

In response to the Refund Motion, on December 14, 2023, the Committee filed the *Objection to Debtors' Motion for Entry of an Order Approving Stipulation with Perceptive Credit Holdings III, LP Regarding Tax Refund Check* [Docket No. 511] The Committee argued that (i) the Perceptive Settlement Agreement had not been subjected to the Court's scrutiny or challenge by the Committee, (ii) the Federal Tax Refund arose post-petition and thus was not subject to Perceptive's prepetition security interest, and (iii) even if the Federal Tax Refund arose prepetition, such Federal Tax Refund only arose at the time the Debtors amended their IRS Form 941 to seek the refund and thus any lien on the Federal Tax Refund is avoidable as a preference. The Debtors and Perceptive each filed replies in further support of the Refund Motion [Docket Nos. 551 and 552] where they argued, *inter alia*, that under applicable law the Federal Tax Refund arose prior to the ninety day preference period and therefore was not avoidable, Perceptive was secured and properly perfected in the Federal Tax Refund prior to its transfer to Perceptive, and that an unwinding of the Perceptive Settlement Agreement would be catastrophic to the Debtors' estates.

The Debtors, Perceptive and the Committee thereafter engaged in settlement discussions and reached a mutually acceptable form of order resolving the Refund Motion which was approved by the Bankruptcy Court [Docket No. 575] (the "Agreed Tax Refund Order"). Pursuant to the Agreed Tax Refund Order, the Debtors have transferred the Federal Tax Refund in full satisfaction of the Perceptive Refund Claim. Additionally, Perceptive has agreed to the reduction of its general unsecured claim against each of Holdings and Pear US from $10,400,000 to $7,500,000 (the "Perceptive Residual Claim"). Finally, the Agreed Tax Refund Order provided that this Plan would provide for mutual general releases between the Debtors' estates and Perceptive (other than the Perceptive Residual Claim).

34

(h)      *The Wind-Down of the Estates*

Following the Sales, the Debtors are focused principally on winding down their remaining operations, affairs and business. This Combined Disclosure Statement and Plan provides for the Assets, to the extent not Purchased Assets or already liquidated, to be liquidated over time and the proceeds thereof to be distributed to Holders of Allowed Claims in accordance with the terms of the Combined Disclosure Statement and Plan and the treatment of Allowed Claims described more fully herein. The Plan Administrator will effect such liquidation and distributions. After the Effective Date, one or more of the Debtors will continue its corporate existence for Distribution purposes, and the Debtors will be dissolved by the Plan Administrator as soon as is reasonably practicable.

(i)      *Purchaser Responsibility for Certain Claims*

No Holder of a Claim or Claims against the Debtors shall receive a Distribution from the Debtors or the Liquidating Trust under this Combined Disclosure Statement and Plan if such obligation was assumed by one of the Purchasers under the Sale Orders and the Asset Purchase Agreements.

(j)      *Patient Records*

On June 7, 2023, the Debtors filed their *Motion for an Order (i) Approving Entry into Agreements Relating to Patient Records, (ii) Approving Patient Notice and Destruction procedures and (iii) Granting Related Relief* [Docket No. 241]. The Court entered the Order approving the Patient Records Motion on June 23, 2023 [Docket No. 275] (the "Patient Records Order"). The Debtors collected and maintained certain patient records (the "Patient Records") in the ordinary course of their business. The Patient Records constitute protected health information for purposes of the Health Insurance Portability and Accountability Act of 1996, as the same has been amended by the Health Information Technology for Economic and Clinical Health A. Certain of the Patient Records constitute Part 2 information for purposes of the Part 2 Regulations governing the privacy and security of information concerning substance use disorder treatment (collectively, "Part 2"). Certain of the Sale Orders approved the sale of data from the Patient Records, with the patient information removed. Pursuant to the Patient Records Order, the Debtors entered into agreements, including the Records Custodianship Service Agreement with Morgan Records Management, LLC ("Morgan"), to notice and dispose of the Patient Records consistent with the manner prescribed in section 351 of the Bankruptcy Code.

In compliance with the Patient Records Order, the Debtors published the Destruction Notice (as defined therein) in the national edition of the *New York Times* on June 25, 2023. *See* Docket No. 277. Morgan will notify patients and applicable government agencies and destroy unclaimed Patient Records in accordance with the terms of the Patient Records Order.

**3.4      The Warn Act Litigation and Global Settlement.**

On April 10, 2023, Grandfield initiated the WARN Act Litigation, bringing two causes of action against Pear US: (i) violation of the WARN Act; and (ii) violation of the CAL-WARN Act.

On July 5, 2023, Pear US moved to dismiss both counts of the adversary proceeding complaint on the grounds that Grandfield failed to state a claim under Fed. R. Civ. P. 12(b)(6) pursuant to *Pear US's Motion to Dismiss Plaintiff's Complaint* [D.I. 9, Adv. Pro 23-50334] ("Mot. to Dismiss").  With respect to Grandfield's CAL-WARN Act Claim, Pear US argued, *inter alia*, that Grandfield had no standing to assert a violation of the CAL-WARN Act on behalf of himself or others similarly situated because Grandfield was a New Hampshire resident and worked at or reported to Pear US's Massachusetts facility. Grandfield filed his Answering Brief in Opposition to the Mot. To Dismiss on July 19, 2023 [D.I. 12, Adv. Pro 23-50334].

Then, on July 20, 2023, Grandfield filed his *Motion for Class Certification and Related Relief* [D.I. 13, Adv. Pro 23-50334]. On July 26, 2023, Pear US filed its *Reply Brief in Further Support of Pear US's Mot. To Dismiss* [D.I. 16, Adv. Pro 23-50334].  On August 1, 2023, Grandfield requested oral argument on the Mot. to Dismiss. [D.I. 18, Adv. Pro 23-50334]. On August 3, 2023, Pear US filed its *Opposition to Plaintiff's Motion for Class Certification and Related Relief* [D.I. 19, Adv. Pro 23-50334]. On August 10, 2023, Grandfield filed his *Reply Brief in Support of Motion for Class Certification and Related Relief* [D.I. 22, Adv. Pro 23-50334].  The Bankruptcy Court scheduled a hearing on the Mot. to Dismiss for October 23, 2023.

On October 19, 2023, Pear US, Grandfield and the Committee attended mediation presided over by Bankruptcy Judge Nelms (Ret.) as mediator to resolve global claims related to the WARN Act Litigation.  During and after the mediation, the Debtors and counsel to Grandfield engaged in extensive negotiations and, with consent of the Committee, achieved a global resolution of their disagreements regarding the validity of the claims in the WARN Act Litigation, the allowance of any Claims thereunder, and the allocation of proceeds of the Debtors' assets.  The Global Settlement, which memorializes these resolutions, is designed to achieve an economic settlement of the specified Claims against the Debtors and an efficient resolution of the Chapter 11 Cases.  On December 1, 2023, the Debtors and Granfield filed *the Joint Motion For Entry of An Order: (I) Certifying A Class For Settlement Purposes, (II) Appointing Plaintiff As Class Representative And Plaintiffs' Counsel As Class Counsel, (III) Preliminarily Approving Settlement, (IV) Approving Class Notice, (V) Scheduling Fairness Hearing, (VI) And Granting Related Relief Filed by Evan Grandfield.* [D.I. 488] (the "Warn Act Class Settlement Motion").

The Global Settlement, the Warn Act Class Certification Order and WARN Act Class Settlement Order are incorporated into this Combined Disclosure Statement and Plan. Pursuant to the Global Settlement, the Debtors and the WARN Act Parties have agreed as follows:[6]

- *WARN Act Class Settlement Amount*: On the Effective Date and pursuant to the WARN Act Class Certification Order, the WARN Act Parties, in full and final settlement of the WARN Act Litigation and the claims asserted therein, shall be granted an aggregate allowed unsecured Section 507(a)(4) class claim in the amount of $990,000, inclusive of

---

[6] The following is a general summary of the Global Settlement, which is incorporated into this Combined Disclosure Statement and Plan. The treatment provided to all Classes of Claims and Interests is set forth in Article VII of the Combined Disclosure Statement and Plan. All parties should review this Combined Disclosure Statement and Plan in its entirety.

a Service Payment to Grandfield as Class Representative in the amount of $15,000 (the "Service Payment") and fees and expenses the Class Counsel Fees and Expenses (as defined in and provided by the WARN Act Class Settlement Order),

- *WARN Act Settlement Class*: Pursuant to the WARN Act Class Certification Order, a class was certified for settlement purposes only pursuant to Rules 23(b)(3) and 23(e)(2) of the Federal Rules as made applicable to these proceedings by Bankruptcy Rule 7023. The "WARN Act Settlement Class" shall be defined as: Grandfield and other similarly situated employees of Pear US: (i) who worked at, received assignments from, or reported to the Pear US's former facilities in Boston, Raleigh and San Francisco, (ii) who were terminated without cause on or about April 7, 2023 or in reasonable anticipation of, or as the reasonably foreseeable consequence of the mass layoffs or plant closings ordered by Pear US on or about April 7, 2023, (iii) who are affected employees within the meaning of 29 U.S.C. § 2101(a)(5), and (iv) who have not filed a timely request to opt-out of the class. Pursuant to the WARN Act Class Certification Order, Raisner Roupinian LLP is appointed class counsel ("WARN Act Class Counsel"), and Grandfield is appointed the WARN Act Class Representative, in each case for purposes of the settlement only.

- *Allocation of Allowed Claim*: The Allowed WARN Act Class Settlement Claim, after being reduced by Grandfield's Service Payment and Class Counsel Fees and Expenses for the WARN Act Class Counsel (as described herein) will be allocated as follows: The WARN Act Parties who worked at, reported to, or received assignments from Pear US's Raleigh or San Fransisco offices or who worked remotely and reported to a supervisor who reported to the Raleigh or San Francisco offices, will each receive the fixed amount of $500.00.  The balance of the WARN Act Class Settlement Claim, after taking into consideration the foregoing deductions, will be distributed to the remaining WARN Act Parties who worked at, received assignments from, or reported to Pear US's Boston office, or who worked remotely and reported to a supervisor who reported to the Boston office, on a pro rata basis based upon that individual WARN Act Party's (a) average monthly gross wages or salary and any benefits under any employee benefit plan, and (b) their hire date and termination date, based upon Pear US's books and records, as more fully set forth in the Warn Act Class Settlement Motion. No Settlement Class Member's share of the recovery Global Settlement may exceed $15,150, which is the applicable priority cap pursuant to section 507(a)(4) of the Bankruptcy Code  (the "Statutory Cap") at the time of the filing of the Warn Act Complaint, and any Pro Rata Share otherwise in excess of such amount shall be redistributed among other Boston Settlement Class Members (as defined in the Warn Act Settlement Motion) based upon their applicable Pro Rata Share, but in no event may they recover more than the Statutory Cap in the aggregate.

- *WARN Act Class Representative Service Payment*: Grandfield shall be entitled to a one-time payment of $150,000.00 as a Service Payment, for his services on behalf of the WARN Act Parties, payable from the WARN Act Class Settlement Claim in addition to his pro rata share of the WARN Act Class Settlement Claim.

37

- *WARN Act Class Counsel Fees and Expenses*: The WARN Act Class Counsel shall receive attorneys' fees of one-third (1/3) of the WARN Act Class Settlement Claim, net of the Service Payment and litigation expenses not to exceed $20,000.00.

- *Releases*: Grandfield and the WARN Act Settlement Class (the "<u>WARN Act Releasing Parties</u>") shall grant releases including for Pear US, its directors, officers, and shareholders (the "<u>WARN Act Released Parties</u>") of and from any and all claims and rights of any kind arising in, out of, or related to the WARN Act Litigation and any similar claims for liabilities under the WARN Acts or any other state law equivalents, including demands, debts, liabilities, obligations, liens, actions and causes of action, costs, expenses, attorneys' fees and damages of whatever kind or nature, at law, in equity and otherwise, whether known or unknown, anticipated, suspected or disclosed, liquidated or unliquidated, contingent or non-contingent, asserted or unasserted, fixed or not, matured or unmatured, disputed or undisputed, legal or equitable, that the WARN Act Releasing Parties have or may have as of the Effective Date against the WARN Act Released Parties. Additionally, the WARN Act Releasing Parties expressly waive and release, to the fullest extent that the law permits, any and all provisions, rights, and benefits conferred by § 1542 of the California Civil Code, or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code.

- *Unclaimed Funds*: In the event that there are any settlement funds remaining for any reason, including checks that are not deposited, endorsed or negotiated on the 181st day following their date of issuance, such Unclaimed Funds shall be returned to Pear US for distribution in accordance with this Combined Disclosure Statement and Plan or as otherwise ordered by the Bankruptcy Court.

- *Opt-Out*: WARN Act parties may opt out of the WARN Act Settlement Class by completing and mailing an Opt-Out Form to WARN Act Class Counsel post-marked no later than thirty (30) days after the date of the mailing of the WARN Act Class Notice, which shall be mailed by Pear US to WARN Act Parties within ten (10) business days following the entry of the WARN Act Class Certification Order.

Pursuant to section 1123 of the Bankruptcy Code, the Combined Disclosure Statement and Plan incorporates the Global Settlement and the WARN Act Class Settlement Order. A condition of the WARN Act Class Settlement Order is the occurrence of the Effective Date. Upon the occurrence of the Effective Date, the payments under the WARN Act Settlement Agreement will be made within ten (10) days, pursuant to the WARN Act Class Settlement Order. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromises and settlements underlying the substantive consolidation of the Debtors' Estates and all other compromises and settlements provided herein. The Bankruptcy Court's findings shall constitute its determination that such compromises and settlements, and the substantive consolidation of the Debtors' Estates, are in the best interests of the Debtors, their Estates, their Creditors, and other parties-in-interest, and are fair, equitable, and within the range of reasonableness.

## ARTICLE IV
## CONFIRMATION AND VOTING PROCEDURES

**4.1**    **Confirmation Procedure**. The Solicitation Procedures Order, among other things, conditionally approves the Combined Disclosure Statement and Plan for solicitation purposes only and authorizes the Debtors to solicit votes to accept or reject the Combined Disclosure Statement and Plan. The Confirmation Hearing has been scheduled for May 2, 2024 at 2:00 p.m. (prevailing Eastern Time) at the Bankruptcy Court to consider (a) final approval of the Combined Disclosure Statement and Plan as providing adequate information pursuant to Bankruptcy Code section 1125 and (b) Confirmation of the Combined Disclosure Statement and Plan pursuant to Bankruptcy Code section 1129. The Confirmation Hearing may be adjourned from time to time by the Debtors without further notice, except for an announcement of the adjourned date made at the Confirmation Hearing or by Filing a notice with the Bankruptcy Court.

**4.2**    **Procedure for Objections**. Any objection to final approval of the Combined Disclosure Statement and Plan as providing adequate information pursuant to Bankruptcy Code section 1125 or Confirmation of the Combined Disclosure Statement and Plan must be made in writing and Filed with the Bankruptcy Court and served on the Notice Recipients, in each case, by no later than **April 25, 2024 at 4:00 p.m.** (prevailing Eastern Time). Unless an objection is timely Filed and served, it may not be considered by the Bankruptcy Court at the Confirmation Hearing.

**4.3**    **Requirements for Confirmation**. The Bankruptcy Court will confirm the Combined Disclosure Statement and Plan only if it meets all the applicable requirements of Bankruptcy Code section 1129. Among other requirements, the Combined Disclosure Statement and Plan (i) must be accepted by all Impaired Classes of Claims or Interests or, if rejected by an Impaired Class, the Combined Disclosure Statement and Plan must not "discriminate unfairly" against, and be "fair and equitable" with respect to, such Class; and (ii) must be feasible. The Bankruptcy Court must also find that: (i) the Combined Disclosure Statement and Plan has classified Claims and Interests in a permissible manner; (ii) the Combined Disclosure Statement and Plan complies with the technical requirements of chapter 11 of the Bankruptcy Code; and (iii) the Combined Disclosure Statement and Plan has been proposed in good faith.

**4.4**    **Classification of Claims and Interests**

Bankruptcy Code section 1123 provides that a plan must classify the claims and interests of a debtor's creditors and equity interest holders. In accordance with Bankruptcy Code section 1123, the Combined Disclosure Statement and Plan divides Claims and Interests into Classes and sets forth the treatment for each Class (other than those claims which pursuant to Bankruptcy Code section 1123(a)(1) need not be and have not been classified). The Plan Proponents also are required, under Bankruptcy Code section 1122, to classify Claims and Interests into Classes that contain Claims or Interests that are substantially similar to the other Claims or Interests in such Class.

The Bankruptcy Code also requires that a plan provide the same treatment for each claim or interest of a particular class unless the claim holder or interest holder agrees to a less favorable treatment of its claim or interest. The Plan Proponents believe that the Combined Disclosure

Statement and Plan complies with such standard. If the Bankruptcy Court finds otherwise, however, it could deny Confirmation of the Combined Disclosure Statement and Plan if the Holders of Claims or Interests affected do not consent to the treatment afforded them under the Combined Disclosure Statement and Plan.

A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes. A Claim also is placed in a particular Class for the purpose of receiving Distributions pursuant to the Combined Disclosure Statement and Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled prior to the Effective Date.

The Plan Proponents believe that the Combined Disclosure Statement and Plan has classified all Claims and Interests in compliance with the provisions of Bankruptcy Code section 1122 and applicable case law. It is possible that a Holder of a Claim or Interest may challenge the Debtors' classification of Claims or Interests and that the Bankruptcy Court may find that a different classification is required for the Combined Disclosure Statement and Plan to be confirmed. If such a situation develops, the Plan Proponents intend, in accordance with the terms of the Combined Disclosure Statement and Plan, to make such permissible modifications to the Combined Disclosure Statement and Plan as may be necessary to permit its Confirmation. Any such reclassification could adversely affect Holders of Claims by changing the composition of one or more Classes and the vote required of such Class or Classes for approval of the Combined Disclosure Statement and Plan.

