## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| PEAR THERAPEUTICS, INC., *et al.*,[1] | Case No. 23-10429 (TMH) (Jointly Administered) |
| Debtors. | **Hearing Date: May 7, 2024 at 2:30 pm (ET)** <br> **Obj. Deadline: April 29, 2024 at 4:00 pm (ET)** |

## PLAN PROPONENTS' MEMORANDUM OF LAW IN SUPPORT OF ENTRY OF AN ORDER CONFIRMING THE COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN OF LIQUIDATION OF PEAR THERAPEUTICS, INC. AND PEAR THERAPEUTICS (US), INC.

Alison D. Bauer (admitted *pro hac vice*)
Jiun-Wen Teoh (admitted *pro hac vice*)
FOLEY HOAG LLP
1301 Avenue of the Americas, 25th Floor
New York, New York 10019
Telephone: (212) 812-0400
Email: abauer@foleyhoag.com
          jteoh@ foleyhoag.com

      -and-
Christian A. Garcia (admitted *pro hac vice*)
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, Massachusetts 02210
Telephone: (617) 832-1000
Email: cgarcia@foleyhoag.com

**COUNSEL FOR THE DEBTORS AND
DEBTORS IN POSSESSION**

Katharina Earle (No. 6348)
**GIBBONS P.C.**
300 Delaware Avenue, Suite 1015
Wilmington, Delaware 19801
Telephone: (302) 518-6300
Email:kearle@gibbons.com

          -and-

Robert K. Malone (admitted *pro hac vice*)
Kyle P. McEvilly (admitted *pro hac vice*)
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102
Telephone: (973) 596-4500
Email:rmalone@gibbonslaw.com
          kmcevilly@gibbonslaw.com

---

[1]The Debtors in these Chapter 11 Cases (as defined below), along with the last four digits of each Debtors' federal tax identification number are: Pear Therapeutics, Inc. (3092) and Pear Therapeutics (US), Inc. (7074).  The Debtors' corporate mailing address is c/o Sonoran Capital Advisors, 1733 N Greenfield Rd Ste 104, Mesa, AZ 85205.

Mark T. Power (admitted *pro hac vice*)
Joseph Orbach (admitted *pro hac vice*)
THOMPSON COBURN HAHN & HESSEN
LLP
488 Madison Avenue
New York, New York 10022
Telephone: (212) 478-7200
Facsimile: (212) 478-7400
E-mail: mpower@thompsoncoburn.com
         jorbach@thompsoncoburn.com

Bryan J. Hall (No. 6285)
CHIPMAN BROWN CICERO & COLE,
LLP
Hercules Plaza
1313 N. Market Street, Suite 5400
Wilmington, DE 19801
Telephone: (302) 434-4405
Facsimile: (302) 295-0199
Email: Hall@ChipmanBrown.com

**COUNSEL TO THE OFFICIAL
COMMITTEE OF UNSECURED
CREDITORS**

## <u>TABLE OF CONTENTS</u>

Table of Authorities ............................................................................................................... iii

I.      PRELIMINARY STATEMENT ............................................................................ 1

II.     JURISDICTION AND VENUE ............................................................................ 3

III.    BACKGROUND ................................................................................................... 3

        A.      The Debtors and their Business ................................................................ 4

        B.      The Chapter 11 Cases, the Sales, and the Debtors' Sales of their De Minimis
                Assets ...................................................................................................... 4

        C.      The Perceptive Tax Claim and Motion .................................................... 7

        D.      The WARN Act Litigation and Global Settlement .................................. 8

        E.      The Combined Disclosure Statement and Plan ........................................ 9

        F.      Solicitation and Voting Results ............................................................... 10

        G.      Confirmation Objections .......................................................................... 11

IV.     ARGUMENT ......................................................................................................... 11

        A.      The Plan Satisfies Each Requirement for Confirmation ......................... 11

                1.      Section 1129(a)(1): The Plan Complies with the Applicable
                        Provisions of the Bankruptcy Code ............................................. 12

                        a.      The Plan Satisfies the Classification Requirements of
                                Section 1122 of the Bankruptcy Code ............................ 13

                        b.      The Plan Satisfies the Mandatory Requirements of Section
                                1123(a) of the Bankruptcy Code ..................................... 13

                        c.      The Plan Satisfies the Mandatory Requirements of Section
                                1123(b) of the Bankruptcy Code ..................................... 17

                                (i)     The Plan Satisfies Section 1123(b)(1) ............... 17

                                (ii)    The Plan Satisfies Section 1123(b)(2) ............... 17

                                (iii)   The Plan Satisfies Section 1123(b)(3) ............... 18

                                (iv)    The Debtor Release Under the Plan Is Appropriate
                                        Under Section 1123(b)(3) and (6) ...................... 18

                                (v)     The Consensual Third Party Release Under the Plan
                                        Is Appropriate Under Section 1123(b)(6) .......... 22

                                (vi)    The Exculpation Under the Plan is Appropriate
                                        Under Section 1123(b)(6) .................................. 24

                                (vii)   The Injunction Under the Plan is Appropriate and
                                        Should be Approved .......................................... 26

                2.      Section 1129(a)(2): the Plan Proponents have Complied with the
                        Applicable Provisions of the Bankruptcy Code ......................... 26

| | | |
|---|---|---|
| | a. | The Plan Proponents Have Complied with Section 1125, and the Disclosure Statement Should be Approved on a Final Basis ...................................................................26 |
| | b. | Solicitation Complies with Section 1126 ......................................28 |
| | c. | The Plan Will Comply With Section 1127 ....................................28 |
| 3. | | Section 1129(a)(3): The Plan has Been Proposed in Good Faith and Not by Any Means Forbidden by Law ......................................29 |
| 4. | | Section 1129(a)(4): The Plan Provides for Court Approval of Certain Administrative Payments ..................................................29 |
| 5. | | Section 1129(a)(5): The Plan Discloses Post-Effective Date Management .....................................................................................30 |
| 6. | | Section 1129(a)(6): The Plan Does Not Require Governmental Approval of Rate Changes ..........................................................31 |
| 7. | | Section 1129(a)(7): The Plan is in the Best Interests of Creditors ............31 |
| 8. | | Section 1129(a)(8): Acceptance by Impaired Classes ..............................32 |
| 9. | | Section 1129(a)(9): The Plan Complies with Statutorily Mandated Treatment of Administrative Claims and Priority Tax Claims .................32 |
| 10. | | Section 1129(a)(10): The Plan has been Accepted by At Least One Impaired Class of Claims ............................................................33 |
| 11. | | Section 1129(a)(11): The Plan is Feasible .................................33 |
| 12. | | Section 1129(a)(12): The Plan Provides for Payment of All Fees Under 28 U.S.C. § 1930 ..............................................................34 |
| 13. | | Sections 1129(a)(13)-(16) Are Inapplicable ...............................................35 |
| 14. | | Section 1129(b): The Plan Satisfies the "Cramdown" Requirements ....................................................................................35 |
| 15. | | Section 1129(c): Only One Plan ................................................................36 |
| 16. | | Section 1129(d): The Principal Purpose of the Plan Is Not Avoidance of Taxes or Section 5 of the Securities Act ...........................37 |
| V. | | CAUSE EXISTS TO WAIVE A STAY OF THE CONFIRMATION ORDER ...............37 |
| VI. | | CONCLUSION ...........................................................................................38 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Achaogen, Inc.*,
No. 19-10844 (BLS) (Bankr. D. Del. May 29, 2020) ..............................................37

*In re Akorn, Inc.*,
No. 20-11177 (KBO) (Bankr. D. Del. Sep. 9, 2020) ..............................................37

*In re Aleris International, Inc.*,
Case No. 09-10478 (BLS) (Bankr. D. Del. May 13, 2010) .....................................15

*In re Armstrong World Indus., Inc.*,
348 B.R. 111 (D. Del. 2006) ............................................................................11, 33

*Bank of Am. Nat'l Trust and Sav. Ass'n v. 203 N. LaSalle St. P'ship*,
526 U.S. 434 (1999) ..............................................................................................31

*In re Chapel Gate Apartments, Ltd.*,
64 B.R. 569 (Bankr. N.D. Tex. 1986) ....................................................................29

*In re Coram Healthcare Corp.*,
315 B.R. 321 (Bankr. D. Del. 2004) ................................................................20, 21

*In re Cred Inc., et al.*,
Case No. 20-12836 (JTD) (Bankr. D. Del. Mar. 11, 2021) ...................................24

*In re Exide Techs.*,
303 B.R. 48 (Bankr. D. Del. 2003) ........................................................................20

*In re EYP Group Holdings, Inc.*,
Case No. 22-10367 (MFW) (Bankr. D. Del. Nov. 1, 2022) ..................................15

*In re Future Energy Corp.*,
83 B.R. 470 (Bankr. S.D. Ohio 1988) ...................................................................29

*In re Genesis Health Ventures, Inc.*,
266 B.R. 591 (Bankr. D. Del. 2001) ......................................................................11

*Gillman v. Cont'l Airlines (In re Cont'l Airlines Inc.)*,
203 F.3d 203 (3d Cir. 2000) ..................................................................................23

*In re Indianapolis Downs, LLC*,
486 B.R. 286 (Bankr. D. Del. 2013) .................................................19, 20, 23, 25

*In re Insys Therapeutics, Inc.*,
   Case No. 19-11292 (KG) (Bankr. D. Del. Jan. 16, 2020).........................................23

*Kane v. Johns-Manville Corp.*,
   843 F.2d 636 (2d Cir. 1988)......................................................................................33

*In re Keystone Tube Co., LLC*,
   Case No. 17-11330 (LSS) (Bankr. D. Del. Aug. 2, 2017) .......................................15

*Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*,
   337 F.3d 314 (3d Cir. 2003)......................................................................................27

*In re Lason*,
   300 B.R. 227 (Bankr. D. Del. 2003) .........................................................................31

*Momentum Mfg. Corp. v. Emp. Creditors Comm. (In re Momentum Mfg. Corp.)*,
   25 F.3d 1132 (2d Cir. 1994)......................................................................................26

*In re NII Holdings, Inc.*,
   288 B.R. 356 (Bankr. D. Del. 2002) .........................................................................33

*In re Nutritional Sourcing Corp.*,
   398 B.R. 816 (Bankr. D. Del. 2008) .........................................................................12

*In re Old Fenm, Inc.*,
   Case No. 13-12569 (KJC) (Bankr. D. Del. July 2, 2014) ........................................15

*Pizza of Haw., Inc. v. Shakey's, Inc. (In re Pizza of Haw., Inc.)*,
   761 F.2d 1374 (9th Cir. 1985) ..................................................................................34

*In re PWS Holding Corp.*,
   228 F.3d 224 (3d Cir. 2000)................................................................................24, 25

*In re The Leslie Fay Cos.*,
   207 B.R. 764 (Bankr. S.D.N.Y. 1997) ......................................................................33

*U.S. Bank Nat'l Ass'n v. Wilmington Trust Co. (In re Spansion, Inc.)*,
   426 B.R. 114 (Bankr. D. Del. 2010) ....................................................................19, 23

*In re Valeritas Holdings, Inc.*,
   Case No. 20-10290 (LSS) (Bankr. D. Del. June 8, 2020).....................................15, 37

*In re Wash. Mut., Inc.*,
   442 B.R. 314 (Bankr. D. Del. 2011) ....................................................................20, 23

*In re Woodmere Investors Ltd. P'ship*,
   178 B.R. 346 (Bankr. S.D.N.Y. 1995) ......................................................................33

*In re Zenith Elecs. Corp.*,
   241 B.R. 92 (Bankr. D. Del. 1999) ...........................................................................19, 23, 35

**Statutes**

11 U.S.C. § 365....................................................................................................................17, 37

11 U.S.C. § 503............................................................................................................................32

11 U.S.C. § 1107............................................................................................................................3

11 U.S.C. § 1108............................................................................................................................3

11 U.S.C. § 1114..........................................................................................................................35

11 U.S.C. § 1122.................................................................................................................... 12-13

11 U.S.C. § 1123.................................................................................................................. *passim*

11 U.S.C. § 1125.....................................................................................................1-3, 26-28

11 U.S.C. § 1126.......................................................................................................1, 26, 28

11 U.S.C. § 1127.....................................................................................................................26, 28

11 U.S.C. § 1129.................................................................................................................. *passim*

11 U.S.C. § 1141..........................................................................................................................14

11 U.S.C. § 1145............................................................................................................................1

11 U.S.C. § 1146............................................................................................................................1

28 U.S.C. § 157..............................................................................................................................3

28 U.S.C. § 1334............................................................................................................................3

28 U.S.C. § 1408............................................................................................................................3

28 U.S.C. § 1409............................................................................................................................3

28 U.S.C. § 1746............................................................................................................................4

28 U.S.C. § 1930..........................................................................................................................34

CAL-WARN Act, Cal. Lab. Code §§ 1401 *et seq.*...........................................................8

Securities Act Section 5, 15 U.S.C. § 77e ...............................................................................37

WARN Act, 29 U.S.C. §§ 2100 *et seq.* ....................................................................... *passim*

**Other Authorities**

Bankruptcy Rule 3020(b)(2) ........................................................................................................29

Bankruptcy Rule 3020(e) .....................................................................................................37, 38

Bankruptcy Rule 6004(h).............................................................................................................37

Bankruptcy Rule 6006(d).............................................................................................................37

The Plan Proponents (defined below) submit this memorandum (the "Memorandum") in support of final approval of the Disclosure Statement (defined below) and confirmation of the Plan (defined below) that are embodied in the *Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Pear Therapeutics, Inc. and Pear Therapeutics (US), Inc.* [Docket No. 658] (the "Combined Disclosure Statement and Plan"),[2] pursuant to sections 1125, 1126, 1129, 1145, and 1146 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"). The facts and circumstances supporting final approval of the Disclosure Statement and confirmation of the Plan are set forth in, among other things, the *Declaration of Matthew Foster in Support of Confirmation of the Combined Disclosure Statement and Chapter 11 Plan of Liquidation* (the "Foster Declaration") and the *Declaration of Angela Tsai in Support of Confirmation of the Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Pear Therapeutics, Inc. and Pear Therapeutics (US), Inc.* (the "Voting Declaration"), which are being filed contemporaneously herewith. In support of final approval of the Disclosure Statement and confirmation of the Plan, the Plan Proponents respectfully represent as follows:

## I.    **PRELIMINARY STATEMENT**

1.    Pear Therapeutics, Inc. ("Holdings") and Pear Therapeutics (US), Inc. ("Pear US"), the debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), commenced the Chapter 11 Cases on April 7, 2023 with the goals of preserving their assets and conducting a sale process or other value-maximizing

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Combined Disclosure Statement and Plan or, if not defined therein, the Solicitation Procedures Order (defined below). As used herein, the term "Disclosure Statement" means the disclosure statement that is embodied in the Combined Disclosure Statement and Plan, and the term "Plan" means the plan of liquidation that is embodied in the Combined Disclosure Statement and Plan and as modified, amended, or supplemented from time to time.

transaction, all in an effort to achieve a result in the best interests of the Debtors' creditors and stakeholders.

2.      Following the Sales (defined below), the Plan Proponents (defined below) reached a Global Settlement, which serves as the foundation of, and is embodied in, the Combined Disclosure Statement and Plan.  Under the Plan, the Debtors' remaining assets will be transferred to a Liquidating Trust to be managed by a Plan Administrator and supervised by the Oversight Board (defined below), which is comprised of three members.  The Liquidating Trust will administer the Debtors' remaining assets for the benefit of Holders of Allowed General Unsecured Claims in Class 4.

3.      On March 22, 2024, the Court approved the Combined Disclosure Statement and Plan on an interim basis, as containing adequate information under Bankruptcy Code section 1125, and as set forth herein, the Plan Proponents now seek final approval of the adequacy of the disclosures contained therein and confirmation of the Plan.

4.      The Plan has received the support required for confirmation.  As set forth in the Voting Declaration, the one class entitled to vote on the Plan – Class 4 (General Unsecured Claims) – have voted to accept the Plan.

5.      The Foster Declaration, along with First Day Declaration (defined below), the Voting Declaration, and the Combined Disclosure Statement and Plan, detail the facts supporting confirmation of the Plan, including, among other things, (i) the Debtors' corporate structure, assets, and liabilities; (ii) the events leading to the Chapter 11 Cases; (iii) the actions taken during the Chapter 11 Cases, including the sale of substantially all of the Debtors' assets; (iv) the classification of Claims and Interests (defined below), their treatment under the Plan, and the

solicitation of votes and the results thereof; and (v) the proposed formation and operation of the Liquidating Trust.

6.      The Debtors and the Committee (defined below) (collectively, the "Plan Proponents") submit this Memorandum, the Foster Declaration, and the Voting Declaration to establish that the Plan is in the best interests of the Debtors' estate and creditors, and meets the requirements for interim and final approval of the Disclosure Statement under section 1125 of the Bankruptcy Code and confirmation of the Plan under section 1129 of the Bankruptcy Code.  For the reasons detailed herein, the Plan Proponents respectfully submit that the Court should approve the Disclosure Statement on a final basis and confirm the Plan.

## II.      JURISDICTION AND VENUE

7.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(L).  Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## III.      BACKGROUND

8.      On April 7, 2023 (the "Petition Date"), the Debtors commenced the Chapter 11 Cases by filing voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.  The Debtors continue to operate and manage their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

9.      On April 19, 2023, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee").  [Docket No. 70].  No trustee or examiner has been appointed in the Chapter 11 Cases.

A.      **The Debtors and their Business**

10.     Prior to the Petition Date, the Debtors comprised a commercial-stage healthcare company pioneering a new class of software-based medicines, sometimes referred to as Prescription Digital Therapeutics ("PDTs"), which use software to treat diseases directly.

11.     A detailed description of the Debtors, including their former business operations, their corporate and capital structure, and the events leading to the commencement of the Chapter 11 Cases, is set forth in greater detail in the *Declaration of Christopher Guiffre Pursuant to 28 U.S.C. § 1746 in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration) [Docket No. 4], which is incorporated by reference herein.

B.      **The Chapter 11 Cases, the Sales, and the Debtors' Sales of their De Minimis Assets**

12.     The Debtors commenced the Chapter 11 Cases in order to preserve the Debtors' assets and conduct a sale process or other transaction, all in an effort to maintain continuity of business operations and maximize value for the benefit of the Debtors' creditors and stakeholders.

13.     On April 7, 2023, the Debtors filed *Debtors' Motion for Entry of (A) an Order (I) Approving Bid Procedures Relating to the Sale of Substantially All of the Debtors' Assets, (II) Approving Stalking Horse Bid Protections; (III) Scheduling a Hearing to Consider the Sale, (IV) Approving the Form and Manner of Notice of Sale by Auction, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, and (VI) Granting Related Relief; and (B) an Order (I) Authorizing the Sale of Certain Assets of the Debtors Outside the Ordinary Course of Business, (II) Authorizing the Sale of Assets Free and Clear of All Liens, Claims, Encumbrances and Interests, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [Docket No. 13] (the "Bidding Procedures Motion").  The Bidding Procedures Motion sought to approve bidding

procedures, approve stalking horse bid protections, authorize the Debtors to designate a stalking horse bidder, schedule an auction, approve assumption and assignment procedures, schedule a sale hearing, and approve the proposed sale and the assumption and assignment of executory contracts and unexpired leases.

14.     The Court entered the *Order (A) Approving Bid Procedures Relating to the Sale of Substantially All of the Debtors' Assets; (B) Approving Stalking Horse Bid Protections; (C) Scheduling a Hearing to Consider the Sale; (D) Approving the Form and Manner of Notice of Sale by Auction; (E) Establishing Notice and Contract Procedures for the Assumption and Assignment of Contracts and Leases; and (F) Granting Related Relief* [Docket No. 116] (the "Bidding Procedures Order") on April 28, 2023.  Pursuant to the Bidding Procedures Order, the Debtors commenced and concluded the Auction for the sale of substantially all of the Debtors' assets on May 18, 2023.  *See* [Docket No. 181].

15.     On May 23, 2023, the Court entered four (4) orders approving the sale of substantially all of the Debtors' assets [Docket Nos. 212-215] (collectively, the "Sale Orders"), pursuant to the terms of each of the Asset Purchase Agreements by and among the Debtors and each of the Purchasers.  The Sales yielded an aggregate purchase price of approximately $6.43 million for substantially all of the Debtors' assets.  The Sales closed in accordance with the terms of the Sale Orders and the Asset Purchase Agreements on or about June 5, 2023, June 16, 2023, and June 21, 2023.  On June 30, 2023, the Debtors filed the *Notice of Assumed and Assigned Contracts Pursuant to Sale Orders* [Docket No. 289], notifying counterparties to contracts or leases that were assumed by and assigned to the Purchasers.

16.     In addition to the Sales, the Debtors sold certain de minimis assets.  On April 14, 2023, the Debtors filed the *Motion of the Debtors For Entry of an Order (I) Authorizing and*

*Approving Procedures for the Sale or Abandonment of De Minimis Assets, and (II) Authorizing the Debtors to Pay Commissions to Third Parties In Connection With Any De Minimis Asset Sale* [Docket No. 62] (the "De Minimis Asset Sale Motion").  The De Minimis Asset Sale Motion sought approval of certain procedures to authorize the Debtors to use, sell, or transfer certain assets outside of the ordinary course of business where in each sale the assets' value did not exceed $50,000 and approval of the transfer of certain assets with little or no use to the Debtors' estates. On May 3, 2023, the Court entered the order approving the relief requested in the De Minimis Asset Sale Motion.  *See* [Docket No. 136].  On May 5, 2023, the Debtors filed the *Notice of De Minimis Asset Sale* [Docket No. 143] disclosing that sixty-five (65) Lenovo Thinkpads were sold to Hummingbird International for the aggregate amount of $6,300.00.

17.    On June 13, 2023 the Debtors' filed the *Debtors' Motion For Entry of an Order (I) Authorizing Private Sale of Certain Electronic Devices Free and Clear of All Liens, Claims, Encumbrances and Other Interests, and (II) Granting Related Relief* [Docket No. 245].  On July 5, 2023, the Court entered the *Order (I) Authorizing Private Sale of Certain Electronic Devices Free and Clear of All Liens, Claims, Encumbrances and Other Interests, and (II) Granting Related Relief* [Docket No. 294] (the "Electronic Devices Sale Order"), which approved the private sale of approximately four hundred (400) Apple devices (the "Apple Devices") to Diamond Assets LLC. Specifically, pursuant to the Electronic Devices Sale Order, the Apple Devices were collected from the Debtors' former employees in two batches.  The first batch consisted of two hundred and twenty-seven (227) Apple Devices that were sold for an aggregate amount of $106,762.65.  The second batch consisted of one hundred and seventy-nine (179) Apple Devices that were sold for a maximum aggregate price of $153,420.00 pursuant to a quote issued by Diamond Assets LLC.

18.     The proceeds of the Sales and the sales of the Debtors' de minimis assets plus the Debtors' cash on hand represent the majority of the Assets being used to fund, and make distributions to creditors pursuant to, the Plan.

19.     For additional information concerning the Sales and the sales of the Debtors' de minimis assets, please refer to Sections 3.3(d) and (e) of the Combined Disclosure Statement and Plan.

### C.     The Perceptive Tax Claim and Motion

20.     On November 30, 2023, the Debtors filed *Debtors' Motion for Entry of an Order Approving Stipulation with Perceptive Credit Holdings III, LP Regarding Tax Refund Check* [Docket No. 486] (the "Refund Motion").  Pursuant to the Refund Motion, the Debtors sought approval of a stipulation through which the Debtors agreed that upon receipt of the Federal Tax Refund, the Debtors would turn over the Federal Tax Refund to Perceptive Credit Holdings III, LP ("Perceptive").  In response to the Refund Motion, on December 14, 2023, the Committee filed the *Objection of the Official Committee of Unsecured Creditors to Debtors' Motion for Entry of an Order Approving Stipulation with Perceptive Credit Holdings III, LP Regarding Tax Refund Check* [Docket No. 511] (the "Committee Objection to Refund Motion").  The Committee argued, *inter alia*, that the Perceptive Settlement Agreement had not been subjected to the Court's scrutiny or challenge by the Committee, that the Federal Tax Refund arose postpetition and thus was not subject to Perceptive's prepetition security interest, and that even if the Federal Tax Refund arose prepetition, any lien on the Federal Tax Refund was avoidable as a preference.

21.     The Debtors, Perceptive, and the Committee engaged in settlement negotiations to resolve the Refund Motion and the Committee Objection to Refund Motion and reached a mutually acceptable form of order resolving the Refund Motion, which was approved by the Court on January 25, 2024 [Docket No. 575] (the "Agreed Tax Refund Order").  Pursuant to the Agreed

Tax Refund Order, the Debtors have transferred the Federal Tax Refund in full satisfaction of the Perceptive Refund Claim.  Additionally, Perceptive agreed to the reduction of its general unsecured claim against each of the Debtors from $10,400,000 to $7,500,000.

> **D.    The WARN Act Litigation and Global Settlement**

22.    On April 10, 2023, Evan Grandfield ("Grandfield") initiated the WARN Act Litigation, bringing two causes of action against Pear US: (i) violation of the WARN Act; and (ii) violation of the CAL-WARN Act.

23.    On October 19, 2023, Pear US, Grandfield, and the Committee attended mediation presided over by Bankruptcy Judge Nelms (Ret.) as mediator to resolve global claims related to the WARN Act Litigation.  During and after the mediation, the Debtors and counsel to Grandfield engaged in extensive negotiations and, with consent of the Committee, achieved a global resolution of their disagreements regarding the validity of the claims asserted in the WARN Act Litigation, the allowance of any Claims thereunder, and the allocation of the proceeds of the Debtors' assets (the "Global Settlement").

24.    On December 1, 2023, the Debtors and Grandfield filed the *Joint Motion for Entry of an Order: (i) Certifying a Class for Settlement Purposes, (ii) Appointing Plaintiff as Class Representative and Plaintiff's Counsel as Class Counsel, (iii) Preliminarily Approving Settlement, (iv) Approving Class Notice, (v) Scheduling Fairness Hearing, (vi) and Granting Related Relief* [Docket No. 488] (the "WARN Act Class Settlement Motion").  Through the WARN Act Class Settlement Motion, the Debtors and Grandfield sought approval of the Global Settlement.  Pursuant to the Global Settlement, the WARN Act Parties shall be granted an aggregate allowed unsecured Section 507(a)(4) class claim in the amount of $990,000, inclusive of a service payment to Grandfield as Class Representative in the amount of $15,000 and fees and expenses of the WARN Act Parties' counsel.  On February 13, 2024, the Court entered the *Order Granting Final*

*Approval of Settlement Agreement, Approving Class Counsel's Fees and Expenses and Granting Related Relief* [Docket No. 599], which granted the WARN Act Class Settlement Motion.

25.     For additional information concerning the Global Settlement and the WARN Act Class Settlement Motion, please refer to Section 3.4 of the Combined Disclosure Statement and Plan.

       **E.**       **The Combined Disclosure Statement and Plan**

26.     On March 4, 2024, the Plan Proponents filed the first iteration of the Combined Disclosure Statement and Plan.  *See* [Docket No. 626].  On March 28, 2024, the Plan Proponents filed a revised Combined Disclosure Statement and Plan correcting typographical errors.  *See* [Docket No. 658].

27.     On March 4, 2024, the Plan Proponents filed the *Motion of the Plan Proponents for Entry of an Order (A) Approving the Combined Disclosure Statement and Plan on an Interim Basis for Solicitation Purposes Only; (B) Establishing the Solicitation and Tabulation Procedures; (C) Approving the Form of Ballots and Solicitation Materials; (D) Establishing the Plan Confirmation Schedule; and (E) Granting Related Relief* [Docket No. 627] (the "Solicitation Procedures Motion").

28.     On March 22, 2024, the Court entered an order [Docket No. 653] (the "Solicitation Procedures Order") granting the Solicitation Procedures Motion.  The Solicitation Procedures Order approved the Disclosure Statement on an interim basis for solicitation purposes only and established Solicitation Procedures and Tabulation Procedures (each as defined in the Solicitation Procedures Order) for the solicitation of votes to accept or reject the Plan.

29.     Pursuant to the Solicitation Procedures Order, the Voting Record Date was March 18, 2024 at 11:59 p.m. (prevailing Eastern time), the Solicitation Date was March 27, 2024, the

Voting Deadline was April 29, 2024 at 5:00 p.m. (prevailing Eastern Time), and the Confirmation

Objection Deadline was April 29, 2024 at 4:00 p.m. (prevailing Eastern Time).

30.     On March 22, 2024, the Debtors filed the solicitation version of the Combined

Disclosure Statement and Plan.  *See* [Docket No. 655].

31.     The Plan provides (a) full recoveries to Holders of Allowed Administrative Claims

(including Professional Fee Claims) and Priority Tax Claims (which are not classified under the

Plan), (b) full recoveries to Holders of Allowed Priority Non-Tax Claims (Class 1), Holders of

Other Secured Claims (Class 2), and Holders of WARN Act Class Settlement Claims (Class 3);

and (c) meaningful recoveries to Holders of Allowed General Unsecured Claims (Class 4).

Holders of Subordinated Claims (Class 5) and Holders of Interests (Class 6) are not receiving or

retaining any property under the Plan.

**F.     Solicitation and Voting Results**

32.     On March 27, 2024, in accordance with the Solicitation Procedures Order, the

Voting Agent distributed the Ballots and Solicitation Packages to all Holders of Claims in Class 4

– which is the only Class entitled to vote under the Plan – as evidenced by the *Affidavit of Service.*

*See* [Docket No. 661].

33.     In addition, in accordance with the Solicitation Procedures Order, on April 11,

2024, the Voting Agent distributed (a) the Confirmation Hearing Notice to all Holders of Claims

or Interests and all other parties on the Debtors' creditor matrix; and (b) the Deemed-to-Accept

Notice or the Deemed-to-Reject Notice, as applicable, on the Non-Voting Classes, as evidenced

by the *Affidavit of Service.  See* [Docket No. 688].

34.     As described above, the Voting Deadline was April 29, 2024 at 4:00 p.m.

(prevailing Eastern Time).

35.     The voting results are compiled and reported in the Voting Declaration, which attaches a report regarding the tabulation of Ballots received to accept or reject the Plan (the "Voting Report"), and is incorporated herein by reference.  The voting results, as reflected in the Voting Report, are as follows:

Total Ballots Received

| Total Ballots Received Class 4 – General Unsecured Claims | | | | | |
|---|---|---|---|---|---|
| Accept | | | Reject | | |
| Number | Amount | % Accepted | Number | Amount | % Rejected |
| 48 | $13,526,001.57 | 94.12% | 3 | $1,901,549.20 | 5.88% |

36.     Class 4 (General Unsecured Claims) is the only Class entitled to vote on the Plan. As set forth above and in the Voting Report, Class 4 voted to approve the Combined Disclosure Statement and Plan.

**G.     Confirmation Objections.**

37.     The deadline to file objections to final approval of the Disclosure Statement and/or confirmation of the Plan (*i.e.*, the Confirmation Objection Deadline) was April 29, 2024 at 4:00 p.m. (prevailing Eastern Time).  No objections were filed by the Confirmation Objection Deadline or thereafter.

38.     Prior to the Confirmation Objection Deadline, the Plan Proponents received informal comments to the Confirmation Order from the U.S. Attorney's Office.  The informal comments have been incorporated into the proposed Confirmation Order.

## IV.     ARGUMENT

**A.     The Plan Satisfies Each Requirement for Confirmation**

39.     To confirm the Plan, the Court must find that the Plan Proponents have satisfied the applicable provisions of section 1129 of the Bankruptcy Code by a preponderance of the

evidence. *See In re Armstrong World Indus., Inc.*, 348 B.R. 111, 120 (D. Del. 2006); *In re Genesis Health Ventures, Inc.*, 266 B.R. 591, 616 n.23 (Bankr. D. Del. 2001). The Plan satisfies the Bankruptcy Code requirements for confirmation, particularly those found in each of sections 1122, 1123, and 1129 of the Bankruptcy Code. Therefore, the Court should confirm the Plan.

40.     Through the record in the Chapter 11 Cases, including the Foster Declaration and the Voting Declaration, testimonial evidence that may be adduced at or before the Confirmation Hearing (if necessary), arguments of counsel at the Confirmation Hearing (if necessary), and the First Day Declaration, the Plan Proponents will have demonstrated, by a preponderance of the evidence, that all applicable subsections of section 1129 of the Bankruptcy Code have been satisfied with respect to the Plan.

> **1.**      ***Section 1129(a)(1): The Plan Complies with the Applicable Provisions of the Bankruptcy Code***

41.     Section 1129(a)(1) of the Bankruptcy Code requires that a plan comply with the applicable provisions of the Bankruptcy Code. A principal objective of section 1129(a)(1) is to ensure compliance with the Bankruptcy Code's requirements regarding classification of claims and interests and the contents of a plan, as set forth in sections 1122 and 1123 of the Bankruptcy Code. *See In re Nutritional Sourcing Corp.*, 398 B.R. 816, 824 (Bankr. D. Del. 2008) (suggesting that Congress intended that the phrase "applicable provisions of this title" requires that a "plan comply with the applicable provisions of Chapter 11, such as Section 1122 and 1123 . . . .") (citations omitted). As explained below, the Plan complies with sections 1122 and 1123 in all respects.

12

        a.       *The Plan Satisfies the Classification Requirements of Section 1122*
                *of the Bankruptcy Code*

42.      Pursuant to section 1122(a), claims or interests classified together must be substantially similar to each other.  The Plan complies with section 1122(a), as each Class contains substantially similar Claims.

43.      The Plan Proponents exercised their reasonable business judgment in creating the classification scheme contained in the Plan.  The classification under the Plan is based on the differing nature and priority of Claims against and Interests in, the Debtors: Class 1 is comprised of Priority Non-Tax Claims, Class 2 is comprised of Other Secured Claims, Class 3 is comprised of WARN Act Class Settlement Claims, Class 4 is comprised of General Unsecured Claims, Class 5 is comprised of Subordinated Claims, and Class 6 is comprised of Interests.  Administrative Claims, Professional Fee Claims, and Priority Tax Claims are not classified for purposes of voting or receiving distributions under the Plan, but are treated separately as Unclassified Claims.  Accordingly, the Plan satisfies section 1122 of the Bankruptcy Code.

        b.       *The Plan Satisfies the Mandatory Requirements of Section 1123(a)*
                *of the Bankruptcy Code*

44.      Section 1123(a) sets forth seven mandatory requirements that a chapter 11 plan must satisfy.  The Plan satisfies each of these requirements.

45.      **Section 1123(a)(1)-(4).**  Article II of the Plan satisfies subsections 1123(a)(1)-(4) of the Bankruptcy Code.  Those subsections require the Plan to designate classes of claims other than certain priority claims, specify the treatment of those claims, and provide the same treatment for each holder in a class, respectively.  The Plan here satisfies each requirement.

46.      The Plan designates six (6) different classes of Claims and Interests, complying with section 1123(a)(1).  Article II of the Plan specifies that Classes 1, 2, and 3 are unimpaired under the Plan, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.  Article II of the

13

Plan also specifies that Classes 4, 5, and 6 are impaired under the Plan and specifies the treatment of Claims or Interests in those Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code. The Plan provides for the same treatment for each Claim or Interest in each respective Class unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

47.    **Section 1123(a)(5).**  Section 1123(a)(5) of the Bankruptcy Code requires that the Plan provide "adequate means for the plan's implementation."

48.    Here, Articles IX and X of the Plan and the various related documents and agreements set forth therein provide adequate means for the Plan's implementation, thus satisfying section 1123(a)(5) of the Bankruptcy Code.  This includes, but is not limited to: (i) the deemed substantive consolidation of the Debtors' respective Estates for voting, confirmation, and Distribution purposes only; (ii) the eventual dissolution of the Debtors; (iii) the creation and governance of the Liquidation Trust and appointment of a Plan Administrator; (iv) the transfer to the Liquidating Trust of the Liquidating Trust Assets, including, without limitation, all Retained Causes of Action, in accordance with section 1141 of the Bankruptcy Code (except as specifically provided in the Plan or the Confirmation Order); (v) the making of Distributions by the Liquidating Trust in accordance with the Plan and the Liquidating Trust Agreement; and (vi) mechanics of distributions to holders of Allowed Claims.

49.    **Section 1123(a)(5)(c).**  Section 1123(a)(5)(c) of the Bankruptcy Code authorizes a bankruptcy court to confirm a chapter 11 plan containing provisions which substantively consolidate the estates of two or more debtors.  Section 9.1 of the Plan provides for "deemed" limited substantive consolidation of the Estates solely for voting, confirmation, and Distribution purposes.  As discussed below and in the Foster Declaration, deemed substantive consolidation is

a common feature of chapter 11 plans where it promotes administrative efficiency, is done on a consensual basis and does not prejudice creditors, as is the case here.

50.    Courts in this District have allowed deemed substantive consolidation for plan purposes to promote administrative efficiency.  *See, e.g.*, *In re EYP Group Holdings, Inc.*, Case No. 22-10367 (MFW) (Bankr. D. Del. Nov. 1, 2022) [Docket No. 568]; *In re Valeritas Holdings, Inc.*, Case No. 20-10290 (LSS) (Bankr. D. Del. June 8, 2020) [Docket No. 410]; *In re Keystone Tube Co., LLC*, Case No. 17-11330 (LSS) (Bankr. D. Del. Aug. 2, 2017) [Docket No. 244]; *In re Old Fenm, Inc.*, Case No. 13-12569 (KJC) (Bankr. D. Del. July 2, 2014) [Dkt. No. 949]; *In re Aleris International, Inc.*, Case No. 09-10478 (BLS) (Bankr. D. Del. May 13, 2010) [Dkt. No. 2087].

51.    Here, as in the cases cited above, the Debtors seek deemed limited substantive consolidation to promote administrative efficiency for the benefit of all parties in interest.  Holders of Claims in Class 4 have voted to approve the Plan notwithstanding its deemed limited substantive consolidation provisions.  In addition, the Plan Proponents believe creditors will not be prejudiced by the Plan's deemed limited substantive consolidation because the costs of reconciling and analyzing Distributions by debtor would exceed the benefits.

52.    As noted in the Plan, several factors present here make deemed limited substantive consolidation appropriate for administrative efficiency: (i) the Debtors operate on a consolidated basis without individual reporting of their respective assets and liabilities; (ii) Pear US is the only Debtor that maintained bank accounts and processed all of the Debtors' disbursements, on account of employee payroll obligations, customer program obligations, and trade vendor obligations; (iii) prior to the Petition Date, the Debtors did not maintain a separate accounting of assets and liabilities for each Debtor; (iv) the Debtors do not have any intercompany agreements; (v) efforts

15

to deconsolidate the Debtors' respective assets and liabilities would be burdensome and divert professional resources that are more profitably directed elsewhere, all without meaningfully affecting the distributions received by any Class; (vi) the cost of allocating the Debtors' assets and liabilities, including Intercompany Claims, would require a considerably lengthier process that would delay distributions and require the incurrence of a far greater expense, ultimately decreasing net distributions to creditors; (vii) substantive consolidation promotes administrative efficiency and provides a clear and meaningful benefit to creditors.

53.     The Plan Proponents neither intend to effectuate true substantive consolidation nor do they seek to avoid payment of U.S. trustee fees.

54.     Furthermore, pursuant to the Plan, from and after the Effective Date, the Debtors will have no assets, as they will have been contributed to the Liquidating Trust.

55.     For these reasons, the Plan Proponents submit that the deemed limited substantive consolidation proposed under the Plan is appropriate under the circumstances and should be approved.

56.     **Section 1123(a)(6).**  Section 1123(a)(6) does not apply to the Plan because the Debtors are not issuing any equity securities under the Plan.

57.     **Section 1123(a)(7).**  Section 1123(a)(7) of the Bankruptcy Code requires that the Plan "contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director, or trustee under the plan and any successor to such officer, director, or trustee."  11 U.S.C. § 1123(a)(7).  The Plan Proponents have disclosed in the Liquidating Trust Agreement that Tabish Rizvi is proposed to serve as the Plan Administrator after the Effective Date and will oversee the wind down of the Debtors' estates.  Tabish Rizvi was selected by the Committee in a manner

consistent with the interests of creditors and with public policy.  As of the Effective Date, any director or officer of the Debtors shall be deemed to have resigned.  Accordingly, the Plan satisfies section 1123(a)(7) of the Bankruptcy Code.

*c.*    *The Plan Satisfies the Mandatory Requirements of Section 1123(b) of the Bankruptcy Code*

58.    Section 1123(b) of the Bankruptcy Code sets forth certain provisions that may be incorporated into a Chapter 11 plan, although they are not required.  *See* 11 U.S.C. § 1123(b).  Each provision of the Plan is consistent with section 1123(b) of the Bankruptcy Code.

**(i)    The Plan Satisfies Section 1123(b)(1)**

59.    Section 1123(b)(1) of the Bankruptcy Code provides that a plan may "impair or leave unimpaired any class of claims, secured or unsecured, or of interests."  11 U.S.C. § 1123(b)(1).  Claims and Interests in Classes 4 through 6 are impaired under the Plan.  Claims in Classes 1 through 3 are not impaired by the Plan.  *See* Plan, Art. II.  Accordingly, the Plan is consistent with section 1123(b)(l) of the Bankruptcy Code.

**(ii)    The Plan Satisfies Section 1123(b)(2)**

60.    Section 1123(b)(2) of the Bankruptcy Code allows a plan to provide for the assumption and assignment, or rejection of executory contracts and unexpired leases pursuant to section 365 of the Bankruptcy Code.  Article XII of the Plan provides that all executory contracts and unexpired leases of the Debtors, other than the Purchased Assets and Insurance Contracts, will be rejected as of the Effective Date, except to the extent: (a) the Debtors have previously assumed, assumed and assigned, or rejected such Executory Contract, or (b) prior to the Effective Date, the Debtor has filed a motion to assume, assume and assign, or reject an Executory Contract on which the Court has not ruled.  Accordingly, the Plan is consistent with section 1123(b)(2) of the Bankruptcy Code.

17

### (iii)     The Plan Satisfies Section 1123(b)(3)

61.     Section 1123(b)(3)(B) of the Bankruptcy Code provides that a plan may "provide for the retention and enforcement by the debtor" of claims or interests belonging to the Debtors. 11 U.S.C. § 1123(b)(3)(B).  Section 9.9 of the Plan preserves for the Liquidating Trust the right and authority to prosecute, compromise, settle, and/or otherwise deal with the Retained Causes of Action, which are described in the Plan Supplement.  *See* Plan, § 9.9.  Accordingly, the Plan is consistent with section 1123(b)(3) of the Bankruptcy Code.

### (iv)     The Debtor Release Under the Plan Is Appropriate Under Section 1123(b)(3) and (6)

62.     Section 14.1(b) of the Plan contains certain releases by the Debtors and their Estates (the "Debtor Releases") of "Released Parties," which include (a) the Debtors and their Estates, (b) the Committee, (c) solely with respect to Preference Actions, Holders of Claims, (d) solely with respect to Causes of Action that have or could have been asserted by or on behalf of the Estates, Perceptive's, Related Parties including their respective predecessors, successors, and assigns, current and former Affiliates, subsidiaries, beneficial owners, current or former officers, directors, managers, principals, shareholders, direct and indirect equity holders, general partners, limited partners, agents, financial advisors, attorneys, accountants, advisors, investment bankers, consultants, employees, members, representatives and other professionals, in their capacity as such.[3]  *See* Plan, §§ 1.133, 14.1(b).

63.     Each of the Released Parties were and/or are stakeholders or critical participants in the Sales and Plan processes.  The Debtor Releases represent a valid settlement pursuant to section

---

[3] However, pursuant to the Plan, any Entity that makes a Release Opt-Out Election shall not be a Released Party and the Debtors' Former Officers and Directors shall not be Released Parties with respect to any Retained Cause of Action that is covered under the Insurance Policies.

1123(b)(3)(A) of whatever claims the Debtors may have against the Released Parties.  *See* 11 U.S.C. § 1123(b)(3)(A) (a plan may provide for "the settlement or adjustment of any claim or interest belonging to the debtor or to the estate").  The Debtors have proposed the Debtor Releases based on their sound business judgment.  The Debtor Releases were negotiated at arm's length, are wholly consensual, are a necessary and integral component of the Plan Proponents' formulation and implementation of the Plan, and comply with the Bankruptcy Code.

64.    The Debtor Releases satisfy the applicable standard in this circuit and are consistent with similar releases approved by this Court.  "Courts in this district have held that a plan may provide for releases by a debtor or non-debtor third parties after considering the specific facts and equities of each case."  *U.S. Bank Nat'l Ass'n v. Wilmington Trust Co. (In re Spansion, Inc.),* 426 B.R. 114, 142 (Bankr. D. Del. 2010).  In this jurisdiction, courts typically assess the propriety of a "debtor release" in light of five "*Zenith* factors" in the context of a Chapter 11 plan:

> 1)    an identity of interest between the debtor and the third party, such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete assets of the estate;
>
> 2)    substantial contribution by the non-debtor of assets to the reorganization;
>
> 3)    the essential nature of the injunction to the reorganization to the extent that, without the injunction, there is little likelihood of success;
>
> 4)    an agreement by a substantial majority of creditors to support the injunction, specifically if the impacted class or classes 'overwhelmingly' votes to accept the plan;
>
> 5)    provision in the plan for payment of all or substantially all of the claims of the class or classes affected by the injunction.

*In re Zenith Elecs. Corp.*, 241 B.R. 92, 110 (Bankr. D. Del. 1999); *see also In re Indianapolis Downs, LLC,* 486 B.R. 286, 303 (Bankr. D. Del. 2013).  No factor is dispositive, nor is a proponent required to establish each factor for the release to be approved; rather, the factors are intended to

provide guidance to the court in determining the fairness of the releases.  *See In re Wash. Mut., Inc.,* 442 B.R. 314, 346 (Bankr. D. Del. 2011); *see also In re Exide Techs.,* 303 B.R. 48, 72 (Bankr. D. Del. 2003) (finding that factors are not exclusive or conjunctive requirements, but instead are helpful in weighing the equities of the particular case after a fact-specific review); *Indianapolis Downs*, 486 B.R. at 304 (approving the debtors' releases despite not meeting the third and fifth *Zenith* factors)

65.     The Plan Proponents submit that each *Zenith* factor supports approval of the Debtor Releases.

66.     <u>First</u>, there is identity of interest between the Released Parties and the Debtors.  The Debtors have a duty to indemnify certain of the Released Parties, such as pursuant to the Debtors' governance documents, or could otherwise be required to bear the cost of any litigation against the Released Parties related to the Chapter 11 Cases.  *See also Indianapolis Downs,* 486 B.R. at 303 ("An identity of interest exists when, among other things, the debtor has a duty to indemnify the nondebtor receiving the release.").

67.     The Released Parties also have an identity of interest insofar as the Released Parties' cooperation and support was necessary throughout the Chapter 11 Cases to permit the Debtor to sell substantially all of their assets, settle the WARN Act Claims, propose and obtain acceptance of the Plan, and make distributions through the Plan (*i.e.,* the Debtors, the Committee, the Secured Parties and each of their employees, officers, and directors, etc.).  *See In re Coram Healthcare Corp.,* 315 B.R. 321, 335 (Bankr. D. Del. 2004) (approving releases where released parties and debtors shared "common goal of achieving a reorganization of the Debtors").  Each of the Released Parties, as stakeholders and critical participants in the Sales and the Plan processes,

sought to ensure the success of the Chapter 11 Cases, the Plan, and the maximization of distributions to creditors in an expeditious manner.

68.    Second, the Debtor Releases are predicated on substantial contributions by each of the Released Parties.  The Released Parties made significant contributions to the Chapter 11 Cases by, as applicable, through their services to the Debtor and support of the Sales and Plan processes. The cooperation and support of the Released Parties enabled the Debtor to resolve crucial motions (including with respect to the Debtors' use of cash collateral) and obtain approval of the Sales. The proceeds of the Sales that were paid by the Purchasers will fund the Plan and provide either payment in full or, in the case of Holders of General Unsecured Claims, meaningful distributions, to creditors.  All of the Released Parties have been involved with negotiations and compromises or have otherwise helped position the Debtors to maximize the value of the Debtors' assets, which would not have been possible in a chapter 7 liquidation.

69.    Third, the Debtor Releases are essential to the Plan.  As described in Section 3.4 of the Combined Disclosure Statement and Plan, the Debtor Releases were a material term to the Global Settlement, which plays a critical component to the Plan.  Moreover, without the Debtor Releases, the Debtors and the Committee would not have agreed to the compromises set forth in the Global Settlement and embodied in the Plan.  *See Coram Healthcare Corp.,* 315 B.R. at 335 ("The releases given to the Noteholders are an essential part of the Plan, since they would not provide the funding without the releases.").

70.    Fourth, as evidenced by the Voting Report, Holders of Claims in Class 4 voted overwhelmingly to accept the Plan.  Significantly, no creditor or party-in-interest has objected to the Debtor Releases.

71.    <u>Fifth</u>, as described in the Plan, Holders of Claims will receive either a full recovery

or, with respect to Class 4, a meaningful recovery, on account of such claims.  Consequently, the

fifth *Zenith* factor weighs in favor of the Debtor Releases.

72.    For all of the foregoing reasons, the Debtor Releases are an integral component of

the Plan, complies with the Bankruptcy Code, is in the best interests of the Debtors' creditors, and

should be approved.

### (v)    The Consensual Third Party Release Under the Plan Is Appropriate Under Section 1123(b)(6)

73.    Section 14.1(c) of the Plan contains an appropriately tailored consensual third-party

release by the Releasing Parties[4] (the "<u>Third Party Release</u>") of the Released Parties.  However,

pursuant to the Plan, the Third Party Release will not be granted by any party that has made a

"Release Opt-Out-Election," which includes (a) the submission of a Ballot by the Voting Deadline

that either (i) votes to reject the Plan or (ii) selects the option set forth on the Ballot to <u>not</u> grant

the Third Party Releases, or (b) the filing of a written objection to the Third Party Release by the

Confirmation Objection Deadline.  *See* Plan, § 1.132.

74.    The Third Party Release specifically excludes any causes of action or liabilities

arising out of gross negligence, willful misconduct, fraud, or criminal acts of any Released Party

as determined by a Final Order.  *See* Plan, § 14.1(c).  The Third Party Release also does not release

any Retained Causes of Action transferred to the Liquidating Trust.  *See id.*

---

[4] Under the Plan, the term "Releasing Parties" means "(a) the Debtors and their Estates, (b) the Committee, (c) the Purchasers, (d) all Holders of Claims that vote to accept the Combined Disclosure Statement and Plan and do not make a Release Opt-Out Election; (e) all Holders of Claims that vote to reject the Combined Disclosure Statement and Plan and do not make a Release Opt-Out election; (f) all Holders of Claims that are eligible to vote on the Plan and that do not vote to accept or reject the Combined Disclosure Statement and Plan and who do not file an objection to the Combined Disclosure Statement and Plan; (g) all Holders of Claims that are ineligible to vote on the Plan and that do not file an objection to the Combined Disclosure Statement and Plan; and (h) with respect to each of the foregoing, their Related Parties."  Plan, § 1.134.

75.     Third party releases are consensual as applied to holders of claims deemed to accept a plan.  *See In re Indianapolis Downs, LLC,* 486 B.R. at 304-05 (approving third-party release that applied to unimpaired holders of claims deemed to accept the plan as consensual).   Moreover, where parties receive sufficient notice of a plan's release provisions and have an opportunity to object to or opt out of the release and fail to do so, the releases are consensual.  *See id.* at 306 ("As for those impaired creditors who abstained from voting on the Plan, or who voted to reject the Plan and did not otherwise opt out of the releases, the record reflects these parties were provided detailed instructions on how to opt out, and had the opportunity to do so by marking their ballots. Under these circumstances, the Third Party Releases may be properly characterized as consensual and will be approved.").   Thus, the Third Party Releases are consensual.

76.     The Plan does not provide for a release by Holders of Subordinated Claims or Interests in Classes 4 and 5, respectively (solely in their capacities as such), who are deemed to reject the Plan.  Courts in the Third Circuit consistently have approved consensual third-party releases of similar scope.  *See Gillman v. Cont'l Airlines (In re Cont'l Airlines Inc.*), 203 F.3d 203, 214 n.11 (3d Cir. 2000) ("Several of the Bankruptcy Courts in our Circuit have stated that non-debtor releases are permissible only if consensual.") (citing *Zenith Elecs.*, 241 B.R. at 111); *Spansion*, 426 B.R. at 144.

77.     Precedent in this Court and other courts makes clear that third party releases remain consensual so long as the opportunity to opt out was given – even if a creditor abstains from voting. *See Wash. Mut.*, 442 B.R. at 352 (observing that consensual third-party releases are permissible); *Zenith Elecs.*, 241 B.R. at 111 (approving non-debtor releases for creditors that voted in favor of the plan); *see also Indianapolis Downs*, 486 B.R. at 304-05 (approving as consensual third-party release that applied to unimpaired holders of claims deemed to accept the plan); *In re Insys*

*Therapeutics, Inc.*, Case No. 19-11292 (KG) (Bankr. D. Del. Jan. 16, 2020) [Docket No. 1115]; *In re Cred Inc., et al.*, Case No. 20-12836 (JTD) (Bankr. D. Del. Mar. 11, 2021) [Docket No. 629] (each confirming plan providing for opt-out releases).

78.     In the case of the Third Party Releases here, the Plan, Ballots, and Confirmation Hearing Notice clearly indicated to the Releasing Parties that they could opt out of the Third Party Release by making a Release Opt-Out Election.  The Releasing Parties were free to consider the possible value of any cause of action being released under the Plan as compared to the value of the distribution to which they would be entitled and to decide whether or not to opt out of the Third Party Release.  The Releasing Parties received sufficient notice of the Third Party Release and did not make a Release Opt-Out Election.

79.     The Releasing Parties have received sufficient consideration in exchange for the release of their claims against the Released Parties to justify the Third Party Releases.  Each of the Released Parties served as critical participants and made substantial contributions to the Chapter 11 Cases.  Given those contributions, in addition to the consideration being provided to the Releasing Parties bound by the releases as a result of the Plan, it is crucial that the Third Party Releases be included in the Plan to effectuate a successful completion of the Chapter 11 Cases.

(vi)     **The Exculpation Under the Plan is Appropriate Under Section 1123(b)(6)**

80.     The exculpation provisions in Section 14.1(a) of the Plan (the "Exculpation") should also be approved under the standards established by the Third Circuit.  Courts evaluate the appropriateness of exculpation provisions based on a number of factors, including whether the plan was proposed in good faith, whether liability is limited, and whether the exculpation provision was necessary for plan negotiations.  *See, e.g.*, *In re PWS Holding Corp.,* 228 F.3d 224, 246-47 (3d Cir. 2000) (observing that the debtors and certain other parties, such as the unsecured creditors'

committee members and the professionals retained by such committee, who provided services to assist in the reorganization, are entitled to a "limited grant of immunity . . . for actions within the scope of their duties").

81.     Here, the Exculpation is appropriate under applicable law because it is part of a Plan proposed in good faith, is appropriately limited in scope, and is being granted only to the Exculpated Parties (*i.e.,* (a) the Debtors, (b) the Committee and its members and their respective representatives, and (c) the retained professionals, directors, and officers, as applicable, of the Debtors and the Committee).  Each Exculpated Party receiving exculpation under the Plan is a fiduciary of the Debtors and/or their estates.  The protection from liability that the Exculpation provides to these parties is appropriate given their efforts in the Chapter 11 Cases and the Plan process and their fiduciary relationship with the Debtors and/or their estate.  Moreover, the Exculpation is limited in scope, as it excepts from the Exculpation any of the Debtors' Former Officers & Directors, in their capacity as such, with respect to any Retained Causes of Action which are covered under the Insurance Policies.

82.     Exculpation provisions similar to that proposed in the Plan are appropriate where, as here, such provisions do not extend to gross negligence or willful misconduct and where the Exculpated Parties have acted in good faith in negotiating and implementing the Plan.  *See PWS Holding,* 228 F.3d at 246-47 (approving plan exculpation provision with willful misconduct and gross negligence exceptions); *Indianapolis Downs,* 486 B.R. at 306 (same).

83.     Significantly, the Plan has received overwhelming support from creditors, and no party-in-interest has filed an objection to the Plan on account of the Exculpation.  Accordingly, the Exculpation provides reasonable and appropriate protections and should be approved.

### (vii) The Injunction Under the Plan is Appropriate and Should be Approved

84.    The injunction provisions set forth in sections 14.1(a) and (d) of the Plan (the "Injunctions") merely implement the Plan's release and exculpation provisions, in part, by permanently enjoining all applicable entities from commencing or maintaining any action on account of or with respect to any such Claims or Interests discharged, released, exculpated, or settled under the Plan. The Injunctions are thus key provisions of the Plan because they enforce the release and exculpation provisions that are essential to the Plan. In addition, no party has objected to the Injunctions. As such, the Court should approve the Injunctions.

### 2. *Section 1129(a)(2): the Plan Proponents have Complied with the Applicable Provisions of the Bankruptcy Code*

85.    The Plan Proponents have satisfied section 1129(a)(2) of the Bankruptcy Code, which requires that the proponent of a plan comply with the applicable provisions of the Bankruptcy Code – here, sections 1125, 1126, and 1127.

#### a. *The Plan Proponents Have Complied with Section 1125, and the Disclosure Statement Should be Approved on a Final Basis*

86.    The cases and legislative history discussing section 1129(a)(2) of the Bankruptcy Code indicate that this section principally embodies the disclosure and solicitation requirements of section 1125 of the Bankruptcy Code. Section 1125 prohibits the solicitation of acceptances or rejections of a plan "unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information." 11 U.S.C. § 1125(b). Section 1125 thus ensures that parties in interest are fully informed regarding the debtor's condition so that they may make an informed decision whether to approve or reject the plan. *See Momentum Mfg. Corp. v. Emp. Creditors Comm. (In re Momentum Mfg. Corp.),* 25 F.3d 1132, 1136 (2d Cir. 1994);

*see also Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.,* 337 F.3d 314, 321 (3d Cir. 2003).

87.     On March 4, 2024, the Plan Proponents filed the Solicitation Procedures Motion, which described in detail the legal and factual bases supporting a finding that the Disclosure Statement contains "adequate information" as defined in section 1125(a)(1) of the Bankruptcy Code. *See* Solicitation Procedures Motion*, ¶¶* 23-31.  The Plan Proponents hereby incorporate the arguments contained in the Solicitation Procedures Motion by reference as if fully set forth herein.

88.     On March 22, 2024, the Court approved the Disclosure Statement on an interim basis for solicitation purposes in accordance with section 1125(a)(1) of the Bankruptcy Code. *See* [Docket No. 653].  The Plan Proponents received no objections to final approval of the Disclosure Statement.

89.     The Court also approved the contents of the Solicitation Packages provided to Holders of Claims entitled to vote on the Plan, the non-voting materials provided to creditors and equity holders not entitled to vote on the Plan, and the relevant dates for voting and objecting to the Plan. *See* [Dkt. No. 653].  The Plan Proponents, through the Voting Agent, complied with the content and delivery requirements of the Solicitation Procedures Order, thereby satisfying sections 1125(a) and (b) of the Bankruptcy Code. *See Affidavit of Service* [Docket No. 661].

90.     The Plan Proponents have also satisfied section 1125(c) of the Bankruptcy Code, which provides that the same disclosure statement must be transmitted to each holder of a claim or interest in a particular Class.  The Plan Proponents transmitted the Disclosure Statement to all parties entitled to vote on the Plan. *See id.*

91.     For the reasons set forth herein and in the Solicitation Procedures Motion, the Plan Proponents believe the Disclosure Statement contains adequate information within the meaning of

section 1125 of the Bankruptcy Code.  Accordingly, the Plan Proponents submit that they have complied with section 1125 and the Court should approve the Disclosure Statement on a final basis.

### b.        Solicitation Complies with Section 1126

92.        Section 1126 of the Bankruptcy Code specifies the requirements for acceptance of a plan.  11 U.S.C. § 1126.  Specifically, only holders of allowed claims and allowed interests in impaired classes of claims or interests that will receive or retain property under a plan on account of such claims or interests may vote to accept or reject such plan.  Classes that are unimpaired under the Plan are conclusively deemed to accept.  *See* 11 U.S.C. § 1126(f).  Conversely, classes that are entitled to nothing under the Plan are conclusively deemed to reject.  *See* 11 U.S.C. § 1126(g).

93.        In accordance with section 1126 of the Bankruptcy Code, the Plan Proponents solicited acceptances or rejections of the Plan from the Holders of Claims in Class 4, which is the only Class entitled to vote on the Plan.  As provided in the Voting Report, Class 4 voted to accept the Plan.

### c.        The Plan Will Comply With Section 1127

94.        Section 1127(a) of the Bankruptcy Code provides a plan proponent with the right to modify the plan "at any time" before confirmation, and section 1127(d) of the Bankruptcy Code provides that all stakeholders that previously have accepted a plan also should be deemed to have accepted the modified plan.  *See* 11 U.S.C. § 1127.  The Plan Proponents reserve their rights, under section 1127 of the Bankruptcy Code, to modify the Plan further prior to the entry of the Confirmation Order.

### 3. Section 1129(a)(3): The Plan has Been Proposed in Good Faith and Not by Any Means Forbidden by Law

95.    Section 1129(a)(3) of the Bankruptcy Code requires that a chapter 11 plan be "proposed in good faith and not by any means forbidden by law."  The Plan Proponents negotiated, developed, and proposed the Plan in good faith and no party asserts otherwise.  The Plan is the product of arm's-length negotiations among the Plan Proponents and parties-in-interest.  The Plan Proponents proposed the Plan with the legitimate and good faith purpose of liquidating and maximizing the value of the Debtor's remaining assets and making distributions in a manner that is (a) timely, orderly, and efficient, (b) in the best interests of the Debtors' Estates and Holders of Allowed Claims, and (c) in accordance with the Bankruptcy Code.

96.    Based on the foregoing, the facts and record of the Chapter 11 Cases, the Disclosure Statement, and the record to be made at the Confirmation Hearing, the Plan and related documents have been proposed in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.   No party has asserted otherwise.[5]

### 4. Section 1129(a)(4): The Plan Provides for Court Approval of Certain Administrative Payments

97.    Section 1129(a)(4) of the Bankruptcy Code requires that certain professional fees and expenses paid by the plan proponent, by the debtor, or by a person issuing securities or acquiring property under the plan, be subject to approval of the Court as reasonable.  *See In re Future Energy Corp.,* 83 B.R. 470, 488 (Bankr. S.D. Ohio 1988); *In re Chapel Gate Apartments, Ltd.*, 64 B.R. 569, 573 (Bankr. N.D. Tex. 1986) (noting that before a plan may be confirmed, "there must be a provision for review by the Court of any professional compensation").

---

[5] *See* Bankruptcy Rule 3020(b)(2) ("The court shall rule on confirmation of the plan after notice and hearing as provided in Rule 2002.  If no objection is timely filed, the court may determine that the plan has been proposed in good faith and not by any means forbidden by law without receiving evidence on such issues.")

98.     Here, all payments made or to be made by the Debtors for services or for costs or expenses in connection with the Chapter 11 Cases prior to the Effective Date, including all Professional Fee Claims, have been approved by, or are subject to approval of, the Court.  Section 6.1(c) of the Plan provides that all final requests for payment of Professional Fee Claims for services rendered through the Effective Date shall be filed and served no later than the Professional Fee Claims Bar Date for determination by the Court, after notice and a hearing, in accordance with the procedures established by the Bankruptcy Code and prior Court orders.  Accordingly, the Plan fully complies with the requirements of section 1129(a)(4) of the Bankruptcy Code.

5.     *Section 1129(a)(5): The Plan Discloses Post-Effective Date Management*

99.     Section 1129(a)(5) of the Bankruptcy Code requires: (i) that the proponent of a plan disclose the identity of any individual proposed to serve after confirmation as a director, officer, or voting trustee of the debtor; (ii) that the appointment of such individuals be consistent with the interests of creditors and shareholders and with public policy; and (iii) that the proponent disclose the identity of any insider that will be employed by the reorganized debtor and the nature of the compensation to be provided to such insider.  11 U.S.C. § 1129(a)(5).

100.    The Plan Proponents have satisfied the foregoing requirements.  The Plan Proponents have disclosed in the Liquidating Trust Agreement (which was filed with the Plan Supplement) that Tabish Rizvi is proposed to serve as the Plan Administrator after the Effective Date.  The appointment of Tabish Rizvi to the role of the Plan Administrator is consistent with the interests of creditors.  The Plan Administrator's compensation, including fees and expenses of the Liquidating Trust, will be paid as set forth in the Plan and the Liquidating Trust Agreement.

6.      *Section 1129(a)(6): The Plan Does Not Require Governmental Approval of Rate Changes*

101.    Section 1129(a)(6) of the Bankruptcy Code permits confirmation only if any regulatory commission that will have jurisdiction over the debtor after confirmation has approved any rate change provided for in the plan.  As the Plan does not provide for any rate changes, section 1129(a)(6) is inapplicable here.

7.      *Section 1129(a)(7): The Plan is in the Best Interests of Creditors*

102.    Section 1129(a)(7) – the "best interests of creditors" test – requires that, with respect to each impaired class of claims or interests, either: (a) each holder of a claim or interest of such class has accepted the plan; or (b) will receive or retain under the plan property of a value, as of the effective date of the plan, that is not less than the amount that such holder would receive or retain if the debtor liquidated under chapter 7.  *See Bank of Am. Nat'l Trust and Sav. Ass'n v. 203 N. LaSalle St. P'ship,* 526 U.S. 434, 441 n.13 (1999) ("The 'best interests' test applies to individual creditors holding impaired claims, even if the class as a whole votes to accept the plan.").  The best interests test is generally satisfied by a liquidation analysis demonstrating that an impaired class will receive no less under the plan than under a chapter 7 liquidation.  *See In re Lason*, 300 B.R. 227, 232 (Bankr. D. Del. 2003) ("Section 1129(a)(7)(A) requires a determination whether a prompt chapter 7 liquidation would provide a better return to particular creditors or interest holders than a chapter 11 reorganization") (citations omitted).

103.    The Plan satisfies section 1129(a)(7).  As set forth in Section 4.8 of the Combined Disclosure Statement and Plan, the Debtors believe that in a chapter 7 liquidation there would be additional costs and expenses that the Estate would incur as a result of, *inter alia,* the appointment of a new party to serve as chapter 7 trustee and the likely retention of new professionals, all of whom would need to expend time and incur expense getting up to speed regarding the Estates and

31

the Claims to be adjudicated.  Such amounts would likely exceed the amount of expenses that would be incurred in implementing the Plan and winding up the affairs of the Debtor.

104.    Substantially all of the Debtors' assets already have been liquidated pursuant to the Sales, and the Plan follows Bankruptcy Code priorities that would apply in a chapter 7 liquidation. The only material differences between the outcome under the Plan and a chapter 7 liquidation would be the added expense of a chapter 7 trustee and potentially new professionals, which would materially reduce value available for distribution.

105.    Accordingly, because the recoveries provided under the Plan would exceed the recoveries that would be available in a chapter 7 liquidation, the Plan satisfies section 1129(a)(7) of the Bankruptcy Code.

### 8.    Section 1129(a)(8): Acceptance by Impaired Classes

106.    Section 1129(a)(8) of the Bankruptcy Code requires that each class of claims or interests must either vote to accept a plan or be unimpaired under that plan.  11 U.S.C. § 1129(a)(8). As evidenced by the Voting Report, Class 4 voted to accept the Plan.

107.    As discussed above, Classes 1 through 3 are deemed to have accepted the Plan. Classes 5 and 6 are deemed to reject the Plan; however, the Plan may still be confirmed over the dissent of Classes 5 and 6 because, as set forth below, the Plan Proponents have satisfied the requirements for cramdown under section 1129(b) of the Bankruptcy Code.

### 9.    Section 1129(a)(9): The Plan Complies with Statutorily Mandated Treatment of Administrative Claims and Priority Tax Claims

108.    Section 1129(a)(9) of the Bankruptcy Code requires that holders of claims for administrative expenses allowed under section 503(b) of the Bankruptcy Code must receive on the effective date cash equal to the allowed amount of such claims.  The treatment of Administrative Claims and Priority Tax Claims, as set forth in Article II of the Plan, is in accordance with the

requirements of section 1129(a)(9) of the Bankruptcy Code.  Accordingly, the Plan complies with section 1129(a)(9) of the Bankruptcy Code.

### 10.    *Section 1129(a)(10): The Plan has been Accepted by At Least One Impaired Class of Claims*

109.    Section 1129(a)(10) provides that if a class of claims is impaired under a plan, at least one impaired class of claims must accept the plan, excluding acceptance by any insider.  Class 4, the only impaired voting Class, has accepted the Plan regardless of the votes of any insider(s).  *See* Voting Report.  Accordingly, the Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code.

### 11.    *Section 1129(a)(11): The Plan is Feasible*

110.    Section 1129(a)(11) of the Bankruptcy Code requires that, as a condition to confirmation, the Bankruptcy Court determine that a plan is feasible.  Specifically, the Bankruptcy Court must determine that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11).  As described below, the Plan is feasible within the meaning of this provision.

111.    The feasibility test set forth in section 1129(a)(11) of the Bankruptcy Code requires the Court to determine whether a plan is workable and has a reasonable likelihood of success.  *See Armstrong World Indus.*, 348 B.R. at 167; *In re NII Holdings, Inc.*, 288 B.R. 356, 364 (Bankr. D. Del. 2002); *In re The Leslie Fay Cos.*, 207 B.R. 764, 788-89 (Bankr. S.D.N.Y. 1997); *In re Woodmere Investors Ltd. P'ship*, 178 B.R. 346, 361 (Bankr. S.D.N.Y. 1995).

112.    Moreover, "the feasibility standard is whether the plan offers a reasonable assurance of success.  Success need not be guaranteed." *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 649 (2d Cir. 1988).  The key element of feasibility is whether there exists a reasonable

probability that the provisions of the plan can be performed, so as to protect against a visionary or speculative plan. *See Pizza of Haw., Inc. v. Shakey's, Inc. (In re Pizza of Haw., Inc.)*, 761 F.2d 1374, 1382 (9th Cir. 1985) (quoting 5 Collier on Bankruptcy ¶ 1129.02[11], at 1129-34 (15th ed. 1984)).

113.    Applying the foregoing legal standards, the Plan satisfies the feasibility requirement of section 1129(a)(11) of the Bankruptcy Code.  The Plan provides for the completion of the Debtors' liquidation and the distribution of their remaining property in accordance with the priority scheme set forth in the Bankruptcy Code and the terms of the Plan.  Therefore, confirmation of the Plan will not be followed by the need for further financial reorganization of the Debtors, thereby satisfying (or eliminating the need to consider) section 1129(a)(11) of the Bankruptcy Code.

114.    In any event, the Plan is feasible.  The Liquidating Trust, which will be administered by the Plan Administrator, will have sufficient assets to accomplish its task under the Plan.  Moreover, the Debtors have already taken significant steps to wind down in an orderly fashion during the Chapter 11 Cases, including, without limitation, selling substantially all of the Debtor's assets through the Court-approved Sales.

115.    Based upon the foregoing, the Plan has more than a reasonable likelihood of success and satisfies the feasibility standard of section 1129(a)(11) of the Bankruptcy Code.

> **12.    *Section 1129(a)(12): The Plan Provides for Payment of All Fees Under 28 U.S.C. § 1930***

116.    Section 1129(a)(12) of the Bankruptcy Code requires the payment of all fees payable under 28 U.S.C. § 1930.  The Plan provides that all fees payable on or before the Effective Date, pursuant to 28 U.S.C. § 1930, will be paid on the Effective Date.  All fees payable after the Effective Date shall be paid in full in cash by the Liquidating Trust after the Chapter 11 Cases are

converted, dismissed, or closed, whichever occurs first. Accordingly, the Plan complies with section 1129(a)(12).

### 13. *Sections 1129(a)(13)-(16) Are Inapplicable*

117. The Debtors do not have any retiree benefit programs within the meaning of section 1114 of the Bankruptcy Code and, as such, section 1129(a)(13) does not apply to the Plan.

118. The Debtors are not required to pay any domestic support obligations. Accordingly, section 1129(a)(14) of the Bankruptcy Code does not apply.

119. The Debtors are not individuals. Thus, section 1129(a)(15) of the Bankruptcy Code does not apply.

120. The Debtor is a moneyed, business, or commercial corporation. Therefore, section 1129(a)(15) of the Bankruptcy Code, which applies only to debtors that are nonprofit entities or trusts, does not apply.

### 14. *Section 1129(b): The Plan Satisfies the "Cramdown" Requirements*

121. Section 1129(b)(1) of the Bankruptcy Code provides that if all applicable requirements of section 1129(a) of the Bankruptcy Code are met other than section 1129(a)(8), a plan may be confirmed so long as the requirements set forth by section 1129(b) of the Bankruptcy Code are satisfied. *See* 11 U.S.C. § 1129(b). To confirm a plan that has not been accepted by all impaired classes (thereby failing to satisfy section 1129(a)(8) of the Bankruptcy Code), the plan proponent must show that the plan does not "discriminate unfairly" and is "fair and equitable" with respect to the non-accepting impaired classes. *See* 11 U.S.C. § 1129(b)(1); *Zenith Elecs.*, 241 B.R. at 105.

122. Because Classes 5 and 6 are deemed to have rejected the Plan, the requirements of section 1129(a)(8) of the Bankruptcy Code are not satisfied. The Plan Proponents therefore request

confirmation of the Plan under section 1129(b) of the Bankruptcy Code, the "cramdown" provision, with respect to Classes 5 and 6.

123.    The Plan does not discriminate unfairly with respect to Classes 5 and 6.  Here, the Plan's treatment of Classes 5 and 6 is proper because all similarly-situated Holders of Subordinated Claims and Interests in Classes 5 and 6, respectively, will receive the same treatment and the Plan's classification scheme rests on a legally acceptable and otherwise appropriate rationale. Accordingly, the Plan does not discriminate unfairly with respect to impaired Interests and satisfies the requirements of section 1129(b).

124.    The Plan is also "fair and equitable" with respect to Classes 5 and 6 because the Plan complies with the "absolute priority" rule.  The impaired interest test requires that any class junior to the impaired class not receive any distribution under a plan on account of its junior interest. The Plan satisfies section 1129(b)(2)(C) of the Bankruptcy Code for Class 5 Subordinated Claims, because no Class junior to Class 5 will receive or retain property under the Plan on account of such junior interest.  The Plan also satisfies section 1129(b)(2)(C) of the Bankruptcy Code because no Class junior to Class 6 will receive or retain property under the Plan on account of such junior interest.  *See* Plan, Art. II.  Moreover, Holders of Claims in Class 4 will not be paid more than 100% of their Allowed Claims.

125.    Therefore, the Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code.

### 15.    *Section 1129(c): Only One Plan*

126.    Only one Plan is before the Court.  Therefore, section 1129(c) of the Bankruptcy Code is satisfied or otherwise inapplicable.

16.   ***Section 1129(d): The Principal Purpose of the Plan Is Not Avoidance of Taxes or Section 5 of the Securities Act***

127.    Section 1129(d) of the Bankruptcy Code provides that "the court may not confirm a plan if the principal purpose of the plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933."  11 U.S.C. § 1129(d).  As evidenced in the Foster Declaration, the Debtors commenced the Chapter 11 Cases with a bona fide business need, and business objective, to maximize the value of their assets – which they have accomplished – and not to avoid taxes or the application of section 5 of the Securities Act.   Moreover, no governmental unit or any other party has requested that the Court decline to confirm the Plan on such grounds.   Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

## V.   <u>CAUSE EXISTS TO WAIVE A STAY OF THE CONFIRMATION ORDER</u>

128.    Bankruptcy Rule 3020(e) provides that "[a]n order confirming a plan is stayed until the expiration of 14 days after the entry of the order, unless the Court orders otherwise." Bankruptcy Rules 6004(h) and 6006(d) provide similar stays to orders authorizing the use, sale, or lease of property (other than cash collateral) and to orders authorizing a debtor to assign an executory contract or unexpired lease under section 365(f) of the Bankruptcy Code.  Each rule also permits modification of the imposed stay upon court order.

129.    The Plan Proponents respectfully submit that cause exists for waiving the stay of the entry of the Confirmation Order such that the Confirmation Order will be effective immediately upon its entry.[6]  The Plan Proponents believe that an expeditious effectuation of the Plan will

---

[6] *See, e.g.*, *In re Akorn, Inc.*, No. 20-11177 (KBO) (Bankr. D. Del. Sep. 9, 2020) [Docket No. 673] (waiving stay of confirmation order and causing it to be effective and enforceable immediately upon its entry by the court); *In re Valeritas Holdings, Inc.*, Case No. 20-10290 (LSS) (Bankr. D. Del. Jun. 8, 2020) [Docket No. 410] (same); *In re Achaogen, Inc.*, No. 19-10844 (BLS) (Bankr. D. Del. May 29, 2020) [Docket No. 697] (same).

reduce costs and maximize the value of the Estates.  Thus, the Plan Proponents respectfully request a waiver of any stay imposed by the Bankruptcy Rules so that the Confirmation Order may be effective immediately upon its entry.

## VI.   CONCLUSION

For all of the reasons set forth herein, the Plan Proponents respectfully request that the Court approve the Disclosure Statement on a final basis and confirm the Plan as fully satisfying all of the applicable requirements of the Bankruptcy Code by entering the Confirmation Order, waiving the stay imposed by Bankruptcy Rule 3020(e), and granting such other and further relief as may be appropriate under the circumstances.

Dated: May 1, 2024
Wilmington, Delaware

*/s/ Katharina Earle*
Katharina Earle (No. 6348)
**GIBBONS P.C.**
300 Delaware Avenue, Suite 1015
Wilmington, Delaware 19801
Telephone: (302) 518-6300
Email: kearle@gibbonslaw.com

-and-

Robert K. Malone (admitted *pro hac vice*)
Kyle P. McEvilly (admitted *pro hac vice*)
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102
Telephone: (973) 596-4500
Email:  rmalone@gibbonslaw.com
        kmcevilly@gibbsonlaw.com

-and-

Alison D. Bauer (admitted *pro hac vice*)
Jiun-Wen Bob Teoh (admitted *pro hac vice*)
**FOLEY HOAG LLP**
1301 Avenue of the Americas, 25th Floor
New York, New York 10019
Telephone: (212) 812-0400
Email: abauer@foleyhoag.com
          jteoh@foleyhoag.com

-and-

Christian A. Garcia (admitted *pro hac vice*)
**FOLEY HOAG LLP**
155 Seaport Boulevard
Boston, Massachusetts 02210
Telephone: (617) 832-1000
Email: cgarcia@foleyhoag.com

*Attorneys for Debtors Pear Therapeutics, Inc. and
Pear Therapeutics (US), Inc.*

-and-

Bryan J. Hall (No. 6285)
**CHIPMAN BROWN CICERO & COLE, LLP**
Hercules Plaza
1313 N. Market Street, Suite 5400
Wilmington, DE 19801
(302) 295-0191
(302) 295-0199 (fax)
Hall@ChipmanBrown.com

-and-

Mark T. Power, Esq. (admitted *pro hac vice*)
Joseph Orbach, Esq. (admitted *pro hac vice*)
**THOMPSON COBURN HAHN & HESSEN
LLP**
488 Madison Avenue
New York, New York 10022
(212) 478-7200
mpower@thompsoncoburn.com
jorbach@thompsoncoburn.com

*Counsel to the Official Committee of Unsecured
Creditors*