# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| PEAR THERAPEUTICS, INC., *et al.*,[1] | Case No. 23-10429 (TMH) <br> (Jointly Administered) |
| Debtors. | |

## DECLARATION OF MATTHEW FOSTER IN SUPPORT OF THE APPROVAL AND CONFIRMATION OF THE COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN OF LIQUIDATION OF PEAR THERAPEUTICS, INC. AND PEAR THERAPEUTICS (US), INC.

I, Matthew Foster, hereby declare under penalty of perjury under the laws of the United States of America that, to the best of my knowledge and belief, and after reasonable inquiry, the following is true and correct:

1. I am the Chief Restructuring Officer ("CRO") of the above-captioned debtors (the "Debtors" or the "Company") and debtors-in-possession in the above-captioned chapter 11 cases (the "Chapter 11 Cases"). I was appointed CRO on July 6, 2023. Prior to being appointed as CRO, I have served as a financial advisor to the Debtors since March 2023.

2. I am also a Managing Director of Sonoran Capital Advisors, LLC ("Sonoran"). Sonoran has provided financial advisory and consulting support to me in my roles with the Debtors since my original appointment, and this support continued in this capacity during the Chapter 11 Cases.

---

[1] The Debtors in these Chapter 11 Cases (as defined below), along with the last four digits of each Debtors' federal tax identification number are: Pear Therapeutics, Inc. (3092) and Pear Therapeutics (US), Inc. (7074). The Debtors' corporate mailing address is c/o Sonoran Capital Advisors, 1733 N Greenfield Rd Ste 104, Mesa, AZ 85205.

3.      I have over sixteen (16) years of experience in corporate restructuring, private equity, consulting, and executive management.  My experience spans a variety of industries, primarily focusing on distressed middle-market companies.

4.      In my capacity as CRO of the Debtors, and as a result of my discussions with the Debtors' employees, consultants, and professionals, I have become generally familiar with the Debtors' day-to-day operations, business and financial affairs, and books and records.

5.      Except as otherwise indicated herein, all statements set forth in this Declaration are based on my personal knowledge, my discussions with members of the Debtors' management team and the Debtors' advisors, my review of relevant documents and information concerning the Debtors' operations, financial affairs, restructuring initiatives, and sales, or my opinions based upon my experience and knowledge.  Specifically, I have overseen the Sonoran team, which has been advising the Debtors since March 2023.  In making this Declaration, I also have relied on information and materials that the Debtors' personnel and advisors have gathered, prepared, verified, and provided to me, in each case under my ultimate supervision, at my direction, and/or for my benefit in preparing this Declaration.  In particular, with respect to certain matters involving chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), or the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), matters set forth in this Declaration are based on my reasonable inquiries and reliance upon the advice of the Debtors' advisors.  My investigation of the Debtors' operations and circumstances is ongoing.  To the extent that I learn any information provided herein is materially inaccurate, I or the Debtors will act promptly to notify the Court and other parties; however, I believe all information herein to be true to the best of my knowledge.

6.     I submit this Declaration in support of the approval and confirmation of the *Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Pear Therapeutics, Inc. and Pear Therapeutics (US), Inc.* dated as of March 22, 2024 [Dkt. No. 655, as Revised Dkt No. 658] (as amended, supplemented, or modified from time to time, the "Combined Disclosure Statement and Plan").[2]

7.     I am authorized to submit this Declaration on behalf of the Debtors and am over the age of 18.  If called upon to testify, I would testify competently to the facts set forth herein.

## THE COMBINED DISCLOSURE STATEMENT AND PLAN

8.     I have reviewed and am generally familiar with the terms and provisions of the Combined Disclosure Statement and Plan.  Along with the Debtors' advisors, I was personally involved in the development, and discussions regarding the terms, of the Combined Disclosure Statement and Plan, among other things.  The Combined Disclosure Statement and Plan is the result of arm's-length negotiations among the Debtors and the Committee.

9.     On March 22, 2024, the Court entered the Solicitation Procedures Order [Dkt. No. 653], thereby approving the Disclosure Statement on an interim basis for purposes of soliciting votes on the Plan.  To the best of my knowledge, with the assistance of Stretto, Inc., the Debtors' claims and noticing agent and voting agent, the Debtors complied with the solicitation and noticing procedures approved through the Solicitation Procedures Order, as well as the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, as evidenced by the certificate of service filed by the claims and noticing agent.  *See* Dkt. No. 661.

---

[2] Capitalized terms not defined herein shall have the meanings provided to them in the Combined Disclosure Statement and Plan.  As used herein, the term "Disclosure Statement" means the disclosure statement that is embodied in the Combined Disclosure Statement and Plan, and the term "Plan" means the plan of liquidation that is embodied in the Combined Disclosure Statement and Plan.

**SATISFACTION OF PLAN CONFIRMATION REQUIREMENTS**

10. I believe based on my review of the Combined Disclosure Statement and Plan, that the Combined Disclosure Statement and Plan satisfies all applicable provisions of the Bankruptcy Code and should be confirmed.

*Sections 1129(a)(1) and (2) and Sections 1122 and 1123*

11. I believe that the Plan Proponents have complied with the applicable provisions of the Bankruptcy Code as required by sections 1129(a)(1) and 1129(a)(2) of the Bankruptcy Code, respectively.

12. ***Classes of Claims.*** The Plan Proponents exercised their reasonable business judgment in creating the Plan's classification scheme. The classification under the Plan is based on the differing nature and priority of Claims against and Interests in the Debtors: Class 1 is comprised of Allowed Priority Non-Tax Claims, Class 2 is comprised of Other Secured Claims, Class 3 is comprised of WARN Act Class Settlement Claims, Class 4 is comprised of General Unsecured Claims, Class 5 is comprised of Subordinated Claims, and Class 6 is comprised of Interests. Administrative Claims and Priority Tax Clams are not classified for purposes of voting or receiving distributions under the Plan, but are treated separately as Unclassified Claims. I believe that each Class under the Plan only contains Claims that are substantially similar to other Claims within the Class, that similar Claims have not been placed into separate Classes, and that the Classes under the Plan were not prepared for purposes of improperly affecting the votes on the Plan or for any other inappropriate purpose. Further, the Plan provides for the same treatment of each Class within a Class.

13. ***Means of Implementation.*** I believe that the Plan provides for adequate means for implementation of the Plan, by providing for the (i) dissolution of the Debtors; (ii) creation and

governance of the Liquidating Trust and appointment of a Plan Administrator; (iii) transfer to the Liquidating Trust of the Liquidating Trust Assets, including, without limitation, all Retained Causes of Action, in accordance with Bankruptcy Code section 1141 (except as specifically provided in the Plan or the Confirmation Order); (iv) making of Distributions by the Liquidating Trust in accordance with the Plan and the Liquidating Trust Agreement; and (v) mechanics of distributions to holders of Allowed Claims.

14. ***Deemed Limited Substantive Consolidation.*** I believe that the deemed limited substantive consolidation provided by Section 9.1 of the Plan is necessary and appropriate.

15. I believe that the deemed limited substantive consolidation for voting, confirmation, and Distribution purposes only will enable the Plan Administrator to administer the Plan more efficiently for the benefit of all parties in interest. It is my understanding that the Plan Proponents seek deemed limited substantive consolidation to promote such administrative efficiency. Holders of Claims in Class 4 voted in favor of the Plan notwithstanding its deemed limited substantive consolidation provisions. In addition, I believe that creditors will not be prejudiced by the Plan's deemed limited substantive consolidation because the costs of reconciling and analyzing distributions by Debtors would exceed the benefits.

16. I believe that several factors, as noted in the Plan, make deemed limited substantive consolidation appropriate for efficient administration of the Chapter 11 Cases. These factors include:

 a. The Debtors operate on a consolidated basis without individual reporting of their respective assets and liabilities;

 b. Pear US processed all of the Debtors' disbursements, on account of employee payroll obligations, customer program obligations, and trade vendor obligations;

    c.  The Debtors do not have any intercompany agreements;

    d.  Efforts to deconsolidate the Debtors' respective assets and liabilities would be burdensome and divert professional resources that are more profitably directed elsewhere, all without meaningfully affecting the distributions received by any class;

    e.  The cost of allocating the Debtors' assets and liabilities, including Intercompany Claims, would require a considerably lengthier process that would delay distributions and require the incurrence of a far greater expense, ultimately decreasing net distributions to creditors; and

    f.  Substantive consolidation promotes administrative efficiency and provides a clear and meaningful benefit to creditors.

17.    I believe the Plan Proponents neither intend to effectuate true substantive consolidation nor do they seek to avoid payment of U.S. Trustee fees. Moreover, pursuant to the Plan, from and after the Effective Date, these two Debtors will have no material assets, as they will have been contributed to the Liquidating Trust.

18.    For the foregoing reasons, I believe that the deemed limited substantive consolidation provided by the Plan is appropriate under the circumstances and should be approved.

19.    ***Exculpation, Release and Injunction Provisions.***  The Plan includes certain release, exculpation, and injunction provisions.

20.    Section 14.1(a) of the Plan contains certain exculpations of the Exculpated Parties (*i.e.*, (a) the Debtors, (b) the Committee and its members (c) current and former directors, officers, and employees acting in a fiduciary capacity, who served between the Petition Date and the Effective Date, and (d) the retained professionals, financial advisors, accountants, and attorneys as

applicable, of the Debtors and the Committee. Each Exculpated Party receiving exculpation under the Plan is a fiduciary of the Debtors and/or their Estates, and I believe that the protection from liability that the exculpation provides to these parties is appropriate given their efforts in the Chapter 11 Cases and the Plan process and their fiduciary relationship with the Debtors and/or their Estates. I believe the exculpations contained in the Combined Disclosure Statement and Plan are fair, equitable, and reasonable.

21. Section 14.1(b) of the Plan contains certain releases by the Debtors (the "Debtor Releases") and Section 14.1(c) of the Plan contains certain consensual third-party releases by the Releasing Parties (the "Third Party Releases" and together with the Debtor Releases, the "Plan Releases"). The Plan Releases were negotiated at arm's length, are wholly consensual, and are necessary and integral components of the Debtors' formulation and implementation of the Plan.

22. I believe that the Released Parties (*i.e.*, (a) the Debtors and their Estates, (b) the Committee, (c) solely with respect to Preference Actions, Holders of Claims, (d) solely with respect to Causes of Action that have or could have been asserted by or on behalf of the Estates, Perceptive, and (e) each of the Debtors', Estates', the Committee's, and, solely with respect to Causes of Action that have or could have been asserted by or on behalf of the Estates, Perceptive's, Related Parties including their respective predecessors, successors, and assigns, current and former Affiliates, subsidiaries, beneficial owners, current or former officers, directors, managers, principals, shareholders, direct and indirect equity holders, general partners, limited partners, agents, financial advisors, attorneys, accountants, advisors, investment bankers, consultants, employees, members, representatives, and other professionals, in their capacity as such) have made significant contributions to the Chapter 11 Cases by, as may be applicable, through their services to the Debtors' Estates and support of the Debtors' Sale and Plan processes. Each of the Released

7

Parties sought to ensure the success of the Chapter 11 Cases, the Plan, and the maximization of distributions to creditors in an expeditious manner.

23.  Further, the efforts and support of the Released Parties enabled the Debtors to resolve crucial motions and obtain approval of the Sale.

24.  All of the Released Parties have been involved with negotiations and compromises or have otherwise helped position the Debtors to maximize the value of the Debtors' assets, which would not have been possible in a chapter 7 liquidation.

25.  Notably, the Plan Releases do not release any Retained Causes of Action transferred to the Liquidating Trust as set forth in the Plan Supplement. [Dkt. No. 687-1].

26.  Moreover, with respect to the Third Party Releases, creditors who have abstained from voting on the Plan will <u>not</u> be Releasing Parties. Rather, only the Committee and Holders of Claims that have actually voted to accept or reject the Plan but that have not made a Release Opt-Out Election will be Releasing Parties. Thus, the Third Party Releases are entirely consensual. I believe the Plan Releases are fair, appropriate, and essential to the Plan.

27.  Section 14.1(d) of the Plan contains an injunction, which serves to ensure that no litigation is brought against any person or entity exculpated or released under the Plan. I believe that any such litigation would hinder the efforts of the Plan Administrator to effectively fulfill the responsibilities contemplated in the Plan and thereby would undermine efforts to maximize value for the Debtors' creditors. Accordingly, I believe the injunction is necessary and appropriate.

*Section 1129(a)(3)*

28.  The Plan has been proposed by the Plan Proponents in good faith, with the legitimate and honest purpose of liquidating the Debtors' Estates in an orderly fashion and maximizing the value of the Debtors and the recoveries of all creditors under the circumstances of

the Chapter 11 Cases. The Plan is the product of arm's-length negotiations among the Plan Proponents and parties-in-interest, and is fully supported by the Committee.

29. The Plan Proponents filed the Combined Disclosure Statement and Plan with good intentions and with the expectation that the Plan will allow for expeditious liquidation and distribution of the remaining Assets to the Debtors' creditors in accordance with the order of priority set forth in the Bankruptcy Code. Further, I believe the Plan maximizes the value of the Estates for their creditors. Prior to and throughout the Plan process, the Debtors and the Committee continued to negotiate in good faith to achieve a consensual plan of liquidation that would maximize recoveries for all creditors.

*Section 1129(a)(4)*

30. Any payments made or to be made for services or for costs and expenses incurred in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, have been approved by, or are subject to approval of this Court as reasonable. I also believe that all of the payments to be made under the Plan are reasonable and appropriate in the Chapter 11 Cases, and I believe that the payment for the costs and expenses of the Liquidating Trust set forth in the Plan and the Liquidating Trust Agreement will fairly compensation parties for providing services necessary to the effectuation and implementation of the Plan and the wind-down of the Debtors' Estates.

*Section 1129(a)(5)*

31. ***Appointment of Plan Administrator.*** The Plan Proponents have disclosed in the Liquidating Trust Agreement (which was filed with the Plan Supplement) that Tabish Rizvi is proposed to serve as Plan Administrator after the Effective Date and will oversee the wind down of the Debtors' Estates. Tabish Rizvi was selected by the Committee and the Debtors in a manner

9

consistent with the interests of the creditors and with public policy. The Plan Administrator's compensation, including fees and expenses of the Liquidating Trust, will be paid as set forth in the Plan and Liquidating Trust Agreement.

*Section 1129(a)(6)*

32. The Debtors' business does not involve the establishment of rates subject to approval of any governmental regulatory commission, and, as a result, the Combined Disclosure Statement and Plan does not propose the change of any such rates, and I am advised that section 1129(a)(6) is inapplicable.

*Section 1129(a)(7)*

33. I believe the Plan satisfies the "best interests test" of section 1129(a)(7) of the Bankruptcy Code. As set forth in Section 4.8 of the Combined Plan and Disclosure Statement, the Plan Proponents believe that in a chapter 7 liquidation there would be additional costs and expenses that the Estates would incur as a result of, *inter alia*, the appointment of a new party to serve as chapter 7 trustee and the likely retention of new professionals, all of whom would need to expend time and incur expense getting up to speed regarding the Estates and the Claims to be adjudicated. Such amounts would likely exceed the amount of expenses that would be incurred in implementing the Plan and winding up the affairs of the Debtors.

34. In addition, substantially all of the Debtors' assets, other than potential causes of action, already had been liquidated pursuant to the Sales, and the Plan follows Bankruptcy Code priorities that would apply in a chapter 7 liquidation. The only material differences between the outcome under the Plan and a chapter 7 liquidation would be the added expense of a chapter 7 trustee and potentially new professionals, which would materially reduce value available for distribution.

35. Based on the foregoing, I believe that the Plan satisfies the "best interests test" because no creditor or equity holder will receive or retain property on account of its Claim or Interest under the Plan that is less than what such party would receive in a chapter 7 liquidation.

*Sections 1129(a)(8) and 1129(b)*

36. Classes 1, 2, and 3 are deemed to have accepted the Plan. Holders of Subordinated Claims in Class 5 and Holders of Interests in Class 6 are deemed to reject the Plan; however, I understand that the Plan may still be confirmed over the deemed dissent of Class 5 and Class 6 because the Plan can still be confirmed if the Plan satisfies the "cramdown" provisions of section 1129(b) of the Bankruptcy Code.

37. The Plan does not discriminate unfairly with respect to Classes 5 and 6. The Plan's treatment of Classes 5 and 6 is proper because all similarly-situated Holders of Subordinated Claims in Class 5 and Holders of Interests in Class 6 will receive the same treatment and the Plan's classification scheme rests on a legally acceptable rationale.

38. The Plan is also "fair and equitable" with respect to Class 5 and Class 6 because the Plan complies with the "absolute priority" rule. I understand that the absolute priority rule requires that any class junior to the impaired class not receive any distribution under a plan on account of its junior interest. Likewise, the Plan satisfies the rule for Class 6 Interests, because no Class junior to Class 6 will receive or retain property under the Plan on account of such junior interest; indeed, there is no Class junior to Class 6 under the Plan. Moreover, Holders of Claims in Class 4 will not be paid more than 100% of their Allowed Claims.

*Section 1129(a)(9)*

39. I believe that the Plan's treatment of Administrative Claims, Professional Fee Claims, and Priority Tax Claims satisfies section 1129(a)(9) of the Bankruptcy Code.

*Section 1129(a)(10)*

40.     Class 4 (General Unsecured Claims), which are impaired, voted to accept the Plan, regardless of the votes of any insider(s).

*Section 1129(a)(11)*

41.     The Plan provides for the completion of the Debtors' liquidation and the distribution of its remaining property in accordance with the priority scheme set forth in the Bankruptcy Code and the Plan.

42.     I believe that the Liquidating Trust, which will be administered by the Plan Administrator, will have sufficient assets to accomplish its tasks under the Plan. Moreover, the Debtors have already taken significant steps to wind down in an orderly fashion during the Chapter 11 Cases, including, without limitation, selling substantially all of the Debtors' assets through the Court-approved Sales. Therefore, I believe that confirmation of the Plan is not likely to be followed by the need for further financial reorganization of the Debtors, and the Plan provides for adequate means for its implementation.

*Section 1129(a)(12)*

43.     The Plan provides that all fees payable on or before the Effective Date, pursuant to 28 U.S.C. § 1930, will be paid on the Effective Date. I believe the Debtors have adequate means to make such payments. All fees payable under the Effective Date shall be paid in full in cash by the Liquidating Trust until the Chapter 11 Cases are converted, dismissed, or closed, whichever comes first.

*Section 1129(a)(13)*

44.     The Debtors do not have any retiree benefit programs within the meaning of section 1114 of the Bankruptcy Code. Therefore, I am advised that section 1129(a)(13) is inapplicable.

*Section 1129(a)(14)*

45. The Debtors are not required to pay any domestic support obligation. Therefore, I am advised that section 1129(a)(14) is inapplicable.

*Section 1129(a)(15)*

46. The Debtors are not individuals. Therefore, I am advised that section 1129(a)(15) is inapplicable.

*Section 1129(a)(16)*

47. The Debtors are a moneyed, business, or commercial corporation. Therefore, I a am advised that section 1129(a)(16) is inapplicable.

*Section 1129(c)*

48. The Plan is the only chapter 11 plan that has been proposed in the Chapter 11 Cases.

*Section 1129(d)*

49. The Plan does not have as one of its principal purposes the avoidance of taxes or avoidance of the requirements of section 5 of the Securities Act of 1933. The Debtors commenced the Chapter 11 Cases with a bona fide business need, and business objective, to maximize the value of their assets – which they have accomplished – and not to avoid taxes or the application of section 5 of the Securities Act.

## **CONCLUSION**

50. I believe that the Plan will enable the Holders of Allowed Claims to realize the highest possible recoveries under the circumstances of the Chapter 11 Cases. I therefore conclude that the Plan is in the best interests of all creditors.

I certify under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated: May 1, 2024

/s/ Matthew Foster
Matthew Foster
Chief Restructuring Officer