**EXCEPT AS SET FORTH IN THE COMBINED DISCLOSURE STATEMENT AND PLAN, UNLESS SUCH MODIFICATION OF CLASSIFICATION MATERIALLY ADVERSELY AFFECTS THE TREATMENT OF A HOLDER OF A CLAIM AND REQUIRES RE-SOLICITATION, ACCEPTANCE OF THE COMBINED DISCLOSURE STATEMENT AND PLAN BY ANY HOLDER OF A CLAIM PURSUANT TO THIS SOLICITATION WILL BE DEEMED TO BE A CONSENT TO THE COMBINED DISCLOSURE STATEMENT AND PLAN'S TREATMENT OF SUCH HOLDER OF A CLAIM REGARDLESS OF THE CLASS AS TO WHICH SUCH HOLDER ULTIMATELY IS DEEMED TO BE A MEMBER.**

The amount of any Impaired Claim that ultimately is Allowed by the Bankruptcy Court may vary from any estimated Allowed amount of such Claim and, accordingly, the total Claims that are ultimately Allowed by the Bankruptcy Court with respect to each Impaired Class of Claims may also vary from any estimates contained herein with respect to the aggregate Claims in any Impaired Class. Thus, the actual recovery ultimately received by a particular Holder of an Allowed Claim may be adversely or favorably affected by the aggregate amount of Claims Allowed in the applicable Class. Additionally, any changes to any of the assumptions underlying the estimated Allowed amounts could result in material adjustments to recovery estimates provided herein or the actual Distribution received by Creditors. The projected recoveries are based on information available to the Debtors as of the date hereof and reflect the Debtors' views as of the date hereof only.

The classification of Claims and Interests and the nature of Distributions to members of each Class are summarized herein. The Debtors believe that the consideration, if any, provided under the Combined Disclosure Statement and Plan to Holders of Claims reflects an appropriate resolution of their Claims taking into account the differing nature and priority (including applicable contractual subordination) of such Claims and Interests. The Bankruptcy Court must find, however, that a number of statutory tests are met before it may confirm the Combined Disclosure Statement and Plan. Many of these tests are designed to protect the interests of Holders of Claims or Interests who are not entitled to vote on the Combined Disclosure Statement and Plan, or do not vote to accept the Combined Disclosure Statement and Plan, but who will be bound by the provisions of the Combined Disclosure Statement and Plan if it is confirmed by the Bankruptcy Court.

## 4.5    Impaired Claims or Interests

Pursuant to the provisions of the Bankruptcy Code, only classes of claims or interests that are "impaired" (as defined in Bankruptcy Code section 1124) under a plan may vote to accept or reject such plan. Generally, a claim or interest is impaired under a plan if the holder's legal, equitable, or contractual rights are changed under such plan. In addition, if the Holders of claims or interests in an impaired class do not receive or retain any property under a plan on account of such claims or interests, such impaired class is deemed to have rejected such plan under Bankruptcy Code section 1126(g) and, therefore, such Holders are not entitled to vote on such plan.

Under the Combined Disclosure Statement and Plan, Holders of Claims in Class 4 are Impaired and are entitled to vote on the Combined Disclosure Statement and Plan. Under the Combined Disclosure Statement and Plan, Holders of Claims in Class 5 and 6 are Impaired and will not receive or retain any property under the Combined Disclosure Statement and Plan on account of such Interests and, therefore, are not entitled to vote on the Combined Disclosure Statement and Plan and instead are deemed to reject the Combined Disclosure Statement and Plan. Under the Combined Disclosure Statement and Plan, Holders of Claims in Classes 1, 2, and 3 are Unimpaired and, therefore, not entitled to vote on the Combined Disclosure Statement and Plan and instead are deemed to accept the Combined Disclosure Statement and Plan.

**ACCORDINGLY, A BALLOT FOR ACCEPTANCE OR REJECTION OF THE COMBINED DISCLOSURE STATEMENT AND PLAN IS BEING PROVIDED ONLY TO HOLDERS OF CLAIMS IN CLASS 4.**

## 4.6    Confirmation Without Necessary Acceptances; Cramdown

In the event that any impaired class of claims or interests does not accept a plan, a plan proponent nevertheless may move for confirmation of the plan. A plan may be confirmed, even if it is not accepted by all impaired classes, if the plan has been accepted by at least one impaired class of claims, and the plan meets the "cramdown" requirements set forth in Bankruptcy Code section 1129(b). Bankruptcy Code section 1129(b) requires that a court find that a plan (a) "does not discriminate unfairly" and (b) is "fair and equitable," with respect to each non-accepting impaired class of claims or interests. Here, because Holders of Interests in Class 6 and Class 7 are deemed to reject the Combined Disclosure Statement and Plan, the Plan Proponents will seek

confirmation of the Combined Disclosure Statement and Plan from the Bankruptcy Court by satisfying the "cramdown" requirements set forth in Bankruptcy Code section 1129(b). The Plan Proponents believe that such requirements are satisfied as set forth herein.

A plan does not "discriminate unfairly" if (a) the legal rights of a nonaccepting class are treated in a manner that is consistent with the treatment of other classes whose legal rights are similar to those of the nonaccepting class and (b) no class receives payments in excess of that which it is legally entitled to receive for its claims or interests. The Plan Proponents believe that, under the Combined Disclosure Statement and Plan, all Impaired Classes of Claims or Interests are treated in a manner that is consistent with the treatment of other Classes of Claims or Interests that are similarly situated, if any, and no Class of Claims or Interests will receive payments or property with an aggregate value greater than the aggregate value of the Allowed Claims or Allowed Interests in such Class. Accordingly, the Plan Proponents believe that the Combined Disclosure Statement and Plan does not discriminate unfairly as to any Impaired Class of Claims or Interests.

The Bankruptcy Code provides a nonexclusive definition of the phrase "fair and equitable." To determine whether a plan is "fair and equitable," the Bankruptcy Code establishes "cramdown" tests for secured creditors, unsecured creditors and equity holders, as follows:

(a)     <u>Secured Creditors</u>. Either (i) each impaired secured creditor retains its liens securing its secured claim and receives on account of its secured claim deferred Cash payments having a present value equal to the amount of its allowed secured claim, (ii) each impaired secured creditor realizes the "indubitable equivalent" of its allowed secured claim or (iii) the property securing the claim is sold free and clear of liens with such liens to attach to the proceeds of the sale and the treatment of such liens on proceeds to be as provided in clause (i) or (ii) above.

(b)     <u>Unsecured Creditors</u>. Either (i) each impaired unsecured creditor receives or retains under the plan property of a value equal to the amount of its allowed claim or (ii) the Holders of Claims and interests that are junior to the claims of the dissenting class will not receive any property under the plan. No Holder of a Claim or Interest junior to those in Class 4 is entitled to receive any property under the Combined Disclosure Statement and Plan.

(c)     <u>Interests</u>. Either (i) each holder of an equity interest will receive or retain under the plan property of a value equal to the greatest of the fixed liquidation preference to which such holder is entitled, the fixed redemption price to which such holder is entitled or the value of the interest or (ii) the holder of an interest that is junior to the nonaccepting class will not receive or retain any property under the plan. No Holder of a Claim or Interest junior to those in Class 4 is entitled to receive any property under the Combined Disclosure Statement and Plan.

As discussed above, the Plan Proponents believe that the Distributions provided under the Combined Disclosure Statement and Plan satisfy the absolute priority rule, where required.

## 4.7     Feasibility

Bankruptcy Code section 1129(a)(11) requires that confirmation of a plan not be likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors or

any successor to the Debtors (unless such liquidation or reorganization is proposed in the Combined Disclosure Statement and Plan). Inasmuch as the Assets have been, or will be, liquidated and the Combined Disclosure Statement and Plan provides for the Distribution of all of the Cash proceeds of the Assets to Holders of Claims that are Allowed in accordance with the Combined Disclosure Statement and Plan, for purposes of this test, the Plan Proponents have analyzed the ability of the Liquidating Trust to meet its obligations under the Combined Disclosure Statement and Plan. Based on the Plan Proponents' analysis, the Liquidating Trust will have sufficient assets to accomplish its tasks under the Combined Disclosure Statement and Plan. Therefore, the Plan Proponents believe that the liquidation pursuant to the Combined Disclosure Statement and Plan will meet the feasibility requirements of the Bankruptcy Code.

**4.8     Best Interests Test and Liquidation Analysis**

Even if a plan is accepted by the Holders of each class of claims and interests, the Bankruptcy Code requires the Bankruptcy Court to determine that such plan is in the best interests of all Holders of claims or interests that are impaired by that plan and that have not accepted the plan. The "best interests" test, as set forth in Bankruptcy Code section 1129(a)(7), requires a court to find either that all members of an impaired class of claims or interests have accepted the plan or that the plan will provide a member who has not accepted the plan with a recovery of property of a value, as of the effective date of the plan, that is not less than the amount that such holder would recover if the debtor were liquidated under chapter 7 of the Bankruptcy Code.

To calculate the probable distribution to Holders of each impaired class of claims and interests if the debtor was liquidated under chapter 7, a court must first determine the aggregate dollar amount that would be generated from a debtor's assets if its chapter 11 case was converted to a case under chapter 7 of the Bankruptcy Code. To determine if a plan is in the best interests of each impaired class, the present value of the distributions from the proceeds of a liquidation of the debtor's unencumbered assets and properties, after subtracting the amounts attributable to the costs, expenses and administrative claims associated with a chapter 7 liquidation, must be compared with the value offered to such impaired classes under the plan. If the hypothetical liquidation distribution to Holders of claims or interests in any impaired class is greater than the distributions to be received by such parties under the plan, then such plan is not in the best interests of the Holders of claims or interests in such impaired class.

The Plan Proponents believe that the "liquidation value" in a hypothetical chapter 7 liquidation would be less than the estimates of the results of the chapter 11 liquidation contemplated by the Combined Disclosure Statement and Plan, for two primary reasons. First, pursuant to the WARN Act Class Settlement Order, the WARN ACT Class Settlement will not become effective unless and until the occurrence of the Effective Date of the Combined Disclosure Statement and Plan, thereby leaving a large litigation unresolved.

Second, the Plan Proponents believe that in a chapter 7 liquidation, there would be additional costs and expenses that the Estates would incur as a result of, *inter alia,* the appointment of a new party to serve as chapter 7 trustee and the likely retention of new professionals, all of whom would need to expend time and incur expense getting up to speed regarding the Estates and the Claims to be adjudicated. For example, if a chapter 7 trustee were

to be appointed in these cases, he or she likely would require considerable time and incur substantial fees and expenses, including a fee for the trustee of approximately 3% of the value of all property distributed in the chapter 7 cases and the fees of the trustee's professionals in analyzing the Debtor's case and assets. The Plan Proponents believe such amounts would exceed the amount of expenses that would be incurred in implementing the Combined Disclosure Statement and Plan and winding up the affairs of the Debtors. Conversion also would likely delay the liquidation process and ultimate distribution of the Assets. The Estates would also be obligated to pay all unpaid expenses incurred by the Debtors during the Chapter 11 Cases (such as compensation for professionals) that are Allowed in the chapter 7 case. In addition, a chapter 7 case would trigger a new bar date for filing claims that would be more than 90 days following conversion of the case to chapter 7. Fed. R. Bankr. P. 3002(c). This raises the prospect of additional claims that were not asserted in the Chapter 11 Cases.

Further, in these Chapter 11 Cases, substantially all of the Debtors' assets already have been liquidated through the various sales conducted by the Debtors. The only assets remaining are the Liquidating Trust Assets which will be distributed pursuant to the terms of the Plan. The Debtors have few, if any, other assets (other than Retained Causes of Action) that could be liquidated for value by a chapter 7 trustee. Therefore, the Debtors believe that there would be no purpose to converting these Chapter 11 Cases to chapter 7 cases and doing so would bring no benefit to Creditors, while imposing significant additional and unnecessary expenses and delays on the Debtors' Estates – thereby negatively affecting creditor recoveries.

Attached hereto as **Exhibit A** is a hypothetical chapter 7 liquidation analysis, reflecting a greater distribution to creditors pursuant to the Combined Disclosure Statement and Plan than creditors would receive in a hypothetical chapter 7 liquidation. Accordingly, the Plan Proponents believe that Holders of Allowed Claims would receive less than anticipated under the Combined Disclosure Statement and Plan if each of the Chapter 11 Cases were converted to a chapter 7 case, and therefore, the classification and treatment of Claims and Interests in the Combined Disclosure Statement and Plan complies with Bankruptcy Code section 1129(a)(7).

**4.9    Acceptance of the Combined Disclosure Statement and Plan**

The rules and procedures governing eligibility to vote on the Combined Disclosure Statement and Plan, solicitation of votes, and submission of Ballots are set forth in the Solicitation Procedures Order.

For the Combined Disclosure Statement and Plan to be accepted by an Impaired Class of Claims, a majority in number and two-thirds in dollar amount of the Claims voting in such Class must vote to accept the Combined Disclosure Statement and Plan. At least one Voting Class, excluding the votes of insiders, must actually vote to accept the Combined Disclosure Statement and Plan.

**IF YOU ARE ENTITLED TO VOTE ON THE COMBINED DISCLOSURE STATEMENT AND PLAN, YOU ARE URGED TO COMPLETE, DATE, SIGN, AND PROMPTLY MAIL THE BALLOT YOU RECEIVE. PLEASE BE SURE TO COMPLETE ALL BALLOT ITEMS PROPERLY AND LEGIBLY. IF YOU ARE A HOLDER OF A CLAIM ENTITLED TO VOTE ON THE COMBINED DISCLOSURE**

STATEMENT AND PLAN AND YOU DID NOT RECEIVE A BALLOT, YOU RECEIVED A DAMAGED BALLOT, OR YOU LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THE COMBINED DISCLOSURE STATEMENT AND PLAN OR PROCEDURES FOR VOTING ON THE COMBINED DISCLOSURE STATEMENT AND PLAN, PLEASE CONTACT THE VOTING AGENT BY CALLING 855.944.1910 (TOLL-FREE) OR, IF CALLING FROM OUTSIDE THE UNITED STATES OR CANADA, 714.252.6860 (INTERNATIONAL), OR EMAILING TeamPearTherapeutics@stretto.com. THE VOTING AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.

HOLDERS OF CLAIMS IN CLASS 4 WHO DO NOT WISH TO PROVIDE THE RELEASES SET FORTH IN SECTION 14.1(c) HEREIN MUST AFFIRMATIVELY INDICATE SO BY EITHER VOTING TO REJECT THE COMBINED DISCLOSURE STATEMENT AND PLAN OR CHECKING THE "OPT-OUT" BOX ON THEIR BALLOT.

PLEASE BE ADVISED THAT ANY HOLDER OF CLAIMS IN CLASS 4 WHO VOTES TO ACCEPT THE COMBINED DISCLOSURE STATEMENT AND PLAN OR DOES NOT VOTE SHALL BE DEEMED TO HAVE CONSENTED TO THE RELEASES SET FORTH IN SECTION 14.1(c) HEREIN UNLESS SUCH HOLDER AFFIRMATIVELY MAKES THE OPT-OUT ELECTION ON ITS BALLOT.

## ARTICLE V
## CERTAIN RISK FACTORS TO BE CONSIDERED PRIOR TO VOTING

THE COMBINED DISCLOSURE STATEMENT AND PLAN AND ITS IMPLEMENTATION ARE SUBJECT TO CERTAIN RISKS, INCLUDING, BUT NOT LIMITED TO, THE RISK FACTORS SET FORTH BELOW. HOLDERS OF CLAIMS WHO ARE ENTITLED TO VOTE ON THE COMBINED DISCLOSURE STATEMENT AND PLAN SHOULD READ AND CAREFULLY CONSIDER THE RISK FACTORS, AS WELL AS THE OTHER INFORMATION SET FORTH IN THE COMBINED DISCLOSURE STATEMENT AND PLAN AND THE DOCUMENTS DELIVERED TOGETHER HEREWITH OR REFERRED TO OR INCORPORATED BY REFERENCE HEREIN, BEFORE DECIDING WHETHER TO VOTE TO ACCEPT OR REJECT THE COMBINED DISCLOSURE STATEMENT AND PLAN. THESE FACTORS SHOULD NOT, HOWEVER, BE REGARDED AS CONSTITUTING THE ONLY RISKS INVOLVED IN CONNECTION WITH THE COMBINED DISCLOSURE STATEMENT AND PLAN AND ITS IMPLEMENTATION.

### 5.1    The Plan May Not Be Accepted

The Plan Proponents can make no assurances that the requisite acceptances to the Combined Disclosure Statement and Plan will be received, and the Plan Proponents may need to obtain acceptances to an alternative plan of liquidation for the Debtors, or otherwise, that may not have the support of the Creditors and/or may be required to liquidate the Estates under chapter 7 of the Bankruptcy Code. There can be no assurance that the terms of any such alternative restructuring arrangement or plan would be similar to or as favorable to Creditors as those proposed in the Combined Disclosure Statement and Plan.

**5.2      The Plan May Not Be Confirmed**

Even if the Plan Proponents receive the requisite acceptances of the Combined Disclosure Statement and Plan, there is no assurance that the Bankruptcy Court, which may exercise substantial discretion as a court of equity, will confirm the Combined Disclosure Statement and Plan. Even if the Bankruptcy Court determined that the Combined Disclosure Statement and Plan and the balloting procedures and results were appropriate, the Bankruptcy Court could still decline to confirm the Combined Disclosure Statement and Plan if it finds that any of the statutory requirements for Confirmation had not been met. Moreover, there can be no assurance that modifications to the Combined Disclosure Statement and Plan will not be required for Confirmation or that such modifications would not necessitate the re-solicitation of votes. If the Combined Disclosure Statement and Plan is not confirmed, it is unclear what distributions Holders of Claims or Interests ultimately would receive with respect to their Claims or Interests in a subsequent plan of liquidation.

If the Combined Disclosure Statement and Plan is not confirmed, the Combined Disclosure Statement and Plan will need to be revised and it is unclear whether a chapter 11 reorganization or liquidation of the Debtors' assets could be implemented and what distribution the Holders of Allowed Claims would receive. If an alternative could not be agreed to, it is possible that the Debtors would have to liquidate their remaining Assets in chapter 7, in which case it is likely that the Holders of Allowed Claims would receive less favorable treatment than they would receive under the Combined Disclosure Statement and Plan. There can be no assurance that the terms of any such alternative would be similar to or as favorable to the Debtors' creditors as those proposed in the Combined Disclosure Statement and Plan.

**5.3      Distributions to Holders of Allowed Claims under the Combined Disclosure Statement and Plan May Be Inconsistent with Projections**

Projected Distributions are based upon good faith estimates of the total amount of Claims ultimately Allowed and the funds available for Distribution. There can be no assurance that the estimated Claim amounts set forth in the Combined Disclosure Statement and Plan are correct. These estimated amounts are based on certain assumptions with respect to a variety of factors. Both the actual amount of Allowed Claims in a particular Class and the funds available for distribution to such Class may differ from the Plan Proponents' estimates. If the total amount of Allowed Claims in a Class is higher than the Plan Proponents' estimates, or the funds available for distribution to such Class are lower than the Plan Proponents' estimates, the percentage recovery to Holders of Allowed Claims in such Class will be less than projected.

**5.4      Reductions to Estimated Creditor Recoveries**

The Allowed amount of Claims in any Class could be greater than projected, which, in turn, could cause the amount of distributions to creditors in such Class to be reduced substantially. The amount of cash realized from the liquidation of the Debtors' remaining Assets could be less than anticipated, which could cause the amount of distributions to creditors to be reduced substantially.

**5.5    Risks Related to Retained Causes of Action**

There is no guarantee that the Plan Administrator will choose to prosecute any of the Retained Causes of Action. Furthermore, to the extent Plan Administrator, after consultation with the Oversight Board, determines to prosecute a potential Retained Cause of Action, there is no guarantee as to the success of pursuing such Retained Cause of Action. The success of the Plan Administrator in pursuing any Retained Cause of Action, as well as the expenses incurred in investigating and prosecuting the Retained Causes of Action, may materially affect the recoveries for the Holders of Allowed Claims.

**5.6    Objections to Classification of Claims**

Bankruptcy Code section 1122 requires that the Combined Disclosure Statement and Plan classify Claims and Interests. The Bankruptcy Code also provides that the Combined Disclosure Statement and Plan may place a Claim or Interest in a particular Class only if such Claim or Interest is substantially similar to the other Claims or Interests of such Class. The Plan Proponents believe that all Claims and Interests have been appropriately classified in the Combined Disclosure Statement and Plan. To the extent that the Bankruptcy Court finds that a different classification is required for the Combined Disclosure Statement and Plan to be confirmed, the Plan Proponents would seek to (i) modify the Combined Disclosure Statement and Plan to provide for whatever classification might be required for Confirmation and (ii) use the acceptances received from any Holder of Claims pursuant to this solicitation for the purpose of obtaining the approval of the Class or Classes of which such Holder ultimately is deemed to be a member. Any such reclassification of Claims, although subject to the notice and hearing requirements of the Bankruptcy Code, could adversely affect the Class in which such Holder was initially a member, or any other Class under the Combined Disclosure Statement and Plan, by changing the composition of such Class and the vote required for approval of the Combined Disclosure Statement and Plan. There can be no assurance that the Bankruptcy Court, after finding that a classification was inappropriate and requiring a reclassification, would approve the Combined Disclosure Statement and Plan based upon such reclassification. Except to the extent that modification of classification in the Combined Disclosure Statement and Plan requires re-solicitation, the Plan Proponents will, in accordance with the Bankruptcy Code and the Bankruptcy Rules, seek a determination by the Bankruptcy Court that acceptance of the Combined Disclosure Statement and Plan by any Holder of Claims pursuant to this solicitation will constitute a consent to the Combined Disclosure Statement and Plan's treatment of such Holder, regardless of the Class as to which such Holder is ultimately deemed to be a member. The Plan Proponents believe that under the Bankruptcy Rules, it would be required to resolicit votes for or against the Combined Disclosure Statement and Plan only when a modification adversely affects the treatment of the Claim or Interest of any Holder.

The Bankruptcy Code also requires that the Combined Disclosure Statement and Plan provide the same treatment for each Claim or Interest of a particular Class unless the Holder of a particular Claim or Interest agrees to a less favorable treatment of its Claim or Interest. The Debtors believe that the Combined Disclosure Statement and Plan complies with the requirement of equal treatment. To the extent that the Bankruptcy Court finds that the Combined Disclosure Statement and Plan does not satisfy such requirement, the Bankruptcy Court could deny Confirmation of the Combined Disclosure Statement and Plan. Issues or disputes relating to

classification and/or treatment could result in a delay in the Confirmation and Consummation of the Combined Disclosure Statement and Plan and could increase the risk that the Combined Disclosure Statement and Plan will not be consummated.

**5.7      Failure to Consummate the Combined Disclosure Statement and Plan**

The Combined Disclosure Statement and Plan provides for certain conditions that must be satisfied (or waived) prior to the Confirmation Date and for certain other conditions that must be satisfied (or waived) prior to the Effective Date. As of the date of the Combined Disclosure Statement and Plan, there can be no assurance that any or all of the conditions in the Combined Disclosure Statement and Plan will be satisfied (or waived). Accordingly, there can be no assurance that the Combined Disclosure Statement and Plan will be confirmed by the Bankruptcy Court. Further, if the Combined Disclosure Statement and Plan is confirmed, there can be no assurance that the Combined Disclosure Statement and Plan will be consummated.

**5.8      Plan Releases May Not Be Approved**

There can be no assurance that the releases, as provided in Article XIV of the Combined Disclosure Statement and Plan, will be granted. Failure of the Bankruptcy Court to grant such relief may result in a plan of liquidation that differs from the Combined Disclosure Statement and Plan or the Combined Disclosure Statement and Plan not being confirmed.

**5.9      Certain Tax Considerations**

The following discussion summarizes certain U.S. federal income tax considerations relevant to the implementation of the Combined Disclosure Statement and Plan to the Debtors and to holders of certain Claims. This discussion does not address the U.S. federal income tax consequences to (i) creditors whose Claims are unimpaired or otherwise entitled to payment in full in cash under the Combined Disclosure Statement and Plan, (ii) public entities or Governmental Units, including the U.S. Government, states, municipalities, and Native American Tribes, or (iii) holders who are deemed to reject the Combined Disclosure Statement and Plan, such as holders of equity interests.

The discussion of U.S. federal income tax consequences below is based on the Internal Revenue Code, Treasury regulations, judicial authorities, published positions of the IRS, and other applicable authorities, all as in effect on the date of this Combined Disclosure Statement and Plan and all of which are subject to change or differing interpretations, possibly with retroactive effect. The U.S. federal income tax consequences of the Combined Disclosure Statement and Plan are complex and subject to significant uncertainties. The Debtors have not requested an opinion of counsel or a ruling from the IRS with respect to any of the tax aspects of the Combined Disclosure Statement and Plan. No assurance can be given that the IRS will not take a position contrary to the description of U.S. federal income tax consequences of the Combined Disclosure Statement and Plan described below.

This discussion does not address non-U.S., state, or local tax consequences of the Combined Disclosure Statement and Plan, nor does it purport to address the U.S. federal income tax consequences of the Combined Disclosure Statement and Plan to special classes of taxpayers (e.g., public entities and Governmental Units (including the U.S. Government, states,

municipalities, and Native American Tribes), foreign taxpayers, small business investment companies, regulated investment companies, real estate investment trusts, banks and certain other financial institutions, insurance companies, tax-exempt organizations, retirement plans, individual retirement and other tax-deferred accounts, Holders that are, or hold Claims through, S corporations, partnerships, or other pass-through entities for U.S. federal income tax purposes, persons whose functional currency is not the U.S. dollar, dealers in securities or foreign currency, traders that mark-to-market their securities, persons subject to the alternative minimum tax or the "Medicare" tax on unearned income, persons who use the accrual method of accounting and report income on an "applicable financial statement," and persons holding Claims that are part of a straddle, hedging, constructive sale, or conversion transaction). In addition, this discussion does not address U.S. federal taxes other than income taxes, nor does it address the Foreign Account Tax Compliance Act.

The following discussion generally assumes that the Combined Disclosure Statement and Plan implements the liquidation of the Debtors for U.S. federal income tax purposes (including by way of distributions to the Liquidating Trust), and that all distributions by the Debtors will be taxed accordingly. Additionally, this discussion assumes that (i) the various arrangements to which either of the Debtors is a party will be respected for U.S. federal income tax purposes in accordance with their form and (ii) except if otherwise indicated, the Claims are held as "capital assets" (generally, property held for investment) within the meaning of section 1221 of the Internal Revenue Code.

The following discussion of certain U.S. federal income tax consequences is for general informational purposes only and is not a substitute for careful tax planning and advice based upon a taxpayer's individual circumstances. Each holder of a Claim or Interest is urged to consult its own tax advisor for the U.S. federal, state, local, and other tax consequences applicable under the Combined Disclosure Statement and Plan.

(a)     ***Consequences to Holders of Allowed Class 4 Claims***. Pursuant to the Combined Disclosure Statement and Plan, each Holder of an Allowed Claim in Class 4 will receive, in exchange for its Claim, a portion of the Liquidating Trust Interests, which will entitle such Holder to receive its pro rata share of the Distribution Proceeds.

As discussed below in Section 9.11—"U.S. Federal Income tax Treatment of the Liquidating Trust", each Holder of an Allowed Claim that receives a beneficial interest in the Liquidating Trust will be treated for U.S. federal income tax purposes as directly receiving, and as a direct owner of, an undivided interest in the assets transferred to the Liquidating Trust and subject to any portion(s) of the Liquidating Trust being treated as a "disputed ownership fund" for U.S. federal income tax purposes. In general, a Holder of an Allowed Claim in Class 4 should in most, but not all circumstances, recognize gain or loss with respect to its Allowed Claim in an amount equal to the difference between the "amount realized" by such Holder in exchange for its Claim and such Holder's adjusted tax basis in the Claim. The "amount realized" for this purpose should generally equal the fair market value of the Holder's undivided interest in the assets transferred to the Liquidating Trust and treated as received for U.S. federal income tax purposes under the Combined Disclosure Statement and Plan in respect of such Holder's Claim.

49

Pursuant to the Combined Disclosure Statement and Plan, the Liquidating Trust will, in good faith, value the assets transferred thereto, and all parties to the Liquidating Trust (including holders of Allowed Claims receiving interests therein) must consistently use such valuation for all U.S. federal income tax purposes. The amount of cash or other property received in respect of an Allowed Claim for accrued but unpaid interest will be taxed as ordinary income, except to the extent previously included in income by a holder under its method of accounting.

After the date of transfer of assets to the Liquidating Trust, a holder's share of any collections received on the assets of the Liquidating Trust (other than as a result of the subsequent disallowance of Disputed Claims or the reallocation of undeliverable distributions) should not be included, for U.S. federal income tax purposes, in the holder's amount realized in respect of its Allowed Claim but should be separately treated as amounts realized in respect of such holder's ownership interest in the underlying assets of the Liquidating Trust.

In the event of the subsequent disallowance of any Disputed Claim, it is possible that a holder of a previously Allowed Claim may receive additional distributions in respect of its Claim. Accordingly, it is possible that the recognition of any loss realized by a holder with respect to an Allowed Claim may be deferred until all Claims are Allowed or Disallowed. Alternatively, it is possible that a holder will have additional gain in respect of any additional distributions received.

If gain or loss is recognized, such gain or loss may be long-term capital gain or loss if the Allowed Claim disposed of is a capital asset in the hands of the holder and has been held for more than one year. Each holder of an Allowed Claim should consult its own tax advisor to determine whether gain or loss recognized by such holder will be long-term capital gain or loss and the specific tax effect thereof on such holder. The character of any gain or loss depends on a variety of factors, including, among other things, the origin of the holder's Allowed Claim, when the holder receives payment (or is deemed to receive payment) in respect of such Allowed Claim, whether the holder reports income using the accrual or cash method of tax accounting, whether the holder acquired its Allowed Claim at a discount, whether the holder has taken a bad debt deduction with respect to such Allowed Claim, and/or whether (as intended and herein assumed) the Combined Disclosure Statement and Plan implements the liquidation of the Debtors for U.S. federal income tax purposes.

In general, a holder's aggregate tax basis in its undivided interest in the Liquidating Trust's assets (subject to any portion(s) of the Liquidating Trust being treated as a "disputed ownership fund" for U.S. federal income tax purposes) will equal the fair market value of such interest as of the Effective Date, and a holder's holding period generally will begin on the day following the Effective Date.

In general, to the extent any amount received (whether cash or other property) by a Holder of a debt instrument is received in satisfaction of interest that accrued during its holding period, such amount will be taxable to the Holder as ordinary interest income (if not previously included in the holder's gross income under the holder's normal method of accounting). Conversely, a holder generally recognizes a deductible loss to the extent any accrued interest was previously included in its gross income and is not paid in full.

Pursuant to Section 10.13 of the Combined Disclosure Statement and Plan below, except as otherwise required by law (as reasonably determined by the Plan Administrator), distributions in respect of any Allowed Claim shall be allocated first to the principal amount of such Allowed Claim (as determined for U.S. federal income tax purposes) and, thereafter, to the remaining portion of such Allowed Claim, if any. However, there is no assurance that such allocation would be respected by the IRS for U.S. federal income tax purposes. You are urged to consult your own tax advisor regarding the allocation of consideration received under the Combined Disclosure Statement and Plan, as well as the deductibility of accrued but unpaid interest and the character of any loss claimed with respect to accrued but unpaid interest previously included in gross income for U.S. federal income tax purposes.

(b)     ***Withholding Tax Requirements***. All distributions to holders of Allowed Claims under the Combined Disclosure Statement and Plan are subject to any applicable tax withholding, including employment tax withholding. Under U.S. federal income tax law, interest, dividends, and other reportable payments may, under certain circumstances, be subject to "backup withholding" at the then applicable withholding rate (currently 24%). Backup withholding generally applies if (a) the holder fails to furnish its social security number or other taxpayer identification number, (b) furnishes an incorrect taxpayer identification number, (c) fails properly to report interest or dividends, or (d) under certain circumstances, fails to provide a certified statement, signed under penalty of perjury, that the tax identification number provided is its correct number and that it is not subject to backup withholding. Backup withholding is not an additional tax but merely an advance payment, which may be refunded to the extent it results in an overpayment of tax. Certain persons are exempt from backup withholding, including, in certain circumstances, corporations and financial institutions. Holders of Allowed Claims are urged to consult their own tax advisors regarding the Treasury Regulations governing backup withholding and whether the transactions contemplated by the Combined Disclosure Statement and Plan would be subject to these Treasury Regulations.

In addition, Treasury Regulations generally require disclosure by a taxpayer on its U.S. federal income tax return of certain types of transactions in which the taxpayer participated, including, among other types of transactions, certain transactions that result in the taxpayer's claiming a loss in excess of specified thresholds. Holders are urged to consult their tax advisors regarding these Treasury Regulations and whether the transactions contemplated by the Combined Disclosure Statement and Plan would be subject to these Treasury Regulations and require disclosure on the holder's tax returns.

**THE FOREGOING TAX SUMMARY HAS BEEN PROVIDED FOR GENERAL INFORMATIONAL PURPOSES ONLY. THE U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE COMBINED DISCLOSURE STATEMENT AND PLAN ARE COMPLEX. NOTHING HEREIN SHALL CONSTITUTE TAX ADVICE. THE TAX CONSEQUENCES ARE IN MANY CASES UNCERTAIN AND MAY VARY DEPENDING ON A HOLDER'S PARTICULAR CIRCUMSTANCES. ACCORDINGLY, HOLDERS ARE URGED TO CONSULT THEIR OWN TAX ADVISORS ABOUT THE UNITED STATES FEDERAL, STATE AND LOCAL, AND APPLICABLE FOREIGN INCOME AND OTHER TAX CONSEQUENCES OF THE COMBINED DISCLOSURE STATEMENT AND PLAN.**

## ARTICLE VI
## TREATMENT OF UNCLASSIFIED CLAIMS

**6.1     Administrative Claims**. Except as otherwise set forth in this Article VI, on or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Administrative Claim shall receive in exchange for such Allowed Administrative Claim: (i) Cash equal to the amount of such Allowed Administrative Claim; or (ii) such other treatment as to which the Debtors or the Liquidating Trust, as applicable, and the Holder of such Allowed Administrative Claim shall have agreed upon in writing.

(a)     *Final Administrative Claim Bar Date*. Holders of Administrative Claims, other than 503(b)(9) Claims,[7] Initial Administrative Claims,[8] and Professional Fee Claims, accruing through and including the Effective Date ("*Final Administrative Claims*"), shall File with the Bankruptcy Court and serve on the Notice Recipients requests for payment, in writing, together with supporting documents, substantially complying with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, so as to actually be received on or before the Final Administrative Claim Bar Date. The Effective Date Notice shall set forth the Final Administrative Claim Bar Date and shall constitute notice of such Bar Date. Absent further Bankruptcy Court order, any Final Administrative Claim not Filed by the Final Administrative Claim Bar Date shall be deemed waived and the Holder of such Final Administrative Claim shall be forever barred from receiving payment on account thereof.

(b)     *Objections by the Liquidating Trust*. Objections to requests for payment of Administrative Claims, other than requests for payment of Professional Fee Claims, must be Filed and served on the requesting party by the Claims Objection Deadline.

(c)     *Professional Fee Claims*. All applications for allowance and payment of Professional Fee Claims shall be Filed on or before the Professional Fee Claims Bar Date. If an application for a Professional Fee Claim is not Filed by the Professional Fee Claims Bar Date, such Professional Fee Claim shall be deemed waived and the Holder of such Claim shall be forever barred from receiving payment on account thereof. The Effective Date Notice shall set forth the Professional Fee Claims Bar Date and shall constitute notice of such Bar Date. Objections to any Professional Fee Claims must be Filed and served on the Notice Recipients and the requesting party by no later than twenty-one (21) days after service of the applicable final application for allowance and payment of Professional Fee Claims. Allowed Professional Fee Claims shall be paid in full, in Cash, in such amounts as are Allowed by the Bankruptcy Court upon the earlier of the Effective Date or (ii) five (5) Business Days following the date upon which an order relating to any such Allowed Professional Fee Claim is entered, and in

---

[7] All 503(b)(9) Claims are subject to the General Bar Date (as defined in the Bar Date Order).

[8] All Initial Administrative Claims are subject to the Initial Administrative Claim Bar Date.

FH11510059.14

each case, as soon as reasonably practicable. On the Effective Date, the Professional Fee Claims Reserve shall be transferred by the Debtors to Thompson Coburn LLP's IOLTA account to be held for the distribution of Allowed Professional Fee Claims. Upon entry of a Final Order approving any such application for such Professional Fee Claim, Thompson Coburn LLP shall promptly distribute from the Professional Fee Claims Reserve any unpaid portion of such Allowed Professional Fee Claim (after application of any retainer held by such professional). To the extent that any Cash is remaining in the Professional Fee Claims Reserve after payment in full of all Allowed Professional Fee Claims, Thompson Coburn LLP shall promptly transfer any such Cash to the Liquidating Trust and such Cash shall become Liquidating Trust Assets and be treated in accordance with the Liquidating Trust Agreement, the Combined Disclosure Statement and Plan and the Confirmation Order.

(d)     ***U.S. Trustee Fees.*** All fees payable on or before the Effective Date, pursuant to United States Code title 28 section 1930, shall be paid in full in Cash by the Debtors on or before the Effective Date. All fees payable after the Effective Date shall be paid in full in cash by the Liquidating Trust until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first. Notwithstanding anything to the contrary in the Combined Disclosure Statement and Plan, the U.S. Trustee shall not be required to file a request for Administrative Claims.

**6.2     Priority Tax Claims**. Within the time period provided in Article X of the Combined Disclosure Statement and Plan, each Holder of an Allowed Priority Tax Claim shall receive in exchange for such Allowed Priority Tax Claim: (i) Cash equal to the amount of such Allowed Priority Tax Claim; or (ii) such other treatment as to which the Debtors or the Liquidating Trust, as applicable, and the Holder of such Allowed Priority Tax Claim shall have agreed upon in writing.

**ARTICLE VII**
**TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS**

Unless the Holder of an Allowed Claim and the Debtors or the Liquidating Trust, as applicable, agree to a different treatment, each Holder of an Allowed Claim shall receive the following Distributions in accordance with Article X of the Combined Disclosure Statement and Plan:

**7.1     Class 1: Priority Non-Tax Claims**

a.     <u>Classification</u>. Class 1 consists of Priority Non-Tax Claims against the Debtors.

b.     <u>Impairment and Voting</u>. Class 1 is Unimpaired by the Combined Disclosure Statement and Plan. Holders of Class 1 Claims are conclusively presumed to have accepted the Combined Disclosure Statement and Plan and, therefore, are not entitled to vote to accept or reject the Combined Disclosure Statement and Plan.

c.     <u>Treatment</u>. Each Holder of an Allowed Priority Non-Tax Claim shall receive in exchange for such Allowed Priority Non-Tax Claim: (A) Cash equal to the

FH11510059.14

amount of such Allowed Priority Non-Tax Claim; or (B) such other treatment which the Debtors or the Liquidating Trust, as applicable, and the Holder of such Allowed Priority Non-Tax Claim have agreed upon in writing.

**7.2     Class 2: Other Secured Claims**

a.      <u>Classification</u>. Class 2 consists of Other Secured Claims against the Debtors.

b.      <u>Impairment and Voting</u>. Class 2 is Unimpaired by the Combined Disclosure Statement and Plan. Holders of Class 2 Claims are conclusively presumed to have accepted the Combined Disclosure Statement and Plan and, therefore, are not entitled to vote to accept or reject the Combined Disclosure Statement and Plan.

c.      <u>Treatment</u>. Each Holder of an Allowed Other Secured Claim shall receive in exchange for such Allowed Other Secured Claim: (A) return of the collateral securing such Allowed Other Secured Claim; or (B) Cash equal to the amount of such Allowed Other Secured Claim; or (C) such other treatment which the Debtors or the Liquidating Trust, as applicable, and the Holder of such Allowed Other Secured Claim have agreed upon in writing.

**7.3     Class 3: WARN Act Class Settlement Claims**

a.      <u>Classification</u>. Class 3 consists of all of the Allowed WARN Act Class Settlement Claims of the WARN Act Class Claimants.

b.      <u>Impairment and Voting</u>. Class 3 is Unimpaired by the Combined Disclosure Statement and Plan because pursuant to the WARN Act Class Settlement Order, upon the occurrence of the Effective Date, Holders of Class 3 Claims will be paid their allocated share of the WARN Act Class Settlement Claim in full. Holders of Class 3 Claims are conclusively presumed to have accepted the Combined Disclosure Statement and Plan and, therefore, are not entitled to vote to accept or reject the Combined Disclosure Statement and Plan.

c.      <u>Treatment</u>. Each Holder of an Allowed WARN Act Class Settlement Claim shall receive its allocated share of the WARN Act Class Settlement Claim pursuant to the WARN Act Class Settlement Order.

**7.4     Class 4: General Unsecured Claims**

a.      <u>Classification</u>. Class 4 consists of General Unsecured Claims against the Debtors.

b.      <u>Impairment and Voting</u>. Class 4 is Impaired by the Combined Disclosure Statement and Plan. Holders of Class 4 Claims are entitled to vote to accept or reject the Combined Disclosure Statement and Plan.

c.      <u>Treatment</u>. Each Holder of an Allowed General Unsecured Claim shall receive in exchange for such Allowed General Unsecured Claim: (A) such Holder's pro rata share of the Liquidating Trust Interests; or (B) such other treatment which the

54

Debtors or the Liquidating Trust, as applicable, and the Holder of such Allowed General Unsecured Claim have agreed upon in writing.

**7.5    Class 5: Subordinated Claims**

a.      <u>Classification</u>. Class 5 consists of Subordinated Claims against the Debtors.

b.      <u>Impairment and Voting</u>. Class 5 is Impaired by the Combined Disclosure Statement and Plan. Holders of Class 5 Claims are conclusively presumed to have rejected the Combined Disclosure Statement and Plan and, therefore, are not entitled to vote to accept or reject the Combined Disclosure Statement and Plan.

c.      <u>Treatment</u>. Holders of Subordinated Claims shall receive no Distributions on account of such Claims.

**7.6    Class 6 Interests**

a.      <u>Classification</u>. Class 6 consists of Interests in the Debtors.

b.      <u>Impairment and Voting</u>. Class 6 is Impaired by the Combined Disclosure Statement and Plan. Holders of Class 6 Interests are conclusively presumed to have rejected the Combined Disclosure Statement and Plan and, therefore, are not entitled to vote to accept or reject the Combined Disclosure Statement and Plan.

c.      <u>Treatment</u>. On the Effective Date, all Interests shall be canceled and extinguished as of the Effective Date, and owners thereof shall receive no Distribution on account of such Interests.

**7.7    Reservation of Rights Regarding Claims and Interests**. Except as otherwise explicitly provided in the Combined Disclosure Statement and Plan, nothing shall affect the Debtors', or as successor-in-interest to the Debtors, the Liquidating Trust's, rights and defenses, both legal and equitable, with respect to any Claims or Interests, including, but not limited to, all rights with respect to legal and equitable defenses to alleged rights of setoff or recoupment.

**ARTICLE VIII**
**ACCEPTANCE OR REJECTION OF**
**THE COMBINED DISCLOSURE STATEMENT AND PLAN**

**8.1    Class Entitled to Vote**. Because Claims in Class 4 are Impaired and Holders thereof will receive or retain property or an interest in property under the Combined Disclosure Statement and Plan, only Holders of Claims in Class 4 shall be entitled to vote to accept or reject the Combined Disclosure Statement and Plan.

**8.2    Acceptance by Impaired Classes of Claims or Interests**. In accordance with Bankruptcy Code section 1126(c), and except as provided in Bankruptcy Code section 1126(e), an Impaired Class of Claims shall have accepted the Combined Disclosure Statement and Plan if the Combined Disclosure Statement and Plan is accepted by the Holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims in such

55

Class that have timely and properly voted to accept or reject the Combined Disclosure Statement and Plan. In accordance with Bankruptcy Code section 1126(d) and except as provided in Bankruptcy Code section 1126(e), an Impaired Class of Interests shall have accepted the Combined Disclosure Statement and Plan if the Combined Disclosure Statement and Plan is accepted by Holders of at least two-thirds (2/3) in amount of the Allowed Interests in such Class that have timely and properly voted to accept or reject the Combined Disclosure Statement and Plan.

**8.3     Presumed Acceptance by Unimpaired Classes**. Because Claims in Class 1, Class 2, and Class 3 are Unimpaired pursuant to Bankruptcy Code section 1126(f), Holders of Claims in Class 1, Class 2, and Class 3 are deemed to have accepted the Combined Disclosure Statement and Plan and, therefore, such Holders of Claims are not entitled to vote to accept or reject the Combined Disclosure Statement and Plan.

**8.4     Presumed Rejections by Impaired Classes**. Because Holders of Claims in Class 5 and Holders of Interests in Class 6 are not entitled to receive or retain any property under the Combined Disclosure Statement and Plan, pursuant to Bankruptcy Code section 1126(g), such Holders of Claims or Interests are presumed to have rejected the Combined Disclosure Statement and Plan and are not entitled to vote to accept or reject the Combined Disclosure Statement and Plan.

**8.5     Confirmation Pursuant to Bankruptcy Code Section 1129(b)**. To the extent that any Impaired Class rejects the Combined Disclosure Statement and Plan or is deemed to have rejected the Combined Disclosure Statement and Plan, the Plan Proponents reserve the right to request Confirmation of the Combined Disclosure Statement and Plan, as it may be modified from time to time, under Bankruptcy Code section 1129(b). The Plan Proponents reserve the right to alter, amend, modify, revoke, or withdraw the Combined Disclosure Statement and Plan, the documents submitted in support thereof or any schedule or exhibit, including to amend or modify it to satisfy the requirements of Bankruptcy Code section 1129(b), if necessary.

**8.6     Controversy Concerning Impairment**. If a controversy arises as to whether any Claim or Interest is Impaired under the Combined Disclosure Statement and Plan, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

**8.7     Elimination of Vacant Classes**. Any Class of Claims or Interests that does not contain, as of the date of the commencement of the Confirmation Hearing, a Holder of an Allowed Claim or Interest, or a Holder of a Claim temporarily allowed under Bankruptcy Rule 3018, shall be deemed deleted from the Combined Disclosure Statement and Plan for all purposes, including for purposes of determining acceptance of the Combined Disclosure Statement and Plan by such Class under Bankruptcy Code section 1129(a)(8).

## ARTICLE IX
## IMPLEMENTATION OF THE COMBINED DISCLOSURE STATEMENT AND PLAN AND THE LIQUIDATING TRUST

**9.1     Substantive Consolidation**. This Combined Disclosure Statement and Plan provides for the substantive consolidation of the Debtors' Estates, but solely for the purposes of this

Combined Disclosure Statement and Plan, including voting on this Combined Disclosure Statement and Plan by the Holders of Claims, Confirmation of the Combined Disclosure Statement and Plan and making any Distributions to Holders of Claims. Accordingly, the Debtors will tabulate each Ballot as a vote to accept or reject the Combined Disclosure Statement and Plan as to each Debtor. In addition, solely for voting, Confirmation and Distribution purposes: (i) all assets and liabilities of the Debtors will be treated as if they were merged, (ii) each Claim against the Debtors will be deemed a single Claim against, and a single obligation of, the Debtors, (iii) any Claims Filed or to be Filed in the Chapter 11 Cases will be deemed single Claims against all of the Debtors, (iv) all Intercompany Claims and all guarantees of any Debtor of the payment, performance, or collection of obligations of any other Debtor shall be eliminated and canceled, (v) all transfers, disbursements and Distributions on account of Claims made by or on behalf of any of the Debtors' Estates hereunder will be deemed to be made by or on behalf of all of the Debtors' Estates, and (vi) any obligation of the Debtors as to Claims will be deemed to be one obligation of all of the Debtors. Holders of Allowed Claims entitled to Distributions under this Combined Disclosure Statement and Plan shall be entitled to their share of assets available for Distribution to such Claim without regard to which Debtor was originally liable for such Claim. Except as set forth herein, such substantive consolidation shall not (other than for purposes related to this Combined Disclosure Statement and Plan) affect the legal and corporate structures of the Debtors.

The Plan Proponents propose substantive consolidation as described herein, and believe that such substantive consolidation to be in the best interests of the Debtors, their Estates and all Holders of Claims, for a number of reasons. Holdings is a holding company with no business operations, and whose only asset is its equity interest in Pear (which interest, pursuant to this Combined Disclosure Statement and Plan will receive no recovery and have no value).

Absent the consent of affected creditors, the Debtors will bear the burden at the Confirmation Hearing of establishing a *prima facie* case for the deemed substantive consolidation of their respective Estates. Accordingly, the Debtors will, to the extent necessary, adduce evidence at the Confirmation Hearing to justify the deemed substantive consolidation in accordance with the standards established by applicable case law. Such evidence may include, without limitation, evidence indicating that creditors have dealt with the Debtors as a single, consolidated enterprise, both before and after the Petition Date (as evidenced by, among other things, the fact that substantially all of the Debtors' ordinary course liabilities are paid through Clarus without recording corresponding intercompany claims). The Plan Proponents believe that there are sufficient factual and legal bases for the proposed substantive consolidation. At the Confirmation Hearing, the Debtors will, if necessary, introduce argument and evidence concerning the following factors, among others, in support of the Combined Disclosure Statement and Plan's substantive consolidation provision:

- The Debtors operate on a consolidated basis without individual reporting of their respective assets and liabilities;

- Pear US processed all of the Debtors' disbursements, on account of employee payroll obligations, customer program obligations and trade vendor obligations;

- Prior to the Petition Date, the Debtors did not maintain a separate accounting of assets and liabilities for each Debtor;

- The Debtors do not have any intercompany agreements;

- Efforts to deconsolidate the Debtors' respective assets and liabilities would be burdensome and divert professional resources that are more profitably directed elsewhere, all without meaningfully affecting the distributions received by any class.

- The cost of allocating the Debtors' assets and liabilities, including Intercompany Claims, would require a considerably lengthier process that would delay distributions and require the incurrence of a far greater expense, ultimately decreasing net distributions to creditors.

- Substantive consolidation promotes administrative efficiency and provides a clear and meaningful benefit to creditors.

**9.2    Implementation of the Combined Disclosure Statement and Plan**. The Combined Disclosure Statement and Plan will be implemented by, among other things, the establishment of the Liquidating Trust, the transfer to the Liquidating Trust of the Liquidating Trust Assets, including, without limitation, all Cash and Retained Causes of Action, and the making of Distributions by the Liquidating Trust in accordance with the Combined Disclosure Statement and Plan and Liquidating Trust Agreement.

**9.3    Debtors' Directors and Officers**. As of the Effective Date, any director or officer of the Debtors (except for Matthew Foster) shall be deemed to have resigned automatically without the need for any action or approval and without the need for any company filings, and shall have no continuing obligations to the Debtors following the occurrence of the Effective Date. Matthew Foster may, but shall not be obligated to, continue to serve as an officer of the Debtors after the Effective Date solely for purposes of paying Allowed Professional Fee Claims and other transitional matters as may be agreed by Mr. Foster and the Plan Administrator. Mr. Foster shall be permitted to resign as an officer of the Debtors without notice (other than notice to the Plan Administrator), action or approval and without the need for any company filings, and Mr. Foster shall have no continuing obligations to the Debtors following such resignation.

**9.4    Wind-Up and Dissolution of the Debtors**. From and after the Effective Date, and except as provided in Section 9.3 hereof, the Plan Administrator shall be the sole manager of the Debtors and shall be authorized, subject to approval of the Oversight Board, to dissolve either or both of the Debtors upon the Filing of a notice of such dissolution with the Bankruptcy Court, notwithstanding any requirements of applicable state law, and upon such filing such Debtor(s) shall be deemed dissolved for all purposes and of no further legal existence under any applicable state or federal law, without the need to take any further action or file any plan of dissolution, notice, or application with the Secretary of State of the Delaware or any other authority. On the Effective Date or as soon thereafter as is reasonably practicable, the Plan Administrator shall wind-up the affairs of the Debtors and file final tax returns for the Debtors. All company governance activities of the Debtors shall be exercised by the Plan Administrator and the Plan

Administrator shall be authorized and empowered to take or cause to be taken all company actions necessary or appropriate to implement and consummate the Combined Disclosure Statement and Plan. The Liquidating Trust shall bear the cost and expense of the wind-up of the affairs of the Debtors and the cost and expense of the preparation and filing of the final tax returns for the Debtors.

**9.5     Cancellation of Existing Securities and Agreements**. On the Effective Date, except to the extent otherwise provided in the Combined Disclosure Statement and Plan, all notes, instruments, certificates, and other documents directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest, equity, or portfolio interest in the Debtors or any warrants, options, or other securities exercisable or exchangeable for, or convertible into, debt, equity, ownership, or profits interests in the Debtors giving rise to any Claim or Interest, shall be deemed cancelled and surrendered without any need for the Debtors or a Holder to take further action with respect thereto and the obligations of the Debtors thereunder or in any way related thereto shall be deemed satisfied in full and discharged; *provided, however,* that notwithstanding Confirmation or Consummation of the Combined Disclosure Statement and Plan, any such agreement that governs the rights of the Holder of a Claim shall continue in effect solely for purposes of allowing Holders to receive Distributions under the Combined Disclosure Statement and Plan; *provided further, however,* that the preceding proviso shall not affect the discharge of Claims or Interests pursuant to the Bankruptcy Code, the Confirmation Order, or the Combined Disclosure Statement and Plan, or result in any expense or Liability to the Debtors.

Notwithstanding the foregoing, no Executory Contract that has been, or will be, assumed pursuant to section 365 of the Bankruptcy Code, including pursuant to this Combined Disclosure Statement and Plan, shall be terminated or cancelled on the Effective Date.

**9.6     Creation and Governance of the Liquidating Trust**. On the Effective Date, the Debtors and the Plan Administrator shall execute the Liquidating Trust Agreement and shall take all steps necessary to establish the Liquidating Trust in accordance with the Combined Disclosure Statement and Plan and the beneficial interests therein, which shall be for the benefit of the Beneficiaries.

**9.7     Purpose of the Liquidating Trust**. The Liquidating Trust shall be established pursuant to the Liquidating Trust Agreement for the purpose of: pursuing or liquidating the Liquidating Trust Assets; reconciling and objecting to Claims, as provided for in the Combined Disclosure Statement and Plan; and making Distributions to the Beneficiaries, all in accordance with the provisions of Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business; and any other activity expressly provided for in the Liquidating Trust Agreement, or as may be necessary or required to implement the Combined Disclosure Statement and Plan and the Confirmation Order.

**9.8     Transfer of Assets to Liquidating Trust**. On the Effective Date, the Debtors shall irrevocably transfer and shall be deemed to have irrevocably transferred to the Liquidating Trust all of their rights, title, and interest in and to all of the Liquidating Trust Assets, and in accordance with Bankruptcy Code section 1141, except as specifically provided in the Combined Disclosure Statement and Plan or the Confirmation Order, the Liquidating Trust Assets shall automatically vest in the Liquidating Trust free and clear of all Claims, Liens, encumbrances, or

interests subject only to the Liquidating Trust Interests and the Liquidating Trust Expenses, as provided for in the Combined Disclosure Statement and Plan and the Liquidating Trust Agreement, and Claims required to be paid by the Liquidating Trust pursuant to the Combined Disclosure Statement and Plan with priority over General Unsecured Claims, including, without limitation, Administrative Claims and Professional Fee Claims; and such transfer shall be exempt from any stamp, real estate transfer, other transfer, mortgage reporting, sales, use, or other similar tax to the extent provided in 11 U.S.C. § 1146(a). The Plan Administrator shall be the exclusive trustee of the Liquidating Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estates appointed pursuant to Bankruptcy Code section 1123(b)(3)(B). The Liquidating Trust shall be governed by the Liquidating Trust Agreement and administered by the Plan Administrator. The powers, rights, and responsibilities of the Plan Administrator shall be specified in the Liquidating Trust Agreement and shall include the authority and responsibility to, among other things, in certain circumstances with consultation with the Oversight Committee, take the actions set forth in Section 9 of this Combined Disclosure Statement and Plan. The Liquidating Trust shall hold and distribute the Liquidating Trust Assets in accordance with the provisions of the Combined Disclosure Statement and Plan, the Confirmation Order, and the Liquidating Trust Agreement. Other rights and duties of the Plan Administrator and the Beneficiaries shall be as set forth in the Liquidating Trust Agreement. After the Effective Date, the Debtors and the Estates shall have no interest in the Liquidating Trust Assets, the transfer of the Liquidating Trust Assets to the Liquidating Trust is absolute, and the Liquidating Trust Assets shall not be held or deemed to be held in trust by the Plan Administrator for the benefit of the Debtors or the Estates.

**9.9    Plan Administrator and Liquidating Trust Agreement**. The Liquidating Trust Agreement generally will provide for, among other things: (i) the payment of the Liquidating Trust Expenses; (ii) the payment of other reasonable expenses of the Liquidating Trust; (iii) the retention by the Liquidating Trust of counsel, accountants, financial advisors, or other professionals (including, without limitation, professionals employed by an Affiliate of the Plan Administrator and/or professionals previously employed by the Plan Proponents) and the payment of their reasonable compensation; (iv) the investment of Cash by the Liquidating Trust within certain limitations, including those specified in the Combined Disclosure Statement and Plan or the Confirmation Order; (v) the orderly liquidation of the Liquidating Trust Assets; (vi) litigation of any Retained Causes of Action, which may include the prosecution, settlement, abandonment, or dismissal of any such Retained Causes of Action; (vii) the prosecution and resolution of Objections to Claims; and (viii) the establishment of such Disputed Claim Reserves as the Plan Administrator, in its sole discretion, deems reasonable and appropriate. In addition, the Liquidating Trust Agreement shall authorize the Plan Administrator to administer the Debtors' tax obligations, including (a) filing tax returns and paying tax obligations, (b) requesting, if necessary, an expedited determination of any unpaid tax liability of the Debtors or the Estates under Bankruptcy Code section 505(b) for all taxable periods of such Debtors ending after the Commencement Date through the liquidation of such Debtors as determined under applicable tax laws, and (c) representing the interest and account of the Debtors or the Estates before any taxing authority in all matters including, without limitation, any action, suit, proceeding or audit.

The Plan Administrator, on behalf of the Liquidating Trust, may employ, without further order of the Bankruptcy Court, professionals (including those previously retained by the Debtors

or the Committee) to assist in carrying out the Plan Administrator's duties under the Combined Disclosure Statement and Plan, the Confirmation Order, and the Liquidating Trust Agreement, and may compensate and reimburse the reasonable fees and expenses of such professionals without further order of the Bankruptcy Court from the Liquidating Trust Assets in accordance with the Combined Disclosure Statement and Plan, the Confirmation Order, and the Liquidating Trust Agreement.

The Liquidating Trust Agreement shall provide that the Plan Administrator shall be indemnified by and receive reimbursement from the Liquidating Trust Assets against and from any and all loss, liability, expense (including reasonable attorneys' fees), or damage which the Plan Administrator incurs or sustains, in good faith and without willful misconduct, gross negligence, or fraud, acting as Plan Administrator under or in connection with the Liquidating Trust Agreement.

On and after the Effective Date, the Plan Administrator shall have the power and responsibility to do all acts contemplated by the Combined Disclosure Statement and Plan and the Confirmation Order to be done by the Plan Administrator and all other acts that may be necessary or appropriate in connection with the disposition of the Liquidating Trust Assets and the distribution of the proceeds thereof, as contemplated by the Combined Disclosure Statement and Plan and the Confirmation Order, and in accordance with the Liquidating Trust Agreement. In all circumstances, the Plan Administrator shall act in its reasonable discretion in the best interests of the Beneficiaries pursuant to the terms of the Combined Disclosure Statement and Plan, the Confirmation Order and the Liquidating Trust Agreement.

The Liquidating Trust Agreement, may be amended, modified, or supplemented with the unanimous consent of the Oversight Board or approval of the Court; *provided, however*, no amendment, modification, or supplement to the Liquidating Trust Agreement shall be effective if it would materially and adversely affect Distributions contemplated by the Combined Disclosure Statement and Plan.

**9.10    Compensation and Duties of Plan Administrator**. The salient terms of the Plan Administrator's employment, including the Plan Administrator's duties and compensation, shall be set forth in the Liquidating Trust Agreement. The Plan Administrator shall be entitled to reasonable compensation consistent with that of similar functionaries in similar types of bankruptcy cases. The Plan Administrator shall also be reimbursed for all documented, actual, reasonable, and necessary out-of-pocket expenses incurred in the performance of his or her duties under the Liquidating Trust Agreement.

**9.11    U.S. Federal Income Tax Treatment of the Liquidating Trust**

(a)    *Grantor Trust.* It is intended that the Liquidating Trust qualify as a grantor trust for U.S. federal income tax purposes, and that the Beneficiaries are treated as grantors of such trust. As described more fully in Article XVII of this Combined Disclosure Statement and Plan, the transfer of the Liquidating Trust Assets should be treated for U.S. federal income tax purposes as a transfer to the Beneficiaries, followed immediately by a deemed transfer from such Beneficiaries to the Liquidating Trust, *provided, however*, that the Liquidating Trust Assets will be

61

subject to any post-Effective Date obligations incurred by the Liquidating Trust relating to the pursuit of Liquidating Trust Assets and the administration of the wind-down of the Estates pursuant to the terms of the Combined Disclosure Statement and Plan, the Confirmation Order, and the Liquidating Trust Agreement. Accordingly, the Beneficiaries should be treated for U.S. federal income tax purposes as the grantors and owners of their respective share of the Liquidating Trust Assets. The foregoing treatment should also apply, to the extent permitted by applicable law, for state and local income tax purposes. Subject to Article V of the Combined Disclosure Statement and Plan, as a grantor trust, all items of income, gain, loss, deduction and credit will be included in the income of the Beneficiaries as if such items had been recognized directly by the Beneficiaries in the proportions in which they own beneficial interests in the Liquidating Trust.

No ruling is currently being requested from the IRS concerning the tax status of the Liquidating Trust as a grantor trust. As such, there can be no assurance that the IRS would not take a contrary position to the classification of the Liquidating Trust as a grantor trust. If the IRS were to challenge successfully the grantor trust classification, the U.S. federal income tax consequences to the Liquidating Trust and the holders of Claims could vary from those discussed herein. Certain U.S. federal income tax consequences of the Liquidating Trust or portions thereof being treated as a "disputed ownership fund" are also discussed below.

(b)    *Reporting*. The Plan Administrator shall comply with all tax reporting requirements and, in connection therewith, the Plan Administrator may require Beneficiaries to provide certain tax information as a condition to receipt of Distributions, including, without limitation, filing returns for the Liquidating Trust as a grantor trust pursuant to Treasury Regulation § 1.671-4(a). Under the guidelines set forth in Revenue Procedure 94-95, 1994-2 C.B. 684 and Treasury Regulation § 1.671-4(a), the Plan Administrator will file returns for the Liquidating Trust as a grantor trust; *provided, however*, that the Plan Administrator may timely elect to treat any Liquidating Trust Assets (including, without limitation, all Liquidating Trust Assets) as a "disputed ownership fund" governed by Treasury Regulation § 1.468B¬9. If a "disputed ownership fund" election is made, all parties (including the Plan Administrator and the Beneficiaries) shall report for U.S. federal, state and local income tax purposes consistently with the foregoing.

All taxable income and loss of the Liquidating Trust will be allocated among, and treated as directly earned and incurred by, the holders of beneficial interests in the Liquidating Trust with respect to such holder's interest in the assets of the Liquidating Trust (and not as income or loss with respect to its prior Claims), with the possible exception of any taxable income and loss allocable to any assets allocable to, or retained on account of, disputed Claims. The character of any income and the character and ability to use any loss would depend on the particular situation of the holder.

The U.S. federal income tax obligations of a holder with respect to its beneficial interest in the Liquidating Trust are not dependent on the Liquidating Trust distributing any cash or other

proceeds, subject to any portion(s) of the Liquidating Trust allocable to Disputed Claims. Thus, a Holder may incur a U.S. federal income tax liability with respect to its allocable share of the Liquidating Trust's income even if the Liquidating Trust does not make a concurrent distribution to the holder. In general, other than in respect of cash retained on account of disputed Claims (the subsequent distribution of which still relates to a Holder's Allowed Claim), a distribution of cash by the Liquidating Trust will not be separately taxable to a beneficiary of the Liquidating Trust since the beneficiary is already regarded for U.S. federal income tax purposes as owning the underlying assets (and was taxed at the time the cash was earned or received by the Liquidating Trust). Holders are urged to consult their tax advisors regarding the appropriate U.S. federal income tax treatment of any subsequent distributions of cash originally retained by the Liquidating Trust on account of Disputed Claims.

(c)     *Valuation*. Except to the extent definitive guidance from the IRS or a court of competent jurisdiction (including the issuance of applicable Treasury Regulations or the receipt by the Plan Administrator of a private letter ruling if the Plan Administrator so requests one) indicates that such valuation is not necessary to maintain the treatment of the Liquidating Trust as a liquidating trust for purposes of the Internal Revenue Code and applicable Treasury Regulations, as soon as reasonably practicable after the Liquidating Trust Assets are transferred to the Liquidating Trust, the Plan Administrator shall make a good faith valuation of the Liquidating Trust Assets. Such valuation shall be made available from time to time to all parties to the Liquidating Trust Agreement and to all Beneficiaries, to the extent required if the Plan Administrator elects to treat some or all of the Liquidating Trust Assets as a "disputed ownership fund" or relevant to such parties for tax purposes, and shall be used consistently by such parties for all U.S. federal income tax purposes.

(d)     *Tax Returns*. In accordance with the provisions of section 6012(b)(3) of the Internal Revenue Code, as amended, the Plan Administrator shall cause to be prepared, at the cost and expense of the Liquidating Trust, the income tax returns (federal, state and local) that the Debtors are required to file (to the extent such returns have not already been filed by the Effective Date). The Plan Administrator shall timely file each such tax return with the appropriate taxing authority and shall pay out of the Liquidating Trust Assets all taxes due with respect to the period covered by each such tax return.

(e)     *Disputed Ownership Fund Election*. The Combined Disclosure Statement and Plan permits the Plan Administrator to establish Disputed Claim Reserves. The Plan Administrator may also, at the Plan Administrator's sole discretion, file a tax election to treat any or all of the Liquidating Trust Assets, including, but not limited to any Disputed Claim Reserve, as a "disputed ownership fund" as described in Treasury Regulation § 1.468B-9 ("Disputed Ownership Fund") or other taxable entity rather than as a part of the Liquidating Trust for U.S. federal income tax purposes. If such election is made, the Liquidating Trust shall comply with all tax reporting and tax compliance requirements applicable to the Disputed Ownership Fund or other taxable entity, including, but not limited to, the filing of

63

separate income tax returns for the Disputed Ownership Fund or other taxable entity and the payment of any federal, state or local income tax due.

(f)     *Attribution of Income*. Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the issuance of applicable Treasury Regulations, the receipt by the Liquidating Trust of a private letter ruling if the Plan Administrator so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Liquidating Trust), attribution of Liquidating Trust taxable income or loss shall be by reference to the manner in which any economic gain or loss would be borne immediately after a hypothetical liquidating distribution of the remaining Liquidating Trust Assets. The tax book value of the Liquidating Trust Assets for purpose of this paragraph shall equal their fair market value on the date the Liquidating Trust Assets are transferred to the Liquidating Trust, adjusted in accordance with tax accounting principles prescribed by the Internal Revenue Code, the applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.

(g)     *Current Basis*. All income of the Liquidating Trust will be subject to tax on a current basis.

(h)     *Tax Identification Numbers*. The Plan Administrator may require any Beneficiary to furnish to the Plan Administrator its Employer or Taxpayer Identification Number as assigned by the Internal Revenue Service or otherwise certify to the Plan Administrator's satisfaction that Distributions to the Beneficiary are exempt from backup withholding. The Plan Administrator may condition any Distribution to any Beneficiary upon receipt of such identification number. If after reasonable inquiry, any Beneficiary fails to provide such identification number to the Plan Administrator, the Plan Administrator shall deem such Beneficiary's Claim as Disallowed and no Distribution shall be made on account of such Beneficiary's Claim.

(i)     *Annual Statements*. The Plan Administrator shall annually send to each Beneficiary a separate statement setting forth the Beneficiary's share of items of income, gain, loss, deduction or credit and all such holders shall report such items on their U.S. federal income tax returns; *provided, however,* that such reporting may be modified or withheld in accordance with any Disputed Ownership Fund election on the part of the Plan Administrator.

(j)     *Notices*. The Liquidating Trust shall distribute such notices to the Beneficiaries as the Plan Administrator determines are necessary or desirable.

(k)     *Expedited Determination*. The Plan Administrator may request an expedited determination of taxes of the Debtors or of the Liquidating Trust, as applicable, under Bankruptcy Code section 505(b) for all tax returns filed for, or on behalf of, the Debtors or the Liquidating Trust for all taxable periods through the dissolution of the Liquidating Trust.

(l)    *Withholding*. The Liquidating Trust will comply with all applicable governmental withholding requirements (see Section 10.10 of the Combined Disclosure Statement and Plan—"Withholding, Payment and Reporting Requirements with Respect to Distributions," below).

**9.12    Abandonment, Disposal, and Destruction of Records**. The Plan Administrator shall be authorized pursuant to Bankruptcy Code section 554, in its sole discretion, without any further notice to any party or action, order or approval of the Bankruptcy Court, to abandon, dispose of, or destroy in any commercially reasonable manner all originals and/or copies of any documents, books and records, including any electronic records, of the Debtors that are transferred to the Liquidating Trust and which the Plan Administrator reasonably concludes are burdensome or of inconsequential value and benefit to the Liquidating Trust.

**9.13    Distributions by Liquidating Trust**. Following the transfer of the Liquidating Trust Assets to the Liquidating Trust, the Plan Administrator shall make continuing efforts to liquidate all Liquidating Trust Assets in accordance with the Combined Disclosure Statement and Plan, the Confirmation Order, and the Liquidating Trust Agreement, *provided* that the timing of all Distributions made by the Liquidating Trust to Beneficiaries shall be at the discretion of the Plan Administrator, and, *provided, further,* that Distributions to Beneficiaries may only be made after the Final Administrative Claim Bar Date.

**9.14    Cash Investments**. Funds in the Liquidating Trust, may, at the discretion of the Plan Administrator, be invested in Permitted Investments, *provided, however*, that the scope of any such Permissible Investments shall be limited to include only those investments that a "liquidating trust" within the meaning of Treasury Regulations § 301.7701-4(d) may be permitted to hold, pursuant to the Treasury Regulations or any modification in the IRS guidelines, whether set forth in IRS rulings, Revenue Procedures, revenue rulings, other IRS pronouncements, or otherwise.

**9.15    Dissolution of the Liquidating Trust**. The Plan Administrator shall be discharged and the Liquidating Trust shall be terminated, at such time as: (i) all Disputed Claims have been resolved; (ii) all of the Liquidating Trust Assets have been liquidated; (iii) all duties and obligations of the Plan Administrator under the Combined Disclosure Statement and Plan, the Confirmation Order, and the Liquidating Trust Agreement have been fulfilled; (iv) all Distributions required under the Combined Disclosure Statement and Plan, the Confirmation Order and the Liquidating Trust Agreement have been made; and (v) the Chapter 11 Cases have been closed. Upon dissolution of the Liquidating Trust, any remaining Liquidating Trust Assets may be transferred by the Plan Administrator to one or more charitable organizations without further order of the Bankruptcy Court. Notwithstanding any other provision herein, at the conclusion of the Chapter 11 Cases, the Plan Administrator may donate to charity, sell, or abandon the rights to any unclaimed final distributions along with any other remnant assets.

**9.16    Control Provisions**. To the extent there is any inconsistency between (i) the Combined Disclosure Statement and Plan and the Confirmation Order as it relates to the Liquidating Trust and (ii) the Liquidating Trust Agreement, the terms of the Combined Disclosure Statement and Plan and the Confirmation Order shall control. To the extent there is any inconsistency between (i) the Combined Disclosure Statement and Plan and (ii) the Confirmation Order, the terms of the

Confirmation Order shall control. Nothing in this Combined Disclosure Statement and Plan shall modify or be deemed to modify in any regard any term or provision of the Cash Collateral Order related to the Prepetition Indenture Claims.

**9.17    Limitation of Liability; Indemnification**. The Plan Administrator may, in connection with the performance of its functions, consult with attorneys, accountants, financial advisors and agents, which consultation may act as a defense for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such persons. Notwithstanding such authority, the Plan Administrator shall not be under any obligation to consult with attorneys, accountants, financial advisors or agents, and its determination not to do so shall not result in the imposition of liability, unless such determination is based on willful misconduct, gross negligence or fraud. The Liquidating Trust shall indemnify and hold harmless the Plan Administrator and its designees and professionals, and all duly designated agents and representatives thereof (in their capacity as such), from and against and in respect of all liabilities, losses, damages, claims, costs and expenses, including, but not limited to attorneys' fees and costs arising out of or due to such actions or omissions, or consequences of their actions or omissions with respect or related to the performance of their duties or the implementation or administration of the Combined Disclosure Statement and Plan; *provided, however*, that no such indemnification will be made to such persons for such actions or omissions as a result of willful misconduct, gross negligence or fraud.

**9.18    Oversight Board**. The Oversight Board shall consist of three (3) members selected by the Committee. On or before the Effective Date, the Debtors shall file in the Chapter 11 Cases a notice identifying the initial members of the Oversight Board. The Oversight Board shall continue in existence until such time as the Liquidating Trust is terminated or its members unanimously elect to cause the Oversight Board's dissolution.

**9.19    Oversight Board Duties and Powers**. The Oversight Board shall represent the interests of Holders of Allowed General Unsecured Claims and the WARN Act Class Settlement Claims during the existence of the Liquidating Trust and shall have the obligation to undertake in good faith each of the acts and the responsibilities set forth for the Oversight Board in this Combined Disclosure Statement and Plan to:

> Terminate by unanimous vote the Plan Administrator for cause or upon resignation, death, incapacity or removal of the Plan Administrator, and appoint a successor Plan Administrator; provided, that the Oversight Board shall File with the Bankruptcy Court a notice of the appointment of such successor;

> Receive and review any report detailing the means by which the Plan Administrator invests and/or insures the Liquidating Trust Assets pending Final Distribution; and

> Approve specified actions of the Plan Administrator, as detailed in the Liquidating Trust Agreement.

**9.20**   **Oversight Board Voting Rights**. The Oversight Board shall create such by-laws (if any) as it deems necessary or convenient.

**9.21**   **Reporting Rights**. The Plan Administrator shall report to the Oversight Board at such period as agreed to by the Oversight Board and the Plan Administrator, as to the status of all Distributions, material litigation, investment/insurance of Liquidating Trust Assets, Claims Objections, and all other material matters affecting the Allowed General Unsecured Claims and WARN Act Class Settlement Claims.

**9.22**   **Company Action**. All matters expressly provided for under this Combined Disclosure Statement and Plan that would otherwise require approval of the equity holders, directors or officers of the Debtors, including but not limited to, the dissolution of the Debtors, shall be deemed to be approved and in effect from and after the Effective Date pursuant to the applicable law of Delaware without any requirement of action by the equity holders, directors or officers of the Debtors.

**ARTICLE X**
**PROVISIONS GOVERNING DISTRIBUTIONS**

**10.1**   **Distributions for Allowed Claims**

Except as otherwise provided herein or as ordered by the Bankruptcy Court, all Distributions to Beneficiaries as of the applicable Distribution Date shall be made on or as soon as practicable after the applicable Distribution Date. Distributions on account of Claims that first become Allowed Claims after the applicable Distribution Date shall be made pursuant to the terms of this Combined Disclosure Statement and Plan and on the day selected by the Plan Administrator.

The Plan Administrator may accelerate any Distribution Date with respect to Distributions other than the initial Distribution Date if the facts and circumstances so warrant and to the extent not inconsistent with the Combined Disclosure Statement and Plan, the Confirmation Order, or the Liquidating Trust Agreement.

Distributions made as soon as reasonably practicable after the Effective Date or such other date set forth herein shall be deemed to have been made on such date.

**10.2**   **Interest on Claims**. Post-petition interest shall not accrue or be paid on Claims, and no Holder of an Allowed Claim shall be entitled to interest accruing on any Claim from and after the Petition Date.

**10.3**   **Distributions by Plan Administrator as Disbursement Agent**. Subject to Section 10.4 of the Combined Disclosure Statement and Plan, from and after the Effective Date, the Plan Administrator shall serve as the Disbursement Agent under the Combined Disclosure Statement and Plan with respect to Distributions to Holders of Allowed Claims (provided that the Plan Administrator may hire professionals or consultants to assist with making disbursements or to act as the Disbursement Agent). The Plan Administrator shall cause to be made all Distributions required to be made to such Holders of Allowed Claims pursuant to the Combined Disclosure Statement and Plan and the Liquidating Trust Agreement. The Plan Administrator shall not be

67

required to give any bond or surety or other security for the performance of the Plan Administrator's duties as Disbursement Agent unless otherwise ordered by the Bankruptcy Court.

**10.4    Waterfall**. The Plan Administrator shall cause the proceeds of the Liquidating Trust Assets as of the Effective Date, net of the Liquidating Trust Expenses, to be distributed to Holders of Allowed Claims as follows[9]:

(a)    first, to satisfy all Allowed Administrative Claims;

(b)    second, to satisfy all Allowed Other Secured Claims and Allowed Priority Tax Claims;

(c)    third, to satisfy the Allowed Priority Non-Tax Claims; and

(d)    fourth, to satisfy the General Unsecured Claims.

**10.5    Means of Cash Payment**. Cash payments under the Combined Disclosure Statement and Plan shall be made, net of any applicable withholding taxes at the option, and in the sole discretion, of the Plan Administrator, by wire, check, or such other method as the Plan Administrator deems appropriate under the circumstances. Cash payments to foreign creditors may be made, at the option, and in the sole discretion, of the Plan Administrator, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction. Pursuant to Section 10.10 of the Combined Disclosure Statement and Plan, cash payments in the form of checks issued by the Plan Administrator shall be null and void if not cashed within ninety (90) days of the date of the issuance thereof and deemed undeliverable Distributions. Following the expiration of ninety (90) days after issuance of such null and void checks, in accordance with Section 10.14 of the Combined Disclosure Statement and Plan, amounts in respect of these undeliverable Distributions shall be unrestricted Liquidating Trust Assets and may be redistributed to the Beneficiaries after reserving as necessary for payment of Liquidating Trust Expenses. Such Holder of an undeliverable Distribution shall be deemed to have forfeited its right to any reserved and future Distributions from the Liquidating Trust and any Liquidating Trust Interests held by such Holder shall be deemed cancelled, and the Claims of such Holder shall be forever barred.

For purposes of effectuating Distributions under the Combined Disclosure Statement and Plan, any Claim denominated in foreign currency shall be converted to U.S. Dollars pursuant to the applicable published exchange rate in effect on the Petition Date.

**10.6    Fractional Distributions**. Notwithstanding anything in the Combined Disclosure Statement and Plan to the contrary, no payment of fractional cents shall be made pursuant to the Combined Disclosure Statement and Plan. Whenever any payment of a fraction of a cent under the Combined Disclosure Statement and Plan would otherwise be required, the actual Distribution made shall reflect a rounding of such fraction to the nearest whole penny (up or

---

[9] Members of the WARN Act Class will receive distributions pursuant to their Claims within ten (10) days of the occurrence of the Effective Date, pursuant to the WARN Act Class Settlement Order.  As a result, such Claims are not included in the waterfall.

down), with half cents or more being rounded up and fractions less than half of a cent being rounded down.

**10.7    De Minimis Distributions**. Notwithstanding anything to the contrary contained in the Combined Disclosure Statement and Plan, the Plan Administrator shall not be required to distribute, and shall not distribute, Cash or other property to the Holder of any Allowed Claim if the amount of Cash or other property to be distributed on account of such Claim is less than $50. Any Holder of an Allowed Claim on account of which the amount of Cash or other property to be distributed is less than $50 shall be forever barred from asserting such Claim against Liquidating Trust Assets.

**10.8    Delivery of Distributions; Unclaimed Distributions**. All Distributions to Holders of Allowed Claims not made by wire transfer shall be made at the address of such Holder as set forth in the claims register maintained in the Chapter 11 Cases (subject to any transfer effectuated pursuant to Bankruptcy Rule 3001(e) or, after the Effective Date, a change of address notification provided by a Holder in a manner reasonably acceptable to the Plan Administrator) or, in the absence of a Filed proof of Claim, the Schedules. The responsibility to provide the Plan Administrator a current address of a Holder of Claims shall always be the responsibility of such Holder and at no time shall the Plan Administrator have any obligation to determine a Holder's current address. Nothing contained in the Combined Disclosure Statement and Plan shall require the Plan Administrator to attempt to locate any Holder of an Allowed Claim. Amounts in respect of undeliverable Distributions made by the Plan Administrator shall be held in trust on behalf of the Holder of the Claim to which they are payable by the Liquidating Trust until the earlier of the date that such undeliverable Distributions are claimed by such Holder and the date ninety (90) days after the date the undeliverable Distributions were made. Following the expiration of ninety (90) days after the date the undeliverable Distributions were made, the amounts in respect of undeliverable Distributions shall be unrestricted Liquidating Trust Assets and may be redistributed to the Beneficiaries after reserving as necessary for payment of Liquidating Trust Expenses. Such Holder shall be deemed to have forfeited its right to any reserved and future Distributions from the Liquidating Trust and any Liquidating Trust Interests held by such Holder shall be deemed cancelled, and the Claims of such Holder shall be forever barred.

**10.9    Application of Distribution Record Date**. At the close of business on the Distribution Record Date, the Debtors' claims register shall be closed, and there shall be no further changes in the record Holders of Claims or Interests. Except in limited instances as may be provided in the Liquidating Trust Agreement, and as may be provided to the extent of applicable law, beneficial interests in the Liquidating Trust shall be non-transferable except upon death of the interest Holder or by operation of law. Except as provided herein, the Plan Administrator and the Plan Administrator's respective agents, successors, and assigns shall have no obligation to recognize any transfer of any Claim or Interest occurring after the Distribution Record Date and shall be entitled instead to recognize and deal for all purposes hereunder with only those record Holders stated on the claims register as of the close of business on the Distribution Record Date irrespective of the number of Distributions to be made under the Combined Disclosure Statement and Plan to such Entities or the date of such Distributions.

**10.10   Withholding, Payment and Reporting Requirements With Respect to Distributions**. All Distributions under the Combined Disclosure Statement and Plan shall, to the extent

69

applicable, comply with all tax withholding, payment, and reporting requirements imposed by any federal, state, provincial, local, or foreign taxing authority, and all Distributions shall be subject to any such withholding, payment, and reporting requirements. The Plan Administrator shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding, payment, and reporting requirements. Furthermore, any Distribution on account of a Claim that the Plan Administrator determines is required to be subject to withholding shall be reduced on a dollar-for-dollar basis by the amount of such required withholding prior to payment by the Liquidating Trust of such Distribution. The Plan Administrator may require, in the Plan Administrator's sole and absolute discretion and as a condition to the receipt of any Distribution, that the Holder of an Allowed Claim complete and return to the Liquidating Trust the appropriate Form W-8 or Form W-9, as applicable, to each Holder. Notwithstanding any other provision of the Combined Disclosure Statement and Plan, (a) each Holder of an Allowed Claim that is to receive a Distribution pursuant to the Combined Disclosure Statement and Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding, and other tax obligations, on account of such Distribution, and including, in the case of any Holder of a Disputed Claim that has become an Allowed Claim, any tax obligation that would be imposed upon the Liquidating Trust in connection with such Distribution, and (b) no Distribution shall be made to or on behalf of such Holder pursuant to the Combined Disclosure Statement and Plan unless and until such Holder has made arrangements reasonably satisfactory to the Plan Administrator for the payment and satisfaction of such withholding tax obligations or such tax obligation that would be imposed upon the Liquidating Trust in connection with such Distribution.

**10.11  Allocation of Distributions for Tax Purposes**. For U.S. federal income tax purposes, distributions in full or partial satisfaction of a Holder's Allowed Claim shall be allocated first to the principal amount (as determined for U.S. federal income tax purposes) of such Allowed Claim, until paid in full, with any excess allocated to the remainder of such Claim. However, there is no assurance that the IRS will respect such allocation for U.S. federal income tax purposes.

**10.12  Setoffs**. The Liquidating Trust may, but shall not be required to, set off against any Claim or any Allowed Claim, and the payments or other Distributions to be made pursuant to the Combined Disclosure Statement and Plan in respect of such Claim, claims of any nature whatsoever that the Debtors or the Liquidating Trust may have against the Holder of such Claim; *provided, however*, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Liquidating Trust of any such claim that it may have against such Holder.

**10.13  No Distribution in Excess of Allowed Amounts**. Notwithstanding anything to the contrary herein, no Holder of an Allowed Claim shall receive in respect of such Claim any Distribution of a value as of the Effective Date in excess of the Allowed amount of such Claim.

**10.14  Allocation of Distributions**. The Plan Administrator may, in the Plan Administrator's sole discretion, make Distributions jointly to any Holder of an Allowed Claim and any other Entity who has asserted, or whom the Plan Administrator has determined to have, an interest in such Allowed Claim; *provided, however*, that the Liquidating Trust shall provide notice of such

70

Distribution to any Holder of an Allowed Claim or other Entity that has asserted an interest in such Claim.

**10.15  Forfeiture of Distributions**. If the Holder of an Allowed Claim fails to cash a check payable to it within the time period set forth in Section 10.5 hereof, fails to claim an undeliverable Distribution within the time limit set forth in Section 10.8 hereof, or fails to complete and return to the Liquidating Trust the appropriate Form W-8 or Form W-9 within one hundred twenty (120) days of the request by the Liquidating Trust (which request may be made via any means of communication, including, without limitation via email) for the completion and return to it of the appropriate form pursuant to Section 10.10 hereof, then such Holder shall be deemed to have forfeited its right to any reserved and future Distributions from the Liquidating Trust and any Liquidating Trust Interests held by such Holder shall be deemed cancelled, and such Holder no longer be a Beneficiary, and the Claims of such Holder shall be forever barred. The forfeited Distributions shall become unrestricted Liquidating Trust Assets and shall be redistributed to the Beneficiaries after reserving as necessary for payment of Liquidating Trust Expenses and otherwise in compliance with the Combined Disclosure Statement and Plan and the Liquidating Trust Agreement. In the event the Plan Administrator determines that any such amounts are too small in total to redistribute cost-effectively to the Beneficiaries, the Plan Administrator may instead donate them to a charitable organization(s) free of any restrictions thereon, notwithstanding any federal or state escheat laws to the contrary and without further order from the Bankruptcy Court. Notwithstanding any other provision herein, at the conclusion of the Chapter 11 Cases, the Plan Administrator may donate to charity, sell, or abandon the rights to any unclaimed final distributions along with any other remnant assets.

## ARTICLE XI
## PROVISIONS FOR CLAIMS OBJECTIONS AND ESTIMATION OF CLAIMS

**11.1  Claims Administration Responsibility**. Except as otherwise specifically provided in the Combined Disclosure Statement and Plan, the Confirmation Order, or the Liquidating Trust Agreement, after the Effective Date, the Plan Administrator, after consultation with the Oversight Board, on behalf of the Liquidating Trust shall have the authority (a) to file, withdraw, or litigate to judgment Objections to Claims, (b) to settle, compromise, or Allow any Claim or Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court, (c) to amend the Schedules in accordance with the Bankruptcy Code; provided, however, that the Plan Administrator shall not, without an Order of the Bankruptcy Court, amend the Schedules to mark as contingent any Claim of an employee, officer or director of the Debtors, and (d) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court. Any agreement entered into by the Plan Administrator (acting in accordance with the terms of the Liquidating Trust Agreement) on behalf of the Liquidating Trust with respect to the Allowance of any Claim shall be conclusive evidence and a final determination of the Allowance of such Claim, *provided, however,* that for the avoidance of doubt, and subject to and without prejudice to 11 U.S.C. § 307, the U.S. Trustee's rights to object to Administrative Claims and Professional Fee Claims are reserved.

**11.2  Claims Objections**. All Objections to Claims (other than Professional Fee Claims) shall be Filed by the Plan Administrator on or before the Claims Objection Deadline, which date may

be extended by the Bankruptcy Court upon a motion filed by the Plan Administrator on or before the Claims Objection Deadline with notice only to those parties entitled to notice in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002 as of the filing of such motion. If a timely Objection has not been Filed to a proof of Claim or the Schedules have not been amended with respect to a Claim that was scheduled by the Debtors but was not set forth in the Schedules by the Debtors as contingent, unliquidated, or disputed, then the Claim to which the proof of Claim or the Claim set forth in the Schedules relates will be treated as an Allowed Claim.

**11.3    Estimation of Contingent or Unliquidated Claims**. Except as specifically provided for in the Liquidating Trust Agreement, the Plan Administrator may, at any time, request that the Bankruptcy Court estimate any Contingent or Unliquidated Claim pursuant to Bankruptcy Code section 502(c), regardless of whether the Debtors have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such Objection, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any Objection to any Claim, including during the pendency of any appeal relating to any such Objection. In the event the Bankruptcy Court so estimates any Contingent or Unliquidated Claim, that estimated amount shall constitute the Allowed amount of such Claim. All of the aforementioned Claims Objection, estimation, and resolution procedures are cumulative and are not necessarily exclusive of one another. However, no estimation or reserve shall be required for any contingent or unliquidated indemnification claim by the Debtors' Former Officers & Directors, in their capacity as such, pursuant to the terms of the Debtors certificates of incorporation or bylaws unless and until an actual liability is determined against such persons.

**11.4    Distributions on Account of Disputed Claims**. Distributions may be made on account of an undisputed portion of a Disputed Claim. The Plan Administrator shall, on the applicable Distribution Date, make Distributions on account of any Disputed Claim (or portion thereof) that has become an Allowed Claim. Such Distributions shall be based upon the Distributions that would have been made to the Holder of such Claim under the Combined Disclosure Statement and Plan if such Claim had been an Allowed Claim on the Effective Date in the amount ultimately Allowed.

**11.5    Amendments to Claims**. Except for Claims as to which the applicable Bar Date occurs after the Effective Date, a Claim may not be Filed or amended after the Effective Date to increase liability or to assert new liabilities without the prior authorization of the Bankruptcy Court or the Plan Administrator, and any such new or amended Claim Filed without prior authorization shall be deemed Disallowed in full without any further action.

**11.6    Claims Paid and Payable by Third Parties**. A Claim shall be Disallowed without an Objection thereto having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not the Debtors or the Liquidating Trust. Distributions under the Combined Disclosure Statement and Plan shall be made on account of any Allowed Claim that is payable pursuant to one of the Insurance Contract(s) solely up to the amount of the portion of such Allowed Claim that is (i) within the self-insured retention under such Insurance Contract(s) and/or (ii) in excess of any aggregate limits under such Insurance Contract(s). No Entity shall have any other recourse against the Debtors, the Estates, the Liquidating Trust, or any of their respective properties or assets on account of a self-insured

72

retention under an Insurance Contract; *provided, however*, that, except as otherwise required under the applicable Insurance Contracts and applicable non-bankruptcy law, an Insurer shall not be obligated to pay amounts within any self-insured retention or other self-insured layer.

**11.7    Adjustment to Claims Without Objection**. Any Claim that has been paid or otherwise satisfied may be designated on the Claims Register as such at the direction of the Plan Administrator by the Filing of a Notice of Satisfaction by the Plan Administrator, and without any further notice to or action, order, or approval of the Bankruptcy Court.

## ARTICLE XII
## EXECUTORY CONTRACTS

**12.1    Executory Contracts Deemed Rejected**. On the Effective Date, all Executory Contracts, other than the Purchased Assets and Insurance Contracts (which shall be treated as set forth in Section 17.10 hereof), are hereby deemed rejected as of the Effective Date in accordance with, and subject to, the provisions and requirements of Bankruptcy Code sections 365 and 1123, except to the extent: (a) the Debtors previously has assumed, assumed and assigned or rejected such Executory Contract, or (b) prior to the Effective Date, the Debtors have Filed a motion to assume, assume and assign, or reject an Executory Contract on which the Bankruptcy Court has not ruled. Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of all rejections of Executory Contracts pursuant to this Article and Bankruptcy Code sections 365(a) and 1123.

If the rejection by the Debtors, under this Combined Disclosure Statement and Plan, of an Executory Contract gives rise to a Claim for rejection damages in accordance with section 502(g) of the Bankruptcy Code, a proof of Claim must be Filed in accordance with the procedures set forth in the Bar Date Order by the Combined Disclosure Statement and Plan Rejection Damages Claim Bar Date. For the avoidance of doubt, the Plan Rejection Damages Claim Bar Date shall apply only to Executory Contracts that are rejected pursuant to this Combined Disclosure Statement and Plan. To the extent an Executory Contract has been rejected pursuant to a separate order of the Bankruptcy Court, the deadlines established by the Bankruptcy Court (including pursuant to such separate order or pursuant to the Bar Date Order, as applicable) shall apply to any Claims arising out of such rejection.

**12.2    Asset Purchase Agreements and Related Agreements**. To the extent executory, the Asset Purchase Agreements, and any other agreements between the Debtors and the Purchasers related to the Sales are hereby be deemed assumed and assigned to the Liquidating Trust, as applicable, as provided for in the Combined Disclosure Statement and Plan.

## ARTICLE XIII
## CONFIRMATION AND CONSUMMATION OF
## THE COMBINED DISCLOSURE STATEMENT AND PLAN

**13.1    Conditions Precedent to the Effective Date**. Each of the following is a condition precedent to the occurrence of the Effective Date:

(a)    the Confirmation Order shall have become a Final Order in full force and effect with no stay thereof then in effect;

FH11510059.14

(b)      the absence of any pending or threatened government action or any law that has the effect of or actually does prevent Consummation of any transaction contemplated under this Combined Disclosure Statement and Plan;

(c)      the Liquidating Trust shall have been established and the Liquidating Trust Assets shall have been transferred to and vested in the Liquidating Trust free and clear of all Claims and Interests, except as specifically provided in the Combined Disclosure Statement and Plan, the Confirmation Order, and the Liquidating Trust Agreement;

(d)      the Plan Administrator and the Oversight Board shall have been duly appointed, qualified and acting in their respective capacities;

(e)      the Professional Fee Claims Reserve shall have been funded consistent with the terms in the Combined Disclosure Statement and Plan;

(f)      the Disputed Claim Reserve and Liquidating Trust Operating Reserve shall have been established and funded at the discretion of the Plan Administrator and in accordance with the terms of this Combined Disclosure Statement and Plan; and

(g)      the WARN Act Class Settlement Order becomes a Final Order.

**13.2     Notice of Effective Date**. On or before five (5) Business Days after the Effective Date, the Debtors or the Plan Administrator shall mail or cause to be mailed to all Holders of Claims a notice that informs such Entities of (a) the occurrence of the Effective Date, (b) notice of the Final Administrative Claim Bar Date, the Combined Disclosure Statement and Plan Rejection Damages Claim Bar Date and Professional Fee Claim Bar Date, and (c) such other matters as the Debtors deem appropriate or as may be ordered by the Bankruptcy Court.

**13.3     Waiver of Conditions Precedent to the Effective Date**. The Plan Proponents may at any time and without notice or authorization of the Bankruptcy Court, waive in writing any or all of the conditions precedent to the Effective Date set forth in this Article, whereupon the Effective Date shall occur without further action by any Entity, *provided, however,* that (i) the condition specified in section 13.1(a) and 13.1(f) may not be waived. The Plan Proponents reserve the right to assert that any appeal from the Confirmation Order shall be moot after the Effective Date of the Combined Disclosure Statement and Plan.

**13.4     Effect of Non-Occurrence of Effective Date**. If each of the conditions specified in this Article have not been satisfied or waived in the manner provided herein within ninety (90) calendar days after the Confirmation Date (or such later date as may be agreed to by the Plan Proponents), then: (i) the Confirmation Order shall be vacated and of no further force or effect; (ii) no Distributions under the Combined Disclosure Statement and Plan shall be made; (iii) the Debtors and all Holders of Claims against or Interests in the Debtors shall be restored to the status quo as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred; and (iv) all of the Debtors' obligations with respect to Claims and Interests shall remain unaffected by the Combined Disclosure Statement and Plan and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors or any other Entity or to prejudice in any manner the rights of the Debtors

or any Entity in any further proceedings involving the Debtors, and the Combined Disclosure Statement and Plan shall be deemed withdrawn. Upon such occurrence, the Debtors shall File a written notification with the Bankruptcy Court and serve it upon such parties as the Bankruptcy Court may direct.

### ARTICLE XIV
### EFFECTS OF CONFIRMATION

**14.1    Exculpation, Releases, and Injunctions.**

**Nothing contained in Section 14.1 of this Combined Disclosure Statement and Plan shall prohibit the Holder of a Claim from litigating its right to seek to have such Claim declared an Allowed Claim and paid in accordance with the Distribution provisions of the Combined Disclosure Statement and Plan, or enjoin or prohibit the enforcement by the Holder of such Claim of any of the obligations of the Plan Administrator under the Combined Disclosure Statement and Plan. The exculpations, releases, and injunctions provided for in Section 14.1 of this Combined Disclosure Statement and Plan shall be effective upon the Effective Date.**

(a)    **Exculpation and Limitation of Liability. Notwithstanding any other provision of the Combined Disclosure Statement and Plan, the Exculpated Parties shall not have or incur any Liability to, or be subject to any right of action by, any Holder of a Claim or an Interest, or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or agents acting in such capacity, or Affiliates, or any of their successors or assigns, for any act or omission occurring on or after the Petition Date and before the Effective Date relating to, in any way, or arising from (i) the Chapter 11 Cases, (ii) formulating, negotiating or implementing the Combined Disclosure Statement and Plan or any contract, instrument, release or other agreement or document created or entered into in connection with the Combined Disclosure Statement and Plan; (iii) the Sales; (iv) any other post-petition act taken or omitted to be taken in connection with or in contemplation of the restructuring, sale, or liquidation of the Debtors; (v) the solicitation of acceptances of the Combined Disclosure Statement and Plan, the pursuit of Confirmation of the Combined Disclosure Statement and Plan, the Confirmation of the Combined Disclosure Statement and Plan, the Consummation of the Combined Disclosure Statement and Plan, or (vi) the administration of the Combined Disclosure Statement and Plan or the property to be distributed under the Combined Disclosure Statement and Plan, except for their gross negligence or willful misconduct as determined by a Final Order, and in all respects shall be entitled to reasonably rely upon the advice of counsel and other retained professionals with respect to their duties and responsibilities under the Combined Disclosure Statement and Plan. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting the Exculpated Parties from liability. The Confirmation Order shall serve as a permanent injunction against any**

Entity seeking to enforce any Claim or Cause of Action against the Exculpated Parties that has been exculpated pursuant to Section 14.1(a) of the Combined Disclosure Statement and Plan.

This exculpation provision shall not apply to any of the Debtors' Former Officers & Directors, in their capacity as such, with respect to any Retained Causes of Action which are covered under the Insurance Policies, *provided, however,* that the Plan Administrator (or any successor or assign prosecuting such Retained Causes of Action) shall not execute on any personal assets of the Debtors' Former Officers and Directors, in their capacity as such, with respect to such Retained Causes of Action.

In the event the Court determines that applicable law does not permit a person or Entity to be an Exculpated Party, the Combined Disclosure Statement and Plan shall be deemed modified to exclude such person or Entity from the definition of Exculpated Party. For avoidance of doubt, such exclusion shall not affect the exculpations contained in the Combined Disclosure Statement and Plan with respect to the other Exculpated Parties.

(b)    **Releases by the Debtors.** **Except as otherwise expressly provided in the Combined Disclosure Statement and Plan or the Confirmation Order, on the Effective Date, for good and valuable consideration, each of the Debtors, on its own behalf and as a representative of its Estates, to the fullest extent permitted under applicable law, shall, and shall be deemed to, completely and forever release, waive, void and extinguish and discharge unconditionally, as against each and all of the Released Parties (including Perceptive) of and from any and all Claims, Causes of Action, interests, obligations, suits, judgments, damages, debts, rights, remedies, set offs, and Liabilities of any nature whatsoever, whether liquidated or Unliquidated, fixed or Contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, tort, contract, or otherwise, that are or may be based in whole or part on any act, omission, transaction, event, occurrence, or other circumstance, whether direct or derivative, taking place or existing on or prior to the Effective Date (including prior to the Petition Date) in connection with or related to the Debtors or their operations, Assets, the Estates, or the Chapter 11 Cases, that may be asserted by or on behalf of such Debtor or its Estate, against any of the Released Parties; *provided however,* that the Debtors' Former Officers and Directors, in their capacity as such, shall not be Released Parties with respect to any Retained Cause of Action that is covered under the Insurance Policies, *provided further,* that the Plan Administrator (or any successor prosecuting such Retained Causes of Action) shall not execute on any personal assets of the Debtors' Former Officers and Directors, in their capacity as such, with respect to such Retained Causes of Action.**

(c)    **Consensual Third-Party Releases by Holders of Claims.** **As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby**

confirmed, the Releasing Parties (including Perceptive) shall be deemed to forever release, waive, and discharge as against each and all of the Released Parties, any and all Claims, obligations, suits, judgments, damages, demands, debts, rights, remedies, Causes of Action and liabilities of any nature whatsoever in connection with or related to the Debtors, the Chapter 11 Cases, or the Combined Disclosure Statement and Plan, whether liquidated or Unliquidated, fixed or Contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or hereafter arising, in law, equity, or otherwise that are or may be based in whole or in part upon any act, omission, transaction, event, or other occurrence taking place or existing on or prior to the Effective Date (other than the rights of Holders of Allowed Claims to enforce the obligations under the Confirmation Order and the Combined Disclosure Statement and Plan); *provided, however,* that nothing in this section shall operate as a release, waiver, or discharge of (i) any Causes of Action or liabilities arising out of gross negligence, willful misconduct, fraud, or criminal acts of any such Released Party as determined by a Final Order, or (ii) any Retained Causes of Action transferred to the Liquidating Trust, which Retained Causes of Action are preserved notwithstanding anything to the contrary in this section.

(d)    **Non-Discharge of the Debtors; Injunction**. In accordance with Bankruptcy Code section 1141(d)(3), the Combined Disclosure Statement and Plan does not discharge the Debtors. Bankruptcy Code section 1141(c) nevertheless provides, among other things, that the property dealt with by the Combined Disclosure Statement and Plan is free and clear of all Claims and Interests against the Debtors. As such, no Entity holding a Claim against the Debtors may receive any payment from, or seek recourse against, any assets that are to be distributed under the Combined Disclosure Statement and Plan other than assets required to be distributed to that Entity under the Combined Disclosure Statement and Plan. Distributions to any such Holder of any such Claim shall be as expressly set forth in the Combined Disclosure Statement and Plan. All Entities are precluded from asserting against any property to be distributed under the Combined Disclosure Statement and Plan any Claims, rights, Causes of Action, Liabilities, or Interests based upon any act, omission, transaction, or other activity that occurred before the Effective Date except as expressly provided in the Combined Disclosure Statement and Plan or the Confirmation Order.

(e)    **Releases Under the WARN Act Class Settlement Order**.  In addition to and notwithstanding anything to the contrary herein, pursuant to the WARN Act Class Settlement Order, certain releases were provided therein.

Except as otherwise expressly provided for in the Combined Disclosure Statement and Plan or in obligations issued pursuant to the Combined Disclosure Statement and Plan, all Entities are permanently enjoined, on and after the Effective Date, from:

77

(1)     commencing or continuing in any manner any action or other proceeding of any kind (a) against the Liquidating Trust and/or the Liquidating Trust Assets on account of any Claim or Interest, or (b) against the Released Parties or the Exculpated Parties, as applicable, on account of any Claim or Interest released or exculpated under the Combined Disclosure Statement and Plan (the "<u>Released Claims</u>"), or against any of the foregoing parties' respective successors and assigns, and any of their assets and properties;

(2)     enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order (a) against the Liquidating Trust and/or the Liquidating Trust Assets on account of any Claim or Interest, or (b) against the Released Parties or the Exculpated Parties, as applicable, on account of any Released Claims, or against any of the foregoing parties' respective successors and assigns, and any of their assets and properties;

(3)     creating, perfecting or enforcing any encumbrance of any kind (a) against the Liquidating Trust and/or the Liquidating Trust Assets on account of any Claim or Interest, or (b) against the Released Parties or the Exculpated Parties, as applicable, on account of any Released Claims, or against any of the foregoing parties' respective successors and assigns, and any of their assets and properties;

(4)     asserting any right of setoff or subrogation of any kind on account of the Released Claims against any obligation due from the Debtors, the Estates, the Released Parties, the Liquidating Trust and/or the Liquidating Trust Assets or their respective successors and assigns, or against any of their assets and properties, except to the extent a right to setoff or subrogation is asserted with respect to a timely Filed proof of Claim or by way of a motion filed before Confirmation of the Combined Disclosure Statement and Plan; or

(5)     commencing or continuing in any manner any action or other proceeding of any kind (a) against the Liquidating Trust and/or the Liquidating Trust Assets on account of any Claim or Interest, or (b) against the Released Parties or the Exculpated Parties, as applicable, on account of any Released Claims, or against any of the foregoing parties' respective successors and assigns, and any of their assets and properties.

**Any Entity injured by any willful violation of such injunction may seek actual damages and, in appropriate circumstances, may seek punitive damages from the willful violator.**

**14.2    <u>Waiver of Statutory Limitations on Releases</u>. Each Entity providing the releases set forth in Section 14.1 above expressly acknowledges that although ordinarily a general release may not extend to Claims or Causes of Action that the Releasing Party does not**

78

know or suspect to exist in its favor, which if known by it may have materially affected its settlement with the party released, they have carefully considered and taken into account in determining to enter into the above releases the possible existence of such unknown losses or Claims. Without limiting the generality of the foregoing, each Releasing Party expressly waives any and all rights conferred upon it by any statute or rule of law which provides that a release does not extend to Claims which the claimant does not know or suspect to exist in its favor at the time of providing the release, which if known by it may have materially affected its settlement with the Released Party. The releases contained in this Combined Disclosure Statement and Plan are effective regardless of whether those released matters are presently known, unknown, suspected or unsuspected, foreseen or unforeseen.

**14.3    Term of Bankruptcy Injunction or Stays**. All injunctions or stays provided for in the Chapter 11 Cases under Bankruptcy Code sections 105 or 362, or otherwise, and in existence on the Confirmation Date (excluding any injunctions or stays contained in the Combined Disclosure Statement and Plan or the Confirmation Order), shall remain in full force and effect until the closing of the Chapter 11 Cases.

**14.4    U.S. Securities and Exchange Commission**. Notwithstanding any language to the contrary contained in the Combined Disclosure Statement and Plan and/or the Confirmation Order, no provision of this Combined Disclosure Statement and Plan or the Confirmation Order shall (i) preclude the United States Securities and Exchange Commission (the "SEC") from enforcing its police or regulatory powers; or (ii) enjoin, limit, impair or delay the SEC from commencing or continuing any claims, causes of action, proceedings or investigations against any non-debtor person or non-debtor entity in any forum.

**ARTICLE XV**
**RETENTION OF JURISDICTION**

**15.1    Exclusive Jurisdiction of Bankruptcy Court**. Pursuant to Bankruptcy Code sections 105(a) and 1142, and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and the Combined Disclosure Statement and Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

(a)     allow, disallow, determine, subordinate, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest (whether Filed before or after the Effective Date and whether or not Contingent, Disputed or Unliquidated or for contribution, indemnification or reimbursement), including the compromise, settlement and resolution of any request for payment of any Claims or Interests, the resolution of any Objections to the allowance or priority of Claims or Interests and to hear and determine any other issue presented hereby or arising hereunder, including during the pendency of any appeal relating to any Objection to such Claim or Interest to the extent permitted under applicable law;

(b)     grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Combined

Disclosure Statement and Plan, for periods ending on or before the Effective Date;

(c)     hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters, including, but not limited to, all Retained Causes of Action, and consider and act upon the compromise and settlement of any Claim or Interest, or Retained Cause of Action;

(d)     determine and resolve any matters related to the assumption, assumption and assignment or rejection of any Executory Contract to which either of the Debtors is a party or with respect to which the Debtors may be liable, and to hear, determine and, if necessary, liquidate any Claims arising therefrom;

(e)     ensure that all Distributions to Holders of Allowed Claims under the Combined Disclosure Statement and Plan and the performance of the provisions of the Combined Disclosure Statement and Plan are accomplished as provided herein and resolve any issues relating to Distributions to Holders of Allowed Claims pursuant to the provisions of the Combined Disclosure Statement and Plan;

(f)     construe, take any action and issue such orders, prior to and following the Confirmation Date and consistent with Bankruptcy Code section 1142, as may be necessary for the enforcement, implementation, execution and Consummation of the Combined Disclosure Statement and Plan and all contracts, instruments, releases, other agreements or documents created in connection with the Combined Disclosure Statement and Plan, including, without limitation, the Confirmation Order, for the maintenance of the integrity of the Combined Disclosure Statement and Plan in accordance with Bankruptcy Code sections 524 and 1141 following the occurrence of the Effective Date;

(g)     determine and resolve any cases, controversies, suits or disputes that may arise in connection with the Consummation, interpretation, implementation or enforcement of the Combined Disclosure Statement and Plan (and all exhibits and schedules to the Combined Disclosure Statement and Plan) or the Confirmation Order, including the releases and injunction provisions set forth in and contemplated by the Combined Disclosure Statement and Plan or the Confirmation Order, or any entity's rights arising under or obligations incurred in connection therewith;

(h)     modify the Combined Disclosure Statement and Plan or the Confirmation Order before or after the Effective Date, pursuant to Bankruptcy Code section 1127, as well as any contract, instrument, release, or other agreement or document created in connection with the Combined Disclosure Statement and Plan or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Combined Disclosure Statement and Plan, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with the Combined Disclosure Statement and Plan or the Confirmation Order, in such manner as may be

80

necessary or appropriate to consummate the Combined Disclosure Statement and Plan, to the extent authorized by the Bankruptcy Code and the Combined Disclosure Statement and Plan;

(i)     issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with Consummation, implementation or enforcement of the Combined Disclosure Statement and Plan or the Confirmation Order;

(j)     enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(k)     determine any other matters that may arise in connection with or relating to the Combined Disclosure Statement and Plan, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with the Combined Disclosure Statement and Plan or the Confirmation Order;

(l)     determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(m)     hear and determine matters concerning state, local and federal taxes in accordance with Bankruptcy Code sections 346, 505 and 1146;

(n)     enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Chapter 11 Cases;

(o)     determine and resolve controversies related to the Estates, the Debtors, or the Liquidating Trust from and after the Effective Date;

(p)     hear and determine any other matter relating to the Combined Disclosure Statement and Plan; and

(q)     enter a final decree closing the Chapter 11 Cases.

### ARTICLE XVI
### EFFECT OF CONFIRMATION

**16.1     Compromise and Settlement of Claims, Interests and Controversies**. Pursuant to section 1123 of the Bankruptcy Code, the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of any claims or interests held by the Debtors that are settled, compromised, or released in the Combined Disclosure Statement and Plan, as well as a finding by the Bankruptcy Court that such compromise is in the best interests of the Debtors and their Estates and is fair, equitable, and reasonable. In accordance with the provisions hereof, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Liquidating Trust may compromise and settle Claims against

the Liquidating Trust and Causes of Action against other Entities in accordance with this Combined Disclosure Statement and Plan and the Liquidating Trust Agreement.

**16.2    Binding Effect**. Except as otherwise provided in Bankruptcy Code section 1141(d)(3) and subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Combined Disclosure Statement and Plan, the Plan Supplement, and the Confirmation Order shall bind (a) any Holder of a Claim against, or Interest in, the Debtors and such Holder's respective successors and assigns (whether or not the Claim or Interests are Impaired hereunder, whether or not such Holder has voted to accept the Combined Disclosure Statement and Plan, and whether or not such Holder is entitled to a Distribution hereunder), (b) all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described herein, (c) each Entity acquiring property hereunder or under the Confirmation Order, and (d) any and all non-Debtor parties to Executory Contracts with the Debtors. All Claims and debts shall be fixed, adjusted, or compromised, as applicable, pursuant hereto regardless of whether any Holder of a Claim or debt has voted hereon.

## ARTICLE XVII
## MISCELLANEOUS PROVISIONS

**17.1    Modification of the Combined Disclosure Statement and Plan**. The Plan Proponents may alter, amend, or modify the Combined Disclosure Statement and Plan or any exhibits or schedules hereto under Bankruptcy Code section 1127(a) at any time prior to the Confirmation Date, and under Bankruptcy Code section 1127(b) at any time following the Confirmation Date but prior to the substantial Consummation of the Combined Disclosure Statement and Plan, *provided, however,* that any such alteration, amendment or modification does not materially and adversely affect the treatment of Holders of Claims or Interests under the Combined Disclosure Statement and Plan. Any Holder of a Claim that has accepted the Combined Disclosure Statement and Plan shall be deemed to have accepted the Combined Disclosure Statement and Plan, as altered, amended, or modified, if the proposed alteration, amendment, or modification does not materially and adversely change the treatment of the Claim of such Holder.

**17.2    Revocation, Withdrawal, or Non-Confirmation of the Combined Disclosure Statement and Plan**. The Plan Proponents reserve the right to revoke or withdraw the Combined Disclosure Statement and Plan prior to the Confirmation Hearing. If the Combined Disclosure Statement and Plan is revoked or withdrawn prior to the Confirmation Hearing, or if the Combined Disclosure Statement and Plan is not confirmed by the Bankruptcy Court, then:

(a)    the Combined Disclosure Statement and Plan shall be null and void in all respects, and

(b)    nothing contained in the Combined Disclosure Statement and Plan shall (i) constitute a waiver or release of any Claims by or against, or any Interests in, the Debtors or any other Entity, (ii) prejudice in any manner the rights of the Debtors or any other Entity, or (iii) constitute an admission of any sort by the Debtors or any other Entity.

**17.3   Subordination Rights**. The classification and manner of satisfying all Claims and the respective Distributions and treatments hereunder take into account and/or conform to the relative priority and rights of the Claims in each Class in connection with the contractual, legal and equitable subordination rights relating thereto, whether arising under contract, general principles of equitable subordination, Bankruptcy Code section 510(b) or otherwise. All subordination rights that a Holder of a Claim may have with respect to any Distribution to be made under the Combined Disclosure Statement and Plan shall be implemented through the Combined Disclosure Statement and Plan, and all actions by such Holder of a Claim related to the enforcement of such subordination rights shall be enjoined permanently. The provisions of any contractual or structural subordination of Claims shall remain enforceable by the Plan Administrator on behalf of the Estates after the occurrence of the Effective Date. Without limitation hereunder, the Plan Administrator, on behalf of the Estates, may likewise enforce any right of the Debtors or the Estates to equitably or otherwise subordinate Claims under Bankruptcy Code section 510, which rights are deemed transferred to, remain and are preserved in the Liquidating Trust, except as otherwise expressly set forth herein or as expressly provided in a Final Order of the Bankruptcy Court in the Chapter 11 Cases.

**17.4   Severability of Plan Provisions**. If, prior to Confirmation, any term or provision of the Combined Disclosure Statement and Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Plan Proponents, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Combined Disclosure Statement and Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Combined Disclosure Statement and Plan, as it may be altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**17.5   Payment of Statutory Fees; Filing of Quarterly Reports**. Notwithstanding any other provision of this Combined Disclosure Statement and Plan to the contrary, all U.S. Trustee Fees then due and owing, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid in full in Cash by the Debtors on or before the Effective Date. After the Effective Date, all U.S. Trustee Fees shall be paid in full in Cash when due and payable. The Debtors shall file all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11-MOR. After the Effective Date, the Liquidating Trust and each of the Debtors shall file with the Bankruptcy Court separate UST Form 11-PCR reports when they become due. Notwithstanding the substantive consolidation of the Debtors called for in the Combined Disclosure Statement and Plan, each and every one of the Debtors and the Liquidating Trust shall remain obligated to pay U.S. Trustee Fees to the extent not already paid until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code. Notwithstanding anything to the contrary in the Combined Disclosure Statement and Plan, the U.S. Trustee shall not be required to file any proofs of Claim with

respect to U.S. Trustee Fees. The U.S. Trustee shall not be treated as providing any release under the Combined Disclosure Statement and Plan.

**17.6    Dissolution of the Committee**. The Committee shall dissolve on the Effective Date and the members of such Committee shall be released and discharged from all further rights and duties arising from or related to the Chapter 11 Cases, except with respect to, and to the extent of any applications for Professional Fee Claims or expense reimbursements for members of such Committee. The Committee and its retained Professionals may also participate in any appeal pending as of the Effective Date or filed thereafter, the outcome of which could affect the treatment of prepetition unsecured creditors (including Holders of Allowed Priority Claims and 503(b)(9) Claims), including, but not limited to, any cases, controversies, suits or disputes arising in connection with the Consummation, interpretation, implementation or enforcement of the Combined Disclosure Statement and Plan or the Confirmation Order that could affect the treatment of prepetition unsecured creditors. The Professionals retained by the Committee shall not be entitled to assert any Administrative Claims nor shall they have an Allowed Administrative Claims for any services rendered or expenses incurred after the Effective Date on behalf of the Committee except in respect of the preparation and prosecution of (but not in defense of) any Filed fee application and participation in any appeals that do not involve the defense of Filed fee applications.

**17.7    Exemption from Section 1146**. Pursuant to Bankruptcy Code section 1146(a), under the Combined Disclosure Statement and Plan, (i) the issuance, distribution, transfer or exchange of any debt, equity security or other interest in the Debtors; or (ii) the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Combined Disclosure Statement and Plan, including any deeds, bills of sale, assignments or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Combined Disclosure Statement and Plan, shall not be taxed under any law imposing a stamp tax or similar tax. To the maximum extent permitted pursuant to Bankruptcy Code section 1146(a), any transfers of property pursuant hereto (including to the Liquidating Trust and by the Plan Administrator pursuant to the Liquidating Trust Agreement) shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, sales or use tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfers of property without the payment of any such tax, recordation fee, or governmental assessment. All subsequent issuances, transfers or exchanges of securities, or the subsequent making or delivery of any instrument of transfer by the Debtors in the Chapter 11 Cases or by the Plan Administrator shall be deemed to be or have been done in furtherance of the Combined Disclosure Statement and Plan.

**17.8    Closing of Chapter 11 Cases; Caption Change**. As of the Effective Date, the Debtors or the Plan Administrator shall file a motion under Local Rule 9004-1(c) with the Bankruptcy Court seeking to change the caption of the Chapter 11 Cases, and may file a motion under Local Rule 3022-1(a) seeking to close one or more of the Chapter 11 Cases. Nothing in the Combined Disclosure Statement and Plan shall authorize the closing of any case *nunc pro tunc* to a date that

precedes the date any such order is entered. Upon the Filing of a motion to close the Chapter 11 Cases, the Plan Administrator shall file a final report pursuant to Local Rule 3022-1(c).

**17.9    Filing of Additional Documents**. On or before the Effective Date of the Combined Disclosure Statement and Plan, the Debtors may issue, execute, deliver, and File with the Bankruptcy Court or record any agreements and other documents, and take any action as may be necessary or appropriate to effectuate, consummate and further evidence the terms and conditions of the Combined Disclosure Statement and Plan.

**17.10   Insurance**. Nothing in this Combined Disclosure Statement and Plan, the Confirmation Order, or the Liquidating Trust Agreement alters the rights and obligations of the Debtors (and their Estates) and the Insurers (and third-party claims administrators) under any Insurance Contracts or modifies the coverage or benefits provided thereunder or the terms and conditions thereof or diminishes or impairs the enforceability of the Insurance Contracts. The Debtors are deemed to have assumed all of the Insurance Contracts, and all of the Debtors' and/or Estates' benefits, rights, interests and proceeds under any Insurance Contract to which the Debtors and/or the Estates may be insureds or beneficiaries shall vest with the Liquidating Trust for the benefit of the Beneficiaries and all of the beneficiaries of such policies. Further, nothing in this Combined Disclosure Statement and Plan, the Confirmation Order, or the Liquidating Trust Agreement (1) shall be construed to modify the coverage or benefits provided to any insured individual under any Insurance Contracts or the terms and conditions thereof (including any tail policy with respect thereto), or (2) shall be construed to limit, prevent or hinder any insured individual under any Insurance Contract from seeking access to and securing coverage to the fullest extent available under any Insurance Contract or any policy proceeds that would be payable to or payable on behalf of any insured individual thereunder, including, but not limited to so called "Side A" or any similarly-designated coverage (including any tail policy with respect to the foregoing), or which would not be property of a Debtor's Estate.

**17.11   Successors and Assigns**. The rights, benefits and obligations of any Entity named or referred to in the Combined Disclosure Statement and Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Entity.

**17.12   Governing Law**. Except to the extent that the Bankruptcy Code or Bankruptcy Rules or other federal laws is applicable, and subject to the provisions of any contract, instrument, release, or other agreement or document entered into in connection with the Combined Disclosure Statement and Plan, the construction, implementation and enforcement of the Combined Disclosure Statement and Plan and all rights and obligations arising under the Combined Disclosure Statement and Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to conflicts of law principles which would apply the law of a jurisdiction other than the State of Delaware or the United States of America.

**17.13   Exhibits and Schedules**. All exhibits and schedules annexed hereto, and all documents submitted in support hereof, are incorporated into and are a part of the Combined Disclosure Statement and Plan as if set forth in full herein. Holders of Claims or Interests may obtain copies of the Filed exhibits and schedules upon written request to the Debtors, from the Notice, Claims and Balloting Agent's website at https://cases.stretto.com/PearTherapetuics or by downloading

such exhibits and documents from the Bankruptcy Court's website at http://www.deb.uscourts.gov. Upon their Filing, the exhibits and schedules may be inspected in the Office of the Clerk of the Bankruptcy Court or its designee during normal business hours. The documents contained in the exhibits and schedules shall be approved by the Bankruptcy Court pursuant to the Confirmation Order. To the extent any exhibit or schedule annexed hereto is inconsistent with the Combined Disclosure Statement and Plan, the contents of the Combined Disclosure Statement and Plan shall control.

**17.14  Computation of Time**. In computing any period of time prescribed or allowed by the Combined Disclosure Statement and Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

**17.15  Reservation of Rights**. The Filing of the Combined Disclosure Statement and Plan, any statement or provision contained in the Combined Disclosure Statement and Plan, or the taking of any action by the Debtors with respect to the Combined Disclosure Statement and Plan shall not be, and shall not be deemed to be, an admission or waiver of any rights of the Debtors with respect to the Holders of Claims or Interests.

*[Remainder of Page Intentionally Left Blank]*

Dated:  March 4, 2024

**PEAR THERAPEUTICS, INC.**
**PEAR THERAPEUTICS (US), INC.**


*/s/      Matthew Foster*
By: Matthew Foster
Title: Chief Restructuring Officer



**THE OFFICIAL COMMITTEE OF**
**UNSECURED CREDITORS**


*/s/      Ryan Towsley*
By: Ryan Towsley, as representative of Truepill Inc., solely in its capacity as Committee Chairperson
Title: Chairperson

FH11510059.14

**EXHIBIT A**

**Chapter 7 Liquidation Analysis and Notes**

**Pear Therapeutics**
**Liquidation Analysis**

| Assets | Notes | Proposed Plan of Liquidation | | | Chapter 7 Liquidation | | |
|---|---|---|---|---|---|---|---|
| Estimated Unrestricted Cash as of 3/31/24 | | | 7,126,821 | | | | $7,126,821 |
| Additional Sources | | | - | | | | - |
| **Total Estimated Proceeds Available** | | | **7,126,821** | | | | **$7,126,821** |
| **Reserves Budgeted for Administration expenses** | | | | | | | |
| Estimated Operating Liabilities | | | - | | | | - |
| Estimated UST fees [1] | | | (53,889) | | | | - |
| **Total Estimated For Distribution** | | | **7,072,932** | | | | **$7,126,821** |
| **Net Estimated Proceeds Available After Distribution** | | | **$7,072,932** | | | | **$7,126,821** |
| **Administrative Fees** | | | | | | | |
| Chapter 7 Professional | | 100% | - | - | 100% | 200,000 | (200,000) |
| Chapter 7 Trustee Commissions | | 100% | - | - | 100% | 249,439 | (249,439) |
| Chapter 11 Winddown Budget [2] | | 100% | 250,000 | (250,000) | 100% | - | - |
| Miscellaneous Reserve | | 100% | 200,000 | (200,000) | 100% | 200,000 | (200,000) |
| Estimated Operating Liabilities | | 100% | - | - | 100% | - | - |
| Estimated UST fees [3] | | 100% | 56,583 | (56,583) | 100% | 110,472 | (110,472) |
| **Net Estimated Proceeds Available After Distribution** | | | | **6,566,349** | | | **6,366,910** |
| **Administrative  Claims** | | | | | | | |
| Administrative  Claims | | 100% | 207,006 | (207,006) | 100% | 207,006 | (207,006) |
| **Net Estimated Proceeds Available After Distribution** | | | | **6,359,343** | | | **6,159,904** |
| **Priority & Secured Claims** | | | | | | | |
| Priority Tax Claims | | 100% | - | - | 100% | - | - |
| Priority Non- Tax Claims (Class 1) | | 100% | 117,669 | (117,669) | 100% | 117,669 | (117,669) |
| Other Secured Claims (Class 2) | | 100% | - | - | 100% | - | - |
| WARN Act Settlement Claims (Class 3)[4] | | 100% | 990,000 | (990,000) | 100% | 3,593,959 | (3,593,959) |
| **Net Estimated Proceeds Available After Distribution** | | | | **5,251,674** | | | **2,448,277** |
| **Unsecured Claims & Equity Interest** | | | | | | | |
| General Unsecured Claims (Class 4) | | 21% | 24,790,666 | (5,251,674) | 10% | 24,790,666 | (2,448,277) |
| Subordinated Claims (Class 5) | | 100% | - | - | 100% | - | - |
| Interests (Class 6) | | 100% | - | - | | - | - |
| **Net Estimated Proceeds Available After Distribution** | | | | **-** | | | **-** |

1] Estimated remaining Q1 payments to UST.

2] Chapter 11 Professionals estimated for final wind down of the Estate.

3] Estimated UST fees for the remainder of the case.

4] WARN Act Settlement is contingent on a plan being confirmed. As a result, we have assumed a claim of $3.6MM under a Chapter 7 scenario